IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

STUART REGES,

    *Plaintiff,*

    v.

ANA MARI CAUCE, et al.,

    *Defendants.*

CASE NO.    2:22–cv–00964–JHC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
Dec. 23, 2022

ORAL ARGUMENT REQUESTED

Joshua T. Bleisch*
DC Bar No. 90001269
Gabriel Walters*
DC Bar No. 1019272
James Diaz*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org
*Admitted *Pro Hac Vice*

Robert A. Bouvatte, Jr.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (904) 505-3175
bob@rbouvattepllc.com

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

1

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ........................................................................... iv

INTRODUCTION ......................................................................................... 1

STATEMENT OF FACTS ............................................................................ 2

    I.    Defendants Invited Reges and Other Professors to Include Their
         Own "Land Acknowledgment," an Inherently Political Statement,
         on Their Syllabi........................................................................... 2

    II.   When Reges Included a Dissenting Viewpoint on His Syllabus,
         Defendants Threatened His Academic Freedom, His Reputation,
         and His Livelihood........................................................................ 3

ARGUMENT .............................................................................................. 5

    I.    Reges's First Cause of Action Sufficiently Alleges Defendants'
         Actions Constitute Unconstitutional Viewpoint Discrimination. ........................... 6

    II.   Defendants Violated Reges's First Amendment Right Against
         Retaliation for His Academic Speech on Matters of Public
         Concern. ..................................................................................... 9

         A.    Reges's land acknowledgment statement is constitutionally
                protected as speech "related to scholarship or teaching" on
                a matter of public concern........................................................... 10

         B.    Defendants took adverse employment action against Reges
                for his protected speech by opening a disciplinary
                investigation and creating a shadow course............................... 15

         C.    Reges's speech was a substantial or motivating factor for
                UW's adverse employment actions. ......................................... 17

    III.  Reges's Course Syllabus Is Not Government Speech and Public
         Universities Are Not High Schools............................................... 18

    IV.  Reges's Fourth Cause of Action Sufficiently Alleges Executive
         Order 31 Is Overbroad Because It Gives Defendants Discretion to
         Punish a Substantial Amount of Protected Speech. ............................... 20

    V.    Reges's Fifth Cause of Action Sufficiently Alleges Executive
         Order 31 Is Vague Because a Reasonable Person Would Not

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

ii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

Understand What It Prohibits and Because It Risks Arbitrary and
Discriminatory Enforcement.................................................................................... 23

CONCLUSION.................................................................................................................... 24

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases:**

4

*Abcarian v. McDonald,*
    617 F.3d 931 (7th Cir. 2010) ................................................. 12

5

*Am. Freedom Def. Initiative v. King Cnty.,*
    904 F.3d 1126 (9th Cir. 2018) ............................................. 7, 8

6

7

*Anthoine v. N. Cent. Cntys. Consortium,*
    605 F.3d 740 (9th Cir. 2010) ................................................. 15

8

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ................................................................... 8

9

10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................... 5, 17

11

*Berry v. Department of Social Services,*
    447 F.3d 642 (9th Cir. 2006) ............................................... 8, 9

12

13

*Coll. Republicans at S.F. State Univ. v. Reed,*
    523 F. Supp. 2d 1005 (N.D. Cal. 2007) ................................. 22

14

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011) ................................................ 20

15

*Connick v. Myers,*
    461 U.S. 138 (1983) ............................................................... 13

16

17

*Coszalter v. City of Salem,*
    320 F.3d 968 (9th Cir. 2003) ................................................ 15

18

19

*Dambrot v. Cent. Mich. Univ.,*
    55 F.3d 1177 (6th Cir. 1995) ................................................ 24

20

*Davis v. Monroe Cnty. Bd. of Educ.,*
    526 U.S. 629 (1999) ............................................................... 22

21

*DeJohn v. Temple Univ.,*
    537 F.3d 301 (3d Cir. 2008) ................................................. 21

22

23

*Demers v. Austin,*
    746 F.3d 402 (9th Cir. 2014) ...................................... 10, 11, 13

24

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

iv    FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

*Downs v. L.A. Unified Sch. Dist.*,
　228 F.3d 1003 (9th Cir. 2000) ........................................................................ 19

*Foti v. City of Menlo Park*,
　146 F.3d 629 (9th Cir. 1998) .......................................................................... 23

*Garcetti v. Ceballos*,
　547 U.S. 410 (2006) .................................................................................. 10, 11

*Grayned v. City of Rockford*,
　408 U.S. 104 (1972) ....................................................................................... 23

*Grutter v. Bollinger*,
　539 U.S. 306 (2003) ....................................................................................... 18

*Hazelwood Sch. Dist. v. Kuhlmeier*,
　484 U.S. 260 (1988) ....................................................................................... 20

*Healy v. James*,
　408 U.S. 169 (1972) ................................................................................. 14, 20

*Hernandez v. City of Phoenix*,
　43 F.4th 966 (9th Cir. 2022) ........................................................................... 22

*Hill v. Colorado*,
　530 U.S. 703 (2000) ....................................................................................... 23

*Hulen v. Yates*,
　322 F.3d 1229 (10th Cir. 2003) ...................................................................... 22

*Iancu v. Brunetti*,
　139 S. Ct. 2294 (2019) .................................................................................. 6, 7

*Johnson v. Multnomah Cnty.*,
　48 F.3d 420 (9th Cir. 1995) ............................................................................ 13

*Johnson v. Poway Unified Sch. Dist.*,
　658 F.3d 954 (9th Cir. 2011) .......................................................................... 19

*Keyishian v. Bd. of Regents*,
　385 U.S. 589 (1967) ................................................................................. 14, 19

*Lakeside-Scott v. Multnomah Cnty.*,
　556 F.3d 797 (9th Cir. 2009) ............................................................................ 9

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
　508 U.S. 384 (1993) ......................................................................................... 9

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

v

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

*Levin v. Harleston*,
    966 F.2d 85 (2d Cir. 1992).................................................................................... 16

*Iozie v. Arizona Bd. of Regents*,
    431 F. Supp. 3d 1100 (D. Ariz. 2020) .............................................................. 12

*Mahanoy Area Sch. Dist. v. B.L.*,
    141 S. Ct. 2038 (2021)...................................................................................... 20

*Matal v. Tam*,
    137 S. Ct. 1744 (2017)................................................................................ 6, 7, 8

*McCauley v. Univ. of the V.I.*,
    618 F.3d 232 (3d Cir. 2010)........................................................................ 20, 21

