Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STUART REGES,

   Plaintiff,

  v.

ANA MARI CAUCE, in her official capacity
as President of the University of Washington;
MAGDALENA BALAZINSKA, in her
official and individual capacities as Director
of the Paul G. Allen School of Computer
Science & Engineering; DANIEL
GROSSMAN, in his official and individual
capacities as Vice Director of the Paul G.
Allen School of Computer Science &
Engineering; and NANCY ALLBRITTON, in
her official and individual capacities as Dean
of the College of Engineering,

   Defendants.

Case No. 2:22-cv-00964-JHC

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS**

Noted for Hearing: December 23, 2022

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................................1

II.   ARGUMENT .....................................................................................................................2

  A.   Reges fails to plausibly plead retaliation and viewpoint discrimination.............................2

    1.   *Reges's speech is not protected under the First Amendment.* ...........................................2

    2.   *Reges cannot satisfy the* Pickering *balancing test.*................................................................5

  B.   Executive Order 31 is not facially overbroad........................................................................8

  C.   Executive Order 31 is not unconstitutionally vague. ............................................................9

III.   CONCLUSION ..................................................................................................................11

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

*i*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Adams v. Trustees of the Univ. of N.C.-Wilmington,*
5
    640 F.3d 550 (4th Cir. 2011)........................................................................................2, 7

6

*Alozie v. Arizona Bd. of Regents,*
    431 F. Supp. 3d 1100 (D. Ariz. 2020).............................................................................3
7

8

*Arce v. Douglas,*
    793 F.3d 968 (9th Cir. 2015)........................................................................................8, 10

9

*Berry v. Dep't of Social Servs.,*
10
    447 F.3d 642 (9th Cir. 2006)...........................................................................................5

11

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973)........................................................................................................8
12

13

*Cochran v. City of Atlanta,*
    289 F. Supp. 3d 1276 (N.D. Ga. 2017).......................................................................5, 6

14

*College Republicans at S.F. State Univ. v. Reed,*
15
    523 F. Supp. 2d 1005 (N.D. Cal. 2007).........................................................................9

16

*Connick v. Myers,*
    461 U.S. 138 (1983)......................................................................................................6, 7
17

18

*DeJohn v. Temple University,*
    537 F.3d 301 (3d Cir. 2008)...........................................................................................9

19

*Downs v. L.A. Unified Sch. Dist.,*
    228 F.3d 1003 (9th Cir. 2000)......................................................................................4, 5
20

21

*Ford Motor Co. v. Tex. Dep't of Transp.,*
    264 F.3d 493 (5th Cir. 2001) . But the Order.................................................................10

22

*Foti v. City of Menlo Park,*
23
    146 F.3d 629 (9th Cir. 1998)........................................................................................10

24

*Gammoh v. City of La Habra,*
    395 F.3d 1114 (9th Cir. 2005)......................................................................................10
25

26

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) .................................................................................................2, 3, 4

27

*Grayned v. City of Rockford,*
28
    408 U.S. 104 (1972).....................................................................................................10

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

*ii*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

*Hernandez v. City of Phoenix*,
    43 F.4th 966 (9th Cir. 2022) ................................................................................. 9, 10

*Johnson v. Poway Unified Sch. Dist.*,
    658 F.3d 954 (9th Cir. 2011) .................................................................................... 4, 5

*McCauley v. Univ. of the V.I.*,
    618 F.3d 232 (9th Cir. 2010) ......................................................................................... 9

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) .................................................................................... 2, 3

*Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*,
    391 U.S. 563 (1968) ........................................................................................ 4, 5, 6, 9

*Shurtleff v. City of Bos.*,
    142 S. Ct. 1583 (2022) ................................................................................................. 4

*United States v. Williams*,
    553 U.S. 285 (2008) ............................................................................................... 8, 10

*United States v. Wunsch*,
    84 F.3d 1110 (9th Cir. 1996) ...................................................................................... 10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) .................................................................................................... 10

**Other Authorities**

First Amendment .................................................................................................*passim*

University of Washington Executive Order 31 ............................................... 1, 8, 9, 10

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

*iii*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Reges's opposition to Defendants' Motion to Dismiss does not address Defendants' primary arguments. Instead, Reges makes conclusory statements and characterizes the facts in a way that the allegations in the Complaint do not support.

