*Reges v. Cauce, et al.,*

# Exhibit A

1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

10   STUART REGES,
11             *Plaintiff,*

12        v.

13   ANA MARI CAUCE, in her official
     capacity as President of the University
14   of Washington;

15   MAGDALENA BALAZINSKA, in her             ~~Civil Action No.: _____~~
     official and individual capacities as
16   Director of the Paul G. Allen School of      CASE NO.    2:22–cv–00964–JHC
     Computer Science & Engineering;
17                                              **AMENDED COMPLAINT FOR
18   DAN GROSSMAN, in his official and          CIVIL RIGHTS VIOLATIONS**
     individual capacities as Vice Director of
19   the Paul G. Allen School of Computer              JURY DEMAND
     Science & Engineering; and
20
21   NANCY ALLBRITTON, in her official
     and individual capacities as Dean of
22   the College of Engineering,
               *Defendants.*
23

24

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

JAMES M. DIAZ*                          ROBERT A. BOUVATTE, JR.

2   VT Bar No. 5014                         WA Bar No. 50220
    FOUNDATION FOR INDIVIDUAL RIGHTS        ROBERT A. BOUVATTE, PLLC
3       AND EXPRESSION                      P.O. Box 14185
    510 Walnut Street                       Tumwater, WA 98511
4   Suite 1250                              Tel: (904) 505-3175564) 999-4005
    Philadelphia, PA 19106                  bob@rbouvattepllc.com
5   Tel: (215) 717-3473
    jay.diaz@thefire.org

6
    GABRIEL WALTERS*
7   DC Bar No. 1019272
    JOSHUA T. BLEISCH*
8   IN Bar No. 35859-53
    GABRIEL WALTERS*
9   DC Bar No. 1019272
    FOUNDATION FOR INDIVIDUAL RIGHTS
10      AND EXPRESSION
    700 Pennsylvania Avenue SE
11  Suite 340
    Washington, DC 20003
12  Tel: (215) 717-3473
    josh.bleisch@thefire.org
13  gabe.walters@thefire.org

14
    *josh.bleisch@thefire.org
15
    *Admitted Pro Hac Vice Motions
16  Forthcoming

17

18

19

20

21

22

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................11

JURISDICTION AND VENUE ............................................................................5

THE PARTIES ........................................................................................................6

FACTUAL ALLEGATIONS ...............................................................................88

    Professor Reges Challenges the University of Washington's
    Prescribed Land Acknowledgment Statement in His Syllabus..........................9

    Defendants Punish Professor Reges for His Use of the
    Dissenting Land Acknowledgment Statement. ..............................................12

    Defendants Continue to Threaten Professor Reges with
    Disciplinary Action for His Inclusion of the Dissenting Land
    Acknowledgment Statement in His Syllabus. ..................................................20

    Defendants Withheld Professor Reges's 2022–23 Salary Increase
    During the Pendency of Their Disciplinary Process Against Him. .................22

    Defendants' Actions Deprived Professor Reges of His Rights,
    Causing Financial, Emotional, and Reputational Damage. .........................2323

FIRST CAUSE OF ACTION
Violation of Plaintiff's First Amendment Rights
(Against All Individual-Capacity Defendants) ............................................................25

SECOND CAUSE OF ACTION
First Amendment Retaliation Under 42 U.S.C. § 1983
(Against All Individual-Capacity Defendants) ............................................................29

THIRD CAUSE OF ACTION
First Amendment Retaliation Under 42 U.S.C. § 1983
(Against All Defendants in Their Official Capacities) ................................................31

FOURTH CAUSE OF ACTION
Facial Overbreadth Challenge to Executive Order 31
(Against President Cauce in Her Official Capacity) ....................................................32

AMENDED
COMPLAINT – Page iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

FIFTH CAUSE OF ACTION
Facial Vagueness Challenge to Executive Order 31
(Against President Cauce in Her Official Capacity) ...................................................35

PRAYER FOR RELIEF ...................................................................................37

DEMAND FOR JURY TRIAL ...........................................................................3838

AMENDED
COMPLAINT – Page iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

1

**INTRODUCTION**

2          1.          Stuart Reges, an award-winning educator at the University of

3    Washington, is suing the University of Washington and its administrators to

4    vindicate his well-established First Amendment rights. After the University

5    encouraged professors to include a political statement on their course syllabi, it

6    disciplined and ~~continues to investigate~~<u>investigated</u> Professor Reges <u>and continues</u>

7    <u>to threaten him with further discipline</u> for expressing a dissenting view.

8          2.          In September 2020, University administrators encouraged professors

9    to include a statement on their syllabi recognizing that the land on which the

10   University sits was once owned by indigenous people. Professor Reges disagreed

11   with the University's "Indigenous Land Acknowledgment Statement."

12         3.          Because syllabi are an integral part of the teaching and construction of

13   a college course, Professor Reges included a dissenting statement on his syllabus

14   which challenged his students and fellow faculty to think about the utility and

15   performative nature of land acknowledgment statements. To that end, Professor

16   Reges's land acknowledgment stated that indigenous tribes "can claim historical

17   ownership of almost none of the land" on which the University sits, based on

18   philosopher John Locke's well-known labor theory of property, under which

19   ownership derives from improving the land.

20         4.          University administrators punished Professor Reges for his statement,

21   asserting that it caused a "disruption to instruction." To the contrary, Professor

22   Reges reviewed his syllabus on the first day of class without incident.

23   <u>AMENDED</u>
     COMPLAINT – Page 1

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~<u>510 Walnut Street</u>, Suite ~~340~~<u>1250</u>
~~Washington, DC 20003~~
<u>Philadelphia, PA 19106</u>
Tel: (215) 717-3473

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

5.      The University created a "shadow" class section of Professor Reges's computer programming course—taught by a different professor, on tape—and invited students to switch out of Professor Reges's class section.

6.      Meanwhile, other computer science professors included their own land acknowledgment statements on their syllabi. But the University did not investigate or punish them because those statements, unlike that of Professor Reges, were consistent with the University's viewpoint.

7.      In addition, the University opened a protracted disciplinary investigation into Professor Reges—which remains ongoing—in which the Defendants are currently assembling assembled a disciplinary committee to consider investigate and advise Dean Albritton in deciding whether to further punish or even terminate Professor Reges because of the views he expressed in his dissenting statement. The specter of termination has had a chilling effect on his

7.8.    After a nearly year-long disciplinary investigation, Dean Albritton concluded that she would not further punish Professor Reges at that time. However, she warned him that if he continues to include his land acknowledgment in his course syllabi, and it leads to "further" disruption, she would punish him. She warned him that she would "have no option but to conclude" that his "intent is to cause deliberate offense" and that she would "view that as an intentional violation" of the University's discrimination and harassment policy. This ongoing specter of punishment, up to and including termination, had and continues to have a chilling effect on Reges's speech as a public university faculty member.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 340 1250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

1   8.9.   The University has taken these actions despite settled law that holds

2   public university faculty have a First Amendment right to speak on matters of

3   public concern in their teaching and research because academic freedom is "a

4   special concern of the First Amendment[.]" *Keyishian v. Bd. of Regents*, 385 U.S.

