IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

STUART REGES,
    *Plaintiff,*

        v.

ANA MARI CAUCE, in her official
capacity as President of the University
of Washington;

MAGDALENA BALAZINSKA, in her
official and individual capacities as
Director of the Paul G. Allen School of
Computer Science & Engineering;

DAN GROSSMAN, in his official and
individual capacities as Vice Director of
the Paul G. Allen School of Computer
Science & Engineering; and

NANCY ALLBRITTON, in her official
and individual capacities as Dean of
the College of Engineering,
    *Defendants.*

CASE NO.    2:22–cv–00964–JHC

**AMENDED COMPLAINT FOR
CIVIL RIGHTS VIOLATIONS**

JURY DEMAND

AMENDED
COMPLAINT – Page i

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

JAMES M. DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street
Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
jay.diaz@thefire.org

GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Avenue SE
Suite 340
Washington, DC 20003
Tel: (215) 717-3473
gabe.walters@thefire.org
josh.bleisch@thefire.org

*Admitted *Pro Hac Vice*

ROBERT A. BOUVATTE, JR.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (564) 999-4005
bob@rbouvattepllc.com

AMENDED
COMPLAINT – Page ii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................1

JURISDICTION AND VENUE....................................................................................5

THE PARTIES .............................................................................................................6

FACTUAL ALLEGATIONS .......................................................................................8

    Professor Reges Challenges the University of Washington's
    Prescribed Land Acknowledgment Statement in His Syllabus. .......................9

    Defendants Punish Professor Reges for His Use of the
    Dissenting Land Acknowledgment Statement. ..............................................12

    Defendants Continue to Threaten Professor Reges with
    Disciplinary Action for His Inclusion of the Dissenting Land
    Acknowledgment Statement in His Syllabus. ................................................20

    Defendants Withheld Professor Reges's 2022–23 Salary Increase
    During the Pendency of Their Disciplinary Process Against Him. ................22

    Defendants' Actions Deprived Professor Reges of His Rights,
    Causing Financial, Emotional, and Reputational Damage. ...........................23

FIRST CAUSE OF ACTION
Violation of Plaintiff's First Amendment Rights
(Against All Individual-Capacity Defendants) ..........................................................25

SECOND CAUSE OF ACTION
First Amendment Retaliation Under 42 U.S.C. § 1983
(Against All Individual-Capacity Defendants) ..........................................................28

THIRD CAUSE OF ACTION
First Amendment Retaliation Under 42 U.S.C. § 1983
(Against All Defendants in Their Official Capacities) ...............................................30

FOURTH CAUSE OF ACTION
Facial Overbreadth Challenge to Executive Order 31
(Against President Cauce in Her Official Capacity) ..................................................32

FIFTH CAUSE OF ACTION
Facial Vagueness Challenge to Executive Order 31
(Against President Cauce in Her Official Capacity) ..................................................34

AMENDED
COMPLAINT – Page iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

PRAYER FOR RELIEF ....................................................................... 36

DEMAND FOR JURY TRIAL ........................................................... 37

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

# INTRODUCTION

1.      Stuart Reges, an award-winning educator at the University of Washington, is suing the University of Washington and its administrators to vindicate his well-established First Amendment rights. After the University encouraged professors to include a political statement on their course syllabi, it disciplined and investigated Professor Reges and continues to threaten him with further discipline for expressing a dissenting view.

2.      In September 2020, University administrators encouraged professors to include a statement on their syllabi recognizing that the land on which the University sits was once owned by indigenous people. Professor Reges disagreed with the University's "Indigenous Land Acknowledgment Statement."

3.      Because syllabi are an integral part of the teaching and construction of a college course, Professor Reges included a dissenting statement on his syllabus which challenged his students and fellow faculty to think about the utility and performative nature of land acknowledgment statements. To that end, Professor Reges's land acknowledgment stated that indigenous tribes "can claim historical ownership of almost none of the land" on which the University sits, based on philosopher John Locke's well-known labor theory of property, under which ownership derives from improving the land.

4.      University administrators punished Professor Reges for his statement, asserting that it caused a "disruption to instruction." To the contrary, Professor Reges reviewed his syllabus on the first day of class without incident.

AMENDED
COMPLAINT – Page 1

5.      The University created a "shadow" class section of Professor Reges's computer programming course—taught by a different professor, on tape—and invited students to switch out of Professor Reges's class section.

6.      Meanwhile, other computer science professors included their own land acknowledgment statements on their syllabi. But the University did not investigate or punish them because those statements, unlike that of Professor Reges, were consistent with the University's viewpoint.

7.      In addition, the University opened a protracted disciplinary investigation into Professor Reges in which the Defendants assembled a disciplinary committee to investigate and advise Dean Albritton in deciding whether to further punish or even terminate Professor Reges because of the views he expressed in his dissenting statement.

8.      After a nearly year-long disciplinary investigation, Dean Albritton concluded that she would not further punish Professor Reges at that time. However, she warned him that if he continues to include his land acknowledgment in his course syllabi, and it leads to "further" disruption, she would punish him. She warned him that she would "have no option but to conclude" that his "intent is to cause deliberate offense" and that she would "view that as an intentional violation" of the University's discrimination and harassment policy. This ongoing specter of punishment, up to and including termination, had and continues to have a chilling effect on Reges's speech as a public university faculty member.

AMENDED
COMPLAINT – Page 3

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

9.      The University has taken these actions despite settled law that holds public university faculty have a First Amendment right to speak on matters of public concern in their teaching and research because academic freedom is "a special concern of the First Amendment[.]" *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). Faculty must remain free to express these views to fulfill their duties to educate and challenge students, and to avoid a "pall of orthodoxy" on campus. *Id.*

10.     The value and utility of land acknowledgment statements exemplify such a matter of public debate. Defendants asked their faculty to wade into this controversy by including a land acknowledgment statement in their syllabi, then unconstitutionally discriminated against Professor Reges for swimming against the current and offering a dissenting viewpoint. They did so by retaliating against him through the creation of a "shadow" class section and subjecting him to a disciplinary investigation under vague and overbroad university policies.

