1

2

3

4

5

6

7

8

9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

10

STUART REGES,

11

     *Plaintiff,*

12

    v.

13

ANA MARI CAUCE, et al.,

14

    *Defendants.*

CASE NO.    2:22–cv–00964–JHC

NOTE ON MOTION CALENDAR:
September 22, 2023

15

16

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS AMENDED COMPLAINT**

17

JOSHUA T. BLEISCH*
IN Bar No. 35859-53

18

GABRIEL WALTERS*
DC Bar No. 1019272

19

JAMES DIAZ*
VT Bar No. 5014

20

FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION

21

510 Walnut Street, Suite 1250
Philadelphia, PA 19106

22

Tel: (215) 717-3473
josh.bleisch@thefire.org

23

gabe.walters@thefire.org
jay.diaz@thefire.org

24

*Admitted Pro Hac Vice*
*Attorneys for Plaintiff*

ROBERT A. BOUVATTE, JR.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (564) 999-4005
bob@rbouvattepllc.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS ................................................................................ 3

    Defendants Invited Reges and Other Professors to Include an
        "Indigenous Land Acknowledgment," an Inherently Political
        Statement, on Their Syllabi. ........................................................ 4

    When Reges Included a Dissenting Viewpoint on His Syllabus,
        Defendants Threatened His Academic Freedom, His Reputation,
        and His Livelihood. ...................................................................... 5

ARGUMENT .................................................................................................... 9

    I.    Reges' First Cause of Action Sufficiently Alleges Viewpoint
        Discrimination ............................................................................. 11

    II.  Defendants Retaliated Against Reges for His Academic Speech on
        Matters of Public Concern. ......................................................... 15

        A.     Reges' speech is related to scholarship or teaching ................... 16

        B.     Reges' speech satisfies Pickering's balancing test ..................... 19

        C.     Defendants took several adverse employment actions
               against Reges, censoring and chilling his protected
               speech ......................................................................................... 22

        D.     Reges' speech was a substantial or motivating factor for
               UW's adverse employment actions ............................................. 25

    III. Reges' Course Syllabus Is Not Government Speech and Public
        Universities Are Not High Schools. ........................................... 26

    IV. Reges' Fourth Cause of Action Sufficiently Alleges Executive Order
        31 Is Overbroad Because It Gives Defendants Discretion to
        Punish a Substantial Amount of Protected Speech. ................... 29

    V.   Reges' Fifth Cause of Action Sufficiently Alleges Executive Order
        31 Is Vague Because a Reasonable Person Would Not
        Understand What It Prohibits and Because It Risks Arbitrary
        and Discriminatory Enforcement ............................................... 32

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page ii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

CONCLUSION ......................................................................................... 34

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases** **Page(s)**

3

*Abcarian v. McDonald,*
    617 F.3d 931 (7th Cir. 2010) ........................................................................ 18

4

*Adamian v. Jacobsen,*
    523 F.2d 929 (9th Cir. 1975) ........................................................................ 10

5

*Adams v. Trustees of the Univ. of N.C.-Wilmington,*
    640 F.3d 550 (4th Cir. 2011) ........................................................................ 17

6

*Am. Freedom Def. Initiative v. King Cnty.,*
    904 F.3d 1126 (9th Cir. 2018) ................................................................ 12, 14

7

8

*Anthoine v. N. Cent. Cntys. Consortium,*
    605 F.3d 740 (9th Cir. 2010) ........................................................................ 22

9

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ........................................................................................ 14

10

*Berry v. Dep't of Soc. Sers.,*
    447 F.3d 642 (9th Cir. 2006) ................................................................... 14, 15

11

12

*Boos v. Barry,*
    485 U.S. 312 (1988) ...................................................................................... 22

13

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019) ........................................................................ 17

14

15

*Coll. Republicans at S.F. State Univ. v. Reed,*
    523 F. Supp. 2d 1005 (N.D. Cal. 2007) ....................................................... 30

16

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011) ........................................................................ 29

17

18

*Connick v. Myers,*
    461 U.S. 138 (1983) ...................................................................................... 19

19

*Coszalter v. City of Salem,*
    320 F.3d 968 (9th Cir. 2003) ................................................................... 22, 23

20

21

*Dambrot v. Cent. Mich. Univ.,*
    55 F.3d 1177 (6th Cir. 1995) ........................................................................ 33

22

23

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page iv

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

24

*Davis v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999) ................................................................ 31

*DeJohn v. Temple Univ.*,
   537 F.3d 301 (3d Cir. 2008) .................................................. 30

*Demers v. Austin*,
   746 F.3d 402 (9th Cir. 2014) ........................................... 16, 17

*Downs v. L.A. Unified Sch. Dist.*,
   228 F.3d 1003 (9th Cir. 2000) .............................................. 28

*Forsyth Cnty. v. Nationalist Movement*,
   505 U.S. 123 (1992) ................................................................ 22

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998) ................................................ 32

*Free Speech Coal., Inc., et al. v. Colmenero*, No. 1:23-CV-917-DAE,
   2023 WL 5655712 (W.D. Tex. Aug. 31, 2023) ...................... 21

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ......................................................... 16, 17

*Garner v. Amazon, Inc.*,
   603 F. Supp. 3d 985 (W.D. Wash. 2022) ................................. 9

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ......................................................... 32, 33

*Grutter v. Bollinger*,
   539 U.S. 306 (2003) ................................................................ 26

*Hazelwood Sch. Dist. v. Kuhlmeier*,
   484 U.S. 260 (1988) ................................................................ 29

*Healy v. James*,
   408 U.S. 169, 180 (1972) ......................................... 20, 27, 29

*Heim v. Daniel*, --- F.4th ---, No. 22-1135-cv, 2023
   WL 5597837 (2d Cir. Aug. 30, 2023) ..................................... 17

*Hernandez v. City of Phoenix*,
   43 F.4th 966 (9th Cir. 2022) ................................................. 30

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page v

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

*Hill v. Colorado,*
  530 U.S. 703 (2000) ................................................................... 32

*Hulen v. Yates,*
  322 F.3d 1229 (10th Cir. 2003) ................................................ 31

*Iancu v. Brunetti,*
  139 S. Ct. 2294 (2019) ......................................................... 11, 12

*Johnson v. Multnomah Cnty.,*
  48 F.3d 420 (9th Cir. 1995) ...................................................... 19

*Johnson v. Poway. Unified Sch. Dist.,*
  658 F.3d 954 (9th Cir. 2011) ................................................... 28

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,*
  508 U.S. 384 (1993) ................................................................. 15

*Levin v. Harleston,*
  966 F.2d 85 (2d Cir. 1992) ...................................................... 24

*Mahanoy Area Sch. Dist. v. B.L.,*
  141 S. Ct. 2038 (2021) ...................................................... 28, 29

*Matal v. Tam,*
  137 S. Ct. 1744 (2017) .................................................. 11, 12, 14

*McCauley v. Univ. of the V.I.,*
  618 F.3d 232 (3d Cir. 2010) ............................................... 28, 30

*Mendocino Env't. Ctr. v. Mendocino Cnty.,*
  192 F.3d 1283 (9th Cir. 1999) ................................................. 22

*Meriwether v. Hartop,*
  992 F.3d 492 (6th Cir. 2021) .......................................... 17, 18, 19

*Padilla v. Yoo,*
  678 F.3d 748 (9th Cir. 2012) ..................................................... 9

*Papish v. Bd. of Curators of the Univ. of Mo.,*
  410 U.S. 667 (1973) ........................................................... 12, 14

*Peacock v. Duval,*
  694 F.2d 644 (9th Cir. 1982) .................................................. 31

