Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STUART REGES,

    Plaintiff,

v.

ANA MARI CAUCE, in her official capacity as President of the University of Washington; MAGDALENA BALAZINSKA, in her official and individual capacities as Director of the Paul G. Allen School of Computer Science & Engineering; DANIEL GROSSMAN, in his official and individual capacities as Vice Director of the Paul G. Allen School of Computer Science & Engineering; and NANCY ALLBRITTON, in her official and individual capacities as Dean of the College of Engineering,

    Defendants.

Case No. 2:22-cv-00964-JHC

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Noted for Hearing: September 29, 2023

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel +1-206-839-4300

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................. 1

II.    ARGUMENT ........................................................................................................................ 2

    A.   Reges fails to plausibly plead retaliation and viewpoint discrimination. ............................ 2

        1.   *Reges's speech is not protected under the First Amendment.* ............................................ 2

        2.   *Reges cannot satisfy the Pickering balancing test.* ............................................................. 5

    B.   Executive Order 31 is not facially overbroad. ..................................................................... 8

    C.   Executive Order 31 is not unconstitutionally vague. ........................................................ 10

III.   CONCLUSION .................................................................................................................. 11

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

*i*

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Trustees of the Univ. of N.C.-Wilmington*,
  640 F.3d 550 (4th Cir. 2011) ................................................................................. 2, 7

*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ........................................................................................ 9

*Berry v. Dep't of Social Servs.*,
  447 F.3d 642 (9th Cir. 2006) ........................................................................................ 5

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ........................................................... 3

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ..................................................................................................... 8

*Chen v. Holder*,
  607 F.3d 511 (7th Cir. 2010) ........................................................................................ 7

*Cochran v. City of Atlanta*,
  289 F.Supp. 3d 1276 (N.D. Ga. 2017) ..................................................................... 5, 6

*College Republicans at S.F. State Univ. v. Reed*,
  523 F.Supp. 2d 1005 (N.D. Cal. 2007) ........................................................................ 9

*Connick v. Meyers*,
  461 U.S. 138 (1983) ..................................................................................................... 7

*DeJohn v. Temple University*,
  537 F.3d 301 (3d Cir. 2008) ......................................................................................... 9

*Downs v. L.A. Unified Sch. Dist.*,
  228 F.3d 1003 (9th Cir. 2000) ...................................................................................... 4

*Ford Motor Co. v. Tex. Dep't of Transp.*,
  264 F.3d 493 (5th Cir. 2001) ...................................................................................... 11

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998) ...................................................................................... 10

*Gammoh v. City of La Habra*,
  395 F.3d 1114 (9th Cir. 2005) .................................................................................... 10

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

ii

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ............................................................................................... 2, 4

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................................................................. 10

*Hernandez v. City of Phoenix*,
    43 F.4th 966 (9th Cir. 2022) ................................................................................... 9, 10

*Johnson v. Poway Unified Sch. Dist.*,
    658 F.3d 954 (9th Cir. 2011) ......................................................................................... 4

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ......................................................................................... 3

*McCauley v. Univ. of the Virgin Islands*,
    618 F.3d 232 (9th Cir. 2010) ......................................................................................... 9

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ..................................................................................... 2, 3

*Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*,
    391 U.S. 563 (1968) ............................................................................................*passim*

*Rankin v. McPherson*,
    483 U.S. 378 (1987) ..................................................................................................... 7

*Shurtleff v. City of Bos.*,
    142 S. Ct. 1583 (2022) ................................................................................................. 4

*United States v. Williams*,
    553 U.S. 285 (2008) ............................................................................................... 8, 10

*United States v. Wunsch*,
    84 F.3d 1110 (9th Cir. 1996) ....................................................................................... 10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) ................................................................................................... 10

**Other Authorities**

U.S. Constitution, Amendment I ............................................................................*passim*

Univ. of Wash., Exec. Order 31: Nondiscrimination and Affirmative Action
    (updated Aug. 14, 2020)
    https://www.washington.edu/admin/rules/policies/PO/EO31.html ................... 8, 9, 10, 11

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

iii

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel +1-206-839-4300

## I. INTRODUCTION

Far from the false narrative that Reges presents, the pleaded facts do not support that "UW is imposing a 'pall of orthodoxy' on academic expression." Indeed, the Amended Complaint (Dkt. 46, "FAC") and the Opposition to the motion to dismiss (Dkt. 52, "Opp.") concede several facts undermining Reges's claims: (1) Reges publicized his land acknowledgment statement ("LAS") to faculty in December of 2021, and the University took no action based on the expression of his viewpoint (FAC ¶ 34); (2) the administration did not object to Reges trying to organize a discussion to express his LAS views for any interested faculty (*id.*); (3) when he announced his plan to include his LAS on his Winter 2022 syllabus, the University did not instruct Reges that he could not do so (*id.*); (4) Reges included his LAS on his syllabus to be "provocative" in a manner that "angered some in the UW community," (Opp. 11); and (5) when he included the LAS on his Winter 2022 syllabus, and the administration perceived the anger and disruption to the learning environment that Reges intended to provoke, the administration took limited actions to address student concerns—removing the statement from the online version of the syllabus, creating a second section for any students offended by Reges's provocation, and apologizing to students who were offended—but took no actions at that point to discipline Reges.

The Amended Complaint and communications it incorporates confirm the administration's position that Reges was welcome "to voice [his] opinion and opposition to land acknowledgements [as he has] in other settings." Dkt. 51 at 4. Those communications also cement that Reges (1) continued to include his LAS on the signature block to his university emails, (2) continued to email his LAS to faculty mailing lists, and (3) faced no discipline for expressing his view in those ways. Dkt. 51 at 10–15. And Reges concedes that he included his LAS on other syllabi for his classes in Spring 2022, Fall 2022, Winter 2023, and Spring 2023—and that the administration took no action to remove the LAS in those instances where no disruption to the learning environment ensued. FAC ¶ 98. Last, the administration investigated—in response to a complaint by the union representing student employees—whether Reges's actions violated University policy; as Reges admits, the University imposed no sanctions or discipline at the end of that investigation. FAC ¶¶ 63, 94.

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

1

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

In short, despite Reges's overblown rhetoric about a "pall of orthodoxy" and the University's supposed efforts "to silence his speech," the allegations do not support his claims. Opp. 1, 11. The Amended Complaint should be dismissed.

## II.  ARGUMENT

### A. Reges fails to plausibly plead retaliation and viewpoint discrimination.

#### 1. Reges's speech is not protected under the First Amendment.

Reges concedes that his speech is protected under the First Amendment only if it qualifies as "speech related to scholarship or teaching." *See* Opp. 16. Reges asserts, without citation, that "[a] syllabus is the written product that gives students a preview of a faculty member's in-class speech. If a professor's in-class speech is protected, his syllabus-based speech must be protected as well." Opp. 17–18. But a syllabus is simply the procedural outline of a university course. Aside from providing a course overview and listing the class meeting time and location, a syllabus identifies the policies of a university and its faculty. For example, a university may require faculty to provide students with notice of certain religious or student disability accommodations policies. Or a professor might include her policy on class attendance or plagiarism. Simply put, the syllabus is not a substantive writing or exploration of creative thought. It is certainly not what the Supreme Court had in mind when urging the importance of protecting academic freedom. *See Garcetti v. Ceballos*, 547 U.S. 410, 438 (2006).

Indeed, regulating a syllabus falls squarely within the rule articulated by the Fourth Circuit in *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 563 (4th Cir. 2011). There, the court explained that "[t]here may be instances in which a public university faculty member's assigned duties include a specific role in declaring or administering university policy, as opposed to scholarship or teaching. In that circumstance, *Garcetti* may apply to the specific instances of the faculty member's speech carrying out those duties." *Id.* So too here. Part of Reges's duty as a university lecturer is to distribute a course syllabus, a document on which faculty must provide notices regarding certain university policies. The optional land acknowledgement statement stemmed from one such university-directed policy. *See* FAC ¶¶ 30–32.

*Meriwether v. Hartop*, 992 F.3d 492, 506–07 (6th Cir. 2021), did not hold that syllabi are

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

2

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

"a medium for faculty expression." Opp. 18–19. Instead, *Meriwether* held that a university unconstitutionally silences a professor's viewpoint by forbidding *any* expression, even in his syllabus. *Meriwether*, 992 F.3d at 506. The dispute in *Meriwether* centered on a professor's moral and religious disagreement with the school's policy on preferred pronouns. *Id.* at 498. After being directed to "eliminate all sex-based references from his expression" or refer to students only by their preferred pronouns, the professor requested an accommodation to express his views in another manner by "plac[ing] a disclaimer in his syllabus" explaining his "personal and religious beliefs about gender identity." *Id.* at 499–500 (internal quotation marks omitted). The university rejected this accommodation. *Id.* The court concluded that the university violated the professor's First Amendment rights because it *wholly* forbade him from describing his views on gender identity, whether in the classroom, in the syllabus, or elsewhere. *Id.* at 506. In other words, the university silenced the professor's viewpoint. *Id.*

Not so here. Reges does not allege that the University forbade him from expressing his view in contexts other than on his Winter 2022 syllabus. On the contrary, as the documents cited in the Amended Complaint provide, the University assured Reges that he was welcome 'to voice [his] opinion and opposition to land acknowledgements … in other settings" (Dkt. 51 at 4[1]); Reges emailed his views to faculty repeatedly (FAC ¶ 34, 57), included his LAS on his university signature block, and posted it outside his office door (Dkt. 51 at 12–14); and Reges was permitted to try to organize discussions on the topic (Dkt. 51 at 4)—all without any sanction.

It is irrelevant that *Abcarian* is "pre-*Demers*" (Opp. 18). Defendants rely on *Abcarian* to show that other circuits have recognized—consistent with *Demers*—that *Garcetti*'s academic-freedom acknowledgment is not limitless. It is of no matter whether those courts addressed the

---

[1] The Court may consider the documents attached to Defendants' motion because Reges incorporated them by reference and cited them extensively in his Amended Complaint, using them to bolster his allegations. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Far from seeking to "establish the truth of disputed facts" (Opp. 9), Defendants' exhibits "prevent[] [Reges] from selecting only portions of documents that support [his] claims, while omitting portions of those very documents that weaken—or doom—[his] claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

3

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

issue before or after *Demers*. In any event, Reges's own authorities recognize such limitations. *See* Opp. 17 (citing *Heim v. Daniel*, __ F.4th __, No. 22-1135-cv, 2023 WL 5597837, at *12 n.13 (2d Cir. Aug. 30, 2023) (expressing "no view as to how or whether *Garcetti* might apply to … speech unrelated to a professor's teaching or scholarship, the potentially distinguishable academic contexts in which other Circuits have applied *Garcetti*")).

Reges's reliance on *Shurtleff v. City of Bos.*, 142 S. Ct. 1583, 1598 (2022) (Opp. 26), is also misplaced. *Shurtleff* addressed whether the city of Boston intended to "communicate governmental messages" through a flagpole outside Boston City Hall, "or instead opened the flagpole for citizens to express their own views." *Shurtleff*, 142 S. Ct. at 1587. The contested speech was thus outside the government employee context applicable here. The Court need not wade into *Shurtleff*'s "holistic inquiry" to determine whether Reges's speech is government speech. *Id.* at 1589. The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. That is the entire premise of the parties' dispute surrounding whether the syllabus constitutes speech "related to teaching or scholarship" and how to weigh the parties' competing interests under *Pickering*. Mot. 10. Indeed, Reges acknowledges that this is the applicable standard in the Amended Complaint. *See* FAC ¶ 119. Defendants do not contend that all faculty speech is government speech.

Finally, Reges's attempt to distinguish *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011), and *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000), because they arise in a high school setting, is unavailing. The well-recognized distinction between high school and college speech rights refers to *student* speech, not faculty speech. Every case Reges cites (Opp. 28) involves student speech. Such a distinction makes sense in that context, where students at the high school and university levels have differing degrees of independence and oversight. That distinction is not equally applicable to *faculty* in each setting. Moreover, Defendants rely on these cases only as examples of when a government employee fails to speak as a private citizen. In each case, that answer depended on the time, place, manner, and context of the speech. That same

REPLY IN SUPPORT OF  
MOTION TO DISMISS  
Case No. 2:22-cv-00964-JHC

4

Orrick Herrington & Sutcliffe LLP  
401 Union Street, Suite 3300  
Seattle, Washington 98104-7097  
tel+1-206-839-4300

analysis applies here.

### 2. Reges cannot satisfy the *Pickering* balancing test.

Even if Reges's speech is protected under the First Amendment, his claims still fail because he cannot satisfy the *Pickering* balancing test. Contrary to Reges's mischaracterization (Opp. 14), Defendants do not dispute that First Amendment retaliation and viewpoint discrimination claims are separate causes of action. No matter which claim Reges asserts, however, he must satisfy *Pickering*. Because he cannot do so, he cannot state a plausible claim for relief under the First Amendment.

*Pickering* requires a court to weigh "the interest[s] of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" against "the interests of the teacher, as a citizen, in commenting upon matters of public concern." *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). Only when the latter outweighs the former can a First Amendment claim succeed. Reges concedes that this standard applies to First Amendment retaliation claims. *See* Opp. 13–14. But he seems to dispute that *Pickering* applies to First Amendment viewpoint discrimination claims. *See id.* at 9. Reges is wrong.

In *Berry v. Dep't of Social Servs.*, 447 F.3d 642, 650 (9th Cir. 2006), the Ninth Circuit explained that "the *Pickering* balancing approach applies regardless of the reason an employee believes his or her speech is constitutionally protected." Reges insists that "[n]othing in *Berry* precludes Reges from bringing his standalone claim for viewpoint discrimination." Opp. 15. Reges misses the point. He may bring separate claims for alleged First Amendment violations, but he still must satisfy the *Pickering* balancing test for either claim to succeed. When a First Amendment retaliation claim fails under the *Pickering* test, so too must a viewpoint discrimination claim based on the same underlying facts.

That is precisely the rule explained in *Cochran v. City of Atlanta*, 289 F.Supp. 3d 1276, 1292–93 (N.D. Ga. 2017). Like here, the plaintiff in *Cochran* brought claims under the First Amendment for both free-speech retaliation and viewpoint discrimination premised on the same underlying facts. *Id.* at 1288. The court found the plaintiff's approach "problematic" because "if

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

5

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

Plaintiff cannot prove the first two *Pickering* factors, then the speech is *not protected by the First Amendment* and any firing based on that speech would accordingly be constitutional." *Id.* at 1293. The court thus concluded that it "would be incongruent for a city to be allowed to fire an employee because of his unprotected speech, but yet be subject to a viewpoint discrimination claim for that same firing." *Id.* After finding that the plaintiff failed to pass the *Pickering* balancing test for his retaliation claims, therefore, the court granted summary judgment on viewpoint discrimination as well.

Under Reges's viewpoint discrimination or retaliation claims, he cannot satisfy the *Pickering* balancing test. As an initial matter, the limitation imposed on Reges's speech was minimal—limited to removing his LAS from one quarter's syllabus. Reges could express his views in myriad other ways. The Amended Complaint acknowledges that the University never objected, for example, to his organizing discussion groups to debate the topic, including his LAS on the syllabi for other classes he taught in other terms (where no complaints were received), and posting his LAS outside his office door. *See* FAC ¶¶ 34, 57; Dkt. 51 at 4, 10–15.

That minimal limitation must be weighed against the University's ability to serve its educational mission without disruption. Throughout the Complaint, Reges acknowledges the disruption his statement caused at the University. Reges admits that students filed multiple complaints and that student-employees claimed his actions violated their collective bargaining agreement with the University. *See* FAC ¶¶ 41, 63, 67. Reges admits that over 30% of his class switched to the alternative section despite it being offered at the same day and time as Reges's course. FAC ¶ 53. Reges pleads facts highlighting the University's legitimate interest in ensuring the efficient functioning of its classrooms, including by responding to complaints. For example, Reges admits that the University created an alternative class section only *after* the University received multiple complaints about Reges's statement and Reges refused to remove it from his syllabus. FAC ¶¶ 37, 41, 63, 67. None of this is surprising given Reges's admissions that his LAS was intended to be "provocative" and his provocation angered members of the University community. Dkt. 51 at 14. Even if Reges disputes the level of disruption, the University was not required to "allow events to unfold to the extent that the disruption of the [classroom or the school]

REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

6

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

. . . [wa]s manifest before taking action." *Connick v. Meyers*, 461 U.S. 138, 152 (1983).

Reges further argues that the Court should not consider the time, place, and manner of his speech in conducting the *Pickering* balancing. *See* Opp. 21–22. Reges misstates the law. Such consideration is central to the *Pickering* analysis. As the Supreme Court has explained, "In performing the [*Pickering*] balancing, the [employee's] statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Indeed, courts have found that a failure to consider the time, place and manner of the speech being restricted is reversible error. *See, e.g.*, *Chen v. Holder*, 607 F.3d 511, 514 (7th Cir. 2010).

Similarly, Reges is wrong that the impact of a government employee's speech on others cannot be considered under *Pickering* (Opp. 21–22). As the Supreme Court has recognized, "pertinent considerations [include] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388.

The cases Reges cites are inapposite. They do not address alleged retaliation for a government employee's speech; rather, they deal with prospective categorical prohibitions on speech. *See Free Speech Coal., Inc. et al. v. Colmenero*, No. 1:23-CV-917-DAE, 2023 WL 5655712, *9 (W.D. Tex. Aug. 31, 2023); *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 134 (1992).

Reges's speech was included in a university-sanctioned syllabus distributed in the classroom on the first day of class. FAC ¶¶ 30, 40. His speech appeared on the University's class portal, "where students can find syllabi, class materials, and assignments." *Id.* The timing of his statement was no coincidence: it came only after the Allen School suggested—but did not mandate—inclusion of land acknowledgment statements as a "best practice[] for inclusive teaching." FAC ¶ 30. This is not a case where the speech was made "out of purely academic interest," *Connick*, 461 U.S. at 153, or included only in "external writings and appearances" separate from the University, *Adams*, 640 F.3d at 554.

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

7

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

The alleged sanction imposed on Reges pales against those considerations. There is no allegation that Reges was fired, prevented from teaching, docked pay, or asked to take any leave or suspension. *See generally* FAC. No disciplinary proceeding has been scheduled and no charges have been filed. *Id.* ¶ 82. The only purported "adverse actions" are the University's accommodation of an additional class section following multiple student complaints (FAC ¶¶ 44, 63, 76), and the opening of an investigation to determine *whether* action is needed (FAC ¶¶ 60, 64, 70, 73, 75). During that investigation, Reges was not considered for a merit pay raise because the University was determining whether he should be subject to discipline. A merit pay raise was awarded and paid retroactively after the investigation.

The University's interest in the efficient functioning of its school—including by responding to student complaints and complying with the faculty Standard of Conduct—far outweighs Reges's interest in speaking about land acknowledgement statements on a university-sanctioned document.

### B. Executive Order 31 is not facially overbroad.

Executive Order 31 is not facially overbroad. Reges does not even try to construe the Order, instead extracting two words from it to suggest that the Order could prohibit all forms of expressive conduct. But before administering the "strong medicine" of invalidating a law or policy as overbroad—what the Supreme Court calls a "last resort," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)—courts must first "construe the challenged statute," *United States v. Williams*, 553 U.S. 285, 293 (2008). Doing so here shows that the Order aims at conduct closely akin to unlawful discrimination, harassment, and retaliation. It does not sweep in substantially more protected speech than unprotected speech. Reges's claim fails.

Reges nowhere contests the interpretive principles that apply in construing the Order. *Compare* Mot. 19–21, *with* Opp. 29–31. The Court, in applying those principles, should read the Order in context rather than read individual words in isolation. *See* Mot. 19–21 (collecting authorities). The Order's bar on "unacceptable or inappropriate" conduct aims to "facilitate [the] goal" of "promoting an environment that is free of discrimination, harassment, and retaliation." Exec. Order 31 § 1. Both the title and text of the substantive provision that Reges challenges confirm that context. The Order contains a list of definitions tracking federal employment law. *See*

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

8

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

1  *id.* § 4. And it commits the University to interpret the Order "in the context of academic freedom
2  in the University environment." *Id.* § 5(A); *see Arce v. Douglas*, 793 F.3d 968, 985 (9th Cir. 2015)
3  (rejecting overbreadth challenge in part because policy provided it would not be construed to
4  prohibit instruction on historical oppression and explaining it would be "inappropriate" to read the
5  challenged statute broadly when it was "readily susceptible" to narrowing construction). The Order
6  is thus limited to conduct—rarely expressive in any event—closely akin to unlawful harassment,
7  discrimination, and retaliation.

8  Only by wrenching two words free from this context can Reges contend that the Order is
9  overbroad. The Amended Complaint alleges no instance in which the Order was the basis for
10 prohibiting any of the illustrative conduct his opposition recites—none of which is alleged to have
11 occurred at the University. *See* Opp. 30 & n.4; *see also* FAC.

12 Nor do Reges's cited authorities aid him. All are distinguishable because the challenged
13 provisions at issue lacked limiting language and context showing that those provisions covered
14 conduct akin to unlawful or unprotected speech. *See, e.g.*, *McCauley v. Univ. of the Virgin Islands*,
15 618 F.3d 232, 249–50 (9th Cir. 2010) (invaliding ban on "offensive" signs when requirement
16 lacked "any requirement akin to a showing of severity or pervasiveness" and thus contained no
17 "shelter for core protected speech"); *DeJohn v. Temple University*, 537 F.3d 301, 317–18 (3d Cir.
18 2008) (invalidating student-conduct prohibition on "hostile" or "offensive" conduct without a
19 "requirement akin to a showing of severity or pervasiveness"); *College Republicans at S.F. State*
20 *Univ. v. Reed*, 523 F.Supp. 2d 1005, 1020 (N.D. Cal. 2007) (observing "[t]here is no clue or signal
21 in the initial paragraphs or in the substantive proscriptions of the regulation that there might be set
22 forth at the end some clarification of or limitations on the regulation's mandates"). The Order here,
23 by contrast, is replete with textual and contextual limits on its application.

24 Reges offers no support for the apparent premise of his claim: that public universities lack
25 authority to regulate, investigate, or punish *any* conduct that is not independently unlawful. And
26 the Ninth Circuit has held otherwise. *See Hernandez v. City of Phoenix*, 43 F.4th 966, 980 (9th
27 Cir. 2022) (overbreadth challenges "in the public employment context" turn on a "modified
28 *Pickering* balancing analysis that closely tracks the test used for First Amendment retaliation

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

9

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

claims"). Reges's overbreadth challenge cannot survive.

### C. Executive Order 31 is not unconstitutionally vague.

Reges's claim that Executive Order 31 is unconstitutionally vague fails for similar reasons. The Order, on its face, governs only conduct closely akin to discrimination, harassment, or retaliation. Thus, reasonable members of the University community can know what sort of conduct is "unacceptable" or "inappropriate" under the Order. The authorities Reges cites are distinguishable precisely because the provisions struck down there lacked the context from which reasonable observers could know what conduct was prohibited or any limit on enforcement.

Courts have never required "perfect clarity and precise guidance . . . even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (citation omitted). Indeed, "we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). The vagueness doctrine also applies with less force when the restriction imposes only civil consequences and when the challenged policy governs public-employee speech. *See Hernandez*, 43 F.4th at 982; *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982). Reges overlooks these principles in his opposition.

And unlike in the cases Reges cites, the Order's language expressly qualifies the references to "inappropriate" and "unacceptable" conduct by tethering them to the specific context of harassment, discrimination, and retaliation, and by requiring the University to interpret the Order in the context of its commitment to academic freedom and by reference to federal employment law. *See Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005) ("[O]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity."). This narrowing construction offers enough specificity to put a member of the University community of reasonable intelligence on notice of the conduct the Order prohibits. *See, e.g.*, *Arce*, 793 F.3d at 988 (statute prohibiting coursework promoting resentment toward a race or class of people not void for vagueness "[f]or many of the same reasons" it was not overbroad). Reges's contrary authorities lack comparable textual guidance on what the regulations at issue in those cases proscribed. *See, e.g.*, *Foti v. City of Menlo Park*, 146 F.3d 629, 638–39 (9th Cir. 1998) (invalidating "odd" law banning signs on parked cars depending on subjective intent of driver that invited

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

10

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

arbitrary enforcement); *United States v. Wunsch*, 84 F.3d 1110, 1119–20 (9th Cir. 1996) (noting that California courts had never applied a narrowing construction to law challenged for vagueness).

Reges is also wrong to claim that the Order invites arbitrary enforcement. A civil law is void for vagueness only if its terms are "so vague and indefinite as really to be no rule or standard at all" or if it is "substantially incomprehensible." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 507 (5th Cir. 2001) (citation omitted). But the Order, by its terms, must be interpreted "in the context of academic freedom in the University environment." Exec. Order 31 § 5(A). Far from being an incomprehensible standard, that qualification—alongside the definitions and context showing the Order's limited scope—erects guardrails around arbitrary enforcement.

Finally, Reges fails to discuss the authorities that Defendants' motion collects showing that courts, including in a recent Ninth Circuit decision, routinely reject vagueness challenges under circumstances like these. *Compare* Mot. 22–23, 24, *with* Opp. 32–33. Those cases highlight the regularity with which courts uphold provisions no more precise than those in the Order. The same outcome should prevail here.

### III.   CONCLUSION

The Court should grant Defendants' motion and dismiss the Amended Complaint with prejudice.

DATED this 29th day of September, 2023.

REPLY IN SUPPORT OF
MOTION TO DISMISS
Case No. 2:22-cv-00964-JHC

11

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98104-7097
tel+1-206-839-4300

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Robert M. McKenna*
Robert M. McKenna (WSBA# 18327)
Aaron Brecher (WSBA# 47212)
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone (206) 839-4300
Fax (206) 839-4301
rmckenna@orrick.com

R. David Hosp (*Pro Hac Vice Admission*)
Kristina D. McKenna (*Pro Hac Vice Admission*)
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone (617) 880-1802
Fax (617) 880-1801
dhosp@orrick.com
kmckenna@orrick.com

*Attorneys for Defendants Ana Mari Cauce, Magdalena Balazinska, Dan Grossman, and Nancy Allbritton*

Counsel certifies that this memorandum contains 4,176 words, in compliance with the Local Civil Rules.

12