1
2
3
4
5
6
7

THE HONORABLE JOHN H. CHUN

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION**

9
10

STUART REGES,

11

*Plaintiff,*

12

v.

13

ANA MARI CAUCE, et al.,

14

*Defendants.*

CASE NO.     2:22–cv–00964–JHC

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
February 2, 2024

15
16

ORAL ARGUMENT REQUESTED

17
18

GABRIEL WALTERS*
DC Bar No. 1019272
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
gabe.walters@thefire.org
jay.diaz@thefire.org

*Admitted *Pro Hac Vice*
*Attorneys for Plaintiff*

ROBERT A. BOUVATTE, JR.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (564) 999-4005
bob@rbouvattepllc.com

19
20
21
22
23
24

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................. iv

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS ............................................................................... 3

UW's Allen School of Computer Science Takes a Position in the Public
Debate over Land Acknowledgments. ...................................................... 3

Professor Reges Takes a Dissenting View by Including a Land
Acknowledgment Parody in His Syllabi. .................................................. 5

Defendants Censor Reges's Land Acknowledgment Parody and
Publicly Repudiate It. ............................................................................... 6

Defendants Create a Competing Version of Reges's Class and Tell
Reges's Students to Submit Formal Complaints. ..................................... 8

Defendants Undertake Disciplinary Proceedings to Further Punish
Professor Reges for His Land Acknowledgment Parody. ........................ 11

Defendants Threaten Reges with Future Disciplinary Action for His
Land Acknowledgment Parody. ............................................................... 14

ARGUMENT .................................................................................................. 15

I.    Defendants Censored Reges's Speech Because They Found It
      Offensive, Entitling Him to Summary Judgment on His
      Viewpoint Discrimination Claim. .............................................. 15

II.   UW Took Adverse Employment Actions Against Reges Because
      of His Academic Speech on a Public Issue, Entitling Him to
      Summary Judgment on His Retaliation Claims. ....................... 18

      A.    There is no genuine dispute that Reges's land
            acknowledgment parody in his syllabi is related to
            teaching. ........................................................................... 19

      B.    Reges's interest in commenting on land acknowledgments
            outweighs Defendants' nonexistent efficiency interest............. 20

      C.    Defendants undertook and continue to threaten adverse
            employment actions in the future against Reges for his
            protected speech. .............................................................. 22

     D.    Reges's protected speech was the motivating factor for
UW's adverse employment actions. ............................................ 24

III.   Qualified Immunity Is No Defense Here Because the Law
Clearly Established That Professor Reges's Speech Was
Protected Against Retaliation and Viewpoint Discrimination............. 26

IV.   Professor Reges Is Entitled to Summary Judgment on His
Overbreadth Claim Because Executive Order 31's Prohibition of
"Unacceptable" and "Inappropriate" Speech Is Boundless................... 28

V.    Professor Reges Is Entitled to Summary Judgment on His
Vagueness Claim Because Executive Order 31's Prohibition of
"Unacceptable" and "Inappropriate" Speech Is Undefined and Its
Enforcement Is Entirely Discretionary. ................................. 30

CONCLUSION ................................................................. 33

CERTIFICATE OF WORD COUNT.............................................. 1

CERTIFICATE OF SERVICE ................................................. 2

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adamian v. Jacobsen,*
   523 F.2d 929 (9th Cir. 1975) ............................................................ 2

*Adams v. Trs. of the Univ. of N.C.-Wilmington,*
   640 F.3d 550 (4th Cir. 2011) .......................................................... 19

*Am. Freedom Def. Initiative v. King Cnty.,*
   904 F.3d 1126 (9th Cir. 2018) ........................................................ 16

*Anthoine v. N. Cent. Cntys. Consortium,*
   605 F.3d 740 (9th Cir. 2010) .................................................... 23, 24

*Blueford v. Prunty,*
   108 F.3d 251 (9th Cir. 1997) .......................................................... 27

*Boos v. Barry,*
   485 U.S. 312 (1988) ........................................................................ 26

*Buchanan v. Alexander,*
   919 F.3d 847 (5th Cir. 2021) .......................................................... 19

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................ 15

*Clairmont v. Sound Mental Health,*
   632 F.3d 1091 (9th Cir. 2011) ........................................................ 27

*Coll. Republicans at S.F. State Univ. v. Reed,*
   523 F. Supp. 2d 1005 (N.D. Cal. 2007) .......................................... 29

*Comite de Jornaleros v. City of Redondo Beach,*
   657 F.3d 936 (9th Cir. 2011) .......................................................... 28

*Connick v. Myers,*
   461 U.S. 138 (1983) .................................................................. 21, 22

*Coszalter v. City of Salem,*
   320 F.3d 968 (9th Cir. 2003) .......................................................... 23

*Dambrot v. Cent. Mich. Univ.,*
   55 F.3d 1177 (6th Cir. 1995) .......................................................... 32

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page iv

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ........................................................................... 30

*DeJohn v. Temple Univ.*,
    537 F.3d 301 (3d Cir. 2008) .............................................................. 29

*Demers v. Austin*,
    746 F.3d 402 (9th Cir. 2014) ........................................... 19, 20, 21, 28

*Flores v. Bennett*,
    635 F. Supp. 3d 1020 (E.D. Cal. 2022) ........................................ 30, 32

*Flores v. Bennett*,
    No. 22-16762, 2023 WL 4946605 (9th Cir. Aug. 3, 2023) ............ 30, 32

*Forsyth Cnty. v. Nationalist Movement*,
    505 U.S. 123 (1992) ........................................................................... 26

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir. 1998) ............................................................ 31

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ........................................................................... 19

*Giebel v. Sylvester*,
    244 F.3d 1182 (9th Cir. 2001) .......................................................... 27

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ..................................................................... 31, 32

*Healy v. James*,
    408 U.S. 169 (1972) ..................................................................... 22, 27

*Heim v. Daniel*,
    81 F.4th 212 (2d Cir. 2023) .............................................................. 20

*Hill v. Colorado*,
    530 U.S. 703 (2000) ........................................................................... 31

*Johnson v. Multnomah Cnty.*,
    48 F.3d 420 (9th Cir. 1995) .............................................................. 21

*Karl v. City of Mountlake Terrace*,
    678 F.3d 1062 (9th Cir. 2012) .......................................................... 27

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page v

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Keyishian v. Bd. of Regents of Univ. of N.Y.*,
    385 U.S. 589 (1967) .................................................................... 21, 22

*Levin v. Harleston*,
    966 F.2d 85 (2d Cir. 1992).................................................................. 23

*Matal v. Tam*,
    582 U.S. 218 (2017) ............................................................... 16, 18, 26

*McCauley v. Univ. of the V.I.*,
    618 F.3d 232 (3d Cir. 2010).................................................................. 29

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
    192 F.3d 1283 (9th Cir. 1999) .............................................................. 23

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ................................................................ 19

*Papish v. Bd. of Curators of the Univ. of Mo.*,
    410 U.S. 667 (1973) ...................................................................... 16, 28

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ........................................................................... 26

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*,
    641 F. Supp. 3d 1218 (N.D. Fla. 2022) ................................................. 22

*Pickering v. Board of Education*,
    391 U.S. 563 (1968) ........................................................................... 19

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ........................................................................... 16

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*,
    605 F.3d 703 (9th Cir. 2010) ............................................................. 2, 15

*Roe v. City of San Francisco*,
    109 F.3d 578 (9th Cir. 1997) ............................................................... 21

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995) ............................................................ 3, 16, 18, 27

*Smith v. Goguen*,
    415 U.S. 566 (1974) ...................................................................... 31, 33

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page vi

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) .............................................................. 30

*Sweezy v. New Hampshire*,
  354 U.S. 234 (1957) ............................................................................ 21

*United States v. Stevens*,
  559 U.S. 460 (2010) ............................................................................ 29

*United States v. Wunsch*,
  84 F.3d 1110 (9th Cir. 1996) .............................................................. 31

**OTHER AUTHORITIES**

Alex Morey, *Bitchassness, hateration, general stankness possible motives behind
  reassignment of San Diego State philosophy professor for teaching slurs,
  'offensiphobia'* (March 8, 2022) .......................................................... 29

Amanda Nordstrom, *Tennessee Tech still investigating, enforcing ban on LGBTQ+
  and theater groups that hosted drag show* (Oct. 31, 2022) .......................... 29

Sabrina Conza, *Ferris State cannot punish professor for comedic—and now viral—
  video jokingly referring to students as 'cocksuckers' and 'vectors of disease'*
  (Jan. 17, 2022) .................................................................................... 29

**RULES**

Fed. R. Civ. P. 56 .................................................................................... 1

Fed. R. Civ. P. 56(a) ................................................................................ 15

Local Rule 56.1 ....................................................................................... 1

Local Rule 7 ............................................................................................ 1

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page vii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

Under Federal Rule of Civil Procedure 56 and Local Rules 7 and 56.1 , Plaintiff Stuart Reges moves for summary judgment as follows.

1.     Reges is entitled to summary judgment on Cause of Action 1 against individual-capacity Defendants Nancy Allbritton, Magdalena Balazinska, and Daniel Grossman because they discriminated against Reges's viewpoint in violation of the First Amendment.

2.     As a public university professor, Reges is entitled to summary judgment on Causes of Action 2 and 3 against individual-capacity Defendants Allbritton, Balazinska, and Grossman, and all official-capacity Defendants, because they retaliated against him for his speech on a matter of public concern.

3.     Reges is entitled to summary judgment on Cause of Action 4 against Defendant Ana Mari Cauce because University of Washington (UW) Executive Order 31 is unconstitutionally overbroad.

4.     Reges is entitled to summary judgment on Cause of Action 5 against Defendant Cauce because UW Executive Order 31 is unconstitutionally vague.

## **INTRODUCTION**

Across the country and at UW, land acknowledgments—statements that explicitly recognize the indigenous inhabitants of a given space—are increasingly common on campus and the subject of heated public debate. Some view them as appropriate recognition of injustices, while others—like Reges—view them as performative gestures signifying the political viewpoint that colonizers stole and occupy the land of indigenous peoples.

1   In 2019, the UW Paul G. Allen School of Computer Science and Engineering

2   (Allen School) took a side in the debate, recommending that faculty include a land

3   acknowledgment in their syllabi and providing UW's own statement as a model. In

4   response, and objecting to this politicization of syllabi, Reges parodied UW's land

5   acknowledgment in his syllabi, beginning in January 2022. Reges is a distinguished

6   teaching professor in the Allen School, where he has taught for nearly 20 years. But

7   UW soured on him for his dissenting viewpoint on land acknowledgments.

8   Reges's version of a land acknowledgment parodies these statements, to

9   encourage faculty and students to reconsider their appropriateness in university

10   syllabi. This upset and angered some in the UW community. Offended by Reges's

11   statement, UW administrators censored and punished him, including under an

12   overbroad and vague policy banning "unacceptable or inappropriate" conduct, in

13   violation of his First Amendment right to express his viewpoint on a matter of public

14   concern.

15   UW cannot justify suppressing Reges's speech by pointing to listener reactions.

16   "The desire to maintain a sedate academic environment, to avoid the discomfort and

17   unpleasantness that always accompany an unpopular viewpoint, is not an interest

18   sufficiently compelling . . . to justify limitations on a teacher's freedom to express

19   himself on political issues in vigorous, argumentative, unmeasured, and even

20   distinctly unpleasant terms." *Adamian v. Jacobsen*, 523 F.2d 929, 934 (9th Cir. 1975)

21   (cleaned up); *see also Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703,

22   708 (9th Cir. 2010) (university's role fostering exchange of "diversity of views" and

23   PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
24   Page 2

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1    "[i]ntellectual advancement" through "discord and dissent" "will not survive if certain

2    points of view may be declared beyond the pale") (citing *Adamian*)); *Rosenberger v.*

3    *Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 836 (1995) ("For the

4    University . . . to cast disapproval on particular viewpoints . . . risks the suppression

5    of free speech and creative inquiry in one of the vital centers for the Nation's

6    intellectual life, its college and university campuses.").

7        Defendants cannot genuinely dispute the material facts, including that they

8    censored and punished Reges and threaten future punishment, because of his

9    statement. Accordingly, he is entitled to summary judgment on all his claims:

10   viewpoint discrimination, retaliation, overbreadth, and vagueness.

### STATEMENT OF FACTS

***UW's Allen School of Computer Science Takes a Position in the Public Debate over Land Acknowledgments.***

        A land acknowledgment recognizes that an institution "is currently situated

on lands that were already in the possession of indigenous people prior to the

formation of that institution." (Walters Decl. Ex. A, at 13:24–14:6.)[1] There is a trend

of universities adopting land acknowledgments. (*Id.* at 14:10–18.) Sometime around

2015 (*id.* at 16:23–17:3), UW adopted the following land acknowledgment statement:

> The University of Washington acknowledges the Coast Salish peoples of
> this land, the land which touches the shared waters of all tribes and
> bands within the Suquamish, Tulalip and Muckleshoot nations.

---

[1] Hereinafter, citations refer to Walters Declaration exhibits, unless otherwise noted.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1    (Ex. B.) UW leadership recites this statement "during events to

2    acknowledge that [the UW] campus sits on occupied land." (*Id.*)

3        The statement "was developed over the course of several years by the UW

4    Tribal Liaison with input from tribal elders, elected tribal leaders, attendees of the

5    annual UW Tribal Leadership Summit, the Affiliated Tribes of Northwest Indians,

6    UW Native American Advisory Board and others across [the UW] community." (*Id.*)

7    This involved a "long negotiation" of several "constituencies" and "stakeholders" who

8    advocated for the specific language UW adopted. (Ex. A at 21–22:13, 43:6–44:19.) UW

9    considers its land acknowledgment to be important for building relationships and

10   trust with tribal nations, following a political history of abuse and distrust. (*Id.* at

11   33:25–37:15.) UW "recognize[s] that this is a difficult, painful and long history,

12   and . . . thank[s] the original caretakers of this land." (Ex. B.)

13       Defendants admit that land acknowledgments are a matter of public debate.

14   (Ex. C, Defs.' Resp. to Pl.'s Req. for Admis. No. 1.) Defendants know they are

15   controversial, including with respect to accuracy, which tribes are specifically named,

16   and whether they represent anything more than an empty, performative, or even

17   patronizing gesture. (Ex. A at 24:4–25:14; Ex. G at 110:5–22; Ex. Y at 82:15–90:11.)

18   UW has been aware of disagreements and public debate regarding land

19   acknowledgments since at least 2015. (Ex. A at 74:2–75:1, 75:18–76:13, 77:14–17,

20   79:9–15.)

21       In 2019, the Allen School recommended that faculty include an "Indigenous

22   Land Acknowledgment Statement" in their course syllabi, claiming that doing so was

23

among the "best practices for inclusive teaching." (Ex. D.) The Allen School provided UW's land acknowledgment as a sample. (*Id.*)

***Professor Reges Takes a Dissenting View by Including a Land Acknowledgment Parody in His Syllabi.***

Reges is a respected computer science professor. The Allen School hired Reges particularly to design and teach introductory computer science, which he has done successfully since 2004. (Reges Decl. ¶ 3.) In 2011, UW honored Reges with its Distinguished Teaching Award. (*Id.* ¶ 7.)

At the start of the Winter Quarter 2022, which began January 3, Reges included a dissenting land acknowledgment in his Computer Science and Engineering (CSE) 143 syllabus. (Ex. E.) His statement reads:

> I acknowledge that by the labor theory of property the Coast Salish people can claim historical ownership of almost none of the land currently occupied by the University of Washington.

(*Id.*)

Reges intended his statement as a parody of land acknowledgments. (Reges Decl. ¶¶ 13, 18.) Generally, Reges objects to including political statements in syllabi. (*Id.* ¶ 12.) However, he believes that if the Allen School allows faculty to endorse UW's viewpoint on land acknowledgments in their syllabi, then it must allow his alternative viewpoint. (*Id.* ¶ 20; Ex. F.)

Reges was aware his parody caused disagreement and complaints. (Reges Decl. ¶ 22.) From experience, he nevertheless thinks it important to speak his mind. (*Id.* ¶ 23.) In 1982, as a graduate student in computer science, he published an op-ed in the Stanford Daily regarding his experience as a gay man. (*Id.* ¶ 6.) Hiring then-23-

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 5

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

year-old Reges for a position teaching introductory computer-science courses, the department chair offered a Hobson's choice: The job is yours if you never again publish about being gay. (*Id.*) Reges took the job and stayed silent until the chair retired three years later, when Reges published a further op-ed describing this censorship, promising he would not allow himself to be silenced again. (*Id.*) He has held the freedom of speech as a primary value in his life ever since. (*Id.*)

***Defendants Censor Reges's Land Acknowledgment Parody and Publicly Repudiate It.***

On January 4, 2022, Defendant Magdalena Balazinska, director of the Allen School, learned of the statement in Reges's syllabus when a colleague forwarded her a post and comment thread on Reddit, a social media site. (Ex. G at 111:10–18.) Director Balazinska immediately engaged the college's Human Resources Department. (Ex. H.) She also told the vice director of the Allen School, Defendant Daniel Grossman, that she was "going to escalate it with the dean to the provost and other UW-level authorities" because she was "tired of the fact that UW rules are such that we can't actually do anything about this type of behavior." (Ex. I.) Balazinska contacted senior director of human resources for the UW College of Engineering, Aileen Trilles, to ask what to do if Reges refused to remove the statement from his syllabus. (Ex. J.) Trilles informed her that the next step would lie with the Faculty Code § 25-71 process, a disciplinary procedure that "might lead to dismissal, reduction of salary, or suspension for more than one quarter." (*Id.*; Ex. K.)

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 6

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

That same day, Balazinska sent Reges an email ordering him to remove the statement from his syllabus because it was "offensive" and created a "toxic environment." (Ex. L.) She provided Reges a link to UW's own land acknowledgment and told him that she would "ask any instructor who uses a land acknowledgment other than the UW [one] to remove it." (Ex. F; Ex. G at 146:18–147:14.)

Reges followed the link provided by Balazinska. The linked webpage includes not only UW's land acknowledgment, but also an asterisked addendum:

> The language we use to honor place was developed over the course of several years by the UW Tribal Liaison with input from tribal elders, elected tribal leaders, attendees of the annual UW Tribal Leadership Summit, the Affiliated Tribes of the Northwest Indians, UW Native American Advisory Board and others across our community. This language template is spoken by UW leadership during events to acknowledge that our campus sits on occupied land. We recognize that this is a difficult, painful and long history, and we thank the original caretakers of this land.

(Ex. B.)

Because Reges objected to the political nature of UW's land acknowledgment statement, he declined to remove his parody from his syllabus. (Reges Decl. ¶ 20; Ex. F.) Director Balazinska then ordered Allen School information-technology staff to censor Reges's parody statement. First, she directed staff to replace Reges's syllabus from the online course portal with a notice that it had been "temporarily removed due to offensive statements," referring to Reges's parody. (Ex. G at 152:20–154:16; Ex. M.) Later that day, Balazinska directed information-technology staff to repost an edited version of Reges's syllabus, with the "offensive" section removed, after receiving

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 7

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

approval from Defendant Nancy Allbritton, Dean of the College of Engineering, and other UW administrators. (Ex. G at 157:17–159:20.)

Director Balazinska and other administrators also publicly repudiated Reges's speech. On January 4, Balazinska and Vice Director Grossman approved—and the Allen School posted from its official Twitter account—a public tweet expressing disapproval of Reges's statement: "We became aware of this offensive statement a few hours ago, were horrified by it, and are working on getting it removed from the syllabus." (Ex. N; Ex. O.) Balazinska later told reporters that Reges's statement was "inappropriate" and "offensive" and that the "invocation of Locke's labor theory of property dehumanizes and demeans Indigenous people and is contrary to the long-standing relationship and respect the UW has with and for the Coast Salish peoples and the federally recognized tribes within the state of Washington." (Ex. P; Ex. G at 98:18–99:17.) Balazinska based her statement to the press on a conversation she had with Chadwick Allen, UW's corporate representative under Federal Rule of Civil Procedure 30(b)(6), who testified not only that Reges's statement is dehumanizing but also that UW's land acknowledgment is political. (Ex. G at 98:2–99:17; Ex. A at 72:4–21, 91:23–92:10.)

***Defendants Create a Competing Version of Reges's Class and Tell Reges's Students to Submit Formal Complaints.***

In the afternoon on January 4, Vice Director Grossman suggested that Allen School leadership email the students in Reges's class, which he recognized as "unprecedented." (Ex. Q.) Director Balazinska responded that they "should ask the

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

students to submit official complaints," because that "helps us to take action." (*Id.*) On January 5, she emailed the CSE 143 class roster of over 500 students to repudiate the "offensive" statement; encouraged students to file discrimination complaints against Reges; and provided hyperlinks to three options for filing official complaints. (Ex. R.)

In another January 5 email, to Reges, Balazinska claimed that his statement was "causing a disruption to instruction in [his] class." (Ex. S.) As of this time on January 4, Balazinska was aware of the Reddit thread, one anonymous complaint, one complaint from a student, and various discussions among the faculty that they were hearing from an unknown number of students about Reges's statement. (Balazinska Dep. Tr. Ex. G at 147:23–148:25.)

But his classes never experienced a disruption during instruction, nor did any others at UW. (Ex. G at 166:21–170:18.) He has continued to place his statement in his syllabi since January 2022, and has instructed his classes since, without any disruption to instruction in his classes. (*Id.* at 168:12–170:18, 233:15–235:10.)

Regardless, during that first week of the Winter 2022 Quarter, Director Balazinska and Vice Director Grossman scrambled to create a new competing CSE 143 class. (Ex. T, Resp. Nos. 5, 6; Ex. U, Resp. No. 4.) This was unprecedented; in Reges's eighteen years at UW, there was only ever one CSE 142 or 143 course offering per quarter. (Reges Decl. ¶ 25; Ex. V at 123:6–14; *see also id.* at 133:20–134:1 (discussing Spring 2022 quarter).) Unlike Reges's class, which had the option of meeting for in-person lectures, the new CSE 143 section would use lectures pre-

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

recorded by another instructor, Hunter Schafer. (Ex. W.) Balazinska and Grossman created this section because they and an unidentified number of students considered Reges's statement offensive. (Ex. X ("The statement in his syllabus was deeply offensive and many students feel very uncomfortable in his class. So we are trying our best to provide students an alternative to CSE 143 this quarter that can still allow them to participate in an inclusive learning environment."); Ex. Y. at 202:4–22, 205:21–206:8.) Their goal was to ensure no student had to take an introductory computer science course—a requirement for several different UW majors—from Reges. (Ex. Z (discussing, on January 9, 2022, "the new principle of 'nobody should be forced to take a class from Stuart' given his offensive syllabus incident").)

Roughly 70 percent of students remained in Reges's CSE 143 class that quarter, while roughly 30 percent—or 170 out of over 500 students—switched to the competing section. (Ex. Y at 181:10–182:8; Reges Decl. ¶ 26.) Defendants did nothing to evaluate why those 170 students switched. (Ex. Y at 189:12–190:20.) In fact, Director Balazinska spoke to only one student in the Winter Quarter who said she would drop the class because of his statement. (Ex. G at 180:5–186:1.) Balazinska merely extrapolated that there would be others. (*Id*.)

Director Balazinska and Vice Director Grossman heard from far more students who wanted to know whether Professor Schafer would have more favorable testing, grading, and homework resubmission policies than Reges. (Ex. W; Ex. AA ("we're getting a ton of grading questions"); Ex. Y at 197:15–198:6; *see also* Ex. BB (student

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1   asking to switch classes because his friends had done so, and he felt "lonely"

2   remaining in Reges's class).)

3   ***Defendants Undertake Disciplinary Proceedings to Further Punish Professor***
    ***Reges for His Land Acknowledgment Parody.***

4

        On February 23, 2022, Reges sent an email to the Allen School's "diversity-

5   allies" email listserv for faculty and students, expressing his intent to reintroduce his

6   land acknowledgment parody in his Spring Quarter 2022 syllabi. (Ex. CC.) Director

7   Balazinska, as listserv moderator, reviewed Reges's email and allowed it to pass

8   through to the list's recipients. (Ex. DD.) Again, in the Spring Quarter, Balazinska

9   and Vice Director Grossman created a competing section of Reges's course, this time

10  CSE 142, taught by another instructor. (Ex. T, Resp. No. 6.)

11      Because of Reges's intent to place his statement in his Spring syllabus, on

12  March 2, 2022, Balazinska called Reges to a meeting under Faculty Code § 25-71 to

13  discuss alleged violations of UW policies, including Executive Order 31. (Exs. EE,

14  FF.) That Order provides "the University retains the authority to discipline or take

15  appropriate corrective action for any conduct that is deemed unacceptable or

16  inappropriate, regardless of whether the conduct rises to the level of unlawful

17  discrimination, harassment, or retaliation." (Ex. GG.) Balazinska cited Reges's land

18  acknowledgment statement as the cause for the alleged violations. (Ex. FF.)

19      Reges met with Director Balazinska, Vice Director Grossman, and Senior

20  Director of Human Resources Trilles on March 8, 2022. (Ex. T, Resp. No. 9; Ex. U,

21  Resp. No. 1.) On March 9, 2022, Balazinska proposed a resolution to Reges. (Exs. HH,

22

23  PLAINTIFF'S MOTION                    FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
    FOR SUMMARY JUDGMENT                              510 Walnut Street, Suite 900
    Case No. 2:22-cv-00964-JHC                            Philadelphia, PA 19106
24  Page 11                                               Tel: (215) 717-3473

II.) It would have required Reges to "agree not to include . . . [his] version of the land acknowledgment that was published in the CSE 143 Winter 2022 online course syllabus in . . . future course syllabi." (Ex. II.) This ultimatum meant that Reges could avoid further discipline only by removing his land acknowledgment parody from his syllabi. (Ex. JJ at 146:10–150:25.) Reges declined the proposed resolution the next day, because accepting it would have required him to censor himself. (Reges Decl. ¶ 31.) Balazinska then escalated the matter to Dean Allbritton under Faculty Code § 25-71. (Ex. G at 226:10–14, 227:20–228:3.)

On April 21, 2022, Dean Allbritton informed Reges that she would convene a "special investigating committee" because of his land acknowledgment parody in his syllabus. (Ex. KK.) On July 11, 2022, Allbritton charged that committee to investigate Reges's statement, as well as student, faculty, and staff reactions to it. (Exs. LL, MM, NN.) Reges commenced this lawsuit on July 13, 2022. (Dkt. # 1.)

The special investigating committee reported orally to Allbritton on or about October 14, 2022. (Ex. PP at 60:9–16.) It did not provide any written report or any other written work product to Allbritton. (Ex. JJ at 92:21–93:8.) On June 13, 2023—eleven months after Allbritton convened the special investigating committee, and over a year since she informed Reges that she would do so—Allbritton sent a letter to Reges to inform him of the investigation's conclusion and to notify him of "the determinations made as a result of that process." (Ex. QQ.)

The letter claims that Reges's statement "created an immediate and significant disruption to the University teaching environment." (*Id.*) To support that conclusion,

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 12

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

she cites "numerous student and staff complaints," without providing the number of complaints or their content. (*Id.*) In fact, Balazinska and the special investigating committee spoke with only one student from Reges's class. (Ex. G at 180:5–186:1; *see also* Ex. RR (committee member noting that "[Redacted] is the one student from CSE 143 in Winter 2022 with whom we spoke directly").) The committee considered complaints from individuals who were not enrolled in Reges's classes to determine that there had been a "disruption." (Ex. C., Resp. No. 12.)

Defendants have no evidence of disruption to UW other than that Reges's statement and his professed intention to continue placing it in his syllabi caused some members of the UW community to complain. This is uncontested. Defendants are "unaware of disruption related to Plaintiff's use of his land acknowledgment statement outside of his syllabi and the diversity[-allies] mailing list." (Ex. OO, Resp. No. 11; Ex. T, Resp. No. 15; Ex. U, Resp. No. 10.)

The complainants took offense to Reges's speech. UW testified that some students were upset because of the content of Reges's land acknowledgment statement. (Ex. A at 90:12–91:7.) Allen School staffer Kayla Shuster complained that Reges's "language" caused "significant emotional harm to students." (Ex. NN.) Shuster characterized Reges's statement as "insensitive," "inflammatory," and "racist" and called for Reges's suspension from teaching because of student reactions to his statement. (*Id.*) Dean Allbritton references these complaints as "evidence" of disruption to instruction. (Ex. QQ.)

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 13

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1

2

3

4

Dean Allbritton's June 13 letter also informed Reges, for the first time, that because of the disciplinary investigation UW withheld the 3.25 percent merit increase to his salary that he was otherwise qualified to receive in the 2022–23 academic year. (*Id.*; Ex. SS.)

5

6

***Defendants Threaten Reges with Future Disciplinary Action for His Land Acknowledgment Parody.***

7

8

9

10

11

12

Dean Allbritton's June 13 letter says that Reges's statement caused complaints and "will likely continue to do so when included in a purely academic setting, such as on a syllabus or in connection with the teaching of computer science courses." (Ex. QQ.) While she would not impose further sanctions against Reges as of June 13, "if [he] include[s] this statement in the future, and if that inclusion leads to further disruption, [she] will have no option but to . . . view that as an intentional violation of Executive Order 31, as well as Section 24-33 of the Faculty Code." (Ex. QQ.)

13

14

15

16

17

18

19

20

21

Reges seeks damages and prospective injunctive relief from Allbritton, Balazinska, and Grossman in their individual and official capacities, respectively, on his viewpoint discrimination and retaliation claims. (Dkt. # 46.) He seeks prospective injunctive relief against UW on his retaliation claim. He also brings facial overbreadth and vagueness claims to enjoin Executive Order 31 and its prohibition of "unacceptable or inappropriate" speech. (*Id.*) Defendants' motion to dismiss (Dkt. # 50) is pending. Following a period of discovery, Reges now moves for summary judgment on all his claims.

22

23

24

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 14

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1

## **ARGUMENT**

2

Reges is entitled to summary judgment on all his claims because "there is no

3

genuine dispute as to any material fact" and he "is entitled to judgment as a matter

4

of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

5

Defendants censored Reges's speech and then undertook a series of escalating

6

adverse employment actions against him because they and others in the UW

7

community found his statement offensive. They threaten further punishment for the

8

same speech in the future. But clearly established law provides fair notice to

9

reasonable officials that a public university professor has the right to comment on

10

matters of public concern without facing viewpoint discrimination or employer

11

retaliation. Additionally, Defendants have punished Reges and continue to threaten

12

punishment under UW's unconstitutionally overbroad and vague policy for his

13

supposedly "unacceptable or inappropriate" speech. The undisputed material facts

14

prove Reges's claims.

15

**I.      Defendants Censored Reges's Speech Because They Found It Offensive, Entitling Him to Summary Judgment on His Viewpoint Discrimination Claim.**

16

17

Defendants censored and repudiated Professor Reges's land acknowledgment

18

parody because they and others in the UW community found it offensive, violating

19

the First Amendment's prohibition on viewpoint discrimination. "[I]t is axiomatic

20

that the government may not silence speech because the ideas it promotes are

21

thought to be offensive." *Rodriguez*, 605 F.3d at 708. "[O]ffensive speech is, itself, a

22

viewpoint," and therefore suppressing speech on that basis is viewpoint

23

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 15

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

24

1    discrimination. *Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126, 1131 (9th

2    Cir. 2018) (citing *Matal v. Tam*, 582 U.S. 218, 223, 243–44 (2017) (plurality opinion);

3    *id.* at 249 (Kennedy, J., concurring in part and concurring in judgment)).

4        In the public university setting, when regulations or officials target "not

5    subject matter, but particular views taken by speakers on a subject, the violation" of

6    expressive rights "is all the more blatant." *Rosenberger*, 515 U.S. at 829; *see also*

7    *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391–92 (1992) (finding viewpoint

8    discrimination where city "license[d] one side of a debate to fight freestyle, while

9    requiring the other to follow Marquis of Queensberry rules"). Additionally, "the mere

10   dissemination of ideas—no matter how offensive to good taste—on a state university

11   campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v.*

12   *Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 670 (1973).

13       But Defendants Balazinska, Grossman, and Allbritton did exactly that—

14   censoring Reges's dissenting statement and taking steps to chill his future use of it—

15   because they and others in the UW community found it offensive. Director Balazinska

16   ordered Reges to remove the statement from his syllabus within hours of learning

17   about it because, in her words, it was "offensive" and supposedly created a "toxic

18   environment." (Ex. L; Ex. G at 93:8–12.) When Reges declined, she immediately

19   replaced his online syllabus with a notice that it had been "temporarily removed due

20   to offensive statements." (Exs. M, T.) Dean Allbritton approved Balazinska's decision

21   to remove the statement. (Ex. G at 159:8–13.) In the days that followed, Balazinska

22   told the press that Reges's statement was "inappropriate" and "offensive" and that

23   PLAINTIFF'S MOTION
     FOR SUMMARY JUDGMENT
     Case No. 2:22-cv-00964-JHC
     Page 16

24

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

the "invocation of Locke's labor theory of property dehumanizes and demeans Indigenous people." (Ex. P; Ex. G at 98:18–99:17.) Vice Director Grossman and Dean Allbritton likewise found the statement offensive, "obnoxious," and "dehumanizing." (Ex. Y at 139:11–20; Ex. JJ at 53:12–22, 54–55.) Balazinska based her statement that the invocation of Locke was "dehumanizing" on a conversation she had with Chadwick Allen, the university's corporate representative under Federal Rule of Civil Procedure 30(b)(6), who testified not only that Reges's statement is dehumanizing but also that UW's land acknowledgment statement is political. (Ex. G at 98:2–99:17; Ex. A at 72:4–21, 91:23–92:10.)

Defendants acknowledged, however, that there is a multiplicity of viewpoints on land acknowledgments, including Reges's own perspective. Weeks before Reges added his statement to his syllabi, Director Balazinska "skimmed" an article in *The Atlantic* about the "performative nature of land acknowledgments." (Ex. G at 110:5–22; *see also* Ex. Y at 88:5–90:11 (Vice Director Grossman describing awareness of multiplicity of views and recalling subject of *Atlantic* article).) UW also testified that it is aware there are diverse viewpoints with respect to land acknowledgments, which it admits are subject to public debate. (Ex. A at 74:2–77:17; Ex. C Resp. No. 1.) Defendants knew that Reges's land acknowledgment parody expressed his own viewpoint that syllabi are inappropriate forums for political statements. (Ex. I (Grossman: "The 'battle he wants to have' is to say land acknowledgments are [extraneous political content] and, in his view, no syllabi should have them. But since they're recommended as an optional best practice, he wants to prove a point by

putting in his own contradictory one."); Ex. Y at 144:19–146:21 (Grossman); Ex. JJ at 55:23–25 (Allbritton); Ex. F (Balazinska).)

Even if the Defendants had not been offended by Reges's perspective—which they testified they were—they nonetheless could not justify their censorship based on other UW community members' negative reactions to his speech. "[A] speech burden based on audience reactions is simply government hostility and intervention in a different guise. The speech is targeted, after all, based on the government's disapproval of the speaker's choice of message." *Matal*, 582 U.S. at 250 (Kennedy, J., concurring in part and concurring in judgment). But that is what Defendants attempt to do. Balazinska repeatedly testified that she responded to Reges's statement as she did because of student reactions. (Ex. G at 165:14–167:11, 168:12–16, 169:25–170:18.)

The Allen School recommended one type of land acknowledgment, but censored and admonished Reges for his parody version because the Defendants and others in the UW community disapproved of its message—nothing more. This is quintessential viewpoint discrimination. Defendants' intentional targeting of Reges's viewpoint regarding land acknowledgments makes their First Amendment violation "all the more blatant." *Rosenberger*, 515 U.S. at 829.

## II.  UW Took Adverse Employment Actions Against Reges Because of His Academic Speech on a Public Issue, Entitling Him to Summary Judgment on His Retaliation Claims.

The First Amendment protects public university professors' speech related to scholarship or teaching. Because Reges's statement and its placement in his syllabi is related to teaching, the court must weigh UW's interest in providing efficient

services against Reges's interest in exercising his right to speak on a matter of public

concern. Particularly in the university setting, where debate and exposure to diverse

viewpoints are the order of the day, UW's efficiency interest cannot outweigh Reges's

right to free expression. Finally, it is undisputed that his statement—and listener

reactions to it—was the motivating factor behind Defendants' several adverse

employment actions against him.

### A. There is no genuine dispute that Reges's land acknowledgment parody in his syllabi is related to teaching.

Reges included his land acknowledgment parody in response to the Allen

School's recommendation that adding a land acknowledgment to syllabi was a "best

practice for inclusive teaching." His parody statement sends up land

acknowledgments to express his viewpoint that they are performative and political,

and do not belong in public university syllabi.

Public-employee speech relating to scholarship or teaching is evaluated

according to the balancing test established in *Pickering v. Board of Education*, 391

U.S. 563 (1968). *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014); *see also Adams

v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 561–65 (4th Cir. 2011) (applying

*Pickering* balancing to public university professor's speech rather than applying

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)); *Buchanan v. Alexander*, 919 F.3d 847, 852–

53 (5th Cir. 2021) (applying *Pickering*); *Meriwether v. Hartop*, 992 F.3d 492, 506–09

(6th Cir. 2021) (recognizing academic-freedom exception to *Garcetti* and applying

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Pickering* to offensive statement in faculty syllabus); *Heim v. Daniel*, 81 F.4th 212, 223–28 (2d Cir. 2023) (applying *Pickering*).

Importantly, academic speech is protected even when completely unrelated to the subject matter of a professor's courses. In *Demers*, for example, the Ninth Circuit confirmed that a professor's pamphlet calling for restructuring his university was "related to scholarship or teaching" because the restructuring "would have substantially altered the nature of what was taught at the school." 746 F.3d at 414–5. Because Demers's pamphlet spoke "pursuant to his duties as a professor at WSU," *id.* at 409, on an issue of campus debate, *id.* at 407, the Ninth Circuit held that *Pickering*'s balancing test applied. *Id.* at 414.

Reges's statement in his syllabi relates to teaching at least as much as Demers's pamphlet. The Allen School invited professors to include a land acknowledgment on their syllabi, calling this a "best practice for inclusive teaching." (Ex. D.) Defendants cannot open this door—recommending land acknowledgments in syllabi as a "best practice" in teaching—and then close it exclusively on Reges because they disagree with his statement. There can be no dispute that Reges's speech is related to teaching and thus subject to *Pickering*.

## B.  Reges's interest in commenting on land acknowledgments outweighs Defendants' nonexistent efficiency interest.

Reges's interest in exercising his right to speak on a matter of public concern outweighs UW's interest in the efficient provision of public services under *Pickering*'s balancing test. That test has two parts. "First, the employee must show that his or

her speech addressed 'matters of public concern.' Second, the employee's interest 'in commenting upon matters of public concern' must outweigh 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Demers*, 746 F.3d at 412 (citations omitted). Reges satisfies both prongs.

First, his statement adds to an ongoing public debate on a matter of public concern. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)); *see also Roe v. City of San Francisco*, 109 F.3d 578, 586 (9th Cir. 1997) (adopting a "liberal construction of what an issue 'of public concern' is under the First Amendment"). UW admits that the use of land acknowledgments is a matter of public concern on campus and beyond. (Ex. A at 74:2–77:17; Ex. C Resp. No. 1.) *Pickering's* first prong is uncontested.

The second prong of the *Pickering* test tips decidedly in Reges's favor. The "Supreme Court has repeatedly stressed the importance of protecting academic freedom under the First Amendment." *Demers*, 746 F.3d at 411 (first quoting *Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589, 603 (1967) ("Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned."); and then quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) ("Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and

understanding; otherwise our civilization will stagnate and die.")). Reges has a bedrock First-Amendment interest in speaking about land acknowledgments in syllabi and participating in this public debate.

Conversely, the university has no legitimate interest in stifling Reges's speech. The question is whether UW's "interest in the effective and efficient fulfillment of its responsibilities to the public" outweigh Reges's interest in speaking. *Connick*, 461 U.S. at 150. The supposed disruption to UW amounts to nothing more than the disagreement of some unspecified number of students, faculty, and staff. (Ex. G at 166:2–172:15.) But a public university is "peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180 (1972). Limiting public professors' academic speech to "only those viewpoints of which the State approves" is "positively dystopian." *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 641 F. Supp. 3d 1218, 1230 (N.D. Fla. 2022). UW cannot claim to advance its "regular operation" if that interest requires casting "a pall of orthodoxy" on the contested issue of land acknowledgment. *See Keyishian*, 385 U.S. at 603. Simply put, a public university has no efficiency interest in stifling debate on matters of public concern. Therefore Reges's overwhelming interest in speaking on this matter clearly outweighs UW's interest under *Pickering*. Thus, Reges satisfies both prongs of *Pickering*'s balancing test.

## C.   Defendants undertook and continue to threaten adverse employment actions in the future against Reges for his protected speech.

Defendants cannot genuinely dispute that they took adverse employment actions against Reges that "would chill or silence a person of ordinary firmness from

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

future First Amendment activities." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). These actions can take many forms and need not be severe. *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003)). The Ninth Circuit has specifically identified an "unwarranted disciplinary investigation" and a "threat of disciplinary action" as adverse employment actions. *Coszalter*, 320 F.3d at 976. The Second Circuit has also held that it is an adverse employment action to create "shadow" sections of a professor's course—as Defendants did when they created competing sections of Reges's introductory computer science classes in Winter and Spring 2022, siphoning off his students—when done to punish, not in furtherance of legitimate educational interests. *Levin v. Harleston*, 966 F.2d 85, 88 (2d Cir. 1992).

Because Reges refused to self-censor, Defendants threatened his livelihood, professional reputation, and personal finances in an escalating series of adverse employment actions. Defendants:

(1) removed Reges's statement from his syllabus (Ex. G at 152:5–14);
(2) repudiated his statement in an email to his students (Ex. R);
(3) publicly repudiated his statement as "offensive" and "dehumanizing" (Exs. N, O, P; Ex. G at 98:2–99:17);
(4) encouraged his students to submit discrimination and harassment complaints against him (Ex. R);
(5) created two "shadow" sections of his introductory classes (Ex. X; Reges Decl. ¶¶ 24, 26);
(6) conducted a disciplinary investigation of him for nearly a year under UW Faculty Code § 25-71—which could have resulted in significant

penalties up to and including termination—and Executive Order 31, which bans "unacceptable or inappropriate" speech (Exs. LL, K, GG);

(7) held Reges's merit pay increase in abeyance during the investigation (Ex. JJ at 178:3–179:6; Ex. QQ); and

(8) threatened further discipline for continuing to include his land acknowledgment statement in his syllabi. (Ex. QQ.)

Defendants refused to take no for an answer and have now placed the sword of Damocles over Reges's head. He faces the perpetual threat of additional disciplinary action for continuing his parody. UW's actions and threats would chill the speech of a person of ordinary firmness.

**D.    Reges's protected speech was the motivating factor for UW's adverse employment actions.**

There can be no genuine dispute that Reges's protected speech was the motivating factor for UW's adverse employment actions. Reges can readily introduce evidence that "the speech and adverse action were proximate in time" and "the employer expressed opposition to the speech," two independent ways plaintiffs can fulfill the motivating factor prong. *Anthoine*, 605 F.3d at 750. Summary judgment for Reges is appropriate where direct or circumstantial evidence of opposition to protected speech demonstrates the motivating factor prong. *Id.* at 751.

This is the rare case where Reges has direct evidence that Defendants took adverse employment actions against him because of his speech. They expressly told him that they and others in the UW community "expressed opposition to [his] speech." (Exs. LL, MM, NN; *see also* Ex. A at 90:5–91:7 (students were upset because of the content of Reges's statement).)

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1      Additionally, there is strong circumstantial evidence that Defendants were

2  motivated by Reges's speech to take adverse actions against him. Defendants'

3  response to his speech was not merely "proximate in time"; it was immediate. Director

4  Balazinska raised the issue with human resources and ordered Reges to remove his

5  statement from his syllabus within hours of learning of it. (Ex. G at 111:10–18; Exs.

6  H, I, L, J.) Balazinska directed Reges's online syllabus replaced with a statement that

7  it had been removed because of his "offensive" statement. (Ex. G at 152:20–154:16;

8  Ex. M.) The next day, she apologized to Reges's class and encouraged students to

9  submit complaints against him. (Ex. R.) She and Vice Director Grossman, with

10  approval from Dean Allbritton, created a shadow section of CSE 143 within days. (Ex.

11  X.) The next quarter, they offered a competing class again. (Reges Decl. ¶ 24.)

12      In March, Director Balazinska initiated a disciplinary investigation of Reges

13  and elevated it to Dean Allbritton after Reges declined her proposed "resolution" to

14  censor his speech in perpetuity. (Exs. HH, II; Reges Decl. ¶¶ 31–32; Ex. G at 226:10–

15  14, 227:20–228:3.) In July, Allbritton convened the committee that investigated

16  Reges because of his statement. During the pendency of that nearly yearlong

17  investigation, Reges faced the risk of further serious adverse employment actions,

18  including suspension for more than one quarter, reduction of salary, or termination.

19  He still faces that risk because Allbritton made the threat explicit in June 2023. And

20  during the pendency of the investigation, Defendants withheld Reges's merit pay

21  increase.

22

23  PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
24  Page 25

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1    Defendants will likely resurrect their moribund argument that censoring his

2    syllabi enacted proper time, place, or manner restrictions on speech. (Dkt. # 50.)

3    Defendants miss the well-established law that "[r]egulations that focus on the direct

4    impact of speech on its audience" are not valid time, place, and manner restrictions.

5    *Boos v. Barry*, 485 U.S. 312, 320–21 (1988)); *see also Forsyth Cnty. v. Nationalist*

6    *Movement*, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-

7    neutral basis for regulation."); *Matal*, 582 U.S. at 250 (Kennedy, J., concurring in part

8    and concurring in judgment) ("[A] speech burden based on audience reactions is

9    simply government hostility and intervention in a different guise. The speech is

10   targeted, after all, based on the government's disapproval of the speaker's choice of

11   message.").

12    Therefore, Reges has proved the elements of his retaliation claims and he is

13   entitled to summary judgment as a matter of law.

14   **III.   Qualified Immunity Is No Defense Here Because the Law Clearly**
**Established That Professor Reges's Speech Was Protected Against**
15   **Retaliation and Viewpoint Discrimination.**

16    As demonstrated above, individual-capacity Defendants Balazinska,

17   Grossman, and Allbritton violated Reges's First Amendment rights by discriminating

18   against his viewpoint and retaliating against him. That resolves the first step of the

19   usual qualified immunity analysis. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 236

20   (2009) (noting that in qualified immunity analyses it "is often beneficial" to resolve

21   the constitutional question first because it "promotes the development of

22   constitutional precedent"). Next, the Court must determine if "the right at issue 'was

23

1    clearly established in light of the specific context of the case' at the time of the alleged

2    misconduct." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012)

3    (quoting *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011)).

4        "Precedent directly on point is not necessary to demonstrate that a right is

5    clearly established." *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001) (quoting

6    *Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997)). "Rather, if the unlawfulness is

7    apparent in light of preexisting law, then the standard is met." *Id.* (quoting *Blueford*,

8    108 F.3d at 254 (cleaned up)). "In addition, even if there is no closely analogous case

9    law, a right can be clearly established on the basis of 'common sense.'" *Id.* (citation

10   omitted).

11       In *Giebel*, the Ninth Circuit held—by a unanimous panel decision authored by

12   Judge Reinhardt—it was clearly established that a university official could not

13   remove a student organization's handbills because of the message they conveyed. *Id.*

14   at 1189–90 (first citing *Rosenberger*, 515 U.S. at 828; and then citing *Healy*, 408 U.S.

15   at 176–77). As the Supreme Court held a half-century ago in *Papish*, "the mere

16   dissemination of ideas—no matter how offensive to good taste—on a state university

17   campus may not be shut off in the name alone of 'conventions of decency.'" 410 U.S.

18   at 670.

19       Furthermore, numerous Supreme Court and Ninth Circuit precedents clearly

20   establish that giving offense is a viewpoint and that the state is powerless to censor

21   speech on the basis that it offends. *See supra* Section I.

22

23   PLAINTIFF'S MOTION                          FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
     FOR SUMMARY JUDGMENT                                      510 Walnut Street, Suite 900
     Case No. 2:22-cv-00964-JHC                                   Philadelphia, PA 19106
24   Page 27                                                        Tel: (215) 717-3473

1    Reges's status as a government employee cannot save Defendants. In the Ninth

2    Circuit, *Demers* clearly establishes that *Pickering* protects the right of public

3    university professors like Reges to speak on matters of public concern. *Demers*, 746

4    F.3d at 412; *see supra* Section II.A. Since *Demers*, Defendants—and every reasonable

5    public university official in the Ninth Circuit—have been on notice that retaliating

6    against the teaching or academic writing of a public university faculty member, who

7    is speaking on a matter of public concern pursuant to official duties, violates the First

8    Amendment where *Pickering*'s balancing test is satisfied.

9        Because the law protecting Reges from viewpoint discrimination and

10   retaliation was clearly established, Balazinska, Grossman, and Allbritton are not

11   entitled to qualified immunity against Reges's damages claims.

12   **IV.   Professor Reges Is Entitled to Summary Judgment on His**
13   **Overbreadth Claim Because Executive Order 31's Prohibition of**
     **"Unacceptable" and "Inappropriate" Speech Is Boundless.**

14       Executive Order 31 prohibits speech that is "unacceptable or inappropriate"

15   and is therefore unconstitutionally overbroad, as it ropes in a "substantial number"

16   of applications to protected speech relative to its legitimate sweep. *Comite de*

17   *Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (quoting

18   *United States v. Stevens*, 559 U.S. 460, 473 (2010)). For example, if administrators

19   had the unfettered discretion to punish "unacceptable or inappropriate" speech, they

20   could "discipline or take appropriate corrective action" against a member of the UW

21   community who—to draw from a few real-world examples—hosts a drag show,

22   delivers a provocative but attention-grabbing lecture on syllabus day, or discusses

23
                    Foundation for Individual Rights and Expression
                                              510 Walnut Street, Suite 900
                                              Philadelphia, PA 19106
                                              Tel: (215) 717-3473

with students the use-mention distinction for racial slurs.[2] Administrators could punish professors who place "Black Lives Matter" or "Blue Lives Matter" stickers, or any other conceivable political message, on their office doors because the words "unacceptable" or "inappropriate" have only the meaning that the beholder ascribes to them. The policy's sweep is as broad as one can imagine: Any speech expressing a viewpoint on any matter of public concern could be deemed unacceptable or inappropriate by adherents to the opposing view.

Courts have enjoined enforcement of similar unconstitutionally overbroad policies in higher education. *See, e.g.*, *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 250, 252 (3d Cir. 2010) (finding ban on "offensive" speech overbroad); *DeJohn v. Temple Univ.*, 537 F.3d 301, 317–18 (3d Cir. 2008) (same); *Coll. Republicans at S.F. State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1018, 1024 (N.D. Cal. 2007) (enjoining enforcement of civility policy); *Flores v. Bennett*, 635 F. Supp. 3d 1020, 1037–1042 (E.D. Cal. 2022) (enjoining as overbroad college policy prohibiting "inappropriate or offens[ive]" speech), *aff'd*, No. 22-16762, 2023 WL 4946605 (9th Cir. Aug. 3, 2023). Executive Order 31 is unconstitutionally overbroad for the same reasons.

---

[2] *See, e.g.*, Amanda Nordstrom, *Tennessee Tech Still Investigating, Enforcing Ban on LGBTQ+ and Theater Groups that Hosted Drag Show*, FIRE (Oct. 31, 2022) [https://perma.cc/73E2-42AJ]; Sabrina Conza, *Ferris State Cannot Punish Professor for Comedic—and Now Viral—Video Jokingly Referring to Students as 'Cocksuckers' and 'Vectors of Disease*,' FIRE (Jan. 17, 2022) [https://perma.cc/RZW5-L89U]; Alex Morey, *Bitchassness, Hateration, General Stankness Possible Motives Behind Reassignment of San Diego State Philosophy Professor for Teaching Slurs, 'Offensiphobia*,' FIRE (Mar. 8, 2022) [https://perma.cc/PTC3-FHPV].

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

Executive Order 31 disclaims any limits to its legitimate sweep, applying "regardless of whether the conduct arises to the level of unlawful discrimination, harassment, or retaliation." (Ex. GG.) It therefore goes well beyond speech that rises to the level of harassment as defined by the Supreme Court: Speech that is "so severe, pervasive, and objectively offensive that it denies its victims . . . equal access to education . . . ." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999); *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 337 n.16 (5th Cir. 2020) ("Whether *Davis* may constitutionally support purely verbal harassment claims, much less speech-related proscriptions outside Title IX protected categories has not been decided by the Supreme Court or this court and seems self-evidently dubious."). Judged in relation to its legitimate sweep, Executive Order 31 is effectively limitless in its applications to constitutionally protected speech.

## V. Professor Reges Is Entitled to Summary Judgment on His Vagueness Claim Because Executive Order 31's Prohibition of "Unacceptable" and "Inappropriate" Speech Is Undefined and Its Enforcement Is Entirely Discretionary.

Executive Order 31 is also unconstitutionally vague. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Vagueness is of special concern in the First Amendment context because when a vague regulation "abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 30

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

exercise of [those] freedoms." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (citation omitted). Accordingly, a policy that reaches protected expression must contain "a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

Because Executive Order 31 contains no definition of "unacceptable or inappropriate," and those terms do not carry any reasonably objective plain meaning, it fails to provide members of the UW community with "fair warning" of what expression the policy prohibits. *Grayned*, 408 U.S. at 108. Executive Order 31's opacity results in a "chilling effect on the exercise of First Amendment freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998); *see also United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996) (invalidating unconstitutionally vague statute that prohibited attorneys from engaging in "offensive personality").

Executive Order 31 is also void for vagueness because it fails to provide "explicit standards" to prevent "arbitrary and discriminatory enforcement" by administrators, while expressly requiring viewpoint discrimination. *See Grayned*, 408 U.S. at 108–09. The terms "inappropriate" and "unacceptable" are so vague they could be employed to prohibit nearly any student or faculty speech. Different administrators will come to different conclusions as to whether the same speech falls within those terms. The First Amendment does not permit this result. *See, e.g.*, *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1184–85 (6th Cir. 1995) (holding university policy vague that prohibited "offensive" speech); *Flores*, 635 F. Supp. 3d at

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 31

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1042–43 (E.D. Cal. 2022) (enjoining vague college policy prohibiting "inappropriate or offens[ive]" speech), *aff'd*, No. 22-16762, 2023 WL 4946605 (9th Cir. Aug. 3, 2023).

Dean Allbritton's threat of future enforcement against Reges demonstrates Executive Order 31's arbitrariness. Allbritton's June 13 letter claimed that she would view Reges's use of his dissenting land acknowledgment as "an intentional violation" of the Order if it results in further disruption—meaning complaints. (Allbritton Dep. Tr. at 166:25–172:6.) Allbritton also testified that Reges's statement in other campus forums, like public streets or sidewalks, could result in discipline if it were to cause complaints. (Allbritton Dep. Tr. at 172:7–176:25 (testifying that it would "depend").) Whether his statement is "unacceptable or inappropriate" under Executive Order 31 rests within UW administrators' discretion—inviting viewpoint discrimination. Executive Order 31's restriction on "unacceptable or inappropriate" speech is a far cry from "explicit standards" to "prevent arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108–09.

The letter also demonstrates that Executive Order 31 fails to provide "fair warning." *Grayned*, 408 U.S. at 108. Upon hypothetical future complaints about his statement, Reges may be subject to a second disciplinary process and other punishment. But he cannot know before speaking whether complaints will occur, let alone how UW administrators will respond, because the chain of events depends on the reactions of others. Executive Order 31 provides no guidance for how he could use his land acknowledgment parody and remain free from punishment.

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 32

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

Defendants' argument that Executive Order 31 only applies to conduct "resembling" discrimination, harassment, or retaliation further demonstrates the policy's vagueness. (Dkt. # 50, at 20.) One cannot predict what a UW administrator will decide "resembles" discrimination. The same administrator may even change her mind arbitrarily. This does not meet the "greater degree of specificity" required to give members of the UW community fair warning about whether their speech may be punished. *Smith*, 415 U.S. at 573.

## **CONCLUSION**

For the reasons discussed above, Reges is entitled to summary judgment on all his claims: viewpoint discrimination, retaliation, overbreadth, and vagueness.

DATED: December 18, 2023

Respectfully submitted,

*/s/ Gabriel Walters*
GABRIEL WALTERS*
DC Bar No. 1019272
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
gabe.walters@thefire.org
jay.diaz@thefire.org

*Admitted *Pro Hac Vice*
*Attorneys for Plaintiff*

ROBERT A. BOUVATTE, JR.
WA Bar No. 50220
ROBERT A. BOUVATTE, PLLC
P.O. Box 14185
Tumwater, WA 98511
Tel: (564) 999-4005
bob@rbouvattepllc.com

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 33

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1

## **<u>CERTIFICATE OF WORD COUNT</u>**

2

I certify that this memorandum contains 8,383 words, in compliance with the

3

Local Civil Rules.

4

*/s/ Gabriel Walters*
Gabriel Walters

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

## CERTIFICATE OF SERVICE

2
Plaintiff's counsel confirms that a true and correct copy of the foregoing was

3
served via the Court's electronic filing system on this day, December 18, 2023. Notice

4
of this filing will be sent by operation of the Court's electronic filing system to all

5
parties indicated below and parties may access this filing through the Court's

6
electronic filing system.

7
ROBERT M. MCKENNA
AARON P. BRECHER

R. DAVID HOSP
222 Berkeley Street, Suite 2000

8
401 Union Street, Suite 3300
Seattle, WA 98101

Boston, MA 02116
Tel: (617) 880-1802

9
Tel: (206) 839-4300
Fax: (206) 839-4301

Fax: (617) 880-1801
dhosp@orrick.com

10
rmckenna@orrick.com
abrecher@orrick.com

11

12
*Counsel for Defendants*

13
GABRIEL WALTERS*
DC Bar No. 1019272

ROBERT A. BOUVATTE, JR.
WA Bar No. 50220

JAMES DIAZ*

ROBERT A. BOUVATTE, PLLC

14
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS

P.O. Box 14185
Tumwater, WA 98511

15
AND EXPRESSION
510 Walnut Street, Suite 900

Tel: (564) 999-4005
bob@rbouvattepllc.com

16
Philadelphia, PA 19106
Tel: (215) 717-3473

17
gabe.walters@thefire.org
jay.diaz@thefire.org

18

19
*Admitted Pro Hac Vice*
*Attorneys for Plaintiff*

*Counsel for Plaintiff Stuart Reges*

20
Dated: December 18, 2023

21

22
*/s/ Gabriel Walters*
Gabriel Walters

23

24