Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STUART REGES,

    Plaintiff,

v.

ANA MARI CAUCE, et al.,

    Defendants.

Case No. 2:22-cv-00964-JHC

**DECLARATION OF AILEEN TRILLES RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TRILLES DECLARATION RE: DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

I, Aileen Trilles, declare as follows:

1. I am over the age of 18 and competent to testify.

2. This Declaration is in connection with Defendants Ana Mari Cauce, Magdalena Balazinska, Daniel Grossman, and Nancy Allbritton's Motion for Summary Judgment in the above-captioned matter.

3. I am the Senior Director of Human Resources for the College of Engineering at the University of Washington. As part of my role, I oversee standard-of-conduct issues for faculty within the College of Engineering arising under the University's Faculty Code Section 25-71.

4. On October 14, 2022, I was present when, across two video conferences, the members of the special investigating committee charged with assessing Stuart Reges's conduct reported to Dean Allbritton on the evidence they had gathered. My role at the meeting was to take notes on the committee's report. A copy of those notes is attached as **Exhibit 1.**

5. When a Faculty Code Section 25-71 investigation is pending, it is standard practice to hold any merit-based salary increases in abeyance until the investigation has concluded. Merit-based salary increases are not an entitlement but rather based on "merit," so the investigation's outcome may affect whether a faculty member merits a pay increase. This has been a consistent practice across the investigations I have observed in my role at the College of Engineering.

6. Other than the filing of a lawsuit, the Faculty Code processes applied to Professor Reges were consistent with those of other Faculty Code investigations I have observed in my role.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed this 18th day of December, 2023 at Seattle, Washington.

_____
Aileen Trilles

TRILLES DECLARATION RE: DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC

1

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

# EXHIBIT 1

**Meeting with Special Investigating Committee: <u>Steve Muench, Eric Schnapper and Louisa MacKenzie</u>**
**Dean Nancy Allbritton and HR Director Aileen Trilles**
**Oral Report Out**
**October 14, 2022**
**Zoom**

(Nancy Allbritton)
    Opened the call.

    Expressed appreciation to the committee and recognized the impact this work may have had on their regular responsibilities.

(Steve Muench)
    Louisa Mackenzie is the meticulous notetaker and can provide details from moment by moment. Step-by-step. I will give a general perspective.

    We reached out to several different individuals: staff, students and talked to faculty and others in the native American community. Stuart declined to talk to the SIC.

    Stuart was antagonizing leadership on various fronts:
- There was a lack of empathy on the faculty members part on how people may respond to different things.
- The topic was a method at confrontation at the next level.
- Stuart Reges didn't think how his actions would effect others
- The response from CSE seemed reasonable and measured, made sense and were proportionate to what happened.
- The impact had impact across campus to students in the class and to the greater student population who was affected second hand, and the Native American community.
- By not taking decisive action, the university was perceived as passively siding with Stuart Reges.

(Louisa Mackenzie)

    As an overview, their actions were initiated by a 25-71 process and was reframed due to the lawsuit.

    We could not be aware of the details of (lawsuit). We served on this committee because we had no personal involvement. We had significant findings due to impact:
- Impact well-being and learning
- Native American community
- Stuart's claim that there was no impact to students is demonstrably false

The SIC interviews included but is not limited to, the Director of the Allen School, Allen School Director of Student Services, students in and external to CSE 143 and the former Director for the Intellectual house. There was significant impact.

- Impact of morale of Native American students, and their learning
- One native student took a leave of absence

3

- One student felt despised by the language used in the syllabus
- There were students who identified themselves as allies of students who were affected
- One student felt that Stuart was "playing games with her education"
- Student felt shadow class as excellent
- SIC find this a reasonable concern; a faculty member who goes out of his way to denigrate is a reasonable concern for students to have.
- There was an overwhelming sense that he violated their dignity-----this was a bad faith attempt to spark discussion
- Another student dropped out from the UW
- Staff complained about workload implications due to the faculty members actions
- He met minimum standards.  The land acknowledgment was suggested to make Native American students feel more welcomed in the class. It calls into question his professionalism as a faculty member
- Misrepresentation of UW's view with regard to a land acknowledgement
- The one person who has been political is Stuart himself; He is responsible for politicizing.
- The Director of the Allen School responded in a fair, balanced and consistent way.  There were other faculty who published a different land acknowledgement and she spoke with them and they responded accordingly by making the requested change.
- Bad faith – he saw this ----he named this as a vulnerability in the UW system. He's calling this the equity agenda.  His use of his syllabus was inappropriate.
- The UW has received complaints and been asked to sanction him for what he's published in the Quilette and other external media sources and the UW did not silence him; his freedom of speech was maintained there.
- He deliberately crossed the line to use the syllabus as a political stunt on land acknowledgments.

24-33 of the Faculty Code violated:
- Obligation to respect dignity of others (dignity of native community)
- Promoted political opinion over faculty
- Sustained disruption

(Eric Schnapper)
- The level of disruption was extraordinary. It was a willful indifference to the students
- He just didn't care
- He said students who are 18 are fragile
- He had no interest in solving the problem
- The land acknowledgement is meant to make students feel comfortable in the university; it's not political correctness; it's a key part of the job of the faculty to ensure they are making students feel welcomed and willfully fighting a fight.  The classroom is not where to pick that fight. He thought it was the forum to insight the most attention. This was a way to get a lot of attention at the expense of the students
- If a student signs up for a class with controversial readings, that's fine.  That's the forum.
- It's not a misunderstanding on his part; it's a deliberate stunt.
- The impact on native concerns wasn't the only group concerned.  Our students aren't in silos.  It was offensive to all; the assessment is not limited to native americans only.
- Students complained and the UW cannot not do something.  If the students consistently complaining about the issue, the UW must address is.
- He is violating policy in a way to object it.

4

UW_Reges_0009313

- Free speech is a red-herring.
- He's inconsistent in his interviews with news outlets and podcast (welcome to the lunaversity), etc. He refused to meet with SIC.
- If he wants to provoke leaders of tribes, but you don't direct to the civilian students. He found the weakest group of students
- A Third of a class left the class and they elected to take a class at 8AM in the morning. That's extraordinary.
- It's about professional misconduct, not politics.


(Nancy Allbritton)
- This is very impactful work; It's of huge consequence.
- Expressed appreciation for time and effort for serving on committee

##

(End of call)