THE HONORABLE JOHN H. CHUN

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION**

STUART REGES,

     *Plaintiff,*

  v.

ANA MARI CAUCE, et al.,

     *Defendants.*

CASE NO. 2:22–cv–00964–JHC

NOTE ON MOTION CALENDAR:
January 29, 2024

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
DC Bar No. 90001269
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org

CARL J. MARQUARDT
WA Bar No. 23257
LAW OFFICE OF CARL J. MARQUARDT
PLLC
1126 34th Avenue, Suite 311
Seattle, WA 98122
Tel: (206) 388-4498
carl@cjmlawoffice.com

*Admitted *Pro Hac Vice*
*Attorneys for Plaintiff*

1

## **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................. iv

3

INTRODUCTION ............................................................................... 1

4

RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS ................ 2

5

    1.    The Parties Do Not Dispute the Material Facts. .................... 2

6

    2.    Defendants Grossly Mischaracterize Reges's Motivation for
        Parodying Land Acknowledgments. ......................................... 4

7

    3.    The Undisputed Facts Show That What Defendants Call
        "Disruption" Is Nothing More Than Listeners' Reactions to
        Reges's Speech. ...................................................................... 8

8

9

ARGUMENT ..................................................................................... 10

10

   I.    Defendants Fail to Demonstrate, as a Matter of Law, That
        *Pickering* Balancing Favors Their Supposed Interests Over
        Professor Reges's Speech on a Matter of Public Concern. .................... 11

11

12

      A.    Defendants fail to show that Reges's land acknowledgment
          parody is beyond the protection of *Pickering* and *Demers*. ......... 11

13

          1.    The undisputed record evidence shows that Reges's
              speech is related to scholarship or teaching. ................... 13

14

15

          2.    Defendants misconstrue academic freedom. ................... 15

16

          3.    Defendants mistakenly rely on K–12 jurisprudence. ....... 18

17

          4.    Reges's syllabus-based speech is not government
              speech. ............................................................................. 19

18

      B.    Defendants fail to refute that they took adverse
          employment actions against Reges. ............................................. 20

19

      C.    As a matter of law, Defendants fail to show an efficiency
          interest in preventing "disruption" caused by the sharing
          of ideas on a public university campus. ....................................... 22

20

21

   II.    Professor Reges Has a Standalone Viewpoint Discrimination
        Claim Because Defendants Restricted His Speech, Deeming It
        Offensive ............................................................................... 25

22

23

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page ii

24

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

III.   Executive Order 31 Is Overbroad Because It Covers Pure Speech, Not Just Conduct. ...................................................... 27

IV.   Executive Order 31 Is Vague Because a Person of Ordinary Intelligence Cannot Understand Its Meaning and It Permits Arbitrary Enforcement. ........................................................... 29

CONCLUSION ......................................................................................... 32

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

# TABLE OF AUTHORITIES

**CASES**        **PAGE(S)**

*Abcarian v. McDonald,*
    617 F.3d 931 (7th Cir. 2010) .................................................................. 17

*Adamian v. Jacobsen,*
    523 F.2d 929 (9th Cir. 1975) ........................................................... 22, 23

*Adams v. Trs. of the Univ. of N.C.-Wilmington,*
    640 F.3d 550 (4th Cir. 2011) .................................................................. 18

*Anthoine v. N. Cent. Cntys. Consortium,*
    605 F.3d 740 (9th Cir. 2010) .................................................................. 20

*Berry v. Dep't of Soc. Servs.,*
    447 F.3d 642 (9th Cir. 2006) ........................................................... 26, 27

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ................................................................................. 5

*Chase v. Davelaar,*
    645 F.2d 735 (9th Cir. 1981) .................................................................. 30

*Comite de Jornaleros v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011) .................................................................. 28

*Connick v. Myers,*
    461 U.S. 138 (1983) .............................................................................. 24

*Coszalter v. City of Salem,*
    320 F.3d 968 (9th Cir. 2003) ..................................................... 20, 21, 25

*Demers v. Austin,*
    746 F.3d 402 (9th Cir. 2014) ..........................................................passim

*Downs v. Los Angeles Unified Sch. Dist.,*
    228 F.3d 1003 (9th Cir. 2000) ............................................................... 18

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page iv

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Emp. Div., Dep't of Hum. Res. v. Smith,*
  494 U.S. 872 (1990) ................................................................................... 26

*Ford Motor Co. v. Tex. Dep't of Transp.,*
  264 F.3d 493 (5th Cir. 2001) ................................................................... 30

*Foti v. City of Menlo Park,*
  146 F.3d 629 (9th Cir. 1998) ................................................................... 30

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ...........................................................................passim

*Grutter v. Bollinger,*
  539 U.S. 306 (2003) ......................................................................... 15, 19

*Healy v. James,*
  408 U.S. 169 (1972) .................................................................................. 24

*Hernandez v. City of Phoenix,*
  43 F.4th 966 (9th Cir. 2022)..................................................................... 28

*Hill v. Colorado,*
  530 U.S. 703 (2000) .................................................................................. 30

*Hulen v. Yates,*
  322 F.3d 1229 (10th Cir. 2003) ............................................................... 29

*Johnson v. Poway Unified Sch. Dist.,*
  658 F.3d 954 (9th Cir. 2011) ................................................................... 18

*Keyishian v. Bd. of Regents of Univ. of N.Y.,*
  385 U.S. 589 (1967) ................................................................... 15, 22, 29

*L.L. Bean, Inc. v. Drake Publishers, Inc.,*
  811 F.2d 26 (1st Cir. 1987)......................................................................... 5

*Levin v. Harleston,*
  966 F.2d 85 (2d Cir. 1992) ....................................................................... 21

*Liverman v. City of Petersburg,*
  844 F.3d 400 (4th Cir. 2016) ................................................................... 23

*Mahanoy Area Sch. Dist. v. B.L.,*
  141 S. Ct. 2038 (2021) ............................................................................. 19

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page v

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Matal v. Tam,*
    582 U.S. 218 (2017) .......................................................... 19, 20

*Meriwether v. Hartop,*
    992 F.3d 492 (6th Cir. 2021) ............................................ 15, 17

*Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y,*
    275 F.3d 838 (9th Cir.2003) ..................................................21

*Peacock v. Duval,*
    694 F.2d 644 (9th Cir. 1982) ................................................. 29

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.,*
    641 F. Supp. 3d 1218 (N.D. Fla. 2022) ................................. 24

*Pickering v. Bd. of Educ.,*
    391 U.S. 563 (1968) .....................................................passim

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.,*
    605 F.3d 703 (9th Cir. 2010) ................................................ 22

*Rosenberger v. Rector & Visitors of the Univ. of Va.,*
    515 U.S. 819 (1995) .............................................................. 25

*Shurtleff v. City of Boston,*
    142 S. Ct. 1583 (2022) .................................................... 19, 20

*Sweezy v. New Hampshire,*
    354 U.S. 234 (1957) .............................................................. 16

*Tucker v. State of California Department of Education,*
    97 F.3d 1204 (9th Cir. 1996) ................................................ 27

*United States v. Stevens,*
    559 U.S. 460 (2010) .............................................................. 28

## OTHER AUTHORITIES

Turley, Jonathan, *UW Professor Triggers Free Speech Fight Over "Indigenous Land Acknowledgment"* (Jan. 13, 2022) .............................................. 6

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page vi

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

**RULES**

Fed. R. Civ. P. 56 ........................................................................................... 1

Local Rule 56.1 .............................................................................................. 1

Local Rule 7 ................................................................................................... 1

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page vii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

Under Federal Rule of Civil Procedure 56, and Local Rules 7 and 56.1, Plaintiff Stuart Reges files this opposition to Defendants' Motion for Summary Judgment. (Dkt. # 64).

## **INTRODUCTION**

Plaintiff Stuart Reges, like all public university professors, has a First Amendment right to speak on matters of public concern—including on his syllabi. Defendants claim an interest in controlling his speech to prevent "disruption" and because syllabi represent government speech. As a matter of law, Defendants cannot show any interest in preventing "disruption" to a university campus by restricting a dissenting view on a matter of public concern. And faculty speak for themselves in the classroom, including on their syllabi—not for the state. The undisputed facts confirm that the University of Washington (UW) censored Reges, siphoned his students to shadow sections of his classes, investigated him, withheld his merit-pay increase, and continue to threaten enforcement of a vague and overbroad policy against him just because a small fraction of the UW community disagreed with his speech and found it offensive. Defendants' actions violated Reges's First Amendment rights and the very purpose of a public university—encouraging vigorous debate on matters of public concern.

The Court should deny Defendants' Motion for Summary Judgment (Dkt. # 64) and grant summary judgment for Reges on his retaliation, viewpoint discrimination, overbreadth, and vagueness claims. (Pl.'s Mot. Summ. J., Dkt. # 60.)

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 1

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

**RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS**

The parties agree there is no genuine dispute of material fact, and the Court should resolve this case on summary judgment. There is no dispute about *what* the parties did. But Defendants obscure or omit important context, mischaracterizing evidence as to *why* the parties took the actions they did—though Reges's motivations are immaterial.[1] To clarify this important context, Reges offers the following additional, undisputed record evidence.

**1.    The Parties Do Not Dispute the Material Facts.**

The parties agree on the material facts. UW crafted a land acknowledgment statement (Pl.'s Mot. Summ. J., Dkt. # 60, at 3; Defs.' Mot. Summ. J., Dkt. # 64, at 2), and Defendants recommended computer science and engineering faculty include that statement or a similar one in their syllabi as one of their "best practices for inclusive teaching." (Dkt. # 60, at 4–5; Dkt. # 64, at 2.) On January 3, 2022, Reges included his land acknowledgment parody in his syllabus. (Dkt. # 60, at 5; Dkt. # 64, at 3.)

The following day, Defendant Balazinska removed Reges's statement from his Winter Quarter 2022 syllabus. (Dkt. # 60, at 7; Dkt. # 64, at 4.) She also derided his parody statement as "offensive" in an email to Reges's students and encouraged them to submit formal discrimination and harassment complaints against him. (Dkt. # 60, at 8–9; Dkt. # 64, at 4.) Within days, Defendants took the unprecedented step of creating a competing "shadow" class that met at the same time as Professor Reges's

---

[1] The public-employee speech doctrine, under *Pickering*, does not examine the speaker's intent. *See Infra* Section I.A. Nor does any other claim or defense.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

Winter Quarter 2022 course and did so again in Spring Quarter 2022. (Dkt. # 60, at 9–10; Dkt. # 64, at 4.)

In February 2022, Reges announced that he would include his statement in his Spring 2022 syllabus. (Dkt. # 60, at 11; Dkt. # 64, at 4–5.) In response, some students, faculty, and staff submitted new complaints to UW administrators. (Dkt. # 60, at 13; Dkt. # 64, at 5.) Defendants began a disciplinary process. (Dkt. # 60, at 11–12; Dkt. # 64, at 5.) Defendant Balazinska escalated the process to Defendant Allbritton, dean of the UW College of Engineering. (Dkt. # 60, at 12; Dkt. # 64, at 5.) In July 2022, Dean Allbritton convened a special investigating committee under UW Faculty Code Section 25-71, charging it to investigate Reges because of his parody statement. (Dkt. # 60, at 12; Dkt. # 64, at 5.)

The special investigating committee reported to Dean Allbritton in October 2022. (Dkt. # 60 at 12; Dkt. # 64, at 5.) Allbritton concluded the investigation by a June 13, 2023, letter to Reges. (Dkt. # 60, at 12; Dkt. # 64, at 5.) Defendants withheld Professor Reges's merit-pay increase during the disciplinary investigation, though he was otherwise entitled to receive it. (Dkt. # 60, at 12; Dkt. # 64, at 5.) Dean Allbritton's June 13 letter threatened that if Reges continued to place his statement in his syllabi, and if anyone complained, she would conclude that he violated UW's discrimination and harassment policy, Executive Order 31. (Dkt. # 60, at 14; Dkt. # 64, at 5–6.)

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 3

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**2.      Defendants Grossly Mischaracterize Reges's Motivation for Parodying Land Acknowledgments.**

Though the material facts are undisputed, Defendants raise immaterial matter, unsupported by the record, to besmirch Reges's motivation for parodying land acknowledgments. But the undisputed record evidence shows that Reges intended his land acknowledgment to parody UW's own, and thereby, express his dissenting viewpoint. (Reges Dep. Tr., Walters Decl. Ex. A, at 70–73; Reges Decl., Dkt. # 63, ¶¶ 10–18.) He views UW's land acknowledgment as a political statement expressing the views that: (1) land acknowledgments are appropriate to include on syllabi; (2) UW sits on land that colonizers stole and occupy; and (3) UW's presence on that land is somehow illegitimate, shameful, wrong, or unlawful. (Reges Decl., Dkt. # 63, ¶¶ 11–17.)

Generally, he opposes the inclusion of political statements on syllabi, but he included his version to express a dissenting viewpoint from UW's own. (*Id.* ¶¶ 12–17; Reges Dep. Tr., Walters Decl. Ex. A, at 47:20–48:20.) He did so through the form of parody, to cast the political nature of UW's land acknowledgment into sharp relief— as parody does. (Reges Decl., Dkt. # 63, ¶ 18; Reges Dep. Tr., Walters Decl. Ex. A, at 70–73.) This has been Reges's consistent position from day one. (Pl.'s Mot. Summ. J., Dkt. # 60, at 5–6; Reges Decl., Dkt. # 63, ¶¶ 13, 18, 20; Pl.'s Mot. Summ. J. Ex. F, Dkt. # 62-5.) He intended not to offend but to prompt others to look critically at land

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 4

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

acknowledgments, their purpose and use, through parody—though he recognized that the parodic *form* of his statement might cause offense.[2]

Defendants resort to misquoting and mischaracterizing Reges's words to transform his protected speech into an act of "trolling"—that he, in Defendants' words, "intended to create a less welcoming environment" for students. (Defs.' Mot. Summ. J., Dkt. # 64, at 3, 13.) There are four examples of Defendants' misrepresentations.

First, Defendants' brief begins with a misquote from Professor Reges's diary, conjuring the phrase, "I am trolling on purpose," from whole cloth to cast a false light on his motivation. But the record shows no instance where Reges said or wrote this phrase, and Defendants provide no citation otherwise. (Defs.' Mot. Summ. J., Dkt. # 64, at 1.) Their wishcasting for a quote showing that Reges purposefully "troll[ed]" does not make it so.

Reges's lone diary entry that mentions "trolling," quoted accurately, is consistent with his true motivation to express a dissenting viewpoint in the form of parody:

> Why should only progressives be allowed to say what they think is true of the land issue relative to native tribes? I haven't seen anyone else try to attack this issue in that way, but I don't know what kind of argument

---

[2] Parody inherently risks offending those who support the existing sentiment. "Modern dictionaries . . . describe a parody as a 'literary or artistic work that imitates the characteristic style of an author or a work for comic effect or ridicule.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994). "Parody needs to mimic an original to make its point." *Id.* at 580–81; *see also L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 28 (1st Cir. 1987) ("[P]arody seeks to ridicule sacred verities and prevailing mores," and so "it inevitably offends others . . . .").

they can give that would say that they can express their opinions about it but I can't because I don't have the right opinions. . . . The more I think about the land acknowledgement, the more I like the idea of harping on that. I'm sure many people will find that upsetting because it will be clear that I'm trolling. But it seems like a good thing to push back on. I was just thinking about how they treat it with such reverence that you'd almost think they were saying a prayer. It's not a bad analogy to think that I'm fighting against prayer in schools. When I change the prayer it becomes clear how silly this is.

(Reges Dep. Ex. 5, Walters Decl. Ex. B.) Explaining what he meant by "trolling," Reges testified: "I intended this as a parody. I think some people would object, even people who don't like land acknowledgments, and as someone who doesn't like land acknowledgments." (Reges Dep. Tr., Walters Decl. Ex. A, at 71:25–72:4.) To Reges, "parody" is "a form of trolling." (*Id.* at 73:16–17.)

Second, Defendants omit necessary context to quote Reges that he was "causing trouble on purpose." (Dkt. # 64, at 1). He wrote:

[Law professor Jonathan Turley] wrote a great article. At one point he says he wouldn't have done what I did because he thinks my actions were 'gratuitous and peevish,' but I can live with that criticism. I was causing trouble on purpose, so it's fair to point that out.

(Reges Dep. Ex. 16, Walters Decl. Ex. C.) "Causing trouble on purpose" does not mean he purposefully upset others. It refers to Reges's understanding that placing his land acknowledgment parody in his syllabi would cast UW's land acknowledgment into sharp relief, consistent with his intention to spark debate and discussion on campus, and that the parodic form might cause consternation among others, like Professor Turley viewing it as "gratuitous and peevish." *See* Jonathan Turley, *UW Professor*

DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 6

510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Triggers Free Speech Fight Over "Indigenous Land Acknowledgment"* (Jan. 13, 2022), [https://perma.cc/TJH6-RLNQ].

Third, Defendants misrepresent Reges's testimony to claim he "intended to create a less welcoming environment." (Defs.' Mot. Summ. J., Dkt. # 64, at 13.) However, the cited deposition testimony says only that Reges included his land acknowledgment parody on his Winter 2022 syllabus and "mentioned it briefly" in class. (*Id.* at 13 (citing McKenna Decl. Ex. 1, Dkt. # 65, at 85:5–18).) Defendants' excerpt contains no testimony about Reges's intent whatsoever. To the contrary, the undisputed record shows that Reges *does* intend to create a welcoming environment for students and does not believe in singling out students by race or national origin. (McKenna Decl. Ex. 1, Dkt. # 65, at 37:8–17; Reges Decl., Dkt. # 63, ¶ 15.) Indeed, students rate Reges highly for creating a welcoming classroom environment, (Reges Decl., Dkt. # 63, ¶ 8), and Defendant Balazinska conceded that she did not believe Reges would treat students unfairly. (Balazinska Dep. Tr., Walters Decl. Ex. D, at 174:19–20.)

Fourth, Defendants misuse Reges's writing that he was "shaking all over" because "now it's getting very real," to assert he was aware that his land acknowledgment parody caused a "disruption." (Defs.' Mot. Summ. J., Dkt. # 64, at 9 (citing McKenna Decl. Ex. 1, at 90:5–18, 101:1–7).) In fact, Reges was "shaking all over" because "now it's getting very real," because Defendants demanded he remove his land acknowledgment from his syllabus, not because of any supposed disruption. (Reges Dep. Ex. 9, Walters Decl. Ex. E.) He was not shaking because a small number

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 7

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

of UW students were discussing his land acknowledgment parody on Reddit, which he found merely "interesting." (*Id.*)

### 3. The Undisputed Facts Show That What Defendants Call "Disruption" Is Nothing More Than Listeners' Reactions to Reges's Speech.

In attempting to show that Professor Reges's land acknowledgment parody caused a "disruption," Defendants offer nothing but out-of-class complaints—at most, ten, and many of them not submitted in admissible form. (*See* Balazinska Decl. Ex. 4, Dkt. # 66 (faculty and staff complaining or describing complaints they heard from students).) The complainants object to the content and viewpoint of Reges's parody and take offense. (*Id.*) But claiming listeners' reactions constitute disruption does not make it so. Reges's statement never caused *actual* disruption and Defendants provide no evidence otherwise.

Defendants first, without admissible evidence, make the immaterial claim that a Native American student took a leave of absence because of Reges's land acknowledgment. (Defs.' Mot. Summ. J., Dkt. # 64, at 4, 9.) The first source for the claim is an email from the student to Defendant Balazinska that makes no mention of any leave of absence. (Balazinska Decl. Ex. 4, Dkt. # 66, at UW_Reges_0008845.) The second source is inadmissible, multi-level hearsay. Dean Allbritton's June 13, 2023, letter is offered for the truth of the alleged leave of absence, (Allbritton Decl. Ex. 3, Dkt. # 67, at 2), but Dean Allbritton lacks personal knowledge of the matter. She took a representation from the special investigating committee at face value. (Allbritton Dep. Tr., Walters Decl. Ex. F, at 100:13–101:9.) Likewise, the special

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 8

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

investigating committee never determined the truth of the matter regarding the alleged leave of absence. UW's corporate designee testified that the committee took other faculty members' word about the leave of absence at face value.[3] (Schnapper Dep. Tr., Walters Decl. Ex. G, at 115:4–8.)

Defendants also state that Allen School teaching assistants feared retaliation by Reges. The undisputed record shows defendants Balazinska and Allbritton had no reason to believe Reges retaliated against anyone, or that he might do so. (Balazinska Dep. Tr., Walters Decl. Ex. D, at 222:24–223:3; Allbritton Dep. Tr., Walters Decl. Ex. F, at 150:15–25.)

Defendants further claim that Reges admits "*the situation* damages the cohesiveness of the teaching assistant program." (Defs.' Mot. Summ. J., Dkt. # 64, at 8 (emphasis added).) Reges admits no such thing, and this is yet another mischaracterization of his testimony. The undisputed record shows that Reges testified *Defendants'* unprecedented actions—in creating the Winter and Spring 2022 shadow sections of his courses—damaged cohesion among the teaching assistants. (McKenna Decl. Ex. 1, Dkt. # 65, at 123:6–124:6.) The creation of the shadow sections forced teaching assistants to choose between Reges and another professor, after Defendants had labeled Reges's statement dehumanizing and demeaning to indigenous peoples. As Reges testified at his deposition:

---

[3] Defendants similarly refer to a Native American student who allegedly disenrolled from UW completely, (Allbritton Decl. Ex. 3, Dkt. # 67, at 2), but provide no evidence demonstrating that this student even exists.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 9

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

> The [teaching assistant] community is like my life's work. It's the thing that I'm most known for in the computer science education community. At all three schools I've taught, I've set up [teaching assistant] programs that continue to this day in pretty much the same form that I created them, and there's a sense of unity to the community. So to split the [teaching assistants] harmed the community.

(*Id.* at 123:21–124:3.)

When asked whether it was the splitting of the class or offense taken because of his parody that harmed teaching assistant cohesiveness, Reges speculated that it "could be some of both." (*Id.* at 124:10–14.) That is not an admission that *his speech* (as opposed to reactions to his speech) caused anything. And, in fact, one Reges teaching assistant was reassigned to the Winter Quarter 2022 shadow section but requested to return to Reges's course, saying, "I specifically chose to [be a teaching assistant in Reges's course] because I think Stuart Reges is the best lecturer I have ever had at the University of Washington . . . ." (Walters Decl. Ex. H.)

## **ARGUMENT**

Based on the undisputed material facts, Defendants are not entitled to summary judgment on any of Plaintiff's five claims. Contrary to Defendants' arguments, as a matter of law, Professor Reges's speech on a matter of public concern is academic speech protected against employer retaliation; Defendants discriminated against his viewpoint because they found it offensive; and UW's anti-discrimination and harassment policy is unconstitutional to the extent that it prohibits "unacceptable" or "inappropriate" speech. Defendants' motion should be denied.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 10

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1
2

**I.      Defendants Fail to Demonstrate, as a Matter of Law, That *Pickering* Balancing Favors Their Supposed Interests Over Professor Reges's Speech on a Matter of Public Concern.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

The First Amendment protects the rights of public university faculty to speak on matters of public concern, related to their scholarship or teaching, even though they are government employees. *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014). First, Reges placed his parody land acknowledgment statement in his syllabus and it is thus related to his teaching as a matter of law. Second, Defendants' attempts to minimize their punitive actions cannot change that, as a matter of law, they are adverse actions that would chill a person of ordinary firmness from exercising their expressive rights. Third, the Court must therefore weigh Reges's interest in speaking on matters of public concern against the University's interest in efficiently providing services. Because debate and exposure to diverse viewpoints on matters of public concern are to be expected in a university setting—even if offense results—and because no actual "disruption" occurred, UW has no cognizable interest at stake. As a result, UW's purported interest in preventing future "disruption" via complaints of offense cannot outweigh Reges's right to free expression. Defendants' motion for summary judgment on Reges's retaliation claims should be denied.

18

19

**A.      Defendants fail to show that Reges's land acknowledgment parody is beyond the protection of *Pickering* and *Demers*.**

20

21

22

The Ninth Circuit in *Demers v. Austin* made clear that the First Amendment protects public university professors' "speech related to scholarship or teaching," notwithstanding their status as government employees who teach and research as

23

24

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 11

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

part of their job duties. 746 F.3d at 406 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006)). "Rather, such speech is governed by *Pickering*," including its test weighing the professor's speech interest against the university's interest as an employer in efficiently providing services to the public. *Id.* at 406 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).

Under *Pickering*, (1) "the employee must show that his or her speech addressed 'matters of public concern'" and (2) the employee's interest "in commenting upon matters of public concern" must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Demers*, 746 F.3d. at 412 (quoting *Pickering*, 391 U.S. at 568). Defendants concede Reges's land acknowledgment parody commented on a matter of public concern (Pl.'s Mot. Summ. J., Dkt. # 60, at 21), and, as noted *infra* Section I.C., Defendants cannot show that UW's interest in a dissent-free environment outweighs Reges's interest in speaking.

Defendants' attempt to distinguish *Demers* and other academic speech cases fails. While *Demers* acknowledges that in some cases it may be difficult to discern what qualifies as "related to scholarship or teaching," (Defs.' Mot. Summ. J., Dkt. # 64, at 13–14), the Ninth Circuit found that *Demers* was not a difficult case, even though it involved speech unrelated to the subject matter of a professor's courses. 746 F.3d at 415. Indeed, the Ninth Circuit confirmed Demers's pamphlet was "related to scholarship or teaching" because it discussed university restructuring that "would have substantially altered the nature of what was taught at the school." *Id.*

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 12

Foundation for Individual Rights and Expression
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1  Defendants' argument that *Demers* does not protect Reges's land

2  acknowledgment parody turns on the false premise that Reges's speech is not "related

3  to scholarship or teaching." (Defs.' Mot. Summ. J., Dkt. # 64, at 14.) This argument

4  fails for at least four independent reasons. First, it belies the undisputed record

5  evidence. Second, it misconstrues precedent protecting the academic freedom rights

6  of public university professors. Third, it misapplies precedent arising from the K–12

7  educational setting. And fourth, Defendants' argument dangerously applies the

8  government-speech doctrine to the pedagogy of public university professors.

### 1. The undisputed record evidence shows that Reges's speech is related to scholarship or teaching.

First, on the undisputed record, Defendants made land acknowledgment

statements "related to scholarship or teaching" when they recommended faculty

include a land acknowledgment in their syllabi as a "best practice" for *teaching*. (*See*

Defs.' Mot. Summ. J., Dkt. # 64, at 12–13.)

UW, nonetheless, claims that Reges's statement, which he placed in his syllabi,

is somehow not related to his teaching. Syllabi, of course, are a tool professors use in

teaching their classes. Simply put, syllabi are related to teaching, and so must be

their contents. Paradoxically, Defendants argue that Reges's land acknowledgment

parody is not related to teaching *because* he placed it in his syllabi. (Defs.' Mot. Summ.

J., Dkt. # 64, at 14 ("Reges's speech was in an official University document required

to be distributed.").)[4] Their own evidence defeats that argument; UW's syllabus

---

[4] Defendants' government-speech defense is addressed *infra* Section I.A.4.

guidelines make clear that faculty are free to craft their own syllabi. (McKenna Decl. Ex. 6, Dkt. # 65, at UW_Reges_0003266 ("[T]his webpage provides faculty with language that *may* be included in syllabi. Providing this content in syllabi *is voluntary*." (emphasis added)).)

Defendants identify the *only* content faculty are required to include in their syllabi by state law—a religious accommodations statement—as if it proves UW controls all other syllabi content. (Defs.' Mot. Summ. J., Dkt. # 64, at 12 (citing RCW 28B.137.010).) In fact, UW's syllabus guidelines make clear that all other syllabus content is left to the discretion of the faculty member. (*See* McKenna Decl. Ex. 6, Dkt. # 65, at UW_Reges_0003266–77 (providing optional language regarding academic integrity, student conduct, disability resources, excused absences, face coverings, medical excuses, safety, and Title IX).) The syllabus guidelines also provide optional language stating that UW faculty have academic freedom and warning students living abroad that American faculty may "present[] and explore[] topics and content that other governments may . . . choose to censor." (*Id.* at UW_Reges_0003273.) Ironically, it is UW that has censored Reges's exploration of the topic of land acknowledgments.

Defendants argue that Reges is free to share his parody statement "in other settings," but not his syllabi. (Defs.' Mot. Summ. J., Dkt. # 64, at 4, 6.)[5] In a press

---

[5] Contradicting that argument, Dean Allbritton testified that Reges is free to hold a sign bearing his parody statement on campus grounds, or to post his statement on Reddit, without facing a disciplinary process *only if* the educational environment

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 14

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

statement, UW asserted that "the University and the Allen School believe course materials are not the appropriate place or manner for a debate about land acknowledgments," (Walters Decl. Ex. I, at UW_Reges_0009291), and told one reporter that "a course syllabus is not the appropriate place to express personal views that bear no reasonable relation to the course being taught." (Walters Decl. Ex. J, at UW_Reges_0001418.) But it was the Allen School that determined that a course syllabus is the appropriate place for land acknowledgments that endorse UW's own message. *See also Meriwether v. Hartop*, 992 F.3d 492, 503–07 (6th Cir. 2021) (holding that professor "describing his views on gender identity even in his syllabus" is "related to scholarship or teaching" and therefore subject to academic-freedom exception to *Garcetti*).

### 2.    Defendants misconstrue academic freedom.

Second, Defendants misread over a half-century of jurisprudence on academic freedom. The Supreme Court has held that "given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition." *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003); *accord Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589, 603 (1967) ("Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not

---

is not disrupted—meaning, no one complains. (Allbritton Dep. Tr., Walters Decl. Ex. F, at 173:9–175:5.) Obviously, others could take offense to Reges's land acknowledgment parody and complain to UW administrators no matter where they read it—whether in his syllabi or somewhere else.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

merely to the teachers concerned."); *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) ("Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die."). The Ninth Circuit recognized this tradition in *Demers*: The "Supreme Court has repeatedly stressed the importance of protecting academic freedom under the First Amendment." 746 F.3d at 411.

Instead, Defendants overlook *Demers* and the Supreme Court's longstanding precedent, relying on *Garcetti v. Ceballos*'s general proposition that "when public employees make statements pursuant to their official duties . . . the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006). This ignores that the Supreme Court left open the question of whether *Garcetti*'s holding applies to a specific type of public employee: college and university professors. *Garcetti*, 547 U.S. at 425 ("We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching.").

*Demers* decided, within the Ninth Circuit, that there is an academic freedom exception to *Garcetti*. *Demers*, 746 F.3d at 406 ("We hold that *Garcetti* does not apply to 'speech related to scholarship or teaching.'") (quoting *Garcetti*, 547 U.S. at 425)). Public university professors' on-the-job speech "is governed by *Pickering*," *id.*, because "teaching and academic writing are at the core of the official duties of teachers and professors." *Id.* at 411. Furthermore, if *Garcetti* applied as Defendants propose, then that case "would directly conflict with the important First Amendment values

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 16

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

previously articulated by the Supreme Court." *Id.* The *Demers* panel concluded "that *Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to teaching and academic writing that are performed 'pursuant to the official duties' of a teacher and professor." *Id.* at 412.

Other post-*Garcetti* circuit courts also recognize the exception for the teaching and writing of public university professors. (*See* Pl.'s Mot. Summ. J., Dkt. # 60, at 19–20.) Apposite here, the Sixth Circuit upheld the syllabus as a medium for protected faculty expression, even when used to spur debate on a contested public issue. *Meriwether*, 992 F.3d at 506–07 ("By forbidding [the plaintiff-professor] from describing his views on gender identity *even in his syllabus*, [the university] silenced a viewpoint that could have catalyzed a robust and insightful in-class discussion.") (emphasis added).

As they did in their motion to dismiss (Dkt. # 50), Defendants again rely on the out-of-circuit and distinguishable case, *Abcarian v. McDonald*, 617 F.3d 931 (7th Cir. 2010). (Defs.' Mot. Summ. J., Dkt. # 64, at 14.) There, the Seventh Circuit rejected a surgery department head's claim that his expression was related to scholarship or teaching because his "speech involved administrative policies that were much more prosaic than would be covered by principles of academic freedom." *Abcarian*, 617 F.3d at 938 n.5. In other words, in *Abcarian*, the plaintiff's First Amendment claims failed because he was speaking in his role as an *administrator*, not as a professor. *Id.* at 937–38.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

For the same reason, Defendants' reliance on the Fourth Circuit's anodyne dicta that a professor's "assigned duties" may, at times, "include a specific role in declaring or administering university policy, as opposed to scholarship or teaching" provides them no cover. (Defs.' Mot. Summ. J., Dkt. # 64, at 14 (quoting *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 563 (4th Cir. 2011)).) The opinion's next sentence provides vital context: "However, that is clearly not the circumstance in the case at bar." *Adams*, 640 F.3d at 563. Indeed, the *Adams* court concluded, like *Demers*, that professors' academic speech remains protected by the First Amendment after *Garcetti. Adams*, 640 F.3d at 562–64. Defendants cite no caselaw holding that a syllabus is not related to scholarship or teaching.

### 3.    Defendants mistakenly rely on K–12 jurisprudence.

Third, Defendants rely on pre-*Demers* cases arising from the K–12 educational setting. (Defs.' Mot. Summ. J., Dkt. # 64, at 14–15 (citing *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011) and *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000)).) They argue *Garcetti* applied to the high-school teachers' claims rather than *Pickering*, and so it should be for public university professors. (Defs.' Mot. Summ. J., Dkt. # 64 at 15 n.2.) But public-school teachers are hired to deliver to children a curriculum that is set by the state; the college or university setting is different, as *Demers* acknowledges. 746 F.3d at 413 ("For example, the nature of classroom discipline, and the part played by the teacher or professor in maintaining discipline, will be different depending on whether the school in question is a public high school or a university . . . . Further, the degree of freedom

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

an instructor should have in choosing what and how to teach will vary depending on whether the instructor is a high school teacher or a university professor."). In addition to the "expansive freedoms of speech and thought associated with the university environment," *Grutter*, 539 U.S. at 329, colleges and universities educate adults; they are not grade schools educating children, and thus college and university teaching-employees' academic freedom is greater. *See also Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2049 n.2 (2021) (Alito, J., concurring) ("For several reasons, including the age, independence, and living arrangements of [public college or university] students, regulation of their speech may raise very different questions from those presented" in cases involving high school students.); Pl.'s Opp'n to Defs.' Mot. to Dismiss, Dkt. # 52, at 36–37 (collecting cases detailing reasons why K–12 schools and universities are different for First Amendment purposes).

### 4.   Reges's syllabus-based speech is not government speech.

Defendants cannot rope Reges's syllabus-based speech into the government-speech doctrine, which has no bearing here. The government-speech doctrine is a narrow First Amendment exception that is "susceptible to dangerous misuse" because "[i]f private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Matal v. Tam*, 582 U.S. 218, 235 (2017). Thus, government speech exists only when the state "maintain[s] direct control over the messages conveyed." *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1590 (2022) (internal quotation omitted). The Court should reject Defendants' misplaced reliance on the government-

1   speech doctrine as a matter of law for the same reasons Plaintiff briefed in his

2   opposition to dismissal. (Dkt. # 52, at 34–36.)

3          Discovery in this case has only bolstered Plaintiff's position. Like in *Shurtleff*,

4   UW does not scrutinize or preapprove the speech at issue. (Balazinska Dep. Tr.,

5   Walters Decl. Ex. D, at 81:10–22.) Indeed, "many faculty have great flexibility" to

6   choose the content of their syllabi. (Allbritton Dep. Tr., Walters Decl. Ex. F, at 72:21–

7   24). Although it would be insufficient, UW does not even bother with the charade of

8   placing a "seal of approval" on professors' syllabi. *Matal*, 582 U.S. at 235. Defendants'

9   admissions undercut their unsupported claim that UW's general guidelines for

10  syllabus construction transform professors' syllabi into "official University

11  document[s]." (Defs.' Mot. Summ. J., Dkt. # 64, at 14.) *See also supra* Section I.A.1.

12  The government-speech doctrine has no application here.

13         **B.     Defendants fail to refute that they took adverse employment
                    actions against Reges.**

14

15         Defendants thrice note that Reges "was not fired," (Defs.' Mot. Summ. J., Dkt.

16  # 64, at 1, 6, 10), insinuating no meaningful adverse action occurred. But that is not

17  the test. An act of retaliation by a government employer "need not be severe" to violate

18  an employee's First Amendment rights. *Anthoine v. N. Cent. Cntys. Consortium*, 605

19  F.3d 740, 750 (9th Cir. 2010) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 975

20  (9th Cir. 2003)). The relevant inquiry is objective: Whether the government's actions

21  "were 'reasonably likely to deter employees from engaging in protected activity'"

22

23

24

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 20

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

under the First Amendment. *Coszalter*, 320 F.3d at 976 (quoting *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 847 (9th Cir. 2003)).

In *Coszalter*, the Ninth Circuit identified an "unwarranted disciplinary investigation" and a "threat of disciplinary action" as individual adverse employment actions under *Pickering*. *Id.* at 976. Additionally, creating "shadow sections" of a professor's course—not in furtherance of legitimate educational interests but in retaliation for that professor's speech—is an adverse employment action. *Levin v. Harleston*, 966 F.2d 85, 88 (2d Cir. 1992).

There is no dispute that Defendants "launched . . . an investigation into whether Reges had violated University policy or the Faculty Code and created . . . alternative class section[s] for the [Winter] and Spring 2022 quarter[s]." (Defs.' Mot. Summ. J., Dkt. # 64, at 1.) Under *Coszalter* and *Levin*, that is sufficient to show adverse employment action. Defendants do not address these cases.

It is beyond debate that an 11-month-long disciplinary investigation, under threat of termination, suspension, or reduction of salary, on an allegation of violations of a policy that bans "unacceptable" or "inappropriate" speech, in addition to multiple other adverse actions against Reges, would reasonably chill the speech of an employee. *See Coszalter*, 320 F.3d at 976. It is also uncontested that Defendants have threatened Reges with another disciplinary investigation if someone complains about his land acknowledgment in the future. (Defs.' Mot. Summ. J., Dkt. # 64, at 5–6.) Defendants cannot and do not dispute this.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1
2

**C.**   **As a matter of law, Defendants fail to show an efficiency interest in preventing "disruption" caused by the sharing of ideas on a public university campus.**

3

UW's interests in mandating a universal position on land acknowledgment

4

statements and a campus environment free of offense do not outweigh Reges's speech

5

interest. "The desire to maintain a sedate academic environment, 'to avoid the

6

discomfort and unpleasantness that always accompany an unpopular viewpoint,' is

7

not an interest sufficiently compelling, however, to justify limitations on a teacher's

8

freedom to express himself on political issues in vigorous, argumentative,

9

unmeasured, and even distinctly unpleasant terms." *Adamian v. Jacobsen*, 523 F.2d

10

929, 934 (9th Cir. 1975) (internal citation omitted). Universities' role fostering an

11

exchange of a "diversity of views" and "[i]ntellectual advancement" through "discord

12

and dissent" "will not survive if certain points of view may be declared beyond the

13

pale." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010)

14

(citing *Keyishian*, 385 U.S. at 603).

15

On their side of the scale, Defendants offer student and employee complaints

16

about Reges's land acknowledgment parody as evidence of disruption. (Defs.' Mot.

17

Summ. J., Dkt. # 64, at 8–9.) However, all these complaints are merely objections to

18

the content and viewpoint of Reges's speech. While these objections may represent a

19

disturbance to the "sedate academic environment," there is no governmental interest

20

in maintaining a university campus free from debate. *See Adamian*, 523 F.2d at 934.

21
22
23
24

Defendants provide no other evidence of a cognizable disruption to the learning environment, in Reges's classroom or otherwise.[6]

Similarly, the "disruption" to operations Defendants rely upon is nothing more than faculty and staff responses to student complaints. (Defs.' Mot. Summ. J., Dkt. # 64, at 8 ("Director Balazinska became aware that staff were 'at a loss for how to best express their concern and frustration about this situation,' and worried about the effect on prospective students.").) But causing an administrator or employee to do something that is already part of their job responsibilities is no disruption. Hearing and responding to student, staff, and others' concerns are core parts of Director Balazinska's and Dean Allbritton's jobs. (Balazinska Dep. Tr., Walters Decl. Ex. D, at 31:11–21; Allbritton Dep. Tr., Walters Decl. Ex. F, at 17:4–6.) While Director Balazinska and Dean Allbritton can and should respond to staff concerns, they cannot do so in a way that violates the free-speech rights of another employee just because his speech is unpopular. And, as it relates to teaching assistants' fears of retaliation (which Balazinska and Allbritton concede are unfounded, Balazinska Dep. Tr., Walters Decl. Ex. D, at 222:24–223:3; Allbritton Dep. Tr., Walters Decl. Ex. F, at 150:15–18), or a recruiter's concerns about the ability to recruit, these types of "speculative ills" cannot generate a government interest under *Pickering*. *Liverman*

---

[6] If a student in fact took a leave of absence because of objections to Reges's land acknowledgement parody, though not in evidence, that also constitutes a reaction to Reges's protected speech on a matter of public concern. University students should expect to confront diverse viewpoints "in vigorous, argumentative, unmeasured, and even distinctly unpleasant terms." *Adamian*, 523 F.2d at 934.

1  *v. City of Petersburg*, 844 F.3d 400, 408–09 (4th Cir. 2016) (citing *Connick v. Myers*,

2  461 U.S. 138, 152 (1983)).

3       Defendants further point to the fact that 170 of Reges's more than 500 students

4  switched to the new shadow section Defendants created in Winter Quarter 2022,

5  implying they did so because they were offended by Reges's statement. (Defs.' Mot.

6  Summ. J., Dkt. # 64, at 9.) As an initial matter, and as Plaintiff argues in his moving

7  brief, the undisputed facts show only one of Reges's students expressed an intent to

8  switch to the new section because she took offense to Reges's statement, as opposed

9  to undisputed evidence that a variety of other, more mundane reasons justified many

10 more students' decisions to switch (*e.g.*, more favorable testing, grading, and

11 homework resubmission policies). (Pl.'s Mot. Summ. J., Dkt. # 60, at 10–11.)

12 Defendants did nothing to determine why students switched. (*Id.*) Defendants

13 present no evidentiary support that their discretionary choice to create a shadow

14 section resulted from any actual disruption to the learning environment.

15      UW does not have a legitimate interest in stifling dissent and debate: Indeed,

16 as a public university UW is "peculiarly the 'marketplace of ideas.'" *Healy v. James*,

17 408 U.S. 169, 180 (1972). Limiting professors to "express only those viewpoints of

18 which the State approves" is "positively dystopian." *Pernell v. Fla. Bd. of Governors*

19 *of the State Univ. Sys.*, 641 F. Supp. 3d 1218, 1230 (N.D. Fla. 2022). Defendants have

20 not demonstrated, and cannot demonstrate, that their nonexistent interest in stifling

21 discussion on a matter of public concern on a public university campus outweighs

22 Reges's interest in catalyzing and participating in that discussion.

23

24

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 24

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1

2

## II. Professor Reges Has a Standalone Viewpoint Discrimination Claim Because Defendants Restricted His Speech, Deeming It Offensive.

Defendants argue that Reges's viewpoint discrimination claim "is not viable separate from [his] retaliation claims," and that "the University did not single out Reges's land acknowledge [sic] based on the viewpoint it reflects." (Defs.' Mot. Summ. J., Dkt. # 64, at 16–17.) Both arguments fail for the same reason: Defendants censored Reges's speech and continue to threaten him with further punishment because they and others deem his viewpoint offensive, in violation of bedrock First Amendment principles.

Viewpoint discrimination is a separate injury from retaliation and thus a separate claim is appropriate. It is Defendants' *overarching* intent to discriminate against Reges's viewpoint, as published in his syllabus, that makes their censorship, in addition to other viewpoint-discriminatory attempts to regulate or chill his speech, subject to the distinct claim of viewpoint discrimination. It is a broader claim against Defendants' actions that applies regardless of whether Defendants, as a matter of law, also intended to retaliate against him.

Retaliation and viewpoint discrimination claims require different analyses even though courts balance employer and employee interests under *Pickering*. This is because a plaintiff pursuing a First Amendment retaliation claim must also show both an adverse action, and that the adverse action was motivated by the plaintiff's protected speech. *Coszalter*, 320 F.3d at 973. A viewpoint discrimination claim requires no such showing. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*,

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 25

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys.").

Even assuming Defendants did not retaliate against Reges for his speech (they did), they nevertheless censored it because they found it offensive by removing his statement from his syllabus. (Dkt. # 60, at 7; Dkt. # 64, at 4.) Furthermore, they have threatened him with future adverse employment action if his, as per Dean Allbritton's June 13 letter, "dehumanizing" statement leads to further complaints, which he can avoid only by censoring himself. (Dkt. # 60, at 14; Dkt. # 64, at 5–6.)

Defendants cite one in-circuit case for the proposition that *Pickering* "applies regardless of the reason an employee believes his or her speech is constitutionally protected." (Defs.' Mot. Summ. J., Dkt. # 64, at 17 (quoting *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 650 (9th Cir. 2006)). But they misstate the case's holding. In *Berry*, the plaintiff argued that the court "should apply a stricter test instead of a balancing test because the [defendant's] restrictions on his religious speech . . . violate his rights under both the Free Exercise and the Free Speech clauses of the First Amendment." *Berry*, 447 F.3d at 648–49. The plaintiff believed that *Employment Division v. Smith* held that two constitutional rights combined make a hybrid right with extra force. *See id.* at 649 n.5 (discussing *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872 (1990)). The *Berry* court rejected that argument because it "does not take into consideration the employer's interests that led the Supreme Court to adopt the *Pickering* balancing test in the first place." *Id.* at 649. Instead, *Berry* applied *Pickering*. *Id.* at 650.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Berry*, however, cites approvingly to *Tucker v. State of California Department of Education*, 97 F.3d 1204 (9th Cir. 1996). *Berry*, 447 F.3d at 650. As Reges does, Tucker brought not only a retaliation claim, but also an overbreadth claim challenging public employer workplace policies—and he succeeded in reversing an award of summary judgment for the defendant. *Tucker*, 97 F.3d at 1216–17. Therefore, it cannot be that in the Ninth Circuit all speech-based claims arising from the employment context must collapse into a single *Pickering* balancing test.

To hold otherwise would be to cast aside a fundamental principle of First Amendment law—that the state is powerless to restrict speech based on viewpoint because that viewpoint causes offense. (*See* Pl.'s Mot. Summ. J., Dkt. # 60, at 15–18.) This Court must examine UW's interests as employer against that weighty bedrock. Defendants' motion for summary judgment on Reges's viewpoint discrimination claim should be denied.

## III. Executive Order 31 Is Overbroad Because It Covers Pure Speech, Not Just Conduct.

Defendants nearly concede that Executive Order 31 is overbroad by arguing the Court should construe the policy "to avoid constitutional infirmities," (Defs.' Mot. Summ. J., Dkt. # 64, at 19), and apply Defendants' "limiting construction" to define the ban on "unacceptable or inappropriate" conduct as not reaching pure speech. But Defendants have already applied the Order to Reges's pure speech, acting inconsistently with the argument they now make before the Court and showing the Order's potential for overbreadth. Defendants cannot have their cake and eat it too.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1   Defendants' call for the Court to construe Executive Order 31 "to avoid
2   constitutional infirmities" must fail because the Order disclaims any limits. A policy
3   is overbroad if it ropes in a "substantial number" of applications to protected speech
4   relative to its legitimate sweep. *Comite de Jornaleros v. City of Redondo Beach*, 657
5   F.3d 936, 944 (9th Cir. 2011) (quoting *United States v. Stevens*, 559 U.S. 460, 473
6   (2010)). The Order prohibits "any conduct that is deemed unacceptable or
7   inappropriate, regardless of whether the conduct rises to the level of unlawful
8   discrimination, harassment, or retaliation." (Walters Decl. Ex. L.) There is no limit
9   to "any conduct" administrators might deem "unacceptable and inappropriate." That
10  the policy applies "regardless of whether the conduct rises to the level of unlawful
11  discrimination, harassment, or retaliation" demonstrates that its interpretation
12  cannot be constrained by definitions of those terms. The Order therefore covers
13  limitless applications to speech, let alone a "substantial number" of applications,
14  contradicting the limiting construction that Defendants now seek.

15  Defendants also argue that the Court should analyze Executive Order 31
16  similarly to a police department's social-media policy in the distinguishable case of
17  *Hernandez v. City of Phoenix*, 43 F.4th 966 (9th Cir. 2022). There, the Ninth Circuit
18  rejected an overbreadth challenge to a social-media policy that applied even to off-
19  duty police officers because "[p]olice departments . . . have a strong interest in
20  maintaining a relationship of trust and confidence with the communities they serve."
21  *Id.* at 981. *Hernandez*'s holding rests on the state's interest in maintaining not only
22  discipline and cohesion among the police ranks, but also public trust that the law will

23  PLAINTIFF'S OPPOSITION TO
    DEFENDANTS' MOTION FOR
    FOR SUMMARY JUDGMENT
    Case No. 2:22-cv-00964-JHC
24  Page 28

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

be enforced in an even-handed way—and those interests could be equally harmed by statements from on- or off-duty officers. *Id.* As a result of police's particular "mission," the court could not "say that a substantial number of the policy's applications are unconstitutional." *Id.*

In contrast to police departments, public university "efficiency cannot be purchased at the expense of stifling free and unhindered debate on fundamental educational issues." *Peacock v. Duval*, 694 F.2d 644, 647 (9th Cir. 1982). Indeed, "conflict is not unknown in the university setting." *Hulen v. Yates*, 322 F.3d 1229, 1239 (10th Cir. 2003). Even acting in an employer capacity, public universities have no interest in restricting the free speech and academic freedom rights of professors, who are hired not as state mouthpieces but as experts who challenge students to engage in critical thinking, speaking from a "multitude of tongues." *Keyishian*, 385 U.S. at 603. Universities have no interest in limiting speech and inquiry unless they have weightier efficiency interests. As discussed *supra* Section 1.C., those interests do not exist here. Therefore, Executive Order 31 has little legitimate sweep with respect to the in-classroom speech of UW professors. Judged in relation to that sweep, its potential applications to protected speech are overbroad. Therefore, Defendants' motion for summary judgment on Reges's overbreadth claim should be denied.

## IV. Executive Order 31 Is Vague Because a Person of Ordinary Intelligence Cannot Understand Its Meaning and It Permits Arbitrary Enforcement.

Executive Order 31 is vague because "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and

"it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).[7]

As Dean Allbritton's actions and June 13, 2023, letter demonstrate, even university deans cannot know what constitutes "conduct" "deemed unacceptable or inappropriate, regardless of whether" it meets the legal definitions of discrimination or harassment. Defendants must believe the Order applies to Reges's parody—pure speech—because they instituted a disciplinary investigation and threaten future enforcement against him under the Order.

But the Order's vague language must share the blame. It does not define "conduct," a term courts have long struggled to define as distinct from speech. *See, e.g.*, *Chase v. Davelaar*, 645 F.2d 735, 739 n.12 (9th Cir. 1981) ("We are hesitant to rely uncritically on the speech/conduct dichotomy. In part, our hesitancy arises from the conceptual weakness of the distinction. 'Speech' communication of ideas or attitudes is itself a form of 'conduct.'").

In addition, the Order provides that unacceptable or inappropriate "conduct" does not need to "rise to the level of unlawful discrimination, harassment, or retaliation"—while defining those three terms as particular forms of "conduct" with

---

[7] Defendants cite out-of-circuit precedent for the proposition that "a civil law is void for vagueness only if its terms are 'so vague and indefinite as really to be no rule or standard at all'" or if it is "substantially incomprehensible." (Defs.' Mot. Summ. J., Dkt. # 64, at 20 (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 507 (5th Cir. 2001).) But courts in the Ninth Circuit void "insufficiently clear" policies "to avoid any chilling effect on the exercise of First Amendment freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 30

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

"the meaning given them by applicable [anti-discrimination law]." Thus, as explained *supra* Part III, "conduct that is deemed unacceptable or inappropriate" can reasonably be understood to potentially include all possible acts, including pure speech, that fall outside the definitions of those terms. Contrary to Defendants' suggestion, a person of ordinary intelligence cannot understand what the Order prohibits because the possibilities are limitless. Especially because the Order must be interpreted "in the context of academic freedom in the University environment," (Defs.' Mot. Summ. J., Dkt. # 64, at 20 (citing Exec. Order 31 § 5(A)), this Court should consider the high interest in maintaining free speech, vigorous debate, and academic freedom on public university campuses when determining whether the policy's vagueness risks stifling free expression.

Likewise, the Order's terms invite arbitrary application. As noted in Dean Allbritton's June 13, 2023, letter, she will enforce the Order against Reges and preemptively conclude he intends to violate Executive Order 31 if students or staff express their offense to his land acknowledgment—pure speech—going forward. (Defs.' Mot. Summ. J., Dkt. # 64, at 5–6.) Those future complaints are the only evidence of "disruption" needed to resume disciplinary proceedings. (Allbritton Dep. Tr., Walters Decl. Ex. F, at 112:3–8.) But if the policy's enforcement, applied to pure speech, turns on listeners' objections to the content or viewpoint of that speech, then the term "conduct" as used in the Order is "meaningless," notwithstanding Defendants' claim otherwise. (Defs.' Mot. Summ. J., Dkt. # 64, at 20.) The Order authorizes administrators to apply it to anything they "deem[] unacceptable or

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 31

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

inappropriate"—an inherently arbitrary standard. If the Order is not vague—as Defendants argue (Defs.' Mot. Summ. J., Dkt. # 64, at 20)—because it contains definitions of discrimination and harassment, then they should apply it only to "conduct" meeting those definitions, not Reges's pure speech. Because the Order is vague—even by Defendants' own interpretation when applying it to Professor Reges's pure speech—Defendants' motion for summary judgment on Reges's vagueness claim should be denied.

## CONCLUSION

Based on the undisputed material facts, Defendants are not entitled to summary judgment on Reges's retaliation, viewpoint discrimination, overbreadth, and vagueness claims. The Court should deny their motion.

DATED: January 22, 2024

Respectfully submitted,

*/s/ Gabriel Walters*
GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
DC Bar No. 90001269
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org

*Admitted *Pro Hac Vice*

CARL J. MARQUARDT
WA Bar No. 23257
LAW OFFICE OF CARL J. MARQUARDT
PLLC
1126 34th Avenue, Suite 311
Seattle, WA 98122
Tel: (206) 388-4498
carl@cjmlawoffice.com

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 32

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF WORD COUNT</u>**

I certify that this memorandum contains 8,388 words, in compliance with the Local Civil Rules.

*/s/ Gabriel Walters*
Gabriel Walters

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 33

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

## CERTIFICATE OF SERVICE

Plaintiff's counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, January 22, 2024. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated below and parties may access this filing through the Court's electronic filing system.

ROBERT M. MCKENNA
AARON P. BRECHER
401 Union Street, Suite 3300
Seattle, WA 98101
Tel: (206) 839-4300
Fax: (206) 839-4301
rmckenna@orrick.com
abrecher@orrick.com

*Counsel for Defendants*

/s/ Gabriel Walters
GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
DC Bar No. 90001269
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org

*Admitted Pro Hac Vice

*Counsel for Plaintiff Stuart Reges*

R. DAVID HOSP
222 Berkeley Street, Suite 2000
Boston, MA 02116
Tel: (617) 880-1802
Fax: (617) 880-1801
dhosp@orrick.com

CARL J. MARQUARDT
WA Bar No. 23257
LAW OFFICE OF CARL J. MARQUARDT
PLLC
1126 34th Avenue, Suite 311
Seattle, WA 98122
Tel: (206) 388-4498
carl@cjmlawoffice.com