*Mendocino Env't. Ctr. v. Mendocino Cnty.*,
    192 F.3d 1283 (9th Cir. 1999) ........................................................................ 15

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ..................................................................... 12, 13

*Papish v. Bd. of Curators of the Univ. of Mo.*,
    410 U.S. 667 (1973)...................................................................................... 7, 8

*Peacock v. Duval*,
    694 F.2d 644 (9th Cir. 1982) .......................................................................... 22

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*,
    No. 4:22cv304-MW/MAF, 2022 WL 16985720 (N.D. Fla. Nov. 17, 2022)................... 14, 18

*Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will Cnty.*,
    391 U.S. 563 (1968)........................................................................................ 13

*Pickering v. Board of Education*,
    391 U.S. 563 (1968).......................................................................................... 9

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*,
    605 F.3d 703 (9th Cir. 2010) ........................................................................ 6, 8

*Roe v. City & Cnty. of S.F.*,
    109 F.3d 578 (9th Cir. 1997) .......................................................................... 13

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
    515 U.S. 819 (1995)................................................................................. 6, 7, 8

*Shurtleff v. City of Bos.*,
    142 S. Ct. 1583 (2022).............................................................................. 18, 19

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

vi

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

*Smith v. Goguen*,
   415 U.S. 566 (1974)............................................................................... 23, 24

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) .............................................................. 20

*Texas v. Johnson*,
   491 U.S. 397 (1989)................................................................................. 6

*United States v. Stevens*,
   559 U.S. 460 (2010)................................................................................ 20

*United States v. Wunsch*,
   84 F.3d 1110 (9th Cir. 1996) .................................................................. 23

*Waln v. Dysart Sch. Dist.*,
   No. 21-15737, 2022 WL 17544355 (9th Cir. Dec. 9, 2022)...................... 5

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ................................................................ 8

Other Authorities

Alex Morey, *Bitchassness, hateration, general stankness possible motives behind
   reassignment of San Diego State philosophy professor for teaching slurs,
   'offensiphobia'* (March 8, 2022) .............................................................21

Amanda Nordstrom, *Tennessee Tech still investigating, enforcing ban on LGBTQ+ and
   theater groups that hosted drag show* (Oct. 31, 2022) ...........................21

Josh Bleisch, *FIRE calls on SUNY Fredonia to end suspension, investigation of professor
   for philosophical discussion of sex with minors* (Feb. 4, 2022).............21

Josh Moody, *Land Acknowledgments Spur Controversies*, Inside Higher Ed (Feb. 23,
   2022) .......................................................................................................14

Mary Murphy, *The logical fallacies within Stuart Reges's take on land acknowledgment*,
   The Daily of the Univ. of Wash. (Jul 21, 2022) ....................................14

Sabrina Conza, *Ferris State cannot punish professor for comedic—and now viral—video
   jokingly referring to students as 'cocksuckers' and 'vectors of disease'* (Jan. 17,
   2022) .......................................................................................................21

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

vii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

Pursuant to Fed. R. Civ. P. 12(b)(6), LCR 7, and Defendants' Notice of Motion Renoted, ECF No. 30, Plaintiff Stuart Reges respectfully submits this Opposition to Defendants' Motion to Dismiss.

## INTRODUCTION

Professor Stuart Reges accepted his public university employer's invitation to speak about an important public issue, and the First Amendment protects his ability to do so. But when administrators did not like what he had to say, they punished him for it. No matter what justification Defendants offer, they cannot overcome the heavy presumption that punishing Reges because of his viewpoint violates the First Amendment.

The University of Washington (UW) and its Allen School of Computer Science and Engineering encourage professors to include on their syllabi an "optional" "Indigenous Land Acknowledgment Statement," recognizing that indigenous groups used to reside on the land on which UW now sits. These kinds of statements have become increasingly common in academia. Although Defendants claim this statement is a friendly recommendation, Defendants' actions against Professor Reges show that, in reality, UW is imposing a "pall of orthodoxy" on faculty academic expression by insisting that faculty parrot its preferred viewpoint and then retaliating against professors who dare to express a different view.

On the syllabus Professor Reges created for teaching undergraduate students at the Allen School, he included his own version of a land acknowledgment statement. This version was designed to express a dissenting viewpoint and, as college professors have the freedom to do, provoke discussion among his students and fellow faculty about the utility of land acknowledgments. Yet University administrators deemed his viewpoint "offensive" and

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

1   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

"inappropriate," and punished Reges by launching a disciplinary investigation—which is ongoing and could result in his termination—and creating a "shadow" section of his class.

Despite this clear violation of Reges's First Amendment rights, Defendants now move to dismiss his Complaint, asserting that Reges fails to state valid claims under Rule 12(b)(6) while impermissibly disputing Reges's well-pled factual allegations. But taking the Complaint's allegations as true, as the Court must at this stage, Reges states a plausible claim for each of his five causes of action.

Defendants misapply the First Amendment's public-employee-speech doctrine as to public university professors. Their chief arguments rely on inapposite cases from the K–12 educational setting and institutions like police departments, and ignore the only reasonable interpretation of Executive Order 31's prohibition on "unacceptable or inappropriate" speech. None of those upset Reges's showing that Defendants violated his First Amendment rights. This Court should also reject Defendants' attempt to introduce competing factual matter, which they may not do at this stage. For the reasons explained below, this Court should deny Defendants' motion

## STATEMENT OF FACTS

In retaliation for expressing a differing viewpoint at their invitation, Defendants subjected Reges to a disciplinary investigation and created a competing online shadow course, relying on an unconstitutionally vague and overbroad university policy prohibiting "unacceptable or inappropriate" speech.

## I.   Defendants Invited Reges and Other Professors to Include Their Own "Land Acknowledgment," an Inherently Political Statement, on Their Syllabi.

The Allen School invites its professors to include on their syllabi a statement acknowledging the historic presence of indigenous people on the land currently occupied by UW,

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

2

to "make [their] course syllabus more inclusive." Compl., Dkt. #1 ¶ 29. The Allen School provides its faculty with an "example" land acknowledgment statement that reads: "The University of Washington acknowledges the Coast Salish peoples of this land, the land which touches the shared waters of all tribes and bands within the Suquamish, Tulalip and Muckleshoot nations." *Id.* ¶ 30. UW's example statement sends a message and expresses a viewpoint, that land acknowledgment statements promote inclusion and are otherwise beneficial or proper. Indeed, UW's Office of Minority Affairs and Diversity notes that UW's land acknowledgment statement is used to express the belief that "our campus sits on occupied land." *Id.* ¶ 31. By extending to its faculty an invitation to include that example statement on their syllabi, UW invites them to join it in expressing that viewpoint. These views are matters of public debate at UW and across the country. *Id.* ¶¶ 32–33.

Some faculty in the Allen School accepted UW's invitation to include an indigenous land acknowledgment statement on their syllabi. *Id.* ¶ 35. And some of those faculty altered UW's model land acknowledgment statement but in a way that was ideologically aligned with UW's own model statement. *Id.* To this day, other faculty at the Allen School continue to include land acknowledgment statements in their syllabi that differ from UW's example statement. *Id.* ¶ 41. But because their modifications to UW's example statement align with the views expressed in UW's model statement, Defendants have taken no action against those faculty. *Id.* ¶¶ 41–42.

## II. When Reges Included a Dissenting Viewpoint on His Syllabus, Defendants Threatened His Academic Freedom, His Reputation, and His Livelihood.

Reges disagrees with UW's preferred statement. So, he wrote his own land acknowledgment statement as part of his class syllabus: "I acknowledge that by the labor theory of property the Coast Salish people can claim historical ownership of almost none of the land currently occupied by the University of Washington." *Id.* ¶ 33. Reges created this statement to

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

3

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

express his disagreement with UW's message and encourage his students and fellow faculty to think critically about it. *Id.* ¶¶ 33–34. He first included this statement on his syllabus for his Computer Programming II course (CSE 143) for the Winter 2022 quarter. *Id.* ¶ 34. He also emailed his alternative statement to a university listserv to further stimulate debate. *Id.* ¶ 60.

In response, Defendant Magdalena Balazinska, Director of the Allen School, emailed Reges and ordered him to remove his statement from his syllabus. *Id.* ¶ 36. When Reges declined, Director Balazinska took matters into her own hands and unilaterally removed Reges's dissenting statement from his syllabus as it appeared on UW's class portal. *Id.* ¶ 39. She also claimed, without evidence, that Reges's statement caused a "disruption to instruction" in his class. *Id.* ¶ 43. In fact, no disruption actually occurred and Professor Reges was able to teach his course for the rest of the Winter 2022 quarter. *Id.* ¶ 45.

Despite the complete lack of disruption, Defendants continued to retaliate against Reges. To punish Reges for including a dissenting viewpoint on his syllabus, Director Balazinska opened up a competing "shadow" CSE 143 class. *Id.* ¶¶ 47, 50. The class met at the same time as Reges's course, and Director Balazinska encouraged Reges's students to transfer to it even though the shadow class section was taught using recorded lectures while Reges's section was live and in-person. *Id.* ¶ 48. Defendants retaliated again, creating a shadow class for Reges's CSE 142 course for the Spring 2022 quarter. *Id.* ¶ 77.

Defendants did not stop at the shadow class. On March 2, 2022, Director Balazinska sent Reges a letter notifying him of allegations that he violated several University policies. *Id.* ¶ 57. The letter cited Reges's alternate land acknowledgment statement, Reges's email to a University listserv that included his alternate statement, and an allegation that his actions violated certain university policies and the student employee union's collective bargaining agreement with UW.

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

4

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

*Id.* ¶ 60. The letter invoked University of Washington Executive Order 31, which gives UW "the authority to discipline or take appropriate corrective action for any conduct that is deemed unacceptable or inappropriate, regardless of whether the conduct rises to the level of unlawful discrimination, harassment, or retaliation." *Id.* ¶¶ 57–58. That policy does not define "unacceptable" or "inappropriate."

After an initial meeting with Director Balazinska on March 18, Reges met with Defendant Nancy Allbritton, Dean of the College of Engineering, as per Faculty Code Section 25-71.D. *Id.* ¶ 70. On April 21, Dean Allbritton notified Reges that she would assemble a committee to "look into the matter" of whether he violated University policy under Faculty Code Section 25-71.D.3. *Id.* ¶ 79. Faculty Code Section 25-71.D allows the Dean to determine "whether the alleged violation is of sufficient seriousness to justify consideration of the filing of a formal statement of charges that might lead to dismissal, reduction of salary, or suspension for more than one quarter." *Id.* ¶ 71. While Defendants have yet to decide whether Reges will face formal punishment, they continue to hold over Reges's head the possibility of "dismissal, reduction of salary, or suspension," leaving his expectation of continued employment in constant jeopardy. *Id.* ¶¶ 71, 92–93.

## ARGUMENT

This Court must accept Reges's well-pleaded allegations as true and view all facts in the light most favorable to Reges when ruling on a Rule 12(b)(6) motion to dismiss. *Waln v. Dysart Sch. Dist.*, No. 21-15737, 2022 WL 17544355, at *8 (9th Cir. Dec. 9, 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under that standard, Reges shows UW violated the First Amendment when it discriminated against his viewpoint on a matter of public concern. Indeed, Reges's allegations show that Defendants singled out Reges because of his disagreement with

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

5

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

UW's land acknowledgment statement. Other faculty who agreed with, but deviated from, the approved language have not faced such treatment. That is enough for a distinct claim of viewpoint discrimination under the First Amendment. Reges also sufficiently alleges in his second and third causes of action that Defendants retaliated against him for his academic speech on matters of public concern. Finally, his third and fourth causes of action sufficiently allege that Executive Order 31 is unconstitutionally vague and overbroad.

## I.   Reges's First Cause of Action Sufficiently Alleges Defendants' Actions Constitute Unconstitutional Viewpoint Discrimination.

The government violates the First Amendment if it favors some viewpoints and discriminates against others, including those messages it deems offensive. *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017) (plurality opinion); *see also Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) (holding that ban on trademarks that are "immoral" or "scandalous" discriminates on the basis of viewpoint); *Texas v. Johnson*, 491 U.S. 397 (1989) (the government is powerless to prohibit speech on the basis that it causes offense). Moreover, "[i]t is axiomatic that the government may not silence speech because the ideas it promotes are thought to be offensive." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010).

In the higher-education setting, where the government plays many roles including providing the capacity for scholarship and teaching, it is well established that a "[u]niversity may not discriminate based on the viewpoint of private persons whose speech it facilitates." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 834 (1995). When regulations or authorities target "not subject matter but particular views taken by speakers on a subject, the violation" of expressive rights "is all the more blatant." *Id.* at 829. Additionally, "the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

6

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

not be shut off in the name alone of 'conventions of decency.'" *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 670 (1973).

This prohibition on the government favoring one viewpoint over another gives rise to a claim of viewpoint discrimination, which is separate and distinct from Reges's First Amendment retaliation claim. Viewpoint discrimination is a particularly "egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. A claim for viewpoint discrimination lies where a plaintiff alleges that a government actor restricts speech on the grounds it is "offensive" or "disparaging." *Matal*, 137 S. Ct. at 1751 (holding that the U.S. Patent and Trademark Office's prohibition on trademarks that may "disparage . . . or bring . . . into contemp[t] or disrepute" any "persons, living or dead" violated the First Amendment). As the Ninth Circuit later explained, "all eight Justices (Justice Gorsuch was recused) [in *Matal*] held that offensive speech *is, itself, a viewpoint*," and therefore suppressing such speech is viewpoint discrimination. *Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126, 1131 (9th Cir. 2018) (emphasis added) (citing *Matal*, 137 S. Ct. at 1751, 1763 (plurality op.) and *id.* at 1766 (Kennedy, J., concurring)). A Supreme Court majority later expanded that rule, holding that a prohibition on "immoral or scandalous" trademarks was viewpoint-based and unlawful. *Iancu*, 139 S. Ct. at 2299.

Reges alleged that Defendants censored his alternative land acknowledgment statement while allowing others who also modified UW's example statement—but in a manner aligned with UW's viewpoint—to keep theirs. Dkt. #1 at ¶¶ 39, 41. Defendants' gloss, that UW's suggested land acknowledgment statement is simply a "factual acknowledgment" that "expresses no viewpoint-based position," is not credible. Dkt. # 25 at p. 2. In fact, Defendants give away that game in the very next sentence, emphasizing the time and effort it took to make sure the statement conveyed the intended message. *Id.* By expressing UW's preferred land acknowledgment

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

7

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

statement, Defendants endorse the viewpoints that members of the UW community should take time to "acknowledge[] the Coast Salish people" and those statements make a "course syllabus more inclusive." Dkt. #1 at ¶¶ 29–30. These are inherently political opinions that reflect and reproduce one of many viewpoints on an important public issue. It strains credulity that UW's statement expresses no viewpoint while Reges's statement is "viewpoint-based" and thus ought to be censored. The truth is that Defendants targeted Reges for punishment because he takes an opposing view on these matters of public concern, and Reges's allegations make that clear.

Defendants' restrictions do not just target the general subject matter of land acknowledgments on faculty syllabi, but rather Reges's specific viewpoint regarding that subject matter, making Defendants' violation "all the more blatant." *Rosenberger*, 515 U.S. at 829. Furthermore, Defendants' maintenance and enforcement of Executive Order 31 is viewpoint discriminatory as it prohibits faculty, staff, and students from saying anything "unacceptable or inappropriate." Even without an adverse employment action, governments cannot suppress such speech without violating the First Amendment. *Am. Freedom Def. Initiative*, 904 F.3d at 1131; *Matal*, 137 S. Ct. at 1751; *Rodriguez*, 605 F.3d at 708; *Papish*, 410 U.S. at 670. Even "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)). If the federal government in *Matal* had no power to refuse to register trademarks it deemed offensive, then surely UW has no power to punish Reges's viewpoints on the basis that they cause offense. *Matal*, 137 S. Ct. at 1751.

Defendants incorrectly rely on *Berry v. Department of Social Services*, 447 F.3d 642 (9th Cir. 2006), for the proposition that viewpoint discrimination "is not viable separate from [his]

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

8   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

retaliation claims." Dkt. # 25 at p. 16. But *Berry* does not stand for that proposition. In *Berry*, the plaintiff alleged that his employer violated his First Amendment rights because his religious speech was protected by the First Amendment's Religion Clauses rather than as speech on a matter of public concern. *Id.* at 650. The Ninth Circuit concluded that it must use the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), "regardless of the reason an employee believes his or her speech is constitutionally protected." *Berry*, 447 F.3d at 650. But the Ninth Circuit was referring to the source of the speech's constitutional protection, not to the harm the plaintiff suffered or the cause of action under which he sought relief. Nothing in *Berry* precludes Reges from bringing his standalone claim for viewpoint discrimination. Viewpoint discrimination is so pernicious and harmful that an employee need not cabin it into a First Amendment retaliation claim. Any act of viewpoint-driven censorship is enough to cause constitutional harm. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993).

## II.     Defendants Violated Reges's First Amendment Right Against Retaliation for His Academic Speech on Matters of Public Concern.

Reges's second and third causes of action sufficiently allege First Amendment retaliation because (1) his alternative land acknowledgment statement is constitutionally protected speech; (2) defendants took adverse employment actions against him by creating a shadow course and instituting an ongoing investigation that may result in his termination or other discipline; and (3) Defendants took those adverse employment actions because of Reges's speech. *See Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 803 (9th Cir. 2009).

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

9     FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

**A.** **Reges's land acknowledgment statement is constitutionally protected as speech "related to scholarship or teaching" on a matter of public concern.**

The First Amendment protects Reges's alternative land acknowledgment statement because it is speech related to scholarship and teaching about a matter of public concern that satisfies the *Pickering* balancing test.

**1.** ***Under Ninth Circuit Precedent, Reges's syllabus-based speech is related to scholarship or teaching.***

Reges's alternative land acknowledgment is constitutionally protected speech because it is related to scholarship or teaching, is about a matter of public concern, and his speech interest outweighs any interest of UW. *See Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014). *Demers* affirms that public college and university professors enjoy First Amendment protection for their "speech related to scholarship or teaching," notwithstanding their status as government employees. 746 F.3d at 406. Thus, *Demers* unequivocally answers, within the Ninth Circuit, the question left unanswered by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006): whether the Court's public-employee-speech doctrine, which limits generally public employee expressive rights at work, applies with equal force to on-the-job academic expression. *Garcetti*, 547 U.S. at 425; *id.* at 438–39 (Souter, J., dissenting). The Ninth Circuit tells us it does not: "*Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to teaching and academic writing that are performed 'pursuant to the official duties' of a teacher and professor," and "academic employee speech not covered by *Garcetti* is protected under the First Amendment." *Demers*, 746 F.3d at 412. "Rather, such speech is governed by *Pickering*" and its test weighing the professor's speech interest against UW's interests as an employer. *Id.* at 406.

In *Demers*, the plaintiff was a professor at Washington State University who alleged that administrators retaliated against him for distributing pamphlets concerning his proposal for a

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

10

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

restructuring of the university that was being debated on campus at the time. *Id.* at 406. The Ninth Circuit upheld the district court's finding that Demers wrote both the pamphlet and the book "pursuant to his duties as a professor at WSU." *Id.* at 409. While this finding would ordinarily doom any other public employee's First Amendment retaliation claim, faculty at public colleges and universities are not like any other public employee; the government does not make professors' speech its own by hiring them. As Justice Souter wrote in his *Garcetti* dissent, the First Amendment protects the academic freedom of public faculty, who "necessarily speak and write 'pursuant to . . . official duties'" *Garcetti*, 547 U.S. at 438 (Souter, J., dissenting). Indeed, the majority opinion expressly declined to address whether its decision "would apply in the same manner to a case involving speech related to scholarship or teaching." *Garcetti,* 547 F.3d at 425. Recognizing this, the Ninth Circuit confirmed that Demers's pamphlet was "related to scholarship or teaching," as it discussed a change to the university's organization that "would have substantially altered the nature of what was taught at the school." *Id.* at 415.

Reges's speech—his alternative land acknowledgment statement included on his course syllabus for CSE 143—concerns scholarship or teaching at least as much as Demers's pamphlet about his university's organizational structure. Any speech contained in a professor's syllabus is necessarily speech related to teaching. A course syllabus is the domain of the faculty member who authors it. While notices regarding certain university policies are required and general guidelines exist, it is the faculty member who has the freedom to select his or her specific course material, readings, assignments, lecture content, and much more. A syllabus is the written product that gives students a preview of a faculty member's in-class speech. If a professor's in-class speech is protected, his syllabus-based speech must be protected as well. Other circuit courts have recognized a syllabus's place as a medium for faculty expression, even when used to spur debate.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS Case No. 2:22-cv-00964-JHC

11

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

When a university "categorically silence[s] dissenting viewpoints" on a professor's syllabus, it violates the First Amendment. *Meriwether v. Hartop*, 992 F.3d 492, 506–07 (6th Cir. 2021) ("By forbidding [the plaintiff-professor] from describing his views on gender identity *even in his syllabus*, [the university] silenced a viewpoint that could have catalyzed a robust and insightful in-class discussion." (emphasis added)).

Defendants cite a district court case from Arizona for the proposition that not all university speech qualifies as academic speech under *Demers*. Dkt. # 25 at p. 8 (citing *Alozie v. Arizona Bd. of Regents*, 431 F. Supp. 3d 1100, 1118 (D. Ariz. 2020)). *Alozie* is inapposite. There, the speech at issue occurred during the plaintiff's job interview for a dean position where he read a statement expressing his concerns about race discrimination in the hiring process. *Alozie*, 431 F. Supp. 3d at 1107. The court found that plaintiff failed to show that his speech during his job interview was academic. *Id.* at 1119. Defendants also cite the out-of-circuit and pre-*Demers* case *Abcarian v. McDonald*, 617 F.3d 931, 938 n.5 (7th Cir. 2010), noting that the Seventh Circuit rejected a surgery department head's claims that his expression was related to scholarship or teaching because his "speech involved administrative policies that were much more prosaic than would be covered by principles of academic freedom." But the Court rejected the plaintiff's speech on administrative policies because he was speaking in his role *as an administrator*, not as a university scholar and teacher. *Id.* at 937–38.

Each of those cases is distinguishable from this case. They cannot support the conclusion that Reges's speech is not "related to scholarship or teaching." Reges included his alternative land acknowledgment statement in his syllabus—a document authored by faculty to provide a written preview of their in-class instructions, assignments, and speech. And Reges only did so after he and other faculty were invited by administrators to include an indigenous land acknowledgment

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

12    FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

statement on their syllabi. He included his land acknowledgment statement to "catalyze[] a robust and insightful in-class discussion." *Meriwether*, 992 F.3d at 506. Reges even offered to organize a group discussion on land acknowledgments. Dkt. #1 at ¶ 33. Accordingly, Reges's alternative land acknowledgment statement is speech related to scholarship or teaching under *Demers*.

### 2.     *Reges's speech satisfies* Pickering's *balancing test.*

Having established Reges's speech is related to scholarship or teaching, the analysis moves to the two prongs of the *Pickering* balancing test: (1) "the employee must show that his or her speech addressed 'matters of public concern'" and (2) the employee's interest "in commenting upon matters of public concern" must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Demers*, 746 F.3d. at 412 (quoting *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568 (1968)). Reges's dissenting land acknowledgment statement satisfies both prongs.

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The Ninth Circuit has adopted a "liberal construction of what an issue 'of public concern' is under the First Amendment." *Roe v. City & Cnty. of S.F.*, 109 F.3d 578, 586 (9th Cir. 1997).

Reges's speech presents an alternative view of a social and political issue at the University of Washington and beyond: indigenous land acknowledgments and their meaning, appropriateness, effectiveness, or performative nature. This is speech on a matter of concern to the university community and more broadly to the general public. As Reges alleges, a faculty member emailed an article arguing that land acknowledgments are "moral exhibitionism," and Reges himself hoped to spur discussion about the issue. Dkt. #1 at ¶¶ 32–33. Debates regarding diversity,

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

13

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

equity, and inclusion have been of great political and social concern for much of the American public and have found a place of primacy on university campuses. Defendants themselves contributed to that public debate when recommending that faculty include indigenous land acknowledgment statements on their syllabi to "make [their syllabi] more inclusive." Dkt. #1 at ¶ 29. Reges contributed to that debate as well.[1]

Under the second *Pickering* prong, the balance of Reges's speech interest against UW's interests as an employer tips in Reges's favor. UW's interest in efficient public service is based on nothing more than casting "a pall of orthodoxy" on the contested social and political issue of land acknowledgments. *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). UW simply does not have a legitimate interest in stifling dissent and debate: indeed, UW is "peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180 (1972). Limiting professors to "express only those viewpoints of which the State approves" is "positively dystopian." *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, No. 4:22cv304-MW/MAF, 2022 WL 16985720, at *1 (N.D. Fla. Nov. 17, 2022). Further, as discussed above, there was no disruption to Reges's classroom. Dkt. #1 at ¶ 45. In short, whatever interest UW may have in efficiently providing services free of debate or conflict by mandating viewpoint orthodoxy is self-refuting. Weighed against Reges's significant First Amendment interest in academic freedom and the right to comment on matters of public concern, UW cannot succeed.

---

[1] *See, e.g.*, Mary Murphy, *The logical fallacies within Stuart Reges's take on land acknowledgment*, The Daily of the Univ. of Wash. (Jul 21, 2022), https://www.dailyuw.com/opinion/the-logical-fallacies-within-stuart-reges-take-on-land-acknowledgment/article_f20d0c86-079f-11ed-9f86-a35174578ea5.html [https://perma.cc/MKK7-VT7X]; Josh Moody, *Land Acknowledgments Spur Controversies*, Inside Higher Ed (Feb. 2022), https://www.insidehighered.com/news/2022/02/23/professors-land-acknowledgment-sparks-controversy [https://perma.cc/X4WH-VUEH].

14

**B.**     **Defendants took adverse employment action against Reges for his protected speech by opening a disciplinary investigation and creating a shadow course.**

Defendants' motion tries to downplay the severity of their retaliation. But "[a] government act of retaliation need not be severe and it need not be of a certain kind." *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003)). "Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights." *Coszalter*, 320 F.3d at 975. An investigation constitutes adverse employment action—even though termination may come several steps into the process. The relevant inquiry is whether the government's actions "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Env't. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Here, the Defendants' actions are reasonably likely to chill a person of ordinary firmness's speech—and the speech of third persons at the University of Washington who do not wish to find themselves under investigation for questioning University orthodoxy on land acknowledgements.

Defendants argue that because no charges have yet been filed against Reges, he suffered no adverse employment action. Dkt. # 25 at 21. This is wrong. The question is not whether charges were filed or whether Reges was terminated. The question is whether Defendants' actions were reasonably likely to deter Reges from engaging in protected activity. *Coszalter*, 320 F.3d at 976. Defendants set in motion a process that could eventually lead to his termination—a sword still hanging over his head—which is reasonably likely to deter Reges from engaging in further protected speech. Indeed, *Coszalter* specifically notes "unwarranted disciplinary investigation" and a "threat of disciplinary action" in a list of actions that, considered individually, were adverse

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

15     FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

employment actions. *Id.* And here, that investigation is coupled with threat of *termination* and shadow classes that harm Reges's standing in the UW community.

Indeed, Defendants' investigation of Reges "pursuant to [Faculty Code] Section 25.71.D," could result in his termination or other serious sanction. Dkt. #1 at ¶ 70. That section empowers the Dean to determine whether "the alleged violation is of sufficient seriousness to justify consideration of the filing of a formal statement of charges that might lead to dismissal, reduction of salary, or suspension for more than one quarter." *Id.* ¶ 71. It does not matter that formal charges or discipline would come one or two steps further down the process. The threat that an investigation will lead to termination, reduction of salary, or suspension is sufficiently and obviously chilling.

It is also an adverse employment action to create "shadow sections" of a professor's course, not in furtherance of legitimate educational interests, but in retaliation for the professor's speech. *See Levin v. Harleston*, 966 F.2d 85, 88 (2d Cir. 1992). In *Levin*, City College in New York City created a shadow class in response to a professor's extramural speech that was seen as racially insensitive. *Id.* at 87. The Second Circuit noted that the creation of a shadow class "would not be unlawful if done to further a legitimate educational interest that outweighed" the professor's First Amendment interests. *Id.* at 88. Like Defendants here, the college in *Levin* argued that it established the shadow class to accommodate students who were harmed in the classroom by the professor's speech. *Id.* But the court found a "complete lack of evidence" to support the college's claimed educational interest. *Id.*

That "complete lack of evidence" exists here, too. To support their arguments, Defendants seek to raise disputed facts about alleged complaints and disruption that are outside the four corners of the Complaint and not incorporated by reference. Contrary to Defendants' assertions, Reges

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

16

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

does not "concede[] that the University created the alternative class sections in response to student complaints." Dkt. # 25 at p. 15. Reges alleges that Defendants created the shadow course, taught via recorded lectures, to punish him for his protected speech. Dkt. #1 at ¶ 50. Reges also alleges that Defendants did not further any other legitimate educational interests because there was no disruption to his instruction. *Id.* ¶ 45. Moreover, Director Balazinska refused to share with Reges whether any of the complaints they allegedly received were actually from students in his class. *Id.* ¶ 66. Defendants created the shadow class to retaliate against Reges for his protected expression and cannot show that doing so furthered any other legitimate interest. More to the point, Defendants are not permitted to dispute the well-pleaded factual allegations at this stage of the proceeding. *Bell Atl. Corp.*, 550 U.S. at 556.

### C.    Reges's speech was a substantial or motivating factor for UW's adverse employment actions.

It is undisputed that Reges's speech was the motivating factor for UW's adverse employment actions against him. Director Balazinska ordered Reges to remove his alternative statement from his syllabus because she believed it was "offensive," and created a "toxic environment." Dkt #1 at ¶ 36; *see also* Decl. of Magdalena Balazinska Re: Defs.' Mot. to Dismiss, Dkt. # 26 at p. 4. When Balazinska created the shadow course, she did so to punish Reges for his alternative land acknowledgment statement. Dkt. #1 at ¶ 50. And when Dean Allbritton convened the special investigative committee to look into Reges's actions, she made clear the investigation was to focus on the land acknowledgment statement on his syllabus. Dkt. #. 26 at p. 6. All of Defendants' actions were motivated by Reges's constitutionally protected speech.

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

17   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

III.   **Reges's Course Syllabus Is Not Government Speech and Public Universities Are Not High Schools.**

Defendants argue that Reges's syllabus is a "university-sanctioned document" and therefore government speech. *See* Dkt. # 25 at pp. 9, 12, 16–18. This argument is misguided. Indeed, "the weight of binding authority requires [courts] to decline the invitation" to hold that "university professors' in-class speech . . . amounts to government speech outside the First Amendment's protection." *Pernell*, 2022 WL 16985720 at *10.

Government speech requires a "purposeful communication of a governmentally determined message." *Shurtleff v. City of Bos.*, 142 S. Ct. 1583, 1598 (2022) (Alito, J., concurring). Courts must make a holistic inquiry in evaluating whether the government intends to speak for itself. Faculty at public universities occupy a "special niche in our constitutional tradition," owing to "the expansive freedoms of speech and thought associated with the university environment . . . ." *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003). Just as their academic speech is treated as the speech of a private citizen under *Pickering*, faculty members are properly understood as on par with private speakers in determining that the government speech doctrine cannot apply to their speech. Faculty convey *a* message, but it is a message springing from their academic and pedagogical expertise, not a message the government selects *for* them. Faculty speech is not government speech. To hold otherwise would eviscerate the unique role academics and universities play in our society. *Pernell*, 2022 WL 16985720 at *10.

Applying *Shurtleff*'s "holistic inquiry," courts should first look to the "history of the expression at issue." 142 S. Ct. at 1589. In this context, faculty have historically not spoken for the government, nor do they hold themselves out as doing so. Instead, they are hired to be one of a "multitude of tongues" providing "wide exposure to [the] robust exchange of ideas." *Keyishian*,

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

18   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

385 U.S. at 603. Second, courts look to "the public's likely perception as to who (the government or a private person)" is speaking. *Shurtleff*, 142 S. Ct. at 1589–90. Our long national tradition of academic freedom informs what the public understands about faculty speech. No person would reasonably believe a college syllabus is anything other than a professor's expression. And more specifically, Defendants argue that they acted to ensure its message was not distorted, but no member of the public was at risk of believing that Reges's alternative statement, beginning "*I* acknowledge . . ." was an instance of UW speaking rather than Reges himself. Finally, courts examine "the extent to which the government has actively shaped or controlled the expression." *Shurtleff*, 142 S. Ct. at 1590. This factor, too, weighs in Reges's favor. Although UW maintained its own example land acknowledgment statement, it did not intervene by shaping or controlling the syllabi of other faculty who also crafted their own versions of a land acknowledgment that were not critical of land acknowledgments as a concept. Dkt. #1 at ¶ 41. Moreover, governments may not "actively shape[] or control[] the expression" of university faculty, who have a First Amendment right to academic freedom. *See Shurtleff*, 142 S. Ct. at 1590.

To support their mistaken contention of strong governmental control over classroom messages, Defendants rely heavily on cases involving K–12 education that simply do not apply to the university setting. *See* Dkt. #25 at pp. 10–12 citing *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011) and *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000)). Both cases concern high school teachers who alleged their employers violated their First Amendment rights. Courts have repeatedly distinguished speech in grade schools, where the students are younger and less mature and the curriculum is subject to democratic oversight, from speech on college campuses with typically adult students taught by scholars with a more robust array of academic freedom rights. *See, e.g.*, *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038,

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

19    FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

2049 n.2 (2021) ("[f]or several reasons, including the age, independence, and living arrangements of such students, regulation of [university student] speech may raise very different questions from [K–12 student speech].") (Alito, J. concurring); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022) (noting the difference between speech restrictions in K–12 settings and college settings); *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 242 (3d Cir. 2010) ("there is a difference between the extent that a school may regulate student speech in a public university setting as opposed to that of a public elementary or high school"). There is "no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large." *Healy*, 408 U.S. at 180. The government simply does not have the same leeway to restrict speech on college campuses as it does in the K–12 setting where schools stand in the place of parents. *Mahanoy*, 141 S. Ct. at 2044–45 (noting that "courts must apply the First Amendment 'in light of the special characteristics of the [grade] school environment'" where they stand "in loco parentis") (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)). Accordingly, the cases Defendants rely on justifying speech restrictions in K–12 schools are not instructive in this case.

## IV. Reges's Fourth Cause of Action Sufficiently Alleges Executive Order 31 Is Overbroad Because It Gives Defendants Discretion to Punish a Substantial Amount of Protected Speech.

Defendants argue Executive Order 31 is not overbroad because it is aimed at illegal conduct like discrimination or harassment. Reges has sufficiently alleged that Executive Order 31 is unconstitutionally overbroad because it prohibits speech that is "unacceptable or inappropriate," roping in a "substantial number" of applications to protected speech relative to its legitimate sweep. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (quoting *United States v. Stevens*, 559 U.S. 460 (2010)). For example, if administrators

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

20   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

had the unfettered discretion to punish "unacceptable or inappropriate" speech, they could "discipline or take appropriate corrective action" against a member of the UW community who—to draw from a few real-world examples—hosts a drag show, delivers a provocative but attention-grabbing lecture on syllabus day, challenges students as a philosophy professor to think about what exactly makes adult-minor sexual relationships bad, or discusses with students the use-mention distinction for racial slurs.[2] Administrators could punish professors who place "Black Lives Matter" or "Blue Lives Matter" stickers, or any other conceivable political message, on their office doors because the words "inappropriate" and "offensive" have only the meaning that the beholder ascribes to them. The policy's sweep is as broad as one can imagine because any speech expressing a viewpoint on any matter of public concern could be deemed inappropriate or offensive by adherents to the opposing view.

Courts confronting such overbroad policies in higher education have routinely declared them unconstitutional and enjoined their enforcement. *See, e.g.*, *McCauley*, 618 F.3d at 250, 252 (holding that a ban on "offensive" speech was overbroad); *DeJohn v. Temple Univ.*, 537 F.3d 301, 317–18 (3d Cir. 2008) (same); *Coll. Republicans at S.F. State Univ. v. Reed*, 523 F. Supp. 2d 1005

---

[2] *See, e.g.*, Amanda Nordstrom, *Tennessee Tech still investigating, enforcing ban on LGBTQ+ and theater groups that hosted drag show* (Oct. 31, 2022) https://www.thefire.org/news/tennessee-tech-still-investigating-enforcing-event-ban-lgbtq-and-theater-groups-hosted-drag [https://perma.cc/73E2-42AJ]; Sabrina Conza, *Ferris State cannot punish professor for comedic—and now viral—video jokingly referring to students as 'cocksuckers' and 'vectors of disease'* (Jan. 17, 2022) https://www.thefire.org/news/ferris-state-cannot-punish-professor-comedic-and-now-viral-video-jokingly-referring-students [https://perma.cc/RZW5-L89U]; Josh Bleisch, *FIRE calls on SUNY Fredonia to end suspension, investigation of professor for philosophical discussion of sex with minors* (Feb. 4, 2022) https://www.thefire.org/news/fire-calls-suny-fredonia-end-suspension-investigation-professor-philosophical-discussion-sex [https://perma.cc/7UM4-4QWC]; Alex Morey, *Bitchassness, hateration, general stankness possible motives behind reassignment of San Diego State philosophy professor for teaching slurs, 'offensiphobia'* (March 8, 2022) https://www.thefire.org/news/bitchassness-hateration-general-stankness-possible-motives-behind-reassignment-san-diego-state [https://perma.cc/PTC3-FHPV].

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

21

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

(N.D. Cal. 2007) (enjoining enforcement of civility policy). Executive Order 31 is similarly susceptible to an overbreadth challenge.

Defendants inappropriately rely on *Hernandez v. City of Phoenix*, 43 F.4th 966 (9th Cir. 2022), a public-employee-speech case arising from a police department's social media policy. There is a huge difference between police officers and university faculty. While the government may have a strong interest in maintaining order within the ranks of its police officers and public trust that police functions are performed impartially, a state university campus is a place for the exchange of ideas and robust debate. Public university "efficiency cannot be purchased at the expense of stifling free and unhindered debate on fundamental educational issues." *Peacock v. Duval*, 694 F.2d 644, 647 (9th Cir. 1982).  Indeed, "conflict is not unknown in the university setting." *Hulen v. Yates*, 322 F.3d 1229, 1239 (10th Cir. 2003). Thus, examining the breadth of a policy that applies to a university community requires a much harder look than a broad policy governing police officer conduct.

As Defendants make clear in their brief, the policy's legitimate sweep—preventing discriminatory harassment—is already addressed by other applicable policies. Dkt.  #25 at p. 20. But Executive Order 31 disclaims any limits to its sweep, applying "regardless of whether the conduct arises to the level of unlawful discrimination, harassment, or retaliation." It therefore goes well beyond speech that rises to the level of harassment as defined by the Supreme Court: speech that is "so severe, pervasive, and objectively offensive that it denies its victims . . . equal access to education . . . ." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999). Judged in relation to its legitimate sweep, Executive Order 31 is effectively limitless in its applications to constitutionally protected speech.

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

22   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

1     **V.**     **Reges's Fifth Cause of Action Sufficiently Alleges Executive Order 31 Is Vague**
              **Because a Reasonable Person Would Not Understand What It Prohibits and**
2               **Because It Risks Arbitrary and Discriminatory Enforcement.**

3          Defendants also contend that Executive Order 31 is not unduly vague for a similar reason—

4 that it addresses unlawful discrimination or harassment, but Reges's complaint sufficiently alleges

5 facts demonstrating Executive Order 31 is unconstitutionally vague. "A statute can be

6 impermissibly vague for either of two independent reasons. First, if it fails to provide people of

7 ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if

8 it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530

9 U.S. 703, 732 (2000). Vagueness is of special concern in the First Amendment context because

10 when a vague regulation "abut[s] upon sensitive areas of basic First Amendment freedoms, it

11 operates to inhibit the exercise of [those] freedoms." *Grayned v. City of Rockford*, 408 U.S. 104,

12 109 (1972) (citation omitted). Accordingly, a policy that reaches protected expression must contain

13 "a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

14         Because Executive Order 31 contains no definition of "unacceptable or inappropriate," and

15 those terms do not carry any reasonably objective plain meaning, it fails to provide members of

16 the UW community with "fair warning" of what expression the policy prohibits. *Grayned*, 408

17 U.S. at 108. Executive Order 31's opacity results in a "chilling effect on the exercise of First

18 Amendment freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998); *see also*

19 *United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996) (invalidating as unconstitutionally

20 vague a statute that prohibited attorneys from engaging in "offensive personality").

21         Executive Order 31 is also void for vagueness because it fails to provide "explicit

22 standards" to prevent "arbitrary and discriminatory enforcement" by administrators, while

23 expressly requiring viewpoint discrimination. See *Grayned*, 408 U.S. at 108–09. The terms

24 PLAINTIFF'S OPPOSITION         23    <span style="font-variant:small-caps">Foundation for Individual Rights and Expression</span>
    TO DEFENDANTS'                                700 Pennsylvania Avenue SE, Suite 340
    MOTION TO DISMISS                                Washington, DC 20003
    Case No. 2:22-cv-00964-JHC                       Tel: (215) 717-3473

"inappropriate" and "unacceptable" are so vague they could be employed to prohibit nearly any student or faculty speech. Different administrators will come to different conclusions as to whether the same speech falls within those terms. The First Amendment does not permit such a result. *See, e.g.*, *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1184–85 (6th Cir. 1995) (holding that university policy was vague when it prohibited "offensive" speech since there was no objective way to determine what speech was offensive). Defendants' argument that Executive Order 31 only applies to conduct "resembling" discrimination, harassment, or retaliation further demonstrates the policy's vagueness. Dkt. # 25 at p. 23. It is impossible for any member of the UW community to predict what any particular administrator decides "resembles" discrimination. The same administrator may even change her mind arbitrarily. This does not meet the "greater degree of specificity" required to give members of the UW community fair warning about whether their speech may be punished. *Smith*, 415 U.S. at 573.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss.

DATED: December 16, 2022

Respectfully submitted,

*/s/ Joshua T. Bleisch*
Joshua T. Bleisch*
IN Bar No. 35859-53; DC Bar No. 90001269
Gabriel Walters*
DC Bar No. 1019272
James Diaz*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473
josh.bleisch@thefire.org

Robert A. Bouvatte Jr.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (904) 505-3175
bob@rbouvattepllc.com

PLAINTIFF'S OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

24   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473

1    gabe.walters@thefire.org
     jay.diaz@thefire.org
2
     *Admitted Pro Hac Vice
3
     *Attorneys for Plaintiff*
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   PLAINTIFF'S OPPOSITION            25   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
     TO DEFENDANTS'                         700 Pennsylvania Avenue SE, Suite 340
     MOTION TO DISMISS                                Washington, DC 20003
     Case No. 2:22-cv-00964-JHC                      Tel: (215) 717-3473

**CERTIFICATE OF SERVICE**

Plaintiff's counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, December 16, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated below and parties may access this filing through the Court's electronic filing system.

Robert M. McKenna (WSBA# 18327)
Aaron Brecher (WSBA# 47212)
701 Fifth Avenue, Suite 5600
Seattle, WA  98104
Telephone (206) 839-4300
Fax (206) 839-4301
rmckenna@orrick.com
abrecher@orrick.com

*Counsel for Defendants*

R. David Hosp
Kristina D. McKenna
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone (617) 880-1802
Fax (617) 880-1801
dhosp@orrick.com
kmckenna@orrick.com

Joshua T. Bleisch*
IN Bar No. 35859-53; DC Bar No. 90001269
Gabriel Walters*
DC Bar No. 1019272
James Diaz*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org

*Admitted Pro Hac Vice*

*Counsel for Plaintiff Stuart Reges*

Dated: December 16, 2022

Robert A. Bouvatte Jr.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (904) 505-3175
bob@rbouvattepllc.com

*/s/ Joshua T. Bleisch*
Joshua T. Bleisch

PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTOIN TO DISMISS

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473