Reges asserts repeatedly that Defendants have "silenced" him and sought to establish a "pall of orthodoxy," even though the facts alleged in the Complaint do not support such assertions. The Complaint does not allege that the Defendants restricted Reges's ability to fully express his views about land acknowledgment statements outside of the narrow context of the University-sanctioned syllabi for his classes. Nor does the Complaint allege that Reges sought accommodations to express those views in other contexts, or that Defendants refused such requests. In short, the Complaint does not support any suggestion that Defendants have "silenced" Reges in any actionable manner. Reges's opposition addresses none of these points and cannot salvage these deficiencies.

Similarly, Reges asserts that a syllabus cannot be government speech, and instead reflects only the professor's speech. But Reges admits that some aspects of a syllabus are within the purview of the University to set requirements, policies, and guidelines. Reges offers no reason that the University cannot regulate optional statements related to negotiated tribal acknowledgements— particularly where he has not alleged that Defendants have restricted such opinions in other contexts.

Reges also fails to grapple with Defendants' ability, under the Supreme Court's balancing test, to impose reasonable time, place, manner restrictions even on speech that would be protected for a private citizen; or with the argument that the context of the phrase "unacceptable or inappropriate" when used in Executive Order 31 gives a clear warning of what conduct it addresses, and is not facially overbroad. Instead, Reges again relies on characterizations that cannot salvage his Complaint. As a result, the Complaint should be dismissed.

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

1

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

## II.   ARGUMENT

### A.   Reges fails to plausibly plead retaliation and viewpoint discrimination.

#### 1.   Reges's speech is not protected under the First Amendment.

Reges concedes that his speech is protected under the First Amendment only if it qualifies as "speech related to scholarship or teaching." *See* Opp. at 10–11. According to Reges, his land acknowledgment statement must qualify, because "[a]ny speech contained in a professor's syllabus is necessarily speech related to teaching." Opp. at 11. Not so. Indeed, Reges undermines that argument just two sentences later, conceding that faculty must follow "certain university policies … and general guidelines" in drafting their syllabi. *Id.* A syllabus is simply the procedural outline of a university course. Aside from providing a course overview and listing the class meeting time and location, a syllabus sets forth the policies of a university and its faculty. *Id.* For example, a university may require faculty to provide students with notice of certain religious or student disability accommodations policies. *See id.* Similarly, a professor might include her policy on class attendance or plagiarism. Simply put, the syllabus is not a substantive writing or exploration of creative thought. It is certainly not what the Supreme Court had in mind when urging the importance of protecting academic freedom. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 438 (2006).

Indeed, a syllabus falls squarely into the facts that the Fourth Circuit held would *not* qualify as speech related to scholarship or teaching. In *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 563 (4th Cir. 2011), the court explained that "[t]here may be instances in which a public university faculty member's assigned duties include a specific role in declaring or administering university policy, as opposed to scholarship or teaching. In that circumstance, *Garcetti* may apply to the specific instances of the faculty member's speech carrying out those duties." That is precisely the case here. Part of Reges's duty as a university lecturer is to distribute a course syllabus, and as Reges concedes, faculty must provide on their syllabi "notices regarding certain university policies." Opp. at 11. The optional land acknowledgement statement was made directly in response to one such university-directed policy. *See* Compl. ¶¶ 29–31.

The only case Reges cites for support, *Meriwether v. Hartop*, 992 F.3d 492, 506–07 (6th

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

2

1    Cir. 2021), does not stand for the proposition Reges asserts. Far from holding that syllabi are places

2    to be used "as a medium for faculty expression" (Opp. at 11–12), *Meriwether* held that a university

3    unconstitutionally silences a professor's viewpoint by forbidding *any* expression, even in his

4    syllabus. The dispute in *Meriwether* centered around a professor's moral and religious

5    disagreement with the school's policy on preferred pronouns. *Meriwether*, 992 F.3d at 498. After

6    being directed to "eliminate all sex-based references from his expression" or refer to students only

7    by their preferred pronouns, the professor requested an accommodation to express his views in

8    another manner by "plac[ing] a disclaimer in his syllabus noting that he was [using the preferred

9    pronouns] under compulsion and setting forth his personal and religious beliefs about gender

10   identity." *Id.* at 500 (internal quotation marks omitted). The university rejected this

11   accommodation. *Id.* The court ultimately concluded that the university violated the professor's First

12   Amendment rights because it *wholly* forbade him from describing his views on gender identity,

13   whether in the classroom, in the syllabus, or elsewhere. *Id.* at 506. In other words, the university

14   silenced the professor's viewpoint. *Id.*

15       Those are not the facts here. The allegations in the Complaint do not show that Defendants

16   have silenced Reges. Reges does not allege that the University forbade him from expressing his

17   view in other contexts. Reges does not allege that he was prevented, for example, from posting his

18   land acknowledgement statement on the door to his office or in his email signature block. Reges

19   does not allege that he was prevented from discussing his view on land acknowledgement

20   statements in any manner outside the narrow context of his University-sanctioned syllabus. And

21   there are no allegations in the Complaint that Reges sought any type of accommodation or

22   compromise to express his view in another context or that Defendants refused such a compromise.

23   On the contrary, the University assured Reges that he was "welcome to voice [his] opinion and

24   opposition to land acknowledgements … in other settings." Mot., Ex. 1.

25       Reges's attempts to distinguish *Alozie* and *Abcarian* (Opp. at 12) also fail. First, *Demers*—

26   not *Alozie*—cautioned that not all academic speech qualifies as speech "related to scholarship or

27   teaching" under *Garcetti*. Mot. at 8 (citing *Demers*, 746 F.3d at 415). *Alozie* simply applied that

28   rule, explaining that "*Demers* clearly established an exception to *Garcetti* for academic speech, but

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    did not clearly establish what constituted academic speech." *Alozie v. Arizona Bd. of Regents*, 431

2    F. Supp. 3d 1100, 1119 (D. Ariz. 2020). The court then explained, consistent with *Demers*, that if

3    the speech at issue was made "pursuant to [] official duties but did not constitute 'teaching and

4    academic writing,' the *Garcetti* test applies and [the] speech [i]s not protected." Second, Reges

5    dismisses *Abcarian* as being "pre-*Demers*," but that is irrelevant. Defendants rely on *Abcarian* to

6    show that other circuit courts have recognized—consistent with *Demers*—that *Garcetti*'s

7    academic-freedom acknowledgment is not limitless. It is of no matter whether those other circuit

8    courts addressed the issue before or after *Demers*.

9          Reges's reliance on *Shurtleff v. City of Bos.*, 142 S. Ct. 1583, 1598 (2022), is also misplaced.

10   Opp. at 18. That case addressed whether the city of Boston intended to "communicate governmental

11   messages" through a flagpole outside Boston City Hall, "or instead opened the flagpole to citizens

12   to express their own views." *Shurtleff*, 142 S. Ct. at 1587. The speech at issue was thus outside the

13   government employee context in which this case arises. The Court here need not wade into

14   *Shurtleff*'s "holistic inquiry" to determine whether the speech at issue is government speech. The

15   Supreme Court has held that "when public employees make statements pursuant to their official

16   duties, the employees are not speaking as citizens for First Amendment purposes, and the

17   Constitution does not insulate their communications from employer discipline." *Garcetti v.*

18   *Ceballos*, 547 U.S. 410, 421 (2006). That is the entire premise of the parties' dispute surrounding

19   whether the syllabus constitutes speech "related to teaching or scholarship" and how to weigh the

20   parties' competing interests under *Pickering*. Indeed, Reges acknowledges that this is the

21   applicable standard in the Complaint. *See* Compl. ¶ 96. Moreover, Defendants do not contend that

22   all faculty speech is government speech.

23         Finally, Reges's attempt to distinguish *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954

24   (9th Cir. 2011), and *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000), because they

25   arise in a high school setting, is unavailing. The well-recognized distinction between high school

26   and college speech rights refers to ***student*** speech, not faculty speech. Indeed, every case the

27   opposition cites (Opp. at 19-20) involves student speech. Such a distinction makes sense in that

28   context, where students at the high school and university levels have differing degrees of

REPLY IN SUPPORT OF                                    4                    Orrick Herrington & Sutcliffe LLP
MOTION TO DISMISS                                                                 401 Union Street, Suite 3300
Case No. 2:22-cv-00964-JHC                                                     Seattle, Washington 98104-7097
                                                                                     tel+1-206-839-4300

1    independence and oversight. That distinction is not equally applicable to *faculty* in each setting.

2    And Defendants rely on *Johnson* and *Downs* only as examples of when a government employee

3    fails to speak as a private citizen. In each case, that answer depended on the time, place, manner,

4    and context of the speech. That same analysis applies here, as discussed below in connection with

5    the *Pickering* balancing test.

6                           2.   **Reges cannot satisfy the *Pickering* balancing test.**

7    Even if Reges's speech is protected under the First Amendment, his claims still fail because

8    he cannot satisfy the *Pickering* balancing test. Defendants do not dispute that First Amendment

9    retaliation and viewpoint discrimination claims are separate causes of action. No matter which

10    claim Reges asserts, however, he must satisfy the *Pickering* test. Because Reges cannot do so, he

11    cannot state a plausible claim for relief under the First Amendment.

12    The *Pickering* balancing test requires a court to weigh "the interest[s] of the State, as an

13    employer, in promoting the efficiency of the public services it performs through its employees"

14    against "the interests of the teacher, as a citizen, in commenting upon matters of public concern."

15    *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). Only when

16    the latter outweighs the former can a First Amendment claim succeed. Reges concedes that this

17    standard applies to First Amendment retaliation claims. *See* Opp. at 13–14. But he seems to dispute

18    that *Pickering* applies to First Amendment viewpoint discrimination claims. *See id.* at 9. Reges is

19    wrong.

20    In *Berry v. Dep't of Social Servs.*, 447 F.3d 642, 650 (9th Cir. 2006), the Ninth Circuit

21    explained that "the *Pickering* balancing approach applies regardless of the reason an employee

22    believes his or her speech is constitutionally protected." Reges insists that "[n]othing in *Berry*

23    precludes Reges from bringing his standalone claim for viewpoint discrimination." Opp. at 9. That

24    argument misses the point. Reges may bring separate claims for alleged First Amendment

25    violations, but he still must satisfy the *Pickering* balancing test for those claims to succeed. When

26    a First Amendment retaliation claim fails under the *Pickering* test, so too must a viewpoint

27    discrimination claim that is based on the same underlying facts.

28    Indeed, that is precisely the rule explained in *Cochran v. City of Atlanta*, 289 F.

REPLY IN SUPPORT OF              5                Orrick Herrington & Sutcliffe LLP
MOTION TO DISMISS                                        401 Union Street, Suite 3300
Case No. 2:22-cv-00964-JHC                          Seattle, Washington 98104-7097
                                                   tel+1-206-839-4300

1   Supp. 3d 1276, 1292–93 (N.D. Ga. 2017), which the opposition ignores. Like here, the plaintiff in

2   *Cochran* brought claims under the First Amendment for both free-speech retaliation and viewpoint

3   discrimination premised on the same underlying facts. *Id.* at 1288. The court found the plaintiff's

4   approach "problematic" because "if Plaintiff cannot prove the first two *Pickering* factors, then the

5   speech is *not protected by the First Amendment* and any firing based on that speech would

6   accordingly be constitutional." *Id.* at 1293. The court elaborated that "the Supreme Court has

7   established the test to evaluate a city's firing *of an employee* based on speech—*Pickering*—and that

8   test is the most appropriate for any of Plaintiff's claims based upon his alleged speech-based firing."

9   *Id.* at 1294. The court thus concluded that it "would be incongruent for a city to be allowed to fire

10  an employee because of his unprotected speech, but yet be subject to a viewpoint discrimination

11  claim for that same firing." *Id.* After finding that the plaintiff failed to pass the *Pickering* balancing

12  test for his retaliation claims, therefore, the court granted summary judgment on viewpoint

13  discrimination as well. As *Cochran* reasoned, a contrary decision—allowing a viewpoint-

14  discrimination claim to stand despite its failing the *Pickering* balancing test—"would defy not only

15  the Supreme Court's precedent but also common sense." *Id.*

16          Under either Reges's viewpoint discrimination or retaliation claims, he cannot satisfy the

17  *Pickering* balancing test. Reges asserts that the balance weighs in his favor because there was no

18  disruption to his class and the University lacks a legitimate interest to warrant limiting his speech.

19  Opp. at 14. The allegations in the Complaint contradict both bases. Moreover, Reges wholly

20  ignores the time, place, and manner in which his speech was made as well as the context in which

21  the parties' dispute arose, both of which the Supreme Court has ruled relevant to the *Pickering*

22  balance. *See Connick v. Myers*, 461 U.S. 138, 152–53 (1983).

23          Throughout the Complaint, Reges acknowledges the disruption his statement caused at the

24  University. Reges admits that students filed multiple complaints and that student-employees

25  claimed that Reges's actions violated their collective bargaining agreement with the University.

26  *See* Compl. ¶¶ 40, 60, 63. Reges also pleads that over 30% of his class switched to the alternative

27  section despite the section being offered at the same day and time as Reges's course. Compl. ¶ 51.

28  Reges also pleads facts highlighting the University's legitimate interest in ensuring the efficient

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

6

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    functioning of its classrooms, including by responding to complaints. For example, Reges admits

2    that the University created an alternative class section only *after* the University received multiple

3    student complaints about Reges's statement and Reges refused to remove it from his syllabus.

4    Compl. ¶¶ 37, 40, 60, 63. Nor does Reges dispute that the University need not "allow events to

5    unfold to the extent that the disruption of the [classroom or the school] … [wa]s manifest before

6    taking action." *Connick*, 461 U.S. at 152. Finally, far from casting "a pall of orthodoxy" (Opp.

7    at 14), the Complaint contains no allegations that, apart from the syllabus, the University ever asked

8    Reges not to express his view on University grounds. The Complaint does not allege, for example,

9    that Reges was prohibited from including his statement in his email signature block, posting it on

10   the door to his office, or discussing it in his classes. Reges's weighing of the parties' competing

11   interests is thus undermined by the Complaint itself.

12        Reges's balancing of interests also fails to account for the time, place, and manner of his

13   speech. *See* Opp. at 14. Reges's speech was included in a university-sanctioned syllabus distributed

14   in the classroom on the first day of class. Compl. ¶¶ 29, 39. His speech appeared on the University's

15   class portal, "where students can find syllabi, class materials, and assignments." *Id.* The timing of

16   his statement was also no coincidence: it came only after the Allen School suggested—but did not

17   mandate—inclusion of land acknowledgment statements as a "best practice[] for inclusive

18   teaching." Compl. ¶ 29. This is not a case where the speech was made "out of purely academic

19   interest," *Connick*, 461 U.S. at 153, or was included only in "external writings and appearances"

20   separate from the University, *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550,

21   554 (4th Cir. 2011).

22        Also tipping the balance toward the University is the alleged sanction imposed on Reges.

23   There is no allegation that Reges was fired, prevented from teaching, docked pay, or asked to take

24   any type of leave or suspension. *See generally* Compl. No disciplinary proceeding has been

25   scheduled and no charges have been filed. *Id.* ¶ 82. The only purported "adverse actions" are the

26   University's accommodation of an additional class section following multiple student complaints

27   (Compl. ¶¶ 43, 60, 73), and the opening of an investigation to determine *whether* action is needed

28   (Compl. ¶¶ 57, 61, 67, 70, 72). The University's interest in the efficient functioning of its school—

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

7

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

1   including by responding to student complaints and complying with the school's faculty Standard

2   of Conduct—far outweighs Reges's interest in speaking about land acknowledgement statements

3   in the classroom on a university-sanctioned document.

4   **B.      Executive Order 31 is not facially overbroad.**

5          The University's Executive Order 31 is not facially overbroad. Reges does not even try to

6   construe the Order, instead extracting just two words from it to suggest that the Order could prohibit

7   all forms of expressive conduct. But before administering the "strong medicine" of invalidating a

8   law or policy as overbroad—what the Supreme Court calls a "last resort," *Broadrick v. Oklahoma*,

9   413 U.S. 601, 613 (1973)—courts must first "construe the challenged statute," *United States v.*

10  *Williams*, 553 U.S. 285, 293 (2008). Doing so here shows that the Order aims at conduct closely

11  akin to unlawful discrimination, harassment, and retaliation. It does not sweep in substantially more

12  protected speech than unprotected speech. Reges's claim thus fails.

13         Reges nowhere contests the interpretive principles that apply in construing the Order.

14  *Compare* Mot. at 19–21, *with* Opp. at 20–22. The Court, in applying those principles, should read

15  the Order in context rather than read individual words in isolation. *See* Mot. at 19–21 (collecting

16  authorities). The Order's bar on "unacceptable or inappropriate" conduct aims to "facilitate [the]

17  goal" of "promoting an environment that is free of discrimination, harassment, and retaliation."

18  Exec. Order 31 § 1. Both the title and the text of the substantive provision that Reges challenges

19  confirm that context. The Order contains a list of definitions tracking federal employment law. *See*

20  *id.* § 4. And it commits the University to interpret the Order "in the context of academic freedom

21  in the University environment." *Id.* § 5(A); *see Arce v. Douglas*, 793 F.3d 968, 985 (9th Cir. 2015)

22  (rejecting overbreadth challenge in part because challenged policy stated that it would not be

23  construed to prohibit instruction on historical oppression and explaining that it would be

24  "inappropriate" to read the challenged statute broadly when it was "readily susceptible" to a

25  narrowing construction). The Order is thus limited to conduct—rarely expressive in any event—

26  closely akin to unlawful harassment, discrimination, and retaliation.

27         Only by wrenching a few words free from this context—apparent on the face of the Order

28  itself—can Reges contend that the Order is overbroad. His Complaint alleges no instance in which

REPLY IN SUPPORT OF                                    8                    Orrick Herrington & Sutcliffe LLP
MOTION TO DISMISS                                                           401 Union Street, Suite 3300
Case No. 2:22-cv-00964-JHC                                                 Seattle, Washington 98104-7097
                                                                           tel+1-206-839-4300

1    the Order was the basis for prohibiting any of the illustrative conduct his opposition recites—none

2    of which is alleged to have occurred at the University. *See* Opp. at 21 & n.2; *see also* Compl.

3          Nor do Reges's cited authorities aid him. All are distinguishable because the challenged

4    provisions at issue lacked limiting language and context showing that those provisions covered

5    conduct akin to unlawful or unprotected speech. *See, e.g.*, *McCauley v. Univ. of the V.I.*, 618

6    F.3d 232, 249–50 (9th Cir. 2010) (invaliding ban on "offensive" signs when the requirement

7    "lacked any requirement akin to a showing of severity or pervasiveness" and thus contained no

8    "shelter for core protected speech"); *DeJohn v. Temple University*, 537 F.3d 301, 317–18 (3d Cir.

9    2008) (invalidating student-conduct prohibition on "hostile" or "offensive" conduct without a

10   "requirement akin to a showing of severity or pervasiveness"); *College Republicans at S.F. State*

11   *Univ. v. Reed*, 523 F. Supp. 2d 1005, 1020 (N.D. Cal. 2007) (observing that "[t]here is no clue or

12   signal in the initial paragraphs or in the substantive proscriptions of the regulation that there might

13   be set forth at the end some clarification of or limitations on the regulation's mandates"). The Order

14   here, by contrast, is replete with textual and contextual limits on its application.

15         Reges offers no support for the apparent premise of his claim: that public universities lack

16   authority to regulate, investigate, or punish *any* conduct that is not independently unlawful. And

17   the Ninth Circuit has held otherwise. *See Hernandez v. City of Phoenix*, 43 F.4th 966, 980 (9th

18   Cir. 2022) (explaining that overbreadth challenges "in the public employment context" turn on a

19   "modified *Pickering* balancing analysis that closely tracks the test used for First Amendment

20   retaliation claims").

21         Reges's overbreadth challenge cannot survive.

22   **C.    Executive Order 31 is not unconstitutionally vague.**

23         Reges's claim that Executive Order 31 is unconstitutionally vague fails for similar reasons.

24   The Order, on its face, governs only conduct closely akin to discrimination, harassment, or

25   retaliation. Thus, reasonable members of the University community can know what sort of conduct

26   is "unacceptable" or "inappropriate" under the Order. The authorities Reges cites are

27   distinguishable precisely because the provisions struck down there lacked the context from which

28   reasonable observers could know what conduct was prohibited or any limit on enforcement. Last,

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

9

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    Reges ignores the case law supporting the motion.

2        To start, courts have never required "perfect clarity and precise guidance … even of

3    regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (citation omitted). Indeed,

4    "we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*,

5    408 U.S. 104, 110 (1972). The vagueness doctrine also applies with less force when the restriction

6    imposes only civil consequences and when the challenged policy governs public-employee speech.

7    *See Hernandez*, 43 F.4th at 982; *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455

8    U.S. 489, 498–99 (1982). Reges overlooks these principles in his opposition.

9        Next, unlike in the cases Reges cites, the Order's language expressly qualifies the references

10   to "inappropriate" and "unacceptable" conduct by tethering them to the specific context of

11   harassment, discrimination, and retaliation, and by requiring the University to interpret the Order

12   in the context of its commitment to academic freedom and by reference to federal employment law.

13   *See Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005) ("[O]therwise imprecise

14   terms may avoid vagueness problems when used in combination with terms that provide sufficient

15   clarity."). This narrowing construction offers enough specificity to put a member of the University

16   community of reasonable intelligence on notice of the conduct the Order prohibits. *See, e.g.*,

17   *Arce*, 793 F.3d at 988 (statute prohibiting coursework promoting resentment toward a race or class

18   of people not void for vagueness "[f]or many of the same reasons" it was not overbroad). Reges's

19   contrary authorities lack comparable textual guidance on what the regulations at issue in those cases

20   proscribed. *See, e.g.*, *Foti v. City of Menlo Park*, 146 F.3d 629, 638–39 (9th Cir. 1998) (invalidating

21   "odd" law banning signs on parked cars depending on subjective intent of driver that invited

22   arbitrary enforcement); *United States v. Wunsch*, 84 F.3d 1110, 1119–20 (9th Cir. 1996) (noting

23   that California courts had never applied a narrowing construction to law challenged for vagueness).

24       Reges is also wrong to claim that the Order invites arbitrary enforcement. A civil law is

25   void for vagueness only if its terms are "so vague and indefinite as really to be no rule or standard

26   at all" or if it is "substantially incomprehensible." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264

27   F.3d 493, 507 (5th Cir. 2001) (citation omitted). But the Order, by its terms, must be interpreted

28   "in the context of academic freedom in the University environment." Exec. Order 31 § 5(A). Far

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

10

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

1   from being an incomprehensible standard, that qualification—alongside the definitions and context

2   showing the Order's limited scope—erects guardrails around arbitrary enforcement.

3         Finally, Reges fails to discuss the authorities that Defendants' motion collects showing that

4   courts, including in a recent Ninth Circuit decision, routinely reject vagueness challenges under

5   circumstances like these. *Compare* Mot. at 22–23, 24, *with* Opp. at 23–24. Those cases highlight

6   the regularity with which courts uphold provisions no more precise than those in the Order. The

7   same outcome should prevail here.

8   **III.   CONCLUSION**

9         For these reasons, the Court should grant Defendants' motion and dismiss the Complaint

10  with prejudice.

11

   DATED this 23rd day of December, 2022.

12

               ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                 By:  *s/Robert M. McKenna*
                       Robert M. McKenna (WSBA# 18327)
                       Aaron Brecher (WSBA# 47212)

15                         401 Union Street, Suite 3300
                       Seattle, WA  98101

16                         Telephone (206) 839-4300
                       Fax (206) 839-4301

17                         rmckenna@orrick.com

18                         R. David Hosp (*Pro Hac Vice Admission*)
                       Kristina D. McKenna (*Pro Hac Vice Admission*)

19                         222 Berkeley Street, Suite 2000
                       Boston, MA 02116

20                         Telephone (617) 880-1802
                       Fax (617) 880-1801

21                         dhosp@orrick.com
                       kmckenna@orrick.com

22

23                       *Attorneys for Defendants Ana Mari Cauce, Magdalena Balazinska, Dan Grossman, and Nancy Allbritton*

24

25

26

27

28

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

               11