5   589, 603 (1967). Faculty must remain free to express these views to fulfill their

6   duties to educate and challenge students, and to avoid a "pall of orthodoxy" on

7   campus. *Id.*

8   9.10.   The value and utility of land acknowledgementacknowledgment

9   statements exemplifiesexemplify such a matter of public debate. Defendants asked

10   their faculty to wade into this controversy by including a land acknowledgment

11   statement in their syllabi, then unconstitutionally discriminated against Professor

12   Reges for swimming against the current and offering a dissenting viewpoint. They

13   did so by retaliating against him through the creation of a "shadow" class section

14   and subjecting him to a disciplinary investigation under vague and overbroad

15   university policies.

16   10.11. Specifically, Defendants alleged Reges violated various University

17   policies, including one that purports to ban any speech or conduct that is deemed

18   "unacceptable or inappropriate," regardless of whether it rises to the level of unlaw-

19   ful discrimination or harassment. Judged in relation to its legitimate sweep, which

20   is minimal, this policy is unconstitutionally overbroad and vague.

21

22

23   AMENDED
    COMPLAINT – Page 4

24

~~11.~~12. Academic freedom is of "transcendent value" to our constitutional tradition. *Id.* To safeguard that value, faculty like Professor Reges must remain free to express their views without retaliation or censorship.

### JURISDICTION AND VENUE

~~12.~~13. This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

~~13.~~14. Plaintiff seeks declaratory and injunctive relief against Defendants in their official capacities, including a ruling that Defendants are retaliating against him for protected academic speech in violation of his First Amendment rights. Plaintiff also seeks to enjoin ~~Defendants'~~Defendants from pursuing any disciplinary action based on his use of a dissenting land acknowledgment statement in his syllabus and from enforcing the University's unconstitutionally vague and overbroad policy governing faculty expression. Finally, Plaintiff seeks compensatory damages against Defendants Director Balazinska, Vice Director Grossman, and Dean Allbritton in their individual capacities for violating his clearly established right to speak freely in his teaching and academic writing.

~~14.~~15. Accordingly, this Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

~~15.~~16. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this District, and because all Defendants are residents of the State of Washington.

 FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

1  16.17. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2)

2  because a substantial part of the events giving rise to Professor Reges's claims

3  occurred in King County, Washington, which is located in the Seattle Division of the

4  Western District of Washington.

## THE PARTIES

**Plaintiff**

7  17.18. Plaintiff Stuart Reges is a citizen of the United States and a resident of

8  Seattle, Washington.

9  18.19. For the last four decades, Professor Reges has focused on introductory

10 instruction in computer science and programming, developing and running

11 introductory programs at several universities.

12 19.20. Since 2004, Professor Reges has been a faculty member at the

13 University of Washington in the Paul G. Allen School of Computer Science &

14 Engineering (Allen School).

15 20.21. In addition to being an acclaimed teacher, Professor Reges has a long

16 history as an advocate for free speech, especially for the right to express dissenting

17 viewpoints. He has spoken publicly in local and national media about his struggle

18 with identity and mental health as a gay man in the 1970s and 1980s. And when he

19 was a professor at Stanford University in the early 1990s, he publicly criticized the

20 War on Drugs. Stanford responded to this criticism by firing him.

21 21.22. At all times relevant to this Complaint, the University of Washington

22 employed Reges as a Principal Lecturer, or Teaching Professor, in the Allen School.

23  AMENDED
    COMPLAINT – Page 6

1    ~~22.~~23. Professor Reges is suing in order to vindicate his constitutional rights.

2    **Defendants**

3    ~~23.~~24. Defendant Ana Mari Cauce is the President of the University of

4    Washington "authorized to act for the Board of Regents in formulating, prescribing

5    and issuing rules, regulations, and executive orders not inconsistent with the

6    Bylaws, Standing Orders, Regent Policies, and other orders of the Board and

7    applicable state law for the immediate government of the University." Bd. of

8    Regents Governance, Ch. 1. Defendant Cauce has been President of the University

9    of Washington since 2015. Twice during her tenure (in July of 2016 and August of

10   2020) she renewed "Executive Order 31," the source of the University's authority to

11   impose disciplinary or corrective action for conduct deemed "unacceptable" or

12   "inappropriate." She is sued in her official capacity.

13   ~~24.~~25. Defendant Magdalena Balazinska is the Director of the Paul G. Allen

14   School of Computer Science & Engineering at the University of Washington. She

15   ordered Professor Reges to remove his land acknowledgment statement from his

16   syllabus; created a "shadow" class section that met at the same time as Professor

17   Reges's class; and ~~is continuing to investigate~~initiated the disciplinary investigation

18   of Professor Reges for his statement, all in violation of his constitutional rights. She

19   is sued in both her official and individual capacities.

20   ~~25.~~26. Defendant Dan Grossman is the Vice Director of the Paul G. Allen

21   School of Computer Science & Engineering at the University of Washington. By

22   participating in Professor Reges's first disciplinary meeting, creating a "shadow"

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

1   class section that met at the same time as Professor Reges's class, and assisting in

2   the ~~ongoing~~disciplinary investigation into Professor Reges, Vice Director Grossman

3   is responsible for violating Professor Reges's constitutional rights. He is sued in

4   both his official and individual capacities.

5        ~~26.~~27. Defendant Nancy Allbritton is the Dean of the College of Engineering

6   at the University of Washington. ~~She is charging~~She oversees the Allen School,

7   which is situated within the College of Engineering. She charged Professor Reges

8   with a disciplinary violation under Faculty Code Section 25-71, which governs

9   alleged violations of University policy and empowers the Dean to file formal

10  statements of charges that can lead to dismissal, reduction of salary, or suspension.

11  Dean Allbritton ~~is~~also ~~assembling~~assembled a faculty disciplinary committee that

12  ~~will review~~reviewed those charges. Upon conclusion of the committee's review, Dean

13  Allbritton warned Professor Reges that if he continued to include his dissenting

14  land acknowledgment statement in his course syllabi and it causes what she deems

15  "further" disruption, she would conclude he intentionally violated University

16  discrimination and harassment policy. She is sued in both her official and

17  individual capacities.

18                 **FACTUAL ALLEGATIONS**

19       ~~27.~~28. In 2011, the University of Washington awarded Professor Reges the

20  Distinguished Teaching Award, given to only seven professors each year based on

21  their subject matter expertise; enthusiasm and innovation in teaching and learning;

AMENDED
COMPLAINT – Page 8

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

"ability to inspire independent and original thinking in students"; innovations in course and curriculum design; and mentoring.

~~28.~~ 29. Professor Reges regularly receives very positive reviews from his students.

***Professor Reges Challenges the University of Washington's Prescribed Land Acknowledgment Statement in His Syllabus.***

~~29.~~ 30. In a document called the "Allen School best practices for inclusive teaching," the Allen School suggests professors "make [their] course syllabus more inclusive" by including an "Indigenous Land Acknowledgment Statement."

~~30.~~ 31. The Allen School recommends that professors include the following "example" land acknowledgment statement: "The University of Washington acknowledges the Coast Salish peoples of this land, the land which touches the shared waters of all tribes and bands within the Suquamish, Tulalip and Muckleshoot nations."

~~31.~~ 32. The University Office of Minority Affairs and Diversity's webpage states that the University's Tribal Liaison developed the land ~~acknowledgement~~ acknowledgment statement "over the course of several years" and that among other uses it "is spoken by [University] leadership during events to acknowledge" the view "that our campus sits on occupied land."

~~32.~~ 33. On December 8, 2021, a faculty member emailed an article titled *'Land Acknowledgments' Are Just Moral Exhibitionism* to the Allen School's "diversity-allies" listserv.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

33.34. Professor Reges replied to the email stating he had been "thinking a lot about land acknowledgments" and offering to organize a group discussion on the topic. He also shared the land acknowledgment statement he intended to include in his syllabus for his upcoming Winter quarter 2022 class: "I acknowledge that by the labor theory of property the Coast Salish people can claim historical ownership of almost none of the land currently occupied by the University of Washington."

34.35. Subsequently, Professor Reges included this land acknowledgment statement on the syllabus for his Computer Science and Engineering 143: Computer Programming II class, which the Allen School assigned him to teach during the Winter 2022 quarter.

35.36. Other computer science professors also included modified land acknowledgment statements on their syllabi. These statements were consistent with, but not always identical to, the Allen School's recommended statement.

36.37. On January 4, 2022, the day after Professor Reges's Computer Science and Engineering 143 class met for the first time, Defendant Balazinska, Director of the Allen School, sent Professor Reges an email ordering him to remove the statement from his syllabus because it was "offensive" and created a "toxic environment."

37.38. In his reply email, Professor Reges refused to remove the statement, and questioned why the Allen School was ordering him to delete his dissenting land acknowledgment statement from his syllabus while allowing other faculty to include

AMENDED
COMPLAINT – Page 10

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

1 modified statements in their syllabi that were more consistent with the University's

2 recommended statement.

3 38.39. Director Balazinska responded to Professor Reges by stating she would

4 "ask any instructor who uses a land acknowledgment other than the [University of

5 Washington] land acknowledgment to remove or replace it."

6 39.40. Director Balazinska then unilaterally removed Professor Reges's

7 dissenting land acknowledgment statement from the syllabus as it appeared on the

8 University's class portal, an online site where students can find syllabi, class

9 materials, and assignments.

10 40.41. Director Balazinska also emailed Professor Reges's students to

11 apologize for his "offensive" statement, and to provide three ways students could file

12 complaints against Professor Reges.

13 41.42. Despite Director Balazinska's response, other faculty at the Allen

14 School continue to include land acknowledgment statements in their syllabi that

15 differ from the University's own statement, so long as they express a viewpoint

16 consistent with the University's recommended version.

17 42.43. Thus, professors who agree with the University's viewpoint are free to

18 include or to modify the recommended land acknowledgement acknowledgment

19 statement, but faculty like Professor Reges who express a dissenting viewpoint are

20 not.

21 43.44. In her email response, Director Balazinska also claimed that Professor

22 Reges's syllabus was "causing a disruption to instruction in [his] class."

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

44.45. Director Balazinska did not provide Professor Reges any examples of disruption to instruction in his class.

45.46. In fact, no actual disruption of Professor Reges's class occurred. Professor Reges taught his first class of the Winter quarter on January 3, 2022, without incident and continued to teach nearly 400 students through the end of the quarter on March 18, 2022.

46.47. During the Winter 2022 quarter, Professor Reges also helped to mentor a group of students who won a computer programming contest for the first time in several years.

***Defendants Punish Professor Reges for His Use of the Dissenting Land Acknowledgment Statement.***

48. On January 4, 2022, Defendant Balazinska sought to initiate a disciplinary process against Professor Reges under Faculty Code Section 25-71, which establishes a procedure for disciplining faculty following an allegation that the faculty member has violated University policy. This procedure "might lead to dismissal, reduction of salary, or suspension for more than one quarter." Defendant Balazinska contacted the University of Washington College of Engineering senior director of human resources to determine next steps if Professor Reges did not agree to remove his dissenting statement from his syllabus. In response, the senior director of human resources prepared a draft notification letter under Section 25-71 that day alleging that Professor Reges had violated multiple University policies.

AMENDED
COMPLAINT – Page 12                    FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
                                       700 Pennsylvania Ave. SE510 Walnut Street, Suite 340250
                                       Washington, DC 20003
                                       Philadelphia, PA 19106
                                       Tel: (215) 717-3473

47.49. On January 7, 2022, Director Balazinska announced to all students in Professor Reges's Computer Science and Engineering 143 class section that they may switch into a new "shadow" class section, which would meet at the same time as Professor Reges's class section.

48.50. The Allen School assigned a different professor to instruct this "shadow" class section. During the Winter 2022 quarter, that professor instructed the class using recorded lectures instead of live class sessions.

49.51. In a January 9, 2022, email to a news network, Director Balazinska criticized Professor Reges's "invocation of Locke's labor theory of property" in his syllabus on the asserted ground that it "dehumanizes and demeans Indigenous people." Jason Rantz, *Rantz: UW administrator goes to war over Seattle professor's hilarious land acknowledgment joke*, KTTH (Jan. 9, 2022), https://mynorthwest.com/3301858/rantz-uw-admin-war-seattle-professors-land-joke/ [https://perma.cc/EKP9-A4L4].

50.52. Defendant Balazinska created the "shadow" Computer Science and Engineering 143 class section to punish Professor Reges for including his land acknowledgment statement in his syllabus.

51.53. Approximately 170 students out of over 500 students (or around 30% of Professor Reges's class) switched to the new "shadow" class section.

52.54. Professor Reges continued teaching the other 70% of his students who remained in his class through the end of the Winter 2022 quarter without

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

disruption or any other issues. He successfully administered the final exam and distributed grades.

~~53.~~55. On January 11, 2022, the Foundation for Individual Rights and Expression (FIRE)[1] sent President Cauce a letter urging the University to ensure that faculty are free to decide whether and how to address the topic of land acknowledgments in their syllabi and making clear that punishing faculty for differing viewpoints by investigating them and creating new course sections violates the First Amendment.

56.    Despite a flurry of edits and comments, by some point in January or February 2022, Defendant Balazinska chose not to finalize or send the draft version of the January 2022 25-71 letter, believing that the matter had been resolved by the creation of the "shadow" section of Computer Science and Engineering 143. She would revisit that decision after February 23, 2022.

~~54.~~57. On February 23, 2022, Professor Reges sent an email to the Allen School's "diversity-allies" listserv, which is available to all students and faculty in the Allen School, in which he expressed his intent to again include his own version of a land acknowledgment statement on his Spring quarter syllabus.

~~55.~~58. University administrators monitor the Allen School's "diversity-allies" listserv and review incoming messages before they are distributed to recipients.

---

[1] Formerly known as the Foundation for Individual Rights in Education, FIRE has since expanded its mission to include protecting expressive rights outside of higher education.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

56.59. ~~University administrators~~Defendant Balazinska reviewed Professor Reges's February 23, 2022, email and allowed it to pass through to the Allen School's "diversity-allies" listserv.

57.60. On March 2, 2022, Director Balazinska sent Professor Reges a notice letter under Faculty Code Section 25-71 that called him to a meeting to discuss allegations that "may, if true, constitute a violation of" several University policies, including University of Washington Executive Order 31.

58.61. Executive Order 31 provides "the University retains the authority to discipline or take appropriate corrective action for any conduct that is deemed unacceptable or inappropriate, regardless of whether the conduct rises to the level of unlawful discrimination, harassment, or retaliation."

59.62. Executive Order 31 applies to all members of the University of Washington community, including academic personnel and students.

60.63. The notice letter cited three broad allegations against Reges~~, ostensibly from University students, all~~ relating to his land acknowledgment statement. The letter cited: (1) Professor Reges's land ~~acknowledgement~~acknowledgment statement; (2) Professor Reges's email to the "diversity-allies" listserv that included his land acknowledgment statement; and (3) an allegation from representatives of the student employee union that his actions violated their collective bargaining agreement with the University.

61.64. On March 8, 2022, Professor Reges met with Defendants Director Balazinska and Vice Director Dan Grossman.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

1    62.65. During the March 8 meeting, Director Balazinska informed Professor

2    Reges of the allegations against him and that she expected faculty to "interact

3    respectfully" and create a "welcoming," "professional," and "positive" environment.

4    63.66. At that meeting, Director Balazinska also said if Professor Reges

5    continued to use his land acknowledgment statement, she expected to receive more

6    complaints, and she considered those complaints to be a disruption to the delivery of

7    instruction.

8    64.67. During the meeting, Professor Reges also asked Director Balazinska to

9    confirm that he would not be in violation of University policy if he included the

10   University's *own* land acknowledgment on future syllabi. Director Balazinska could

11   not confirm this.

12   65.68. Director Balazinska also indicated that if students were to complain

13   about him including the University's land acknowledgment statement on his

14   syllabus, Professor Reges may be in violation of University policy.

15   66.69. Director Balazinska also could not confirm whether any of Professor

16   Reges's students submitted the complaints, or whether they originated from other

17   University students who heard about the controversy.

18   67.70. On March 9, 2022, Director Balazinska provided Professor Reges with

19   a proposed resolution to the charges against him, which is the first step to resolving

20   alleged faculty policy violations under University of Washington Faculty Code 25-

21   71.B. The proposed resolution would have required Reges to, among other things,

22   "interact with peers, staff, and students in a way that demonstrates respect toward

AMENDED
COMPLAINT – Page 16                FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
                                  700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
                                  Washington, DC 20003
                                  Philadelphia, PA 19106
                                  Tel: (215) 717-3473

23

24

all" and "create[] and maintain[] a professional, positive, and welcoming

environment."

68.71. The proposed resolution Director Balazinska provided would also

require Professor Reges to "agree not to include . . . [his] version of the land

acknowledgment that was published in the [Computer Science and Engineering]

143 Winter 2022 online course syllabus in . . . future course syllabi."

69.72. Reges declined the proposed resolution the next day.

70.73. On March 18, 2022, Nancy Allbritton, Dean of the University of

Washington College of Engineering, emailed Professor Reges to set up a meeting

"pursuant to [Faculty Code] Section 25-71.D," which is the second step in the faculty

disciplinary process.

71.74. University Faculty Code Section 25-71.D governs "alleged violation[s]"

of University policy and empowers the Dean to determine whether "the alleged

violation is of sufficient seriousness to justify consideration of the filing of a formal

statement of charges that might lead to dismissal, reduction of salary, or suspension

for more than one quarter."

72.75. On March 25, 2022, Professor Reges, represented by FIRE Staff

Attorney Katlyn Patton, met with Dean Allbritton as part of the second step in the

faculty disciplinary process.

73.76. At the March 25, 2022, disciplinary meeting, Dean Allbritton asked

Reges to speculate as to how students felt about his land acknowledgment

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

1  statement, and why the students who moved into the "shadow" class section chose

2  to do so.

3  74.77. Professor Reges reiterated that he continued to teach hundreds of

4  students who remained in his class section through the end of the Winter 2022

5  quarter without issue or disruption, despite the opportunity to join the "shadow"

6  class.

7  75.78. Dean Allbritton concluded the meeting by telling Professor Reges she

8  aimed to make the best decision possible concerning the investigation, but could not

9  guarantee a time period in which she would make that decision or a date that the

10  investigation would conclude.

11  76.79. Professor Reges followed through and included his dissenting land

12  acknowledgment statement on his Spring 2022 class syllabi for Computer Science

13  and Engineering 142 and a new C++ programming course for students who are not

14  Computer Science majors.

15  77.80. Director Balazinska and the Allen School again scheduled a competing

16  section of Professor Reges's Computer Science and Engineering 142 class for the

17  Spring 2022 quarter.

18  78.81. On April 21, 2022, Dean Allbritton notified Professor Reges she

19  intended to proceed with formal charges against him.

20  79.82. Dean Allbritton also told Professor Reges she would convene a special

21  investigating committee to "look into this matter" under University Faculty Code

22

23

24

Section 25-71.D.3 and that she was in the process of selecting the members of the committee.

80.83.  On May 19, 2022, Dean Allbritton told Professor Reges she was still "in the process of assembling the committee."

81.84. On June 9, 2022, Dean Allbritton told Professor Reges that the "process of assembling the committee has taken some time," that the University has "identified potential members" of the committee, and it is "in the process of gathering their acceptance[s] to serve on the committee."

85.    As of the date of this filingBy July 11, 2022, Dean Allbritton has provided had identified three faculty members to serve on the special investigating committee.

86.    On July 11, 2022, Dean Allbritton formally charged the special investigating committee to begin its investigation of Professor Reges. The charge letter was based solely upon Professor Reges's dissenting land acknowledgment statement and, at most, five written complaints from faculty, staff, and students reacting to it. Dean Allbritton described the charge letter to the special investigating committee as "confidential" and did not provide a copy to Professor Reges at that time.

87.    Professor Reges commenced this lawsuit on July 13, 2022.

88.    On August 25, 2022, Dean Allbritton told Professor Reges that the special investigating committee's activities "have been placed on hold," without providing a reason.

AMENDED
COMPLAINT – Page 19

89.     When Professor Reges asked Dean Allbritton for her reason for

pausing the special investigating committee's work, she declined to provide one.

90.     On September 28, 2022, the senior director of human resources wrote

to the members of the special investigating committee, copying Dean Allbritton, to

inform them that the investigation was no longer on hold and to ask them to report

orally to the Dean as soon as possible.

91.     Neither Dean Allbritton nor any other University administrator

informed Professor Reges that the special investigating committee was resuming its

investigation of him.

***Defendants Continue to Threaten* Professor Reges with ~~neither the written charges~~*Disciplinary Action for His Inclusion of the Dissenting Land Acknowledgment Statement in His Syllabus.***

92.     On June 13, 2023, eleven months after the investigation into Professor

Reges began, Dean Allbritton wrote to inform him of the investigation's conclusion

and to notify him of "the determinations made as a result of that process."

93.     Dean Allbritton's letter claims that Professor Reges's dissenting land

acknowledgment statement "created an immediate and significant disruption to the

University teaching environment." To support that conclusion, Dean Allbritton

vaguely cites "numerous student and staff complaints," without providing the

number of complaints.

94.     Dean Allbritton wrote that she would not impose further sanctions, but

"if [Professor Reges] include[s] this statement in the future, and if that inclusion

leads to further disruption, I will have no option but to . . . view that as an

AMENDED
COMPLAINT – Page 20

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

1   intentional violation of Executive Order 31, as well as Section 24-33 of the Faculty

2   Code."

3       95.    Dean Allbritton's reference to "disruption" means that as little as a

4   single complaint from a student or staff member about the content or viewpoint of

5   Professor Reges's dissenting land acknowledgment statement could be enough to

6   resume the disciplinary ~~committee will consider, nor~~ process.

7       ~~82.~~96. Dean Allbritton, in her letter, claimed Professor Reges's dissenting

8   land acknowledgment statement caused complaints and believes the statement "will

9   likely continue to do so when included in a purely academic setting, such as on a

10  syllabus or in connection with ~~proposed dates for that disciplinary proceeding.~~the

11  teaching of computer science courses."

12      97.    The only way Professor Reges can avoid further adverse employment

13  action is to remove his dissenting land acknowledgment statement from his syllabi.

14      ~~83.~~98. As with the Winter 2022 quarter, Professor Reges taught his Spring

15  2022, Fall 2022, Winter 2023, and Spring 2023 classes without ~~incident through the~~

16  ~~end of the quarter on June 10, 2022~~a single in-class disruption.

17      ~~84.~~99. Professor Reges received positive student reviews for the Spring 2022

18  ~~quarter~~, Fall 2022, Winter 2023, and Spring 2023 quarters, including in response to

19  the question of whether students feel welcomed and respected in his class.

20      ~~85.~~100.    Professor Reges was and remains able to teach his ~~class~~classes

21  notwithstanding his decision to challenge the University's land acknowledgment

22  statement by including a dissenting statement on his syllabus.

23  FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
    ~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
    ~~Washington, DC 20003~~

24  Philadelphia, PA 19106
    Tel: (215) 717-3473

1    ~~86.~~101.    Professor Reges is scheduled to teach Computer Science and

2  Engineering 143 again during the Fall ~~2022, Winter 2023, and Spring 2023~~

3  ~~quarters. He is also scheduled to teach the C++ programming course for students~~

4  ~~who are not Computer Science majors during the Winter 2023 quarter. This is the~~

5  ~~lightest teaching load Professor Reges has ever been assigned.~~2023 and Spring 2024

6  quarters.

7    ~~87.~~102.    Professor Reges intends to continue to exercise his expressive

8  right to challenge the University's land acknowledgment by including his dissenting

9  land acknowledgment statement on his Fall ~~2022~~2023, Winter ~~2023~~2024, and

10  Spring ~~2023~~2024 syllabi.

11  ***Defendants Withheld Professor Reges's 2022–23 Salary Increase During the***
***Pendency of Their Disciplinary Process Against Him.***

12

13    103.    On June 7, 2022, Dean Allbritton informed Defendant Balazinska and

14  other College of Engineering directors and chairs that President Cauce and the

15  University board had authorized a 3.25 percent "merit increase" to eligible faculty

16  members' salaries, effective September 1, 2022.

17    104.    Defendants deemed Professor Reges eligible for the merit increase.

18  However, Defendants held his merit increase "in abeyance" during the pendency of

19  the Faculty Code 25-71 disciplinary process.

20    105.    Before Dean Allbritton's June 13, 2023 letter to Professor Reges closing

21  the disciplinary process, no University administrator informed Professor Reges that

22

23  AMENDED                          FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
    COMPLAINT – Page 22        ~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
                                    ~~Washington, DC 20003~~
24                                  Philadelphia, PA 19106
                                    Tel: (215) 717-3473

1   he was approved for a merit increase or that the University withheld it during the

2   pendency of the disciplinary process.

3        106.    Dean Allbritton's letter informed Professor Reges that the University

4   held his merit increase in abeyance, automatically, in accordance with University

5   policy. However, Defendants are unable to identify any memorialization of that

6   policy. Neither President Cauce's authorization letter nor the University's Office of

7   Planning and Budgeting Merit Process Guide website capture it or identify a

8   relevant policy document.

9        107.    Rather, Dean Allbritton's letter of June 13, 2023, simply informed

10  Professor Reges that his merit "will be reinstated" and he would receive the merit

11  increase that had been withheld.

12       108.    Upon information and belief, Professor Reges received a portion of his

13  2022–23 merit pay increase on July 21, 2023.

14       109.    To date, no University administrator has informed Professor Reges of

15  when he would receive his 2022–23 merit increase, or whether it would be provided

16  with interest.

17  ***Defendants' Actions Deprived Professor Reges of His Rights, Causing
    Financial, Emotional, and Reputational Damage.***

18

19       ~~88.~~110.        As a direct and proximate cause of Defendants' actions,

20  Professor Reges has suffered irreparable injury, including being deprived of his

21  constitutional rights to freedom of speech and due process.

22

23  AMENDED                          FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
    COMPLAINT – Page 23             ~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
                                     ~~Washington, DC 20003~~
24                                   Philadelphia, PA 19106
                                     Tel: (215) 717-3473

1    ~~89.~~111.    Defendants' actions—creating a "shadow" class and mounting a

2    protracted investigation~~, which carries~~ that carried the threat of termination, and

3    issuing a threat of further punishment if Professor Reges continues to engage in

4    similar protected speech—constitute adverse actions that are "reasonably likely to

5    deter" a reasonable employee from engaging in protected activity under the First

6    Amendment. *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003); *see also*

7    *Levin v. Harleston*, 966 F.2d 85, 88–89 (2d Cir. 1992).

8    112.    Because of Defendants' disciplinary process, Defendants withheld

9    Professor Reges's 2022–23 3.25% merit pay increase.

10    ~~90.~~113.    Defendants' adoption and enforcement of overbroad policies

11    restricting faculty speech rights have caused Professor Reges and other University

12    of Washington faculty and students not before this Court irreparable harm because

13    the prohibition on "unacceptable" and "inappropriate" expression covers a broad

14    universe of constitutionally protected expression judged in relation to its *legitimate*

15    sweep—actionable harassment or retaliation, as properly legally defined. The policy

16    chills both Professor Reges and other faculty from exercising their right to engage in

17    expression on matters of public concern.

18    ~~91.~~114.    The terms "unacceptable" and "inappropriate" as included in the

19    policy are undefined and carry no reasonably objective plain meaning, and are

20    therefore impermissibly vague.

21    ~~92.~~115.    Defendants' ~~disciplinary investigation into~~threat of future

22    enforcement of University policies against Professor Reges presents an ongoing

23
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

24

1  injury, especially viewed in light of their recent enforcement of those policies

2  against him, because it creates a continuing risk of tarnishing Professor Reges's

3  professional reputation and includes the threat of punishment, up to and including

4  termination, which would cause him additional financial, emotional, and

5  reputational harm.

6  93.116.   Professor Reges has experienced damages to his reputation and

7  significant emotional distress as a result of Defendants' unconstitutional actions.

8  The ongoing investigation into his protected speech, and threat of

9  termination,future enforcement of University policies leaves Professor Reges in an

10  uncomfortable and untenable limbo, both professionally and personally. While he

11  remains employed, administrators have effectively isolated him from the

12  community in which he has worked for 18 years, causing him significant emotional

13  distress.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiff's First Amendment Rights**
**(Against All Individual-Capacity Defendants)**

16  94.117.   Plaintiff re-alleges and incorporates by reference each and every

17  allegation set forth in the preceding paragraphs of this Complaint.

18  95.118.   It is clearly established under the First Amendment that

19  "viewpoint discrimination is . . . an egregious form of content discrimination. The

20  government must abstain from regulating speech when the specific motivating

21  ideology or the opinion or the perspective of the speaker is the rationale for the

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

1   restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829

2   (1995).

3       ~~96.~~119.       It is also clearly established that "teaching and academic writing

4   that are performed 'pursuant to the official duties' of a teacher and professor" are

5   constitutionally protected expression if they involve matters of public concern and

6   the professor's First Amendment interests outweigh the university's need for

7   efficiency as an employer. *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014).

8       ~~97.~~120.       The University of Washington recognizes professors' clearly

9   established right "to discuss all relevant matters in teaching" in its own policies.

10  University Faculty Code Section 24-33, last revised Jan. 9, 2014,- https://www.

11  washington.edu/admin/rules/policies/FCG/FCCH24.html#:~:text=Academic%20free

12  dom%20is%20the%20freedom,shared%20governance%20and%20the%20general.

13      ~~98.~~121.       Faculty at colleges and universities construct their syllabi and

14  course content to both instruct and challenge students to consider diverse

15  viewpoints—these are integral parts of teaching.

16      ~~99.~~122.       By inviting faculty to include land acknowledgment statements

17  on their syllabi, the Allen School implicitly recognizes that speech about the history

18  of the University of Washington's land (and competing moral or legal claims to it)

19  falls within the permissible faculty uses of syllabi.

20      ~~100.~~123.       Professor Reges challenged his students and fellow faculty to

21  think about the utility and performative nature of land acknowledgment statements

22  by including his own land acknowledgment statement on his syllabus.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

101.124.      Professor Reges's land acknowledgment statement on his syllabus constitutes expression protected by the First Amendment, including the right to academic freedom.

102.125.      Professor Reges's land acknowledgment statement did not interfere with his duties as a lecturer at the University. He continued to instruct hundreds of students in his computer science class section, and recently led students to a win in a coding competition.

103.126.      Professor Reges expressed his view on land acknowledgment statements to his students, at the University's invitation, in the course of his teaching.

104.127.      Defendants discriminated against Professor Reges on the basis of viewpoint when they required him to repeat only the University's institutional viewpoint, or to remain silent on this controversial public issue.

105.128.      Defendants further discriminated against Professor Reges on the basis of viewpoint when they disciplined him because he included a statement on his syllabus that expressed a view the University and its administrators did not like, and which Defendant Balazinska characterized as "offensive" and "inappropriate."

106.129.      As described above, Defendant Balazinska created a "shadow" class section of Professor Reges's Computer Science and Engineering 143 course and Defendants Balazinska, Grossman, and Allbritton are ~~pursuing an investigation into Reges~~ likely to pursue additional disciplinary action against Reges that carries

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

with it the threat of termination. ~~Defendants thus unconstitutionally took~~ if he continues to use his dissenting land acknowledgment statement on his syllabus. Defendants' actions would chill a ~~calculated and adverse employment action against Reges~~ person of ordinary firmness from engaging in ~~retaliation for his~~ further protected ~~speech~~activity. *See ~~Demers,~~ 746Canatella v. California,* 304 F.3d ~~at 406-07; *Levin,* 966 F.2d at 88.~~843, 853 (9th Cir. 2002).

130.    Defendants further discriminated against Professor Reges's speech by withholding the merit increase to his salary during the pendency of their disciplinary process against him for his dissenting land acknowledgment statement.

~~107.~~131.    As a direct and proximate result of Defendants' viewpoint-discriminatory actions, Professor Reges has suffered irreparable injury, including being deprived of his constitutional right to free expression.

~~108.~~132.    Professor Reges has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment rights.

~~109.~~133.    As a direct and proximate result of Defendants' actions, Professor Reges has suffered emotional distress and injury to his reputation. The University has isolated him from the campus and departmental communities, placed his livelihood in jeopardy, and ~~has~~ left the threat of termination hanging over his head for ~~months~~nearly a year. Dean Allbritton's letter dated June 13, 2023, threatens future discipline, up to and including termination, should Professor Reges continue to include his dissenting land acknowledgment in future course syllabi.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

110.134.    As a direct and proximate result of Defendants' actions

described above, Professor Reges was and continues to be deprived of his

constitutional rights. As a legal consequence of Defendants' violation of Plaintiff's

First Amendment rights, which are irreparable injuries *per se*, Professor Reges is

entitled to compensatory damages and the reasonable costs of this lawsuit,

including reasonable attorneys' fees. Professor Reges is seeking monetary damages

against Defendants Balazinska, Grossman, and Allbritton in their individual

capacities.

**SECOND CAUSE OF ACTION**
**First Amendment Retaliation Under 42 U.S.C. § 1983**
**(Against All Individual-Capacity Defendants)**

111.135.    Plaintiff re-alleges and incorporates by reference each and every

allegation set forth in the preceding paragraphs of this Complaint.

112.136.    It is clearly established under the First Amendment that "a

state cannot condition public employment on a basis that infringes the employee's

constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461

U.S. 138, 142 (1983).

113.137.    As described above, Defendant Balazinska created a "shadow"

class section of Professor Reges's Computer Science and Engineering 143 course, in

direct response to his constitutionally protected land acknowledgment statement.

114.138.    As described above, Defendants Balazinska, Grossman, and

Allbritton investigated Professor Reges initiated, supported, and oversaw a

disciplinary investigation into Professor Reges and threatened him with future

AMENDED
COMPLAINT – Page 29

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE 510 Walnut Street, Suite 340 1250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

1    sanction for allegedly violating University policy based on his constitutionally

2    protected land acknowledgment statement.

3    ~~115.~~139.    By creating the "shadow" class section and investigating

4    Professor Reges for his protected speech, Defendants unconstitutionally took a

5    calculated adverse employment action against Professor Reges in retaliation for his

6    protected speech. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Demers*, 746

7    F.3d at 406; *Levin*, 966 F.2d at 88.

8    ~~116.~~140.    Defendants Balazinska, Grossman, and Allbritton violated

9    Professor Reges's clearly established First Amendment rights as a university

10   professor by disciplining him for expressing a viewpoint in the course of his teaching

11   that dissented from the University's prescribed viewpoint on a controversial public

12   issue.

13   141.    Defendants further retaliated against Professor Reges by withholding

14   his 2022–23 salary increase during the pendency of their disciplinary process.

15   ~~117.~~142.    As a direct and proximate result of Defendants' actions as

16   described above, Professor Reges was and continues to be deprived of his

17   constitutional rights. As a result of Defendants' violation of Plaintiff's First

18   Amendment rights, which are irreparable injuries *per se*, he is entitled to

19   compensatory damages and the reasonable costs of this lawsuit, including

20   reasonable attorneys' fees.

21

22

     FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
     ~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
     ~~Washington, DC 20003~~
     Philadelphia, PA 19106
     Tel: (215) 717-3473
24

## THIRD CAUSE OF ACTION
### First Amendment Retaliation Under 42 U.S.C. § 1983
### (Against All Defendants in Their Official Capacities)

~~118.~~143.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

~~119.~~144.     As described above, Defendants Balazinska, Grossman, and Allbritton created a "shadow" class section of Professor Reges's Computer Science and Engineering 143 course in reaction to his constitutionally protected land acknowledgment statement. In doing so, Defendants unconstitutionally took adverse employment action against Professor Reges in retaliation for his protected speech. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Demers*, 746 F.3d at 406; *Levin*, 966 F.2d at 88.

~~120.~~145.     Defendants Balazinska, Grossman, and Allbritton ~~are~~ also unconstitutionally ~~taking~~engaged in adverse employment action against Professor Reges by investigating him, threatening future discipline against him, and withholding his 2022–23 salary increase because his constitutionally protected land acknowledgment statement allegedly violated a vague and overbroad University policy.

~~121.~~146.     Professor Reges has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment rights.

~~122.~~147.     As a direct and proximate result of Defendants' actions as described above, Professor Reges was and continues to be deprived of his

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

constitutional rights. As a result of Defendants' violations of Plaintiff's First

Amendment rights, which are irreparable injuries *per se*, Professor Reges is entitled

to injunctive relief, including but not limited to mandating that Defendants cease

their ~~investigation into~~<u>threat of future discipline against</u> Professor Reges for his

protected speech.

~~123.~~<u>148.</u>     Professor Reges is also entitled to a permanent injunction

against Defendants creating "shadow" class sections in retaliation for his protected

expression. Professor Reges is further entitled to a declaration that Defendants'

investigating him because of his land acknowledgment statement and creating ~~of~~a

"shadow" section of his course were unlawful retaliation for his protected

expression.

<u>149.   Defendant Reges is also entitled to a permanent injunction against</u>

<u>Defendants withholding any unpaid portion of his 2022–23 merit increase or future</u>

<u>salary increases because of any disciplinary process initiated due to his dissenting</u>

<u>land acknowledgment statement.</u>

**FOURTH CAUSE OF ACTION**
**Facial Overbreadth Challenge to Executive Order 31**
**(Against President Cauce in Her Official Capacity)**

~~124.~~<u>150.</u>     Plaintiff re-alleges and incorporates by reference each and every

allegation set forth in the preceding paragraphs of this Complaint.

~~125.~~<u>151.</u>     A regulation violates the First Amendment for overbreadth if "a

substantial number of its applications are unconstitutional, judged in relation to the

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~<u>510 Walnut Street</u>, Suite ~~340~~<u>1250</u>
~~Washington, DC 20003~~
<u>Philadelphia, PA 19106</u>
Tel: (215) 717-3473

statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473

(2010) (quotations and citations omitted).

~~126.~~152.    Under University of Washington Executive Order 31, "the

University retains the authority to discipline or take appropriate corrective action

for any conduct that is deemed *unacceptable* or *inappropriate, regardless of whether*

*the conduct rises to the level of unlawful discrimination, harassment, or retaliation*."

(Emphasis added).

~~127.~~153.    Executive Order 31 is unconstitutional on its face because it

results in a substantial number of unconstitutional applications, allowing the

University and its administrators to discipline faculty like Professor Reges for

speech that is protected by the First Amendment, but expresses a viewpoint that

the University wishes to suppress.

~~128.~~154.    For example, the policy would support discipline against a

student or faculty member who, during a meeting, made a single offhand remark

deemed "inappropriate," even if that remark was not harassing, discriminatory, or

targeted at any individual. It would also support discipline against a student or

faculty member who posted an "unacceptable" tweet criticizing the university

president or another official for their position on a public issue.

~~129.~~155.    The policy's legitimate sweep prohibits discrimination,

harassment, and retaliation, as properly defined by law, which are unprotected by

the First Amendment. *See, e.g.*, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629,

651 (1999) (defining actionable harassment in the K‑12 context as conduct that is

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

"so *severe*, *pervasive*, and *objectively* offensive, and that so undermines and detracts

from the victims' educational experience, that the victim students are effectively

denied equal access to an institution's resources and opportunities")" (emphasis

added).)).

130.156.   But by permitting "discipline" and "corrective action" against

those whose speech University administrators deem "unacceptable" or "inappropri-

ate," even when it does not meet the legal definition of discrimination, harassment,

or retaliation, Executive Order 31 permits a broad range of unconstitutional

applications in violation of the First Amendment, as described above.

131.157.   As a direct and proximate result of Executive Order 31, speakers

in the University community, including Professor Reges, have suffered irreparable

injury, including being deprived of their constitutional rights to free expression.

*Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973).

132.158.   Professor Reges has no adequate legal, administrative, or other

remedy by which to prevent or minimize the continuing harm to his First

Amendment rights.

133.159.   Without declaratory and injunctive relief from this Court, the

University's unconstitutional actions will continue, and Professor Reges and other

speakers in the University community will suffer irreparable harm indefinitely.

134.160.   As a consequence of the University and President Cauce's

violation of Professor Reges's and all University of Washington students' and

faculty members' First Amendment rights, Professor Reges is entitled to declaratory

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473

1   and injunctive relief declaring Executive Order 31 unconstitutional and enjoining

2   its enforcement.

### FIFTH CAUSE OF ACTION
**Facial Vagueness Challenge to Executive Order 31**
**(Against President Cauce in Her Official Capacity)**

5   ~~135.~~161.    Plaintiff re-alleges and incorporates by reference each and every

6   allegation set forth in the preceding paragraphs of this Complaint.

7   ~~136.~~162.    A regulation violates the Due Process clause of the Fourteenth

8   Amendment for vagueness if a person of ordinary intelligence cannot distinguish

9   between permissible and prohibited conduct, and when there are no explicit stan-

10  dards to prevent arbitrary and capricious application. *Grayned v. City of Rockford*,

11  408 U.S. 104, 108 (1972); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 555 (9th

12  Cir. 2004).

13  ~~137.~~163.    Under Executive Order 31, "the University retains the authority

14  to discipline or take appropriate corrective action for any conduct that is deemed

15  *unacceptable* or *inappropriate, regardless of whether the conduct rises to the level of*

16  *unlawful discrimination, harassment, or retaliation*." (Emphasis added).

17  ~~138.~~164.    Executive Order 31 does not define "unacceptable" or

18  "inappropriate," and those terms do not carry with them any reasonably objective

19  plain meaning.

20  ~~139.~~165.    Executive Order 31 is unconstitutional on its face because it is

21  so vague as to provide no basis for clear and consistent application.

22

     FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

1    ~~140.~~166.    For example, Director Balazinska could not even confirm that

2  Professor Reges could safely include the University's *own* land acknowledgment

3  statement on his syllabus because if students complain that could mean Professor

4  Reges violated the policy.

5    ~~141.~~167.    Executive Order 31 is unconstitutional on its face because it is

6  so vague that it authorizes arbitrary, capricious, and viewpoint-discriminatory

7  application, and fails to provide people of ordinary intelligence a reasonable oppor-

8  tunity to understand what expression is "unacceptable" or "inappropriate."

9    ~~142.~~168.    The denial of constitutional rights is an irreparable injury *per*

10  *se*, and entitles the Plaintiff to injunctive relief. *Elrod v. Burns*, 427 U.S. 347, 373

11  (1976).

12    ~~143.~~169.    Professor Reges has no adequate legal, administrative, or other

13  remedy by which to prevent or minimize the continuing irreparable harm to his

14  rights under the First and Fourteenth Amendments.

15    ~~144.~~170.    Without declaratory and injunctive relief from this Court, the

16  University's unconstitutional actions will continue, and Professor Reges and other

17  speakers in the University community will suffer irreparable harm indefinitely.

18    ~~145.~~171.    As a consequence of the University's and Defendant Cauce's

19  violation of Professor Reges's First and Fourteenth Amendment rights, Professor

20  Reges is entitled to declaratory and injunctive relief declaring Executive Order 31

21  unconstitutional and enjoining its enforcement.

22

23  AMENDED                          FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
    COMPLAINT – Page 36         ~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
24                                                     ~~Washington, DC 20003~~
                                                    Philadelphia, PA 19106
                                                    Tel: (215) 717-3473

**PRAYER FOR RELIEF**

WHEREFORE, Professor Reges respectfully requests that this Court enter judgment against Defendants and issue the following forms of relief:

A.      Compensatory damages against the individual-capacity Defendants in an amount to be determined by the ~~Court~~fact-finder to compensate Professor Reges for their interference with his rights under the U.S. Constitution and for the significant emotional distress and reputational harm he has experienced;

B.      Any remaining back pay with interest to compensate Professor Reges for his withheld 2022–23 merit pay increase that has not been provided as of the date of this filing;

~~B.~~C.   An injunction ~~against~~prohibiting Defendants from ~~continuing to investigate Professor Reges for his constitutionally~~pursuing any investigation or disciplinary action on the basis of Professor Reges's protected ~~speech on~~dissenting land acknowledgment statement in his ~~syllabus~~course syllabi;

~~C.~~D.   An injunction against Defendants from creating future "shadow" sections of Professor Reges's classes in retaliation for his constitutionally protected speech;

E.      An injunction prohibiting Defendants from withholding future salary increases to Professor Reges because of any investigations or other disciplinary action arising from his ongoing or future inclusion of his dissenting land acknowledgment statement in his syllabus;

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250
~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

1     ~~D.~~F.   An injunction against Defendants from enforcing Executive Order 31

2 and any other vague, overbroad, or viewpoint discriminatory policy that prevents

3 Professor Reges from including his land acknowledgment statement on his syllabus;

4     ~~E.~~G.   A declaration that Defendants' disciplinary investigation into Professor

5 Reges and threat of future enforcement against him for his constitutionally

6 protected speech on his syllabus violates the First Amendment;

7     ~~F.~~H.   A declaration that Defendants' creating "shadow" sections of Professor

8 Reges's classes violates the First Amendment;

9     ~~G.~~I.   A declaration that Executive Order 31 is unconstitutionally vague and

10 overbroad;

11     ~~H.~~J.   Attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable

12 law; and

13     ~~I.~~K.   All further legal and equitable relief as the Court may deem just and

14 proper.

15 **DEMAND FOR JURY TRIAL**

16     In compliance with Federal Rule of Civil Procedure 38, Plaintiff demands a

17 trial by jury on all issues so triable.

18 DATED:    ~~July 13, 2022~~August 1, 2023

19 Respectfully submitted,

20 */s/ Robert A. Bouvatte*
    ROBERT A. BOUVATTE, JR.

21 WA Bar No. 50220
    ROBERT A. BOUVATTE, PLLC

22 P.O. Box 14185

23 AMENDED                FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
COMPLAINT – Page 38     ~~700 Pennsylvania Ave. SE~~510 Walnut Street, Suite ~~340~~1250

24                                          ~~Washington, DC 20003~~
Philadelphia, PA 19106
Tel: (215) 717-3473

Tumwater, WA 98511
Tel: (904) 505-3175564) 999-4005
bob@rbouvattepllc.com

JAMES M. DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street
Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
jay.diaz@thefire.org

GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
GABRIEL WALTERS*
DC Bar No. 1019272
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Avenue SE
Suite 340
Washington, DC 20003
Tel: (215) 717-3473
gabe.walters@thefire.org
josh.bleisch@thefire.org
gabe.walters@thefire.org

*Admitted *Pro Hac Vice* Motions Forthcoming

*Counsel for Plaintiff Stuart Reges*

AMENDED
COMPLAINT – Page 39

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE510 Walnut Street, Suite 3401250
Washington, DC 20003
Philadelphia, PA 19106
Tel: (215) 717-3473