11.     Specifically, Defendants alleged Reges violated various University policies, including one that purports to ban any speech or conduct that is deemed "unacceptable or inappropriate," regardless of whether it rises to the level of unlaw- ful discrimination or harassment. Judged in relation to its legitimate sweep, which is minimal, this policy is unconstitutionally overbroad and vague.

12.     Academic freedom is of "transcendent value" to our constitutional tradition. *Id.* To safeguard that value, faculty like Professor Reges must remain free to express their views without retaliation or censorship.

AMENDED
COMPLAINT – Page 4

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

## JURISDICTION AND VENUE

2      13.     This action arises under the First and Fourteenth Amendments to the

3  United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and

4  1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

5      14.     Plaintiff seeks declaratory and injunctive relief against Defendants in

6  their official capacities, including a ruling that Defendants are retaliating against

7  him for protected academic speech in violation of his First Amendment rights.

8  Plaintiff also seeks to enjoin Defendants from pursuing any disciplinary action

9  based on his use of a dissenting land acknowledgment statement in his syllabus and

10  from enforcing the University's unconstitutionally vague and overbroad policy

11  governing faculty expression. Finally, Plaintiff seeks compensatory damages

12  against Defendants Director Balazinska, Vice Director Grossman, and Dean

13  Allbritton in their individual capacities for violating his clearly established right to

14  speak freely in his teaching and academic writing.

15      15.     Accordingly, this Court has jurisdiction over these federal claims under

16  28 U.S.C. §§ 1331 and 1343.

17      16.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1)

18  because at least one of the Defendants resides in this District, and because all

19  Defendants are residents of the State of Washington.

20      17.     Venue is also proper in this district under 28 U.S.C. § 1391(b)(2)

21  because a substantial part of the events giving rise to Professor Reges's claims

22

23  AMENDED
   COMPLAINT – Page 5

24

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

occurred in King County, Washington, which is located in the Seattle Division of the Western District of Washington.

**THE PARTIES**

**Plaintiff**

18.     Plaintiff Stuart Reges is a citizen of the United States and a resident of Seattle, Washington.

19.     For the last four decades, Professor Reges has focused on introductory instruction in computer science and programming, developing and running introductory programs at several universities.

20.     Since 2004, Professor Reges has been a faculty member at the University of Washington in the Paul G. Allen School of Computer Science & Engineering (Allen School).

21.     In addition to being an acclaimed teacher, Professor Reges has a long history as an advocate for free speech, especially for the right to express dissenting viewpoints. He has spoken publicly in local and national media about his struggle with identity and mental health as a gay man in the 1970s and 1980s. And when he was a professor at Stanford University in the early 1990s, he publicly criticized the War on Drugs. Stanford responded to this criticism by firing him.

22.     At all times relevant to this Complaint, the University of Washington employed Reges as a Principal Lecturer, or Teaching Professor, in the Allen School.

23.     Professor Reges is suing in order to vindicate his constitutional rights.

AMENDED
COMPLAINT – Page 6

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1   **Defendants**

2   24.     Defendant Ana Mari Cauce is the President of the University of

3   Washington "authorized to act for the Board of Regents in formulating, prescribing

4   and issuing rules, regulations, and executive orders not inconsistent with the

5   Bylaws, Standing Orders, Regent Policies, and other orders of the Board and

6   applicable state law for the immediate government of the University." Bd. of

7   Regents Governance, Ch. 1. Defendant Cauce has been President of the University

8   of Washington since 2015. Twice during her tenure (in July of 2016 and August of

9   2020) she renewed "Executive Order 31," the source of the University's authority to

10   impose disciplinary or corrective action for conduct deemed "unacceptable" or

11   "inappropriate." She is sued in her official capacity.

12   25.     Defendant Magdalena Balazinska is the Director of the Paul G. Allen

13   School of Computer Science & Engineering at the University of Washington. She

14   ordered Professor Reges to remove his land acknowledgment statement from his

15   syllabus; created a "shadow" class section that met at the same time as Professor

16   Reges's class; and initiated the disciplinary investigation of Professor Reges for his

17   statement, all in violation of his constitutional rights. She is sued in both her official

18   and individual capacities.

19   26.     Defendant Dan Grossman is the Vice Director of the Paul G. Allen

20   School of Computer Science & Engineering at the University of Washington. By

21   participating in Professor Reges's first disciplinary meeting, creating a "shadow"

22   class section that met at the same time as Professor Reges's class, and assisting in

23   AMENDED
     COMPLAINT – Page 7

24

the disciplinary investigation into Professor Reges, Vice Director Grossman is responsible for violating Professor Reges's constitutional rights. He is sued in both his official and individual capacities.

27.     Defendant Nancy Allbritton is the Dean of the College of Engineering at the University of Washington. She oversees the Allen School, which is situated within the College of Engineering. She charged Professor Reges with a disciplinary violation under Faculty Code Section 25-71, which governs alleged violations of University policy and empowers the Dean to file formal statements of charges that can lead to dismissal, reduction of salary, or suspension. Dean Allbritton also assembled a faculty disciplinary committee that reviewed those charges. Upon conclusion of the committee's review, Dean Allbritton warned Professor Reges that if he continued to include his dissenting land acknowledgment statement in his course syllabi and it causes what she deems "further" disruption, she would conclude he intentionally violated University discrimination and harassment policy. She is sued in both her official and individual capacities.

## FACTUAL ALLEGATIONS

28.     In 2011, the University of Washington awarded Professor Reges the Distinguished Teaching Award, given to only seven professors each year based on their subject matter expertise; enthusiasm and innovation in teaching and learning; "ability to inspire independent and original thinking in students"; innovations in course and curriculum design; and mentoring.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

29.     Professor Reges regularly receives very positive reviews from his students.

***Professor Reges Challenges the University of Washington's Prescribed Land Acknowledgment Statement in His Syllabus.***

30.     In a document called the "Allen School best practices for inclusive teaching," the Allen School suggests professors "make [their] course syllabus more inclusive" by including an "Indigenous Land Acknowledgment Statement."

31.     The Allen School recommends that professors include the following "example" land acknowledgment statement: "The University of Washington acknowledges the Coast Salish peoples of this land, the land which touches the shared waters of all tribes and bands within the Suquamish, Tulalip and Muckleshoot nations."

32.     The University Office of Minority Affairs and Diversity's webpage states that the University's Tribal Liaison developed the land acknowledgment statement "over the course of several years" and that among other uses it "is spoken by [University] leadership during events to acknowledge" the view "that our campus sits on occupied land."

33.     On December 8, 2021, a faculty member emailed an article titled *'Land Acknowledgments' Are Just Moral Exhibitionism* to the Allen School's "diversity-allies" listserv.

34.     Professor Reges replied to the email stating he had been "thinking a lot about land acknowledgments" and offering to organize a group discussion on the topic. He also shared the land acknowledgment statement he intended to include in

AMENDED
COMPLAINT – Page 9

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

his syllabus for his upcoming Winter quarter 2022 class: "I acknowledge that by the labor theory of property the Coast Salish people can claim historical ownership of almost none of the land currently occupied by the University of Washington."

35.     Subsequently, Professor Reges included this land acknowledgment statement on the syllabus for his Computer Science and Engineering 143: Computer Programming II class, which the Allen School assigned him to teach during the Winter 2022 quarter.

36.     Other computer science professors also included modified land acknowledgment statements on their syllabi. These statements were consistent with, but not always identical to, the Allen School's recommended statement.

37.     On January 4, 2022, the day after Professor Reges's Computer Science and Engineering 143 class met for the first time, Defendant Balazinska, Director of the Allen School, sent Professor Reges an email ordering him to remove the statement from his syllabus because it was "offensive" and created a "toxic environment."

38.     In his reply email, Professor Reges refused to remove the statement, and questioned why the Allen School was ordering him to delete his dissenting land acknowledgment statement from his syllabus while allowing other faculty to include modified statements in their syllabi that were more consistent with the University's recommended statement.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

39.    Director Balazinska responded to Professor Reges by stating she would "ask any instructor who uses a land acknowledgment other than the [University of Washington] land acknowledgment to remove or replace it."

40.    Director Balazinska then unilaterally removed Professor Reges's dissenting land acknowledgment statement from the syllabus as it appeared on the University's class portal, an online site where students can find syllabi, class materials, and assignments.

41.    Director Balazinska also emailed Professor Reges's students to apologize for his "offensive" statement, and to provide three ways students could file complaints against Professor Reges.

42.    Despite Director Balazinska's response, other faculty at the Allen School continue to include land acknowledgment statements in their syllabi that differ from the University's own statement, so long as they express a viewpoint consistent with the University's recommended version.

43.    Thus, professors who agree with the University's viewpoint are free to include or to modify the recommended land acknowledgment statement, but faculty like Professor Reges who express a dissenting viewpoint are not.

44.    In her email response, Director Balazinska also claimed that Professor Reges's syllabus was "causing a disruption to instruction in [his] class."

45.    Director Balazinska did not provide Professor Reges any examples of disruption to instruction in his class.

AMENDED
COMPLAINT – Page 11

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

46.     In fact, no actual disruption of Professor Reges's class occurred. Professor Reges taught his first class of the Winter quarter on January 3, 2022, without incident and continued to teach nearly 400 students through the end of the quarter on March 18, 2022.

47.     During the Winter 2022 quarter, Professor Reges also helped to mentor a group of students who won a computer programming contest for the first time in several years.

***Defendants Punish Professor Reges for His Use of the Dissenting Land Acknowledgment Statement.***

48.     On January 4, 2022, Defendant Balazinska sought to initiate a disciplinary process against Professor Reges under Faculty Code Section 25-71, which establishes a procedure for disciplining faculty following an allegation that the faculty member has violated University policy. This procedure "might lead to dismissal, reduction of salary, or suspension for more than one quarter." Defendant Balazinska contacted the University of Washington College of Engineering senior director of human resources to determine next steps if Professor Reges did not agree to remove his dissenting statement from his syllabus. In response, the senior director of human resources prepared a draft notification letter under Section 25-71 that day alleging that Professor Reges had violated multiple University policies.

49.     On January 7, 2022, Director Balazinska announced to all students in Professor Reges's Computer Science and Engineering 143 class section that they may switch into a new "shadow" class section, which would meet at the same time as Professor Reges's class section.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

50.     The Allen School assigned a different professor to instruct this "shadow" class section. During the Winter 2022 quarter, that professor instructed the class using recorded lectures instead of live class sessions.

51.     In a January 9, 2022, email to a news network, Director Balazinska criticized Professor Reges's "invocation of Locke's labor theory of property" in his syllabus on the asserted ground that it "dehumanizes and demeans Indigenous people." Jason Rantz, *Rantz: UW administrator goes to war over Seattle professor's hilarious land acknowledgment joke*, KTTH (Jan. 9, 2022), https://mynorthwest.com/3301858/rantz-uw-admin-war-seattle-professors-land-joke/ [https://perma.cc/EKP9-A4L4].

52.     Defendant Balazinska created the "shadow" Computer Science and Engineering 143 class section to punish Professor Reges for including his land acknowledgment statement in his syllabus.

53.     Approximately 170 students out of over 500 students (or around 30% of Professor Reges's class) switched to the new "shadow" class section.

54.     Professor Reges continued teaching the other 70% of his students who remained in his class through the end of the Winter 2022 quarter without disruption or any other issues. He successfully administered the final exam and distributed grades.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

55.     On January 11, 2022, the Foundation for Individual Rights and Expression (FIRE)[1] sent President Cauce a letter urging the University to ensure that faculty are free to decide whether and how to address the topic of land acknowledgments in their syllabi and making clear that punishing faculty for differing viewpoints by investigating them and creating new course sections violates the First Amendment.

56.     Despite a flurry of edits and comments, by some point in January or February 2022, Defendant Balazinska chose not to finalize or send the draft version of the January 2022 25-71 letter, believing that the matter had been resolved by the creation of the "shadow" section of Computer Science and Engineering 143. She would revisit that decision after February 23, 2022.

57.     On February 23, 2022, Professor Reges sent an email to the Allen School's "diversity-allies" listserv, which is available to all students and faculty in the Allen School, in which he expressed his intent to again include his own version of a land acknowledgment statement on his Spring quarter syllabus.

58.     University administrators monitor the Allen School's "diversity-allies" listserv and review incoming messages before they are distributed to recipients.

59.     Defendant Balazinska reviewed Professor Reges's February 23, 2022, email and allowed it to pass through to the Allen School's "diversity-allies" listserv.

---

[1] Formerly known as the Foundation for Individual Rights in Education, FIRE has since expanded its mission to include protecting expressive rights outside of higher education.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

60.     On March 2, 2022, Director Balazinska sent Professor Reges a notice letter under Faculty Code Section 25-71 that called him to a meeting to discuss allegations that "may, if true, constitute a violation of" several University policies, including University of Washington Executive Order 31.

61.     Executive Order 31 provides "the University retains the authority to discipline or take appropriate corrective action for any conduct that is deemed unacceptable or inappropriate, regardless of whether the conduct rises to the level of unlawful discrimination, harassment, or retaliation."

62.     Executive Order 31 applies to all members of the University of Washington community, including academic personnel and students.

63.     The notice letter cited three broad allegations against Reges  relating to his land acknowledgment statement. The letter cited: (1) Professor Reges's land acknowledgment statement; (2) Professor Reges's email to the "diversity-allies" listserv that included his land acknowledgment statement; and (3) an allegation from representatives of the student employee union that his actions violated their collective bargaining agreement with the University.

64.     On March 8, 2022, Professor Reges met with Defendants Director Balazinska and Vice Director Dan Grossman.

65.     During the March 8 meeting, Director Balazinska informed Professor Reges of the allegations against him and that she expected faculty to "interact respectfully" and create a "welcoming," "professional," and "positive" environment.

AMENDED
COMPLAINT – Page 15

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

66.     At that meeting, Director Balazinska also said if Professor Reges continued to use his land acknowledgment statement, she expected to receive more complaints, and she considered those complaints to be a disruption to the delivery of instruction.

67.     During the meeting, Professor Reges also asked Director Balazinska to confirm that he would not be in violation of University policy if he included the University's *own* land acknowledgment on future syllabi. Director Balazinska could not confirm this.

68.     Director Balazinska also indicated that if students were to complain about him including the University's land acknowledgment statement on his syllabus, Professor Reges may be in violation of University policy.

69.     Director Balazinska also could not confirm whether any of Professor Reges's students submitted the complaints, or whether they originated from other University students who heard about the controversy.

70.     On March 9, 2022, Director Balazinska provided Professor Reges with a proposed resolution to the charges against him, which is the first step to resolving alleged faculty policy violations under University of Washington Faculty Code 25-71.B. The proposed resolution would have required Reges to, among other things, "interact with peers, staff, and students in a way that demonstrates respect toward all" and "create[] and maintain[] a professional, positive, and welcoming environment."

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

71.     The proposed resolution Director Balazinska provided would also require Professor Reges to "agree not to include . . . [his] version of the land acknowledgment that was published in the [Computer Science and Engineering] 143 Winter 2022 online course syllabus in . . . future course syllabi."

72.     Reges declined the proposed resolution the next day.

73.     On March 18, 2022, Nancy Allbritton, Dean of the University of Washington College of Engineering, emailed Professor Reges to set up a meeting "pursuant to [Faculty Code] Section 25-71.D," which is the second step in the faculty disciplinary process.

74.     University Faculty Code Section 25-71.D governs "alleged violation[s]" of University policy and empowers the Dean to determine whether "the alleged violation is of sufficient seriousness to justify consideration of the filing of a formal statement of charges that might lead to dismissal, reduction of salary, or suspension for more than one quarter."

75.     On March 25, 2022, Professor Reges, represented by FIRE Staff Attorney Katlyn Patton, met with Dean Allbritton as part of the second step in the faculty disciplinary process.

76.     At the March 25, 2022, disciplinary meeting, Dean Allbritton asked Reges to speculate as to how students felt about his land acknowledgment statement, and why the students who moved into the "shadow" class section chose to do so.

AMENDED
COMPLAINT – Page 17

77. Professor Reges reiterated that he continued to teach hundreds of students who remained in his class section through the end of the Winter 2022 quarter without issue or disruption, despite the opportunity to join the "shadow" class.

78. Dean Allbritton concluded the meeting by telling Professor Reges she aimed to make the best decision possible concerning the investigation, but could not guarantee a time period in which she would make that decision or a date that the investigation would conclude.

79. Professor Reges followed through and included his dissenting land acknowledgment statement on his Spring 2022 class syllabi for Computer Science and Engineering 142 and a new C++ programming course for students who are not Computer Science majors.

80. Director Balazinska and the Allen School again scheduled a competing section of Professor Reges's Computer Science and Engineering 142 class for the Spring 2022 quarter.

81. On April 21, 2022, Dean Allbritton notified Professor Reges she intended to proceed with formal charges against him.

82. Dean Allbritton also told Professor Reges she would convene a special investigating committee to "look into this matter" under University Faculty Code Section 25-71.D.3 and that she was in the process of selecting the members of the committee.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

83.     On May 19, 2022, Dean Allbritton told Professor Reges she was still "in the process of assembling the committee."

84.     On June 9, 2022, Dean Allbritton told Professor Reges that the "process of assembling the committee has taken some time," that the University has "identified potential members" of the committee, and it is "in the process of gathering their acceptance[s] to serve on the committee."

85.     By July 11, 2022, Dean Allbritton had identified three faculty members to serve on the special investigating committee.

86.     On July 11, 2022, Dean Allbritton formally charged the special investigating committee to begin its investigation of Professor Reges. The charge letter was based solely upon Professor Reges's dissenting land acknowledgment statement and, at most, five written complaints from faculty, staff, and students reacting to it. Dean Allbritton described the charge letter to the special investigating committee as "confidential" and did not provide a copy to Professor Reges at that time.

87.     Professor Reges commenced this lawsuit on July 13, 2022.

88.     On August 25, 2022, Dean Allbritton told Professor Reges that the special investigating committee's activities "have been placed on hold," without providing a reason.

89.     When Professor Reges asked Dean Allbritton for her reason for pausing the special investigating committee's work, she declined to provide one.

AMENDED
COMPLAINT – Page 19

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

90.     On September 28, 2022, the senior director of human resources wrote to the members of the special investigating committee, copying Dean Allbritton, to inform them that the investigation was no longer on hold and to ask them to report orally to the Dean as soon as possible.

91.     Neither Dean Allbritton nor any other University administrator informed Professor Reges that the special investigating committee was resuming its investigation of him.

***Defendants Continue to Threaten Professor Reges with Disciplinary Action for His Inclusion of the Dissenting Land Acknowledgment Statement in His Syllabus.***

92.     On June 13, 2023, eleven months after the investigation into Professor Reges began, Dean Allbritton wrote to inform him of the investigation's conclusion and to notify him of "the determinations made as a result of that process."

93.     Dean Allbritton's letter claims that Professor Reges's dissenting land acknowledgment statement "created an immediate and significant disruption to the University teaching environment." To support that conclusion, Dean Allbritton vaguely cites "numerous student and staff complaints," without providing the number of complaints.

94.     Dean Allbritton wrote that she would not impose further sanctions, but "if [Professor Reges] include[s] this statement in the future, and if that inclusion leads to further disruption, I will have no option but to . . . view that as an intentional violation of Executive Order 31, as well as Section 24-33 of the Faculty Code."

AMENDED
COMPLAINT – Page 20

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

95.     Dean Allbritton's reference to "disruption" means that as little as a single complaint from a student or staff member about the content or viewpoint of Professor Reges's dissenting land acknowledgment statement could be enough to resume the disciplinary process.

96.     Dean Allbritton, in her letter, claimed Professor Reges's dissenting land acknowledgment statement caused complaints and believes the statement "will likely continue to do so when included in a purely academic setting, such as on a syllabus or in connection with the teaching of computer science courses."

97.     The only way Professor Reges can avoid further adverse employment action is to remove his dissenting land acknowledgment statement from his syllabi.

98.     As with the Winter 2022 quarter, Professor Reges taught his Spring 2022, Fall 2022, Winter 2023, and Spring 2023 classes without a single in-class disruption.

99.     Professor Reges received positive student reviews for the Spring 2022, Fall 2022, Winter 2023, and Spring 2023 quarters, including in response to the question of whether students feel welcomed and respected in his class.

100.     Professor Reges was and remains able to teach his classes notwithstanding his decision to challenge the University's land acknowledgment statement by including a dissenting statement on his syllabus.

101.     Professor Reges is scheduled to teach Computer Science and Engineering 143 again during the Fall 2023 and Spring 2024 quarters.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

102.    Professor Reges intends to continue to exercise his expressive right to challenge the University's land acknowledgment by including his dissenting land acknowledgment statement on his Fall 2023, Winter 2024, and Spring 2024 syllabi.

***Defendants Withheld Professor Reges's 2022–23 Salary Increase During the Pendency of Their Disciplinary Process Against Him.***

103.    On June 7, 2022, Dean Allbritton informed Defendant Balazinska and other College of Engineering directors and chairs that President Cauce and the University board had authorized a 3.25 percent "merit increase" to eligible faculty members' salaries, effective September 1, 2022.

104.    Defendants deemed Professor Reges eligible for the merit increase. However, Defendants held his merit increase "in abeyance" during the pendency of the Faculty Code 25-71 disciplinary process.

105.    Before Dean Allbritton's June 13, 2023 letter to Professor Reges closing the disciplinary process, no University administrator informed Professor Reges that he was approved for a merit increase or that the University withheld it during the pendency of the disciplinary process.

106.    Dean Allbritton's letter informed Professor Reges that the University held his merit increase in abeyance, automatically, in accordance with University policy. However, Defendants are unable to identify any memorialization of that policy. Neither President Cauce's authorization letter nor the University's Office of Planning and Budgeting Merit Process Guide website capture it or identify a relevant policy document.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

107.    Rather, Dean Allbritton's letter of June 13, 2023, simply informed Professor Reges that his merit "will be reinstated" and he would receive the merit increase that had been withheld.

108.    Upon information and belief, Professor Reges received a portion of his 2022–23 merit pay increase on July 21, 2023.

109.    To date, no University administrator has informed Professor Reges of when he would receive his 2022–23 merit increase, or whether it would be provided with interest.

***Defendants' Actions Deprived Professor Reges of His Rights, Causing Financial, Emotional, and Reputational Damage.***

110.    As a direct and proximate cause of Defendants' actions, Professor Reges has suffered irreparable injury, including being deprived of his constitutional rights to freedom of speech and due process.

111.    Defendants' actions—creating a "shadow" class and mounting a protracted investigation that carried the threat of termination, and issuing a threat of further punishment if Professor Reges continues to engage in similar protected speech—constitute adverse actions that are "reasonably likely to deter" a reasonable employee from engaging in protected activity under the First Amendment. *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003); *see also Levin v. Harleston*, 966 F.2d 85, 88–89 (2d Cir. 1992).

112.    Because of Defendants' disciplinary process, Defendants withheld Professor Reges's 2022–23 3.25% merit pay increase.

AMENDED
COMPLAINT – Page 23

113.    Defendants' adoption and enforcement of overbroad policies restricting faculty speech rights have caused Professor Reges and other University of Washington faculty and students not before this Court irreparable harm because the prohibition on "unacceptable" and "inappropriate" expression covers a broad universe of constitutionally protected expression judged in relation to its *legitimate* sweep—actionable harassment or retaliation, as properly legally defined. The policy chills both Professor Reges and other faculty from exercising their right to engage in expression on matters of public concern.

114.    The terms "unacceptable" and "inappropriate" as included in the policy are undefined and carry no reasonably objective plain meaning, and are therefore impermissibly vague.

115.    Defendants' threat of future enforcement of University policies against Professor Reges presents an ongoing injury, especially viewed in light of their recent enforcement of those policies against him, because it creates a continuing risk of tarnishing Professor Reges's professional reputation and includes the threat of punishment, up to and including termination, which would cause him additional financial, emotional, and reputational harm.

116.    Professor Reges has experienced damages to his reputation and significant emotional distress as a result of Defendants' unconstitutional actions. The ongoing threat of future enforcement of University policies leaves Professor Reges in an uncomfortable and untenable limbo, both professionally and personally. While he remains employed, administrators have effectively isolated him from the

AMENDED
COMPLAINT – Page 24

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

community in which he has worked for 18 years, causing him significant emotional distress.

## FIRST CAUSE OF ACTION
### Violation of Plaintiff's First Amendment Rights
### (Against All Individual-Capacity Defendants)

117.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

118.   It is clearly established under the First Amendment that "viewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or the perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

119.   It is also clearly established that "teaching and academic writing that are performed 'pursuant to the official duties' of a teacher and professor" are constitutionally protected expression if they involve matters of public concern and the professor's First Amendment interests outweigh the university's need for efficiency as an employer. *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014).

120.   The University of Washington recognizes professors' clearly established right "to discuss all relevant matters in teaching" in its own policies. University Faculty Code Section 24-33, last revised Jan. 9, 2014, https://www. washington.edu/admin/rules/policies/FCG/FCCH24.html#:~:text=Academic%20free dom%20is%20the%20freedom,shared%20governance%20and%20the%20general.

AMENDED
COMPLAINT – Page 25

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

121.    Faculty at colleges and universities construct their syllabi and course content to both instruct and challenge students to consider diverse viewpoints—these are integral parts of teaching.

122.    By inviting faculty to include land acknowledgment statements on their syllabi, the Allen School implicitly recognizes that speech about the history of the University of Washington's land (and competing moral or legal claims to it) falls within the permissible faculty uses of syllabi.

123.    Professor Reges challenged his students and fellow faculty to think about the utility and performative nature of land acknowledgment statements by including his own land acknowledgment statement on his syllabus.

124.    Professor Reges's land acknowledgment statement on his syllabus constitutes expression protected by the First Amendment, including the right to academic freedom.

125.    Professor Reges's land acknowledgment statement did not interfere with his duties as a lecturer at the University. He continued to instruct hundreds of students in his computer science class section, and recently led students to a win in a coding competition.

126.    Professor Reges expressed his view on land acknowledgment statements to his students, at the University's invitation, in the course of his teaching.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

127.    Defendants discriminated against Professor Reges on the basis of viewpoint when they required him to repeat only the University's institutional viewpoint, or to remain silent on this controversial public issue.

128.    Defendants further discriminated against Professor Reges on the basis of viewpoint when they disciplined him because he included a statement on his syllabus that expressed a view the University and its administrators did not like, and which Defendant Balazinska characterized as "offensive" and "inappropriate."

129.    As described above, Defendant Balazinska created a "shadow" class section of Professor Reges's Computer Science and Engineering 143 course and Defendants Balazinska, Grossman, and Allbritton are likely to pursue additional disciplinary action against Reges that carries with it the threat of termination if he continues to use his dissenting land acknowledgment statement on his syllabus. Defendants' actions would chill a person of ordinary firmness from engaging in further protected activity. *See Canatella v. California*, 304 F.3d 843, 853 (9th Cir. 2002).

130.    Defendants further discriminated against Professor Reges's speech by withholding the merit increase to his salary during the pendency of their disciplinary process against him for his dissenting land acknowledgment statement.

131.    As a direct and proximate result of Defendants' viewpoint-discriminatory actions, Professor Reges has suffered irreparable injury, including being deprived of his constitutional right to free expression.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

132.    Professor Reges has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment rights.

133.    As a direct and proximate result of Defendants' actions, Professor Reges has suffered emotional distress and injury to his reputation. The University has isolated him from the campus and departmental communities, placed his livelihood in jeopardy, and left the threat of termination hanging over his head for nearly a year. Dean Allbritton's letter dated June 13, 2023, threatens future discipline, up to and including termination, should Professor Reges continue to include his dissenting land acknowledgment in future course syllabi.

134.    As a direct and proximate result of Defendants' actions described above, Professor Reges was and continues to be deprived of his constitutional rights. As a legal consequence of Defendants' violation of Plaintiff's First Amendment rights, which are irreparable injuries *per se*, Professor Reges is entitled to compensatory damages and the reasonable costs of this lawsuit, including reasonable attorneys' fees. Professor Reges is seeking monetary damages against Defendants Balazinska, Grossman, and Allbritton in their individual capacities.

## SECOND CAUSE OF ACTION
### First Amendment Retaliation Under 42 U.S.C. § 1983
### (Against All Individual-Capacity Defendants)

135.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

AMENDED
COMPLAINT – Page 28

136.   It is clearly established under the First Amendment that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983).

137.   As described above, Defendant Balazinska created a "shadow" class section of Professor Reges's Computer Science and Engineering 143 course, in direct response to his constitutionally protected land acknowledgment statement.

138.   As described above, Defendants Balazinska, Grossman, and Allbritton initiated, supported, and oversaw a disciplinary investigation into Professor Reges and threatened him with future sanction for allegedly violating University policy based on his constitutionally protected land acknowledgment statement.

139.   By creating the "shadow" class section and investigating Professor Reges for his protected speech, Defendants unconstitutionally took a calculated adverse employment action against Professor Reges in retaliation for his protected speech. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Demers*, 746 F.3d at 406; *Levin*, 966 F.2d at 88.

140.   Defendants Balazinska, Grossman, and Allbritton violated Professor Reges's clearly established First Amendment rights as a university professor by disciplining him for expressing a viewpoint in the course of his teaching that dissented from the University's prescribed viewpoint on a controversial public issue.

141.   Defendants further retaliated against Professor Reges by withholding his 2022–23 salary increase during the pendency of their disciplinary process.

AMENDED
COMPLAINT – Page 29

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

142.    As a direct and proximate result of Defendants' actions as described above, Professor Reges was and continues to be deprived of his constitutional rights. As a result of Defendants' violation of Plaintiff's First Amendment rights, which are irreparable injuries *per se*, he is entitled to compensatory damages and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**First Amendment Retaliation Under 42 U.S.C. § 1983**
**(Against All Defendants in Their Official Capacities)**

143.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

144.    As described above, Defendants Balazinska, Grossman, and Allbritton created a "shadow" class section of Professor Reges's Computer Science and Engineering 143 course in reaction to his constitutionally protected land acknowledgment statement. In doing so, Defendants unconstitutionally took adverse employment action against Professor Reges in retaliation for his protected speech. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Demers*, 746 F.3d at 406; *Levin*, 966 F.2d at 88.

145.    Defendants Balazinska, Grossman, and Allbritton also unconstitutionally engaged in adverse employment action against Professor Reges by investigating him, threatening future discipline against him, and withholding his 2022–23 salary increase because his constitutionally protected land acknowledgment statement allegedly violated a vague and overbroad University policy.

AMENDED
COMPLAINT – Page 30

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

146.   Professor Reges has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment rights.

147.   As a direct and proximate result of Defendants' actions as described above, Professor Reges was and continues to be deprived of his constitutional rights. As a result of Defendants' violations of Plaintiff's First Amendment rights, which are irreparable injuries *per se*, Professor Reges is entitled to injunctive relief, including but not limited to mandating that Defendants cease their threat of future discipline against Professor Reges for his protected speech.

148.   Professor Reges is also entitled to a permanent injunction against Defendants creating "shadow" class sections in retaliation for his protected expression. Professor Reges is further entitled to a declaration that Defendants' investigating him because of his land acknowledgment statement and creating a "shadow" section of his course were unlawful retaliation for his protected expression.

149.   Defendant Reges is also entitled to a permanent injunction against Defendants withholding any unpaid portion of his 2022–23 merit increase or future salary increases because of any disciplinary process initiated due to his dissenting land acknowledgment statement.

AMENDED
COMPLAINT – Page 31

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

## FOURTH CAUSE OF ACTION
### Facial Overbreadth Challenge to Executive Order 31
### (Against President Cauce in Her Official Capacity)

150.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

151.    A regulation violates the First Amendment for overbreadth if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotations and citations omitted).

152.    Under University of Washington Executive Order 31, "the University retains the authority to discipline or take appropriate corrective action for any conduct that is deemed *unacceptable* or *inappropriate, regardless of whether the conduct rises to the level of unlawful discrimination, harassment, or retaliation*." (Emphasis added).

153.    Executive Order 31 is unconstitutional on its face because it results in a substantial number of unconstitutional applications, allowing the University and its administrators to discipline faculty like Professor Reges for speech that is protected by the First Amendment, but expresses a viewpoint that the University wishes to suppress.

154.    For example, the policy would support discipline against a student or faculty member who, during a meeting, made a single offhand remark deemed "inappropriate," even if that remark was not harassing, discriminatory, or targeted at any individual. It would also support discipline against a student or faculty

AMENDED
COMPLAINT – Page 32

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

member who posted an "unacceptable" tweet criticizing the university president or another official for their position on a public issue.

155.    The policy's legitimate sweep prohibits discrimination, harassment, and retaliation, as properly defined by law, which are unprotected by the First Amendment. *See, e.g.*, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999) (defining actionable harassment in the K–12 context as conduct that is "so *severe*, *pervasive*, and *objectively* offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities" (emphasis added)).

156.    But by permitting "discipline" and "corrective action" against those whose speech University administrators deem "unacceptable" or "inappropriate," even when it does not meet the legal definition of discrimination, harassment, or retaliation, Executive Order 31 permits a broad range of unconstitutional applications in violation of the First Amendment, as described above.

157.    As a direct and proximate result of Executive Order 31, speakers in the University community, including Professor Reges, have suffered irreparable injury, including being deprived of their constitutional rights to free expression. *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973).

158.    Professor Reges has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing harm to his First Amendment rights.

AMENDED
COMPLAINT – Page 33

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

159.    Without declaratory and injunctive relief from this Court, the
University's unconstitutional actions will continue, and Professor Reges and other
speakers in the University community will suffer irreparable harm indefinitely.

160.    As a consequence of the University and President Cauce's violation of
Professor Reges's and all University of Washington students' and faculty members'
First Amendment rights, Professor Reges is entitled to declaratory and injunctive
relief declaring Executive Order 31 unconstitutional and enjoining its enforcement.

**FIFTH CAUSE OF ACTION**
**Facial Vagueness Challenge to Executive Order 31**
**(Against President Cauce in Her Official Capacity)**

161.    Plaintiff re-alleges and incorporates by reference each and every
allegation set forth in the preceding paragraphs of this Complaint.

162.    A regulation violates the Due Process clause of the Fourteenth
Amendment for vagueness if a person of ordinary intelligence cannot distinguish
between permissible and prohibited conduct, and when there are no explicit stan-
dards to prevent arbitrary and capricious application. *Grayned v. City of Rockford*,
408 U.S. 104, 108 (1972); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 555 (9th
Cir. 2004).

163.    Under Executive Order 31, "the University retains the authority to
discipline or take appropriate corrective action for any conduct that is deemed
*unacceptable* or *inappropriate, regardless of whether the conduct rises to the level of
unlawful discrimination, harassment, or retaliation.*" (Emphasis added).

AMENDED
COMPLAINT – Page 34

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

164.    Executive Order 31 does not define "unacceptable" or "inappropriate," and those terms do not carry with them any reasonably objective plain meaning.

165.    Executive Order 31 is unconstitutional on its face because it is so vague as to provide no basis for clear and consistent application.

166.    For example, Director Balazinska could not even confirm that Professor Reges could safely include the University's *own* land acknowledgment statement on his syllabus because if students complain that could mean Professor Reges violated the policy.

167.    Executive Order 31 is unconstitutional on its face because it is so vague that it authorizes arbitrary, capricious, and viewpoint-discriminatory application, and fails to provide people of ordinary intelligence a reasonable opportunity to understand what expression is "unacceptable" or "inappropriate."

168.    The denial of constitutional rights is an irreparable injury *per se*, and entitles the Plaintiff to injunctive relief. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

169.    Professor Reges has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his rights under the First and Fourteenth Amendments.

170.    Without declaratory and injunctive relief from this Court, the University's unconstitutional actions will continue, and Professor Reges and other speakers in the University community will suffer irreparable harm indefinitely.

171.    As a consequence of the University's and Defendant Cauce's violation of Professor Reges's First and Fourteenth Amendment rights, Professor Reges is

AMENDED
COMPLAINT – Page 35

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

entitled to declaratory and injunctive relief declaring Executive Order 31

unconstitutional and enjoining its enforcement.

## PRAYER FOR RELIEF

WHEREFORE, Professor Reges respectfully requests that this Court enter

judgment against Defendants and issue the following forms of relief:

A.    Compensatory damages against the individual-capacity Defendants in

an amount to be determined by the fact-finder to compensate Professor Reges for

their interference with his rights under the U.S. Constitution and for the significant

emotional distress and reputational harm he has experienced;

B.    Any remaining back pay with interest to compensate Professor Reges

for his withheld 2022–23 merit pay increase that has not been provided as of the

date of this filing;

C.    An injunction prohibiting Defendants from pursuing any investigation

or disciplinary action on the basis of Professor Reges's protected dissenting land

acknowledgment statement in his course syllabi;

D.    An injunction against Defendants from creating future "shadow"

sections of Professor Reges's classes in retaliation for his constitutionally protected

speech;

E.    An injunction prohibiting Defendants from withholding future salary

increases to Professor Reges because of any investigations or other disciplinary

action arising from his ongoing or future inclusion of his dissenting land

acknowledgment statement in his syllabus;

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

F.     An injunction against Defendants from enforcing Executive Order 31 and any other vague, overbroad, or viewpoint discriminatory policy that prevents Professor Reges from including his land acknowledgment statement on his syllabus;

G.     A declaration that Defendants' disciplinary investigation into Professor Reges and threat of future enforcement against him for his constitutionally protected speech on his syllabus violates the First Amendment;

H.     A declaration that Defendants' creating "shadow" sections of Professor Reges's classes violates the First Amendment;

I.     A declaration that Executive Order 31 is unconstitutionally vague and overbroad;

J.     Attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law; and

K.     All further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

DATED:      August 1, 2023

Respectfully submitted,

*/s/ Robert A. Bouvatte*
ROBERT A. BOUVATTE, JR.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511

AMENDED
COMPLAINT – Page 37

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

Tel: (564) 999-4005
bob@rbouvattepllc.com

JAMES M. DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street
Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
jay.diaz@thefire.org

GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Avenue SE
Suite 340
Washington, DC 20003
Tel: (215) 717-3473
gabe.walters@thefire.org
josh.bleisch@thefire.org

*Admitted *Pro Hac Vice*


*Counsel for Plaintiff Stuart Reges*

AMENDED
COMPLAINT – Page 38

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473