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page vi

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*,
No. 4:22cv304-MW/MAF, 2022 WL 16985720
(N.D. Fla. Nov. 17, 2022) ................................................................ 21, 26, 27

*Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will Cnty.*,
391 U.S. 563 (1968) ........................................................................... 19

*Pickering v. Board of Education*,
391 U.S. 563 (1968) ........................................................................... 14

*Renton v. Playtime Theaters*,
475 U.S. 41 (1986) ............................................................................. 21

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*,
605 F.3d 703 (9th Cir. 2010) ........................................................ 10, 11, 14

*Roe v. City & Cnty. of S.F.*,
109 F.3d 578 (9th Cir. 1997) .............................................................. 20

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ....................................................................... 12, 13

*Shurtleff v. City of Bos.*,
142 S. Ct. 1583 (2022) ................................................................. 26, 27, 28

*Smith v. Goguen*,
415 U.S. 566 (1974). ..................................................................... 32, 33

*Speech First, Inc. v. Cartwright*,
32 F.4th 1110 (11th Cir. 2022) ........................................................... 28

*Terminiello v. City of Chicago*,
337 U.S. 1 (1949) ............................................................................... 11

*Texas v. Johnson*,
491 U.S. 397 (1989) ........................................................................... 11

*United States v. Stevens*,
559 U.S. 460 (2010) ........................................................................... 29

*United States v. Wunsch*,
84 F.3d 1110 (9th Cir. 1996) ............................................................... 33

*Waln v. Dysart Sch. Dist.*,
No. 21-15737, 54 F.4th 1152 (9th Cir. 2022) ...................................... 9, 10

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page vii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

*White v. Lee,*
   227 F.3d 1214 (9th Cir. 2000) .................................................................. 14

**Other Authorities**

Alex Morey, *Bitchassness, hateration, general stankness possible motives
   behind reassignment of San Diego State philosophy professor for teaching
   slurs, 'offensiphobia'* FIRE(March 8, 2022)................................................ 30

Amanda Nordstrom, *Tennessee Tech still investigating, enforcing ban on
   LGBTQ+ and theater groups that hosted drag show,* FIRE (Oct. 31, 2022) .......... 30

Josh Moody, *Land Acknowledgments Spur Controversies,* Inside Higher Ed
   (Feb. 23, 2022) ........................................................................................ 20

Sabrina Conza, *Ferris State cannot punish professor for comedic—and now
   viral—video jokingly referring to students as 'cocksuckers' and 'vectors of
   disease'* (Jan. 17, 2022) .......................................................................... 30

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1         Under Fed. R. Civ. P. 12(b)(6) and Local Rules W.D. Wash. LCR 7, Plaintiff

2    Stuart Reges respectfully submits this Brief in Opposition to Defendants' Motion to

3    Dismiss Amended Complaint.

4    **INTRODUCTION**

5         Professor Stuart Reges accepted his public university employer's invitation to

6    speak about an important public issue, and the First Amendment protects his

7    ability to do so. When administrators did not like what he had to say, they punished

8    him for it. The weak justification Defendants offer cannot overcome the heavy

9    presumption that punishing Reges because of his viewpoint violated the First

10   Amendment.

11        The Paul G. Allen School of Computer Science and Engineering (Allen School)

12   of the University of Washington (UW) encourages professors to include on their

13   syllabi an "Indigenous Land Acknowledgment Statement." According to UW, this

14   statement "is spoken by UW leadership during events to acknowledge that our

15   campus sits on occupied land." Defendants claim these political statements,

16   increasingly common in academia, are merely statements of fact. But their actions

17   against Reges show that UW is imposing a "pall of orthodoxy"[1] on academic

18   expression by insisting that faculty parrot its preferred political viewpoint and

19   retaliating against professors who dare to express a different view.

20        Reges included his own land acknowledgment statement on his syllabi—

21   expressing a dissenting viewpoint on this matter of public concern to provoke

22

---

[1] *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967).

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 1

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

discussion among his students and fellow faculty about the utility of land acknowledgments.

But university administrators deemed his viewpoint "offensive" and "inappropriate," and punished Reges by (1) removing it from his syllabus, (2) apologizing to his students, (3) encouraging students to submit complaints, (4) creating two "shadow" sections of his introductory classes to marginalize Reges and to stop requiring computer-science majors to take his classes, (5) launching a disciplinary investigation—which could have resulted in further sanction, up to and including termination—against him under UW Executive Order 31, which bans "unacceptable or inappropriate" speech, and (6) withholding Reges' standard merit pay increase during the investigation.

Defendants charged the "special investigating committee" with investigating Reges' protected speech on July 11, 2022. He commenced this litigation two days later. On October, 31, 2022, Defendants moved to dismiss Reges' complaint, and the parties undertook discovery while the motion was pending. Shortly after Reges sought discovery related to the withholding of his merit pay, Defendants closed the investigation by letter dated June 13, 2023, eleven months after it began. The letter concluded with a clear threat of future punishment should Reges continue to publish his statement in future course syllabi, as he intends.

On July 17, 2023, with Defendants' agreement, Reges timely moved to amend his complaint to account for these new developments, particularly the Defendants' threat of future enforcement regarding his protected speech. Despite closing the

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 2

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

investigation on June 13, 2023, Defendants did not provide Reges' withheld merit pay until after having had the opportunity to review Reges' proposed amended complaint attached to his motion to amend. Their late action to release Reges' merit pay required filing another motion for leave to amend on August 1, 2023, to bring Reges' allegations up to date.

Defendants filed the instant motion to dismiss all of Reges' claims, for viewpoint discrimination, retaliation, overbreadth, and vagueness. Defendants argue that the June 13 letter and its purported factual statements are incorporated by reference to the Amended Complaint, in an improper attempt to rebut Reges' allegations. Those statements are disputed facts, which the Court may not take into account when deciding a 12(b)(6) motion to dismiss. Taking Reges' allegations as true, as the Court must, he states plausible claims on each of his five counts.

Defendants also misapply the public-employee-speech doctrine to public university professors. They rely on inapposite cases from K–12 schools, district attorneys' offices, and police departments. They misread UW Executive Order 31's prohibition on "unacceptable or inappropriate" speech. These strained arguments cannot overcome Reges' allegations that Defendants violated his First Amendment rights. The Court should deny Defendants' motion.

## STATEMENT OF FACTS

In retaliation for Reges expressing a dissenting viewpoint regarding the use of indigenous land acknowledgment statements on course syllabi, Defendants marginalized and subjected him to multiple forms of discipline, relying on an

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 3

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1  unconstitutionally vague and overbroad university policy prohibiting "unacceptable

2  or inappropriate" speech.

3  **Defendants Invited Reges and Other Professors to Include an "Indigenous**
   **Land Acknowledgment," an Inherently Political Statement, on Their**
4  **Syllabi.**

5          To "make [their] course syllabus more inclusive," the Allen School invites its

6  professors to include on their syllabi a statement acknowledging the historic

7  presence of indigenous people on the land.  Dkt. #46 ¶ 30. The Allen School provides

8  its faculty with an "example" land acknowledgment statement that reads:

9              The University of Washington acknowledges the Coast Salish
             peoples of this land, the land which touches the shared waters of all
10            tribes and bands within the Suquamish, Tulalip and Muckleshoot
             nations.
11
   *Id.* ¶ 31.
12
           UW's statement—the end result of a process negotiated by UW's Tribal
13
   Liaison and elected officials of local tribes—is inherently political. *Id.* ¶ 32. Indeed,
14
   UW notes that the purpose of its land acknowledgment statement is to express the
15
   belief that "our campus sits on occupied land." *Id.*
16
           Furthermore, the Allen School's recommendation to include this statement in
17
   course syllabi as a "best practice" and thereby make classes more inclusive
18
   unmistakably expresses a viewpoint: These statements promote inclusion and are
19
   otherwise beneficial or proper subjects for syllabi. The Allen School invites faculty
20
   to join its expression of that viewpoint, and thereby, endorse the School's position on
21
   a political question. These subjects—indigenous land acknowledgments, and their
22

23  PLAINTIFF'S BRIEF IN OPPOSITION
    TO DEFENDANTS'
    MOTION TO DISMISS AMENDED COMPLAINT
24  Case No. 2:22-cv-00964-JHC
    Page 4

1    purpose, value, and utility—are matters of public debate at UW and across the
2    country. *Id.* ¶ 10.

3        Some faculty accepted the Allen School's invitation to include an indigenous
4    land acknowledgment statement on their syllabi. *Id.* ¶ 36. Either by parroting the
5    recommended statement or by altering it in a way that was ideologically aligned,
6    other Allen School faculty continue to include land acknowledgment statements in
7    their syllabi. *Id.* ¶ 42. Defendants have not subjected those faculty to any discipline.
8    *Id.* ¶ 43.

9    **When Reges Included a Dissenting Viewpoint on His Syllabus, Defendants**
     **Threatened His Academic Freedom, His Reputation, and His Livelihood.**
10
11       Reges disagrees with the purpose, value, and utility of UW's land
12   acknowledgement statement. To offer a dissenting point of view and to encourage
     the university community to consider and debate the value of land acknowledgment
13
     statements, he included his own statement on his class syllabus:
14
15           I acknowledge that by the labor theory of property the Coast Salish
             people can claim historical ownership of almost none of the land
             currently occupied by the University of Washington.
16
     *Id.* ¶ 34.
17
18       Reges first included this statement on his syllabus for his Computer
19   Programming II course (CSE 143) for the Winter 2022 quarter. *Id.* ¶ 35. He also
     emailed his alternative statement to a university listserv to stimulate debate. *Id.*
20
     ¶ 57.
21

22

23   PLAINTIFF'S BRIEF IN OPPOSITION          Foundation for Individual Rights and Expression
     TO DEFENDANTS'                            510 Walnut Street, Suite 1250
     MOTION TO DISMISS AMENDED COMPLAINT       Philadelphia, PA 19106
24   Case No. 2:22-cv-00964-JHC                Tel: (215) 717-3473
     Page 5

1    In response to Reges' statement appearing in his syllabus, Defendant

2    Magdalena Balazinska, Director of the Allen School, ordered him to remove it. *Id.*

3    ¶ 37. When Reges declined, Director Balazinska directed that the statement be

4    removed from the online version of his syllabus. *Id.* ¶ 40. She also claimed, without

5    any factual basis, that Reges' statement caused a "disruption to instruction" in his

6    class. *Id.* ¶ 44. In fact, there was no disruption, and Reges taught his course without

7    incident. *Id.* ¶ 46. And he has continued to include his statement on his course

8    syllabi for each subsequent quarter, up to the present, without disruption to

9    instruction. *Id.* ¶¶ 98–100.

10    Despite the complete lack of disruption, Defendants retaliated against Reges

11    because they disagreed with his viewpoint and deemed it offensive. Director

12    Balazinska emailed every student in Reges' CSE 143 class to apologize for the

13    offense his statement purportedly caused. *Id.* ¶ 41. She openly provided students

14    with multiple links to university tools that would allow them to file complaints

15    against Reges. *Id.* She and Vice Director Grossman created a competing "shadow"

16    CSE 143 class that met at the same time as Reges' course, and Director Balazinska

17    suggested his students to transfer to it. *Id.* ¶ 49. Defendants retaliated again the

18    following quarter, creating a shadow class for Reges' CSE 142 course in Spring 2022

19    so that undergraduates taking introductory computer science courses would not be

20    forced to learn from Reges. *Id.* ¶ 80.

21    Defendants did not stop at creating a "shadow" class. On March 2, 2022,

22    Director Balazinska notified Reges she was initiating a disciplinary process against

23

him under University of Washington Faculty Code § 25-71, on allegations that he violated certain university policies. *Id.* ¶ 60. Director Balazinska cited Reges' land acknowledgment statement and his email to a university listserv that included his statement and his intention to include it again in the Spring 2022 quarter. *Id.* ¶ 63. She alleged that Reges' actions violated Executive Order 31 and the student employee union's collective bargaining agreement with UW. *Id.* Executive Order 31 gives UW "the authority to discipline or take appropriate corrective action for any conduct that is deemed unacceptable or inappropriate, regardless of whether the conduct rises to the level of unlawful discrimination, harassment, or retaliation." *Id.* ¶ 61. That policy does not define "unacceptable" or "inappropriate."

Director Balazinska, Vice Director Grossman, and Reges had an initial meeting under Faculty Code § 25-71.D on March 8, 2022. *Id.* ¶¶ 64–69. On March 25, Reges met with Defendant Nancy Allbritton, Dean of the College of Engineering, as the next step under Faculty Code § 25-71.D. *Id.* ¶¶ 73, 75. On April 21, Dean Allbritton notified Reges that she would assemble a "special investigating committee" to "look into the matter" under Faculty Code § 25-71.D.3. *Id.* ¶ 82. Under this provision of the Faculty Code, the Dean forms the special investigating committee only after she has determined that "the alleged violation is of sufficient seriousness to justify consideration of the filing of a formal statement of charges that might lead to dismissal, reduction of salary, or suspension for more than one quarter." *Id.* ¶ 74.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 7

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1    Dean Allbritton formally charged the special investigating committee to

2    begin its investigation of Reges on July 11, 2022. *Id.* ¶ 86. She based her charge

3    letter solely upon Reges' dissenting land acknowledgement statement and, at most,

4    five written complaints from faculty, staff, and students reacting to it. *Id.* Dean

5    Allbritton described her charge letter to the committee as "confidential" and did not

6    provide a copy to Reges. *Id.* He commenced this lawsuit two days later, unaware at

7    the time that the special investigating committee had been assembled and charged.

8    *Id.* ¶¶ 83, 84, 86, 87.

9    Dean Allbritton informed Reges on June 13, 2023, that the special

10   investigating committee had concluded its work, nearly a year after it began.

11   *Id.* ¶ 92. She wrote to Reges that he would not be further disciplined at that time,

12   but that "if [he] include[s] this statement [on his syllabus] in the future, and if that

13   inclusion leads to further disruption, [she] will have no option but to . . . view that

14   as an intentional violation of Executive Order 31." *Id.* ¶ 94.

15   Reges continues to deliver his courses with positive student reviews and

16   without any disruption to his ability to perform as a teaching professor. *Id.* ¶¶ 98–

17   100. He is scheduled to teach CSE 143 again during the Fall 2023 and Spring 2024

18   quarters and intends to continue to include his land acknowledgment statement on

19   future syllabi, notwithstanding Dean Allbritton's clear threat of future enforcement

20   of Executive Order 31 against him. *Id.* ¶¶ 92–97, 101, 102.

21

22

23   PLAINTIFF'S BRIEF IN OPPOSITION
     TO DEFENDANTS'
     MOTION TO DISMISS AMENDED COMPLAINT
24   Case No. 2:22-cv-00964-JHC
     Page 8

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

### **ARGUMENT**

2    As a threshold matter, the Court should disregard Defendant Balazinska's

3 declaration, which seeks to establish the truth of disputed facts contained in

4 Defendants' June 13, 2023 letter to Reges. *See* Dkt. #51. This Court must accept

5 Reges' well-pleaded allegations as true and view all facts in the light most favorable

6 to Reges when ruling on a Rule 12(b)(6) motion to dismiss. *Waln v. Dysart Sch.*

7 *Dist.*, 54 F.4th 1152, 1156 (9th Cir. 2022) (citing *Padilla v. Yoo*, 678 F.3d 748, 751

8 n.1 (9th Cir. 2012); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Reges cites

9 Defendants' June 13, 2023 letter not for the truth of its statements, but to show

10 that (1) the disciplinary investigation was closed on that date, Dkt #46 ¶ 92;

11 (2) Defendants cite complaints as evidence of purported disruption, *id.* ¶¶ 93, 96;

12 (3) Defendants threaten Reges with future retaliation, *id.* ¶ 94; (4) Defendants

13 withheld Reges' merit pay during the pendency of the investigation, which he first

14 learned by the letter, *id.* ¶¶ 105, 106; and that his merit pay would be reinstated.

15 *Id.* ¶ 107. Reges disputes the conclusions that Defendants draw from their sham

16 investigation, including that his statement caused a disruption.

17    Though Reges incorporates the above statements contained in the June 13,

18 2023 letter, he "in no way vouch[es] for the accuracy of the entire document."

19 *Garner v. Amazon, Inc.*, 603 F. Supp. 3d 985, 993 (W.D. Wash. 2022) (holding that

20 complaint's references to document do not incorporate its entirety where plaintiff's

21 allegations rely on the document for particular purposes and could have been made

22 without reference to the document). Under that standard, Reges plausibly alleges

23 PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
24 Case No. 2:22-cv-00964-JHC
Page 9

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

UW violated the First Amendment when it discriminated against his viewpoint. *See Waln*, 54 F.4th at 1163 (holding that plaintiff who alleged differential treatment under a facially neutral policy plausibly alleged viewpoint discrimination).

Indeed, Reges alleges that Defendants singled him out because of his disagreement with UW's land acknowledgment statement. Other faculty who agreed with, but deviated from, the approved language have not faced such treatment. That is enough for a distinct claim of viewpoint discrimination under the First Amendment, as alleged in his first count. Reges also sufficiently alleges in his second and third counts that Defendants retaliated against him for his academic speech on matters of public concern. Finally, his third and fourth counts sufficiently allege that Executive Order 31 is unconstitutionally vague and overbroad.

"The desire to maintain a sedate academic environment, 'to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint,' is not an interest sufficiently compelling however to justify limitations on a teacher's freedom to express himself on political issues in vigorous, argumentative, unmeasured, and even distinctly unpleasant terms." *Adamian v. Jacobsen*, 523 F.2d 929, 934 (9th Cir. 1975) (internal citation omitted); *see also Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010) (university's role fostering exchange of "diversity of views" and "[i]ntellectual advancement" through "discord and dissent" "will not survive if certain points of view may be declared beyond the pale"). Free speech "may indeed best serve its high purpose when it . . . even stirs people to anger. Speech is often provocative and challenging . . . That is why

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 10

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

freedom of speech, though not absolute, is nevertheless protected against censorship

or punishment . . . ." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) (citation

omitted).

Reges' speech did just that: it was provocative, it challenged the orthodoxy,

and even angered some in the UW community. Nevertheless, UW sought to silence

his speech on the ground that it was offensive and purportedly caused a "disruption"

on campus. However, and contrary to Defendants' motion to dismiss, Reges' speech

never strayed into the realm of speech that the First Amendment does not protect.

Accordingly, Defendants' motion should be denied.

## I.   Reges' First Cause of Action Sufficiently Alleges Viewpoint Discrimination.

The government violates the First Amendment if it favors some viewpoints

and discriminates against others, including those messages it deems offensive.

*Matal v. Tam*, 582 U.S. 218, 234 (2017) (plurality opinion); *see also Iancu v.

Brunetti*, 139 S. Ct. 2294 (2019) (holding that ban on trademarks that are "immoral"

or "scandalous" discriminates on the basis of viewpoint); *Texas v. Johnson*, 491 U.S.

397 (1989) (the government is powerless to prohibit speech on the basis that it

causes offense). Moreover, "it is axiomatic that the government may not silence

speech because the ideas it promotes are thought to be offensive." *Rodriguez*, 605

F.3d at 708.

In the higher education setting, when regulations or authorities target "not

subject matter but particular views taken by speakers on a subject, the violation" of

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

expressive rights "is all the more blatant." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Additionally, "the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 670 (1973).

This prohibition on the government favoring one viewpoint over another gives rise to a claim of viewpoint discrimination, which is separate and distinct from Reges' First Amendment retaliation claims. Viewpoint discrimination is a particularly "egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. A claim for viewpoint discrimination lies where a plaintiff alleges that a government actor restricts speech on the ground it is "offensive" or "disparaging." *Matal*, 582 U.S. at 223 (holding that the U.S. Patent and Trademark Office's prohibition on trademarks that may "disparage . . . or bring . . . into contemp[t] or disrepute" any "persons, living or dead" violated the First Amendment). As the Ninth Circuit later explained, "all eight Justices (Justice Gorsuch was recused) [in *Matal*] held that offensive speech *is, itself, a viewpoint*," and therefore suppressing speech because it offends is viewpoint discrimination. *Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126, 1131 (9th Cir. 2018) (emphasis added) (citing *Matal*, 582 U.S. at 223, 243–44 (plurality) and *id.* at 1766 (Kennedy, J., concurring)). A Supreme Court majority later expanded that rule, holding that a prohibition on "immoral or scandalous" trademarks was impermissibly viewpoint based. *Iancu*, 139 S. Ct. at 2299.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 12

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

Reges alleges that Defendants censored his dissenting land acknowledgment statement while allowing others who modified UW's example statement—but in a manner aligned with UW's viewpoint—to keep theirs. Dkt. #46 ¶ 36. Defendants' gloss, that UW's suggested land acknowledgment statement is simply a factual acknowledgment that "expresses no view," is not credible. Dkt. #50, at 2. Defendants give away that game in the very next sentence, emphasizing the time and effort it took to make sure its statement conveyed the intended message. *Id.* By expressing UW's preferred land acknowledgment statement, Defendants endorse the viewpoints that members of the UW community should "acknowledge[] the Coast Salish people" and those statements make a "course syllabus more inclusive." Dkt. #46 ¶¶ 30, 31. These are inherently political opinions that reflect and express one of many viewpoints on an important public issue. It strains credulity that UW's statement expresses no viewpoint while Reges' statement is "viewpoint-based" and thus ought to be censored. The fact is that Defendants targeted Reges for punishment because he takes an opposing view on these matters of public concern, and his allegations make that clear.

Defendants do not target the general category of land acknowledgments on faculty syllabi, but rather Reges' specific viewpoint regarding that subject matter, making Defendants' violation "all the more blatant." *Rosenberger*, 515 U.S. at 829. Defendants' maintenance and enforcement of Executive Order 31 is similarly viewpoint discriminatory because it prohibits faculty, staff, and students from saying anything "unacceptable or inappropriate." The government cannot suppress

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 13

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

speech because it offends. *Am. Freedom Def. Initiative*, 904 F.3d at 1131; *Matal*, 582 U.S. at 223. This is even truer on public college or university campuses. *Rodriguez*, 605 F.3d at 708; *Papish*, 410 U.S. at 670.

Even "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)).

Defendants' decision to chill Reges' protected speech because of purported complaints is yet another blatant attempt to silence him. As *Matal* makes clear, "a speech burden based on audience reactions is simply government hostility and intervention in a different guise. The speech is targeted, after all, based on the government's disapproval of the speaker's choice of message." 582 U.S. at 250 (Kennedy J., concurring in part and concurring in judgment).

Defendants incorrectly assert that *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642 (9th Cir. 2006), means that viewpoint discrimination "is not viable separate from Reges' retaliation claims." Dkt. #50, at 14. But *Berry* does not stand for that proposition. In *Berry*, the plaintiff alleged that his employer violated his First Amendment rights because his religious speech was protected by the First Amendment's Religion Clauses rather than as speech on a matter of public concern. *Berry*, 447 F.3d at 650. The Ninth Circuit concluded that it must use the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), "regardless of the reason an employee believes his or her speech is constitutionally protected." *Id.*

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 14

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1
2
3
4
5
6
7
8

at 650. But the Ninth Circuit was referring to the source of the speech's constitutional protection, *not* to the harm the plaintiff suffered or the claim under which he sought relief. Nothing in *Berry* precludes Reges from bringing his standalone claim for viewpoint discrimination. Viewpoint discrimination is so pernicious and harmful that an employee need not cabin it into a First Amendment retaliation claim. Any act of viewpoint-driven censorship is enough to cause constitutional harm. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993).

9
10
11
12
13
14
15
16
17
18
19
20
21
22

## II. Defendants Retaliated Against Reges for His Academic Speech on Matters of Public Concern.

Reges' second and third counts sufficiently allege First Amendment retaliation. His dissenting land acknowledgment statement is constitutionally protected speech. Defendants took adverse employment actions against him by (1) censoring that speech; (2) apologizing to his students for the offense it purportedly caused; (3) encouraging students to file complaints against him; (4) creating two shadow courses to marginalize him as a teaching professor of introductory computer science; (4) investigating him for nearly a year; (5) withholding his merit pay during the pendency of that investigation under an unwritten policy and without informing him; and (6) threatening future enforcement of a vague and overbroad bias and harassment policy against him, up to and including possible termination, if he continues including the statement that prompted these adverse employment actions in his syllabi, as he intends to do.

23
24

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 15

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1 Defendants took these adverse employment actions because of Reges' speech, his

2 constitutionally protected land acknowledgment statement.

3     The First Amendment protects Reges' statement because it is speech related

4 to scholarship or teaching, touches on a matter of public concern, and satisfies the

5 *Pickering* balancing test.

6     **A.**    **Reges' speech is related to scholarship or teaching.**

7     Reges' statement is obviously related to scholarship or teaching. *See Demers*

8 *v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014). *Demers* affirms that public college and

9 university professors enjoy First Amendment protection for their "speech related to

10 scholarship or teaching," notwithstanding their status as government employees.

11 *Id.* Thus, *Demers* unequivocally answers, within the Ninth Circuit, the question left

12 unanswered by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006):

13 whether the Court's public-employee-speech doctrine, which limits generally public

14 employee expressive rights at work, applies with equal force to on-the-job academic

15 expression. *Garcetti*, 547 U.S. at 425; *id.* at 438–39 (Souter, J., dissenting). The

16 Ninth Circuit tells us it does not: "*Garcetti* does not—indeed, consistent with the

17 First Amendment, cannot—apply to teaching and academic writing that are

18 performed 'pursuant to the official duties' of a teacher and professor," and "academic

19 employee speech not covered by *Garcetti* is protected under the First Amendment."

20 *Demers*, 746 F.3d at 412. "Rather, such speech is governed by *Pickering*" and its test

21 weighing the professor's speech interest against UW's interests as an employer. *Id.*

22 at 406.

Foundation for Individual Rights and Expression
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1    In *Demers*, Washington State University administrators retaliated against a

2    professor for distributing pamphlets calling for a restructuring of the university,

3    then a matter of campus debate. *Id.* at 406. The Ninth Circuit affirmed that Demers

4    spoke "pursuant to his duties as a professor at WSU." *Id.* at 409. The First

5    Amendment protects the academic freedom of public faculty, who "necessarily speak

6    and write 'pursuant to . . . official duties.'" *Garcetti*, 547 U.S. at 438 (Souter, J.,

7    dissenting). Recognizing this, the Ninth Circuit confirmed that Demers' pamphlet

8    was "related to scholarship or teaching" because it discussed a change to the

9    university's organization that "would have substantially altered the nature of what

10   was taught at the school." *Demers*, 746 F.3d at 415. *See also Adams v. Trustees of*

11   *the Univ. of N.C.-Wilmington*, 640 F.3d 550 (4th Cir. 2011) (applying *Pickering*

12   balancing to public university professor's speech rather than *Garcetti*); *Buchanan v.*

13   *Alexander*, 919 F.3d 847, 852–53 (5th Cir. 2019) (applying *Pickering*); *Meriwether v.*

14   *Hartop*, 992 F.3d 492, 506–07 (6th Cir. 2021) (recognizing academic-freedom

15   exception to *Garcetti* and applying *Pickering*); *Heim v. Daniel*, --- F.4th ---, No. 22-

16   1135-cv, 2023 WL 5597837 (2d Cir. Aug. 30, 2023) (same).

17   Reges' statement concerns scholarship or teaching at least as much as

18   Demers' pamphlet. In fact, authoring speech in a professor's syllabus is a core

19   teaching function. A course syllabus is a pedagogical tool authored by each faculty

20   member. It is the purview of the individual faculty member who authors it. A

21   syllabus is the written product that gives students a preview of a faculty member's

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 17

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

in-class speech. If a professor's in-class speech is protected, his syllabus-based speech must be protected as well.

Other circuit courts have recognized a syllabus's place as a medium for faculty expression, even when used to spur debate. When a university "categorically silence[s] dissenting viewpoints" on a professor's syllabus, it violates the First Amendment. *Meriwether*, 992 F.3d at 506–07 ("By forbidding [the plaintiff-professor] from describing his views on gender identity *even in his syllabus*, [the university] silenced a viewpoint that could have catalyzed a robust and insightful in-class discussion." (emphasis added)).

Defendants also cite the pre-*Demers* case *Abcarian v. McDonald*, 617 F.3d 931, 938 n.5 (7th Cir. 2010), noting that the Seventh Circuit rejected a surgery department head's claims that his expression was related to scholarship or teaching because his "speech involved administrative policies that were much more prosaic than would be covered by principles of academic freedom." But the Seventh Circuit rejected the plaintiff's claims because he was speaking in his role *as an administrator*, not as a professor. *Id.* at 937–38.

The Allen School invited professors to include a land acknowledgment statement on their syllabi, and it labeled the same a "best practice for inclusive teaching." Defendants cannot now claim that including a land acknowledgment statement on syllabi is not related to teaching. Defendants opened the door that Reges walked through when they declared computer science syllabi appropriate places for land acknowledgment statements. Reges, who objects to these statements

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 18

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

generally on the ground that they are empty moral performance and specifically to UW's statement on the ground that it is inaccurate, offered his dissenting viewpoint. He did so to "catalyze[] a robust and insightful in-class discussion." *Meriwether*, 992 F.3d at 506. Reges even offered to organize a group discussion on land acknowledgments. Dkt. #46 ¶ 34. It is of no moment that land acknowledgments are "a subject unrelated to the content of his computer programming class," Dkt. #50, at 10; Defendants lost that argument when they published their "best practices" document encouraging land acknowledgments in computer science syllabi. Accordingly, Reges' alternative land acknowledgment statement is speech related to teaching under *Demers*.

### B.  Reges' speech satisfies Pickering's balancing test.

Having established Reges' speech is related to teaching, the analysis moves to the two prongs of the *Pickering* balancing test: (1) "the employee must show that his or her speech addressed 'matters of public concern'" and (2) the employee's interest "in commenting upon matters of public concern" must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Demers*, 746 F.3d. at 412 (quoting *Pickering*, 391 U.S. at 568). Reges' statement satisfies both.

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The Ninth Circuit has adopted a "liberal

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 19

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

construction of what an issue 'of public concern' is under the First Amendment." *Roe v. City & Cnty. of S.F.*, 109 F.3d 578, 586 (9th Cir. 1997).

Reges' speech presents a view on a social and political issue, a matter of public concern at UW and beyond: indigenous land acknowledgments and their meaning, purpose, appropriateness, effectiveness, or utility. As Reges alleges, a faculty member emailed an *Atlantic* article[2] arguing that land acknowledgments are "moral exhibitionism," and Reges himself hoped to spur discussion about the issue. Dkt. #46 ¶¶ 33, 34. Debates regarding diversity, equity, and inclusion are of great political and social concern for the American public, especially on university campuses. Defendants themselves contributed to that public debate when recommending that faculty include indigenous land acknowledgment statements on their syllabi to "make [their syllabi] more inclusive." *Id.* ¶ 30. Reges contributed to that debate as well.[3]

Under the second *Pickering* prong, the balance tips in Reges' favor. UW's interest in efficient public service is based on nothing more than casting "a pall of orthodoxy" on the contested question of land acknowledgments. *Keyishian*, 385 U.S at 603. UW simply does not have a legitimate interest in stifling dissent and debate: indeed, as a public university UW is "peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180 (1972). Limiting professors to "express only those

---

[2] Graeme Wood, *Land Acknowledgments Are Just Moral Exhibitionism*, The Atlantic (Nov. 28, 2021) [https://perma.cc/7NCL-DJR7].

[3] *See, e.g.*, Josh Moody, *Land Acknowledgments Spur Controversies*, Inside Higher Ed (Feb. 23, 2022) [https://perma.cc/X4WH-VUEH].

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1   viewpoints of which the State approves" is "positively dystopian." *Pernell v. Fla. Bd.*

2   *of Governors of the State Univ. Sys.*, 641 F. Supp. 3d 1218, 1230 (N.D. Fla. 2022).

3   Further, as discussed above, there was no disruption to Reges' classroom.

4   Dkt. #46 ¶¶ 44–47, 54, 98–100. Even assuming that mere objection to offensive

5   speech *could* constitute a disruption to instruction at a university, where debate

6   and discourse on public issues is the institution's *raison d'être*, a small number—as

7   alleged in Defendants' charge letter, no more than five, *see id.* ¶ 86—of complaints,

8   which were made outside the classroom in reaction to Reges' protected speech, is

9   insufficient to prove that a disruption occurred.

10  In support of their argument that Reges' speech did not satisfy the *Pickering*

11  balancing test, Defendants argue that the "time, place, and manner of Reges' speech

12  matters" and that they could rightfully silence him because the speech was in a

13  "University-sanctioned document." Dkt. #50, at 12. Their assertion is wrong on two

14  fronts. First, as discussed *infra*, Reges' syllabus is not government speech. *See*

15  *Meriwether*, 992 F.3d at 506–07. Second, regulations that seek to protect others

16  from offensive speech cannot be "properly analyzed as a form of time, place, and

17  manner regulation. *Free Speech Coal., Inc., et al. v. Colmenero*, No. 1:23-CV-917-

18  DAE, 2023 WL 5655712, *9 (W.D. Tex. Aug. 31, 2023) (quoting *Renton v. Playtime*

19  *Theaters*, 475 U.S. 41, 46 (1986) (citations omitted). In their erroneous "time, place,

20  and manner" argument, Defendants ignore the "well-established precedent that

21  '[r]egulations that focus on the direct impact of speech on its audience' are not" valid

22  time, place, and manner restrictions. *Free Speech Coal.*, 2023 WL 5655712, at *9

23  PLAINTIFF'S BRIEF IN OPPOSITION
    TO DEFENDANTS'
    MOTION TO DISMISS AMENDED COMPLAINT
24  Case No. 2:22-cv-00964-JHC
    Page 21

    FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
    510 Walnut Street, Suite 1250
    Philadelphia, PA 19106
    Tel: (215) 717-3473

1  (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)); *see also Forsyth Cnty. v.*

2  *Nationalist Movement*, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is

3  not a content-neutral basis for regulation."). Defendants cannot hide behind a "time,

4  place, and manner" restriction when the restriction's enforcement depends on the

5  audience's response to the speech.

6        In short, whatever interest UW may have in efficiently providing services

7  free of debate or conflict by mandating viewpoint orthodoxy is self-refuting.

8  Weighed against Reges' significant First Amendment interest in academic freedom

9  and the right to comment on matters of public concern, UW cannot succeed.

### C.   Defendants took several adverse employment actions against Reges, censoring and chilling his protected speech.

        Defendants' motion downplays the severity of their retaliation. But "[a]

12  government act of retaliation need not be severe and it need not be of a certain

13  kind." *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010)

14  (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003)). "Depending

15  on the circumstances, even minor acts of retaliation can infringe on an employee's

16  First Amendment rights." *Coszalter*, 320 F.3d at 975. An investigation constitutes

17  adverse employment action—even though termination may come several steps into

18  the process. The relevant inquiry is whether the government's actions "would chill

19  or silence a person of ordinary firmness from future First Amendment activities."

20  *Mendocino Env't. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

21  Here, the Defendants' actions are reasonably likely to chill an ordinarily firm

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 22

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

person's speech—and the speech of third persons at the University of Washington who do not wish to find themselves under investigation for questioning university orthodoxy on land acknowledgments.

Defendants argue that because they only created the "shadow" section of Reges' course, opened an investigation against him for his protected speech, and withheld his merit pay increase while the investigation was ongoing, an adverse employment action did not occur. Dkt. #50, at 13. Moreover, they argue these actions "amount[ed] to no real punishment at all." *Id.* This is wrong. The question is not whether charges were filed or whether Reges was terminated. The question is whether Defendants' actions were reasonably likely to deter an ordinary person from engaging in protected activity. *Coszalter*, 320 F.3d at 976. Defendants set in motion a nearly year-long process that could eventually lead to suspension, reduction of salary, or termination—which is reasonably likely to deter an ordinarily firm person from exercising their First Amendment rights. *Coszalter* specifically identifies "unwarranted disciplinary investigation" and a "threat of disciplinary action" as actions that, considered individually, are adverse employment actions. *Id.* And here, that investigation is coupled with threat of *termination*. Dkt. #46 ¶ 94 (Dean Allbritton warning that she will have no option but to conclude that Reges intentionally violated Executive Order 31 should his speech persist and further "disruption" ensue).

The formation of a special investigating committee under Faculty Code § 25-71.D.3 is triggered only if the Dean makes a prior determination that "the alleged

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 23

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1    violation is of sufficient seriousness to justify consideration of the filing of a formal

2    statement of charges that might lead to dismissal, reduction of salary, or suspension

3    for more than one quarter" under § 25-71.D. *Id.* ¶ 74. It does not matter that formal

4    charges or discipline would come one or two steps further. The threat that an

5    investigation will lead to termination, reduction of salary, or suspension is

6    sufficiently chilling.

7          It is also an adverse employment action to create "shadow sections" of a

8    professor's course, not in furtherance of legitimate educational interests, but in

9    retaliation for the professor's speech. *See Levin v. Harleston*, 966 F.2d 85, 88 (2d

10   Cir. 1992). In *Levin*, City College in New York City created a shadow class in

11   response to a professor's extramural speech that was seen as racially insensitive. *Id.*

12   at 87. The Second Circuit noted that the creation of a shadow class "would not be

13   unlawful if done to further a legitimate educational interest that outweighed" the

14   professor's First Amendment interests. *Id.* at 88. Like Defendants here, the college

15   in *Levin* argued that it established the shadow class to accommodate students who

16   were harmed in the classroom by the professor's speech. *Id.* But the court found a

17   "complete lack of evidence" to support the college's claimed educational interest. *Id.*

18         That "complete lack of evidence" exists here, too. To support their arguments,

19   Defendants seek to raise disputed facts about alleged complaints and disruption

20   that are outside the four corners of the Complaint and not incorporated by

21   reference. Contrary to Defendants' assertions, Reges does not "concede[] that the

22   university created the alternative class sections in response to student complaints."

23   PLAINTIFF'S BRIEF IN OPPOSITION
     TO DEFENDANTS'
     MOTION TO DISMISS AMENDED COMPLAINT
24   Case No. 2:22-cv-00964-JHC
     Page 24

Dkt. #50, at 13. Reges alleges that Defendants created the shadow course, taught via recorded lectures, to punish him for his protected speech. Dkt. #46 ¶¶ 49, 50. Reges also alleges that Defendants did not further any other legitimate educational interests because there was no disruption to his instruction. *Id.* ¶ 54. Moreover, Director Balazinska could not confirm whether any of the complaints they allegedly received were actually from students in his class. *Id.* ¶ 69. Defendants created the shadow class to retaliate against Reges for his protected expression and cannot show that doing so furthered any legitimate interest. And Defendants are not permitted to dispute the well-pleaded factual allegations at this stage of the proceeding. *Twombly*, 550 U.S. at 556.

### D. Reges' speech was a substantial or motivating factor for UW's adverse employment actions.

It is undisputed that Reges' speech was the motivating factor for UW's adverse employment actions against him. Director Balazinska ordered Reges to remove his statement from his syllabus because she believed it was "offensive," and created a "toxic environment." Dkt. #46 ¶ 37. When Balazinska created the shadow course, she did so to punish Reges for his alternative land acknowledgment statement. *Id.* ¶¶ 48–52. And when Dean Allbritton convened the special investigating committee, she made clear the investigation was based on his land acknowledgment statement on his syllabus. *Id.* ¶ 86. Now Defendants threaten future punishment for that same speech. *Id.* ¶ 94. All of Defendants' actions have been motivated by Reges' constitutionally protected speech.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 25

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

2

### III.   Reges' Course Syllabus Is Not Government Speech and Public Universities Are Not High Schools.

3

Defendants argue that Reges' syllabus is a "University-sanctioned document"

4

and therefore government speech. *See* Dkt. #50, at 10, 14, 16–19, 21. This argument

5

is misguided. Indeed, "the weight of binding authority requires [courts] to decline

6

the invitation" to hold that "university professors' in-class speech . . . amounts to

7

government speech outside the First Amendment's protection." *Pernell*, 641 F.

8

Supp. 3d at 1241 (contrasting post-*Garcetti* K–12 cases with college or university

9

ones).

10

Government speech requires a "purposeful communication of a

11

governmentally determined message." *Shurtleff v. City of Boston*, 142 S. Ct. 1583,

12

1598 (2022) (Alito, J., concurring). Courts must make a holistic inquiry in

13

evaluating whether the government intends to speak for itself. Faculty at public

14

universities occupy a "special niche in our constitutional tradition," owing to "the

15

expansive freedoms of speech and thought associated with the university

16

environment . . . ." *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003). Just as their

17

academic speech is treated as the speech of a private citizen under *Pickering*,

18

faculty members are properly understood to speak for themselves, not their

19

institutions or the government, when they teach. Faculty convey *a* message, but it is

20

a message springing from their academic and pedagogical expertise, not a message

21

the government selects *for* them. Faculty speech is not government speech. To hold

22

23

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 26

24

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

otherwise would eviscerate the unique role academics and universities play in our society. *Pernell*, 641 F. Supp. 3d at 1236.

Applying *Shurtleff*'s "holistic inquiry," courts should first look to the "history of the expression at issue." 142 S. Ct. at 1589. In this context, faculty have historically not spoken for the government, nor do they hold themselves out as doing so. Instead, they are hired to be one of a "multitude of tongues" providing "wide exposure to [the] robust exchange of ideas." *Keyishian*, 385 U.S. at 603. Second, courts look to "the public's likely perception as to who (the government or a private person) is speaking." *Shurtleff*, 142 S. Ct. at 1589. *See also Healy*, 408 U.S. at 201 (Rehnquist, J. concurring) (noting that the government operating a college is different from the government enforcing criminal laws).

Our long national tradition of academic freedom informs what the public understands about faculty speech. No person would reasonably believe a college syllabus is anything other than a professor's expression. And more specifically, Defendants argue they acted to ensure its message was not distorted, but no member of the public was at risk of believing that Reges' statement, beginning "*I* acknowledge . . . ," was an instance of UW speaking rather than Reges himself.

Finally, courts examine "the extent to which the government has actively shaped or controlled the expression." *Shurtleff*, 142 S. Ct. at 1590. This factor, too, weighs in Reges' favor. Although UW maintained its own land acknowledgment statement, it did not intervene by shaping or controlling the syllabi of other faculty who also crafted their own versions of a land acknowledgment that were not critical

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 27

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

of land acknowledgments as a concept. Dkt. #46 ¶¶ 42, 43. And when Reges brought those statements to Director Balazinska's attention, she responded that she would permit land acknowledgments only if they hewed to UW's preferred statement. *Id.* ¶ 39. Moreover, governments may not "actively shape[] or control[] the expression" of university faculty, who have a First Amendment right to academic freedom. *See Shurtleff*, 142 S. Ct. at 1590.

Defendants rely heavily on inapposite cases involving K–12 education that simply do not apply to the university setting. *See* Dkt. #50, at 8-10 (citing *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011) and *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000)). Both cases concern high school teachers who alleged their employers violated their First Amendment rights. Courts have repeatedly distinguished speech in grade schools, where the students are younger and less mature and the curriculum is subject to democratic oversight, from speech on college campuses with typically adult students taught by scholars with a more robust array of academic freedom rights. *See, e.g.*, *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2049 n.2 (2021) ("[f]or several reasons, including the age, independence, and living arrangements of such students, regulation of [university student] speech may raise very different questions from [K–12 student speech].") (Alito, J. concurring); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022) (noting the difference between speech restrictions in K–12 settings and college settings); *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 242 (3d Cir. 2010) ("there is a difference between the extent that a school may regulate student speech

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 28

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

in a public university setting as opposed to that of a public elementary or high school"). There is "no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large." *Healy*, 408 U.S. at 180. The government simply does not have the same leeway to restrict speech on college campuses as it does in the K–12 setting where schools stand in the place of parents. *Mahanoy*, 141 S. Ct. at 2044–45 (noting that "courts must apply the First Amendment 'in light of the special characteristics of the [grade] school environment'" where they stand "in loco parentis") (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)). Defendants' cases do not apply here.

## IV. Reges' Fourth Cause of Action Sufficiently Alleges Executive Order 31 Is Overbroad Because It Gives Defendants Discretion to Punish a Substantial Amount of Protected Speech.

Defendants argue Executive Order 31 is not overbroad because it is aimed at illegal conduct like discrimination or harassment. Reges has sufficiently alleged that Executive Order 31 is unconstitutionally overbroad because it prohibits speech that ropes in a "substantial number" of applications to protected speech relative to its legitimate sweep. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (quoting *United States v. Stevens*, 559 U.S. 460 (2010)). For example, if administrators had the unfettered discretion to punish "unacceptable or inappropriate" speech, they could "discipline or take appropriate corrective action" against a member of the UW community who—to draw from a few real-world examples—hosts a drag show, delivers a provocative but attention-

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT Case No. 2:22-cv-00964-JHC Page 29

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION 510 Walnut Street, Suite 1250 Philadelphia, PA 19106 Tel: (215) 717-3473

grabbing lecture on syllabus day, or discusses with students the use-mention distinction for racial slurs.[4] Administrators could punish professors who place "Black Lives Matter" or "Blue Lives Matter" stickers, or any other conceivable political message, on their office doors because the words "inappropriate" and "offensive" have only the meaning that the beholder ascribes to them. The policy's sweep is as broad as one can imagine because any speech expressing a viewpoint on any matter of public concern could be deemed inappropriate or offensive by adherents to the opposing view.

Courts confronting such overbroad policies in higher education have routinely declared them unconstitutional and enjoined their enforcement. *See, e.g.*, *McCauley*, 618 F.3d at 250, 252 (holding that a ban on "offensive" speech was overbroad); *DeJohn v. Temple Univ.*, 537 F.3d 301, 317–18 (3d Cir. 2008) (same); *Coll. Republicans at S.F. State Univ. v. Reed*, 523 F. Supp. 2d 1005 (N.D. Cal. 2007) (enjoining enforcement of civility policy). Executive Order 31 is similarly susceptible to an overbreadth challenge.

Defendants inappropriately rely on *Hernandez v. City of Phoenix*, 43 F.4th 966 (9th Cir. 2022), a public-employee-speech case arising from a police department's social media policy. But police officer and university professor are very

---

[4] *See, e.g.*, Amanda Nordstrom, *Tennessee Tech still investigating, enforcing ban on LGBTQ+ and theater groups that hosted drag show*, FIRE (Oct. 31, 2022) [https://perma.cc/73E2-42AJ]; Sabrina Conza, *Ferris State cannot punish professor for comedic—and now viral—video jokingly referring to students as 'cocksuckers' and 'vectors of disease'* FIRE (Jan. 17, 2022) [https://perma.cc/RZW5-L89U]; Alex Morey, *Bitchassness, hateration, general stankness possible motives behind reassignment of San Diego State philosophy professor for teaching slurs, 'offensiphobia'* FIRE (Mar. 8, 2022) [https://perma.cc/PTC3-FHPV].

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 30

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

different professions. While the government may have a strong interest in maintaining order within the ranks of its police officers and public trust that police functions are performed impartially, a state university campus is a place for the exchange of ideas and robust debate. Public university "efficiency cannot be purchased at the expense of stifling free and unhindered debate on fundamental educational issues." *Peacock v. Duval*, 694 F.2d 644, 647 (9th Cir. 1982). Indeed, "conflict is not unknown in the university setting." *Hulen v. Yates*, 322 F.3d 1229, 1239 (10th Cir. 2003). Thus, examining the breadth of a policy that applies to a university community requires a much harder look than a broad policy governing police officer conduct.

As Defendants make clear, the policy's legitimate sweep—preventing discriminatory harassment—is already addressed by other applicable policies. Dkt. #50, at 26. But Executive Order 31 disclaims any limits to its sweep, applying "regardless of whether the conduct arises to the level of unlawful discrimination, harassment, or retaliation." It therefore goes well beyond speech that rises to the level of harassment as defined by the Supreme Court: speech that is "so severe, pervasive, and objectively offensive that it denies its victims . . . equal access to education . . . ." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999). Judged in relation to its legitimate sweep, Executive Order 31 is effectively limitless in its applications to constitutionally protected speech.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**V.    Reges' Fifth Cause of Action Sufficiently Alleges Executive Order 31 Is Vague Because a Reasonable Person Would Not Understand What It Prohibits and Because It Risks Arbitrary and Discriminatory Enforcement.**

Defendants also contend that Executive Order 31 is not unduly vague for a similar reason—that it addresses unlawful discrimination or harassment. But Reges sufficiently alleges facts demonstrating Executive Order 31 is unconstitutionally vague. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Vagueness is of special concern in the First Amendment context because when a vague regulation "abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (citation omitted). Accordingly, a policy that reaches protected expression must contain "a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

Because Executive Order 31 contains no definition of "unacceptable or inappropriate," and those terms do not carry any reasonably objective plain meaning, it fails to provide members of the UW community with "fair warning" of what expression the policy prohibits. *Grayned*, 408 U.S. at 108. Executive Order 31's opacity results in a "chilling effect on the exercise of First Amendment

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 32

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998); *see also United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996) (invalidating as unconstitutionally vague a statute that prohibited attorneys from engaging in "offensive personality").

Executive Order 31 is also void for vagueness because it fails to provide "explicit standards" to prevent "arbitrary and discriminatory enforcement" by administrators, while expressly requiring viewpoint discrimination. See *Grayned*, 408 U.S. at 108–09. The terms "inappropriate" and "unacceptable" are so vague they could be employed to prohibit nearly any student or faculty speech. Different administrators will come to different conclusions as to whether the same speech falls within those terms. The First Amendment does not permit this result. *See, e.g.*, *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1184–85 (6th Cir. 1995) (holding university policy vague that prohibited "offensive" speech). Defendants' argument that Executive Order 31 only applies to conduct "resembling" discrimination, harassment, or retaliation further demonstrates the policy's vagueness. Dkt. #50, at 20. It is impossible for any member of the UW community to predict what an administrator decides "resembles" discrimination. The same administrator may even change her mind arbitrarily. This does not meet the "greater degree of specificity" required to give members of the UW community fair warning about whether their speech may be punished. *Smith*, 415 U.S. at 573.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 33

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

## CONCLUSION

This Court should deny Defendants' motion to dismiss Plaintiff's Amended Complaint. Plaintiff has stated claims of viewpoint discrimination, First Amendment retaliation, overbreadth, and vagueness.

DATED: September 18, 2023

Respectfully submitted,

/s/Gabriel Walters
GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
GABRIEL WALTERS*
DC Bar No. 1019272
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org

*Admitted *Pro Hac Vice*
*Attorneys for Plaintiff*

ROBERT A. BOUVATTE, JR.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (564) 999-4005
bob@rbouvattepllc.com

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT
Case No. 2:22-cv-00964-JHC
Page 34

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473

1

## **CERTIFICATE OF WORD COUNT**

2

   I certify that this memorandum contains 8,382 words, in compliance with the

3

Local Civil Rules.

4

                                                            */s/ Gabriel Walters*
                                                            Gabriel Walters

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## CERTIFICATE OF SERVICE

Plaintiff's counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, September 18, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated below and parties may access this filing through the Court's electronic filing system.

ROBERT M. MCKENNA
AARON P BRECHER
401 Union Street, Suite 3300
Seattle, WA 98101
Tel: (206) 839-4300
Fax: (206) 839-4301
mckenna@orrick.com
abrecher@orrick.com

R. DAVID HOSP
KRISTINA D. MCKENNA
222 Berkeley Street, Suite 2000
Boston, MA 02116
Tel: (617) 880-1802
Fax: (617) 880-1801
dhosp@orrick.com
kmckenna@orrick.com

*Counsel for Defendants*

GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
GABRIEL WALTERS*
DC Bar No. 1019272
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org

ROBERT A. BOUVATTE, JR.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (564) 999-4005
bob@rbouvattepllc.com

*Admitted *Pro Hac Vice*
*Attorneys for Plaintiff*
                *Counsel for Plaintiff Stuart Reges*

Dated: September 18, 2023

*/s/ Gabriel Walters*
Gabriel Walters