Honorable John H. Chun

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

STUART REGES,

   Plaintiff,

   v.

ANA MARI CAUCE, et al.,

   Defendants.

Case No. 2:22-cv-00964-JHC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Noted for Hearing: January 29, 2024

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I.  INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................... 1

    A.  The *Pickering* analysis dooms Reges's retaliation claims ..................................... 1

    B.  Reges did not speak as a citizen .............................................................................. 4

    C.  Reges's viewpoint-discrimination claim fails ......................................................... 7

    D.  Reges's facial challenges cannot survive ................................................................ 8

III.  CONCLUSION .............................................................................................................. 11

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -
Case No. 2:22-cv-00964-JHC

i

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Trustees of the University of North Carolina-Wilmington*,
   640 F.3d 550 (4th Cir. 2011) ................................................................................................ 5, 6

*Arce v. Douglas*,
   793 F.3d 968 (9th Cir. 2015) ................................................................................................ 9, 10

*Berry v. Dep't of Soc. Servs.*,
   447 F.3d 642 (9th Cir. 2006) ..................................................................................................... 7

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) .................................................................................................................. 8

*Cochran v. City of Atlanta*,
   289 F. Supp. 3d 1276 (N.D. Ga. 2017) ..................................................................................... 7

*Connick v. Myers*,
   461 U.S. 138 (1983) ............................................................................................................. 2, 3

*Coszalter v. City of Salem*,
   320 F.3d 968 (9th Cir. 2003) ..................................................................................................... 1

*Demers v. Austin*,
   746 F.3d 402 (9th Cir. 2014) ................................................................................................. 5, 6

*Downs v. L.A. Unified Sch. Dist.*,
   228 F.3d 1003 (9th Cir. 2000) ................................................................................................... 6

*Gammoh v. City of La Habra*,
   395 F.3d 1114 (9th Cir. 2005) ................................................................................................. 10

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ...................................................................................................... 4, 5, 6, 7

*Hernandez v. City of Phoenix*,
   43 F.4th 966 (9th Cir. 2022) .................................................................................................. 7, 9

*Johnson v. Poway Unified Sch. Dist.*,
   658 F.3d 954 (9th Cir. 2011) ..................................................................................................... 6

*Liverman v. City of Petersburg*,
   844 F.3d 400 (4th Cir. 2016) ..................................................................................................... 3

*Meriwether v. Hartop*,
   992 F.3d 492 (6th Cir. 2021) ..................................................................................................... 5

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -
Case No. 2:22-cv-00964-JHC

ii

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

*Parris v. Jacobs Eng'g Grp., Inc.*,
   No. C19-0128-JCC, 2021 WL 1734300 (W.D. Wash. May 3, 2021) ................................... 3

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*,
   641 F. Supp.3d 1218 (N.D. Fla. 2022) ............................................................................. 1

*Pickering v. Bd. of Educ. of Township High School Dist. 205*,
   391 U.S. 563 (1968) .................................................................................................. *passim*

*Rankin v. McPherson*,
   483 U.S. 378 (1987) .......................................................................................................... 2

*Rodriquez v. Maricopa Cnty. Cmty. Coll. Dist.*,
   605 F.3d 703 (9th Cir. 2010) ........................................................................................ 1, 3

*Siegert v. Gilley*,
   500 U.S. 226 (1991) ........................................................................................................ 11

*Shurtleff v. City of Bos.*,
   596 U.S. 243 (2022) .......................................................................................................... 6

*Superwood Co. Ltd. v. Slam Brands, Inc.*,
   No. C12-1109JLR, 2013 WL 4401830 (W.D. Wash. Aug. 15, 2013) ................................ 3

*Thomas v. Cannon*,
   289 F. Supp. 3d 1182 (W.D. Wash. 2018) ...................................................................... 11

*Tucker v. State of California Department of Education*,
   97 F.3d 1204 (9th Cir. 1996) ............................................................................................ 7

*United States v. Stevens*,
   559 U.S. 460 (2010) .......................................................................................................... 9

*United States v. Williams*,
   553 U.S. 285 (2008) ............................................................................................... 8, 9, 10

**Statutes, Rules, and Constitutional Provisions**

First Amendment ................................................................................................................ *passim*

Fifth Amendment ....................................................................................................................... 10

Fed. R. Civ. P. 12 ...................................................................................................................... 11

Fed. R. Civ. P. 50 ...................................................................................................................... 11

Fed. R. Civ. P. 56 ........................................................................................................................ 3

RCW 28B.137.010 ....................................................................................................................... 5

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -
Case No. 2:22-cv-00964-JHC

iii

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

I.  INTRODUCTION

Reges's Opposition to Defendants' Motion for Summary Judgment ignores the elephant in the room: Reges has never been silenced. Not even close. He has been free to express his views without sanction in emails, press interviews, discussions with colleagues, signs that he posts, and in his classroom. Reges's arguments ignore these undisputed facts and instead collect quotations praising the values of free speech and academic freedom, while erroneously suggesting that Defendants have adopted "a policy that bans 'unacceptable' or 'inappropriate' speech," (Dkt. 75 at 21 (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003))), have mandated "a universal position on land acknowledgment statements and a campus environment free of offense" where "certain points of view may be declared beyond the pale," (*id.* at 22 (quoting *Rodriquez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010))), and have "stifl[ed] dissent and debate," and "[l]imit[ed] professors to 'express only those viewpoints of which the State approves." *Id.* at 24 (quoting *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 641 F. Supp.3d 1218, 1230 (N.D. Fla. 2022). None of the cases Reges invokes tracks the facts here.

Defendants have shown that any de minimis burden on Stuart Reges's expression in the University's syllabus for one of his 2022 courses paled in comparison to the University's interest in avoiding disruption to its learning environment—and that the University left him ample channels to communicate his message about land acknowledgments. Further, in pressing his facial challenges to University policy, Reges avoids all but snippets of that policy's text. The undisputed facts and applicable law mandate summary judgment for Defendants on all Reges's claims.

II.  ARGUMENT

A.  The *Pickering* analysis dooms Reges's retaliation claims.

Defendants' actions satisfy the *Pickering* balancing test. As Defendants explained in their motion, a retaliation claim cannot succeed when "the interest[s] of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" outweigh "the interests of the teacher, as a citizen, in commenting upon matters of public concern." *Pickering v.*

*Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). Courts consider the time, place, and manner in which the speech was made as well as the context in which the dispute arose. *Connick v. Myers*, 461 U.S. 138, 152–53 (1983). When weighing the interests, "pertinent considerations [include] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

Applied here, it is clear that the University's mild actions of arranging for alternative class sections in two quarters, removing Reges's land acknowledgment from the University's online syllabus for one quarter, and conducting an investigation in response to a formal union complaint alleging harassment and discrimination were all justified by the actual and potential disruption Reges caused. Reges tries to evade this conclusion by playing down the disruption he caused and exaggerating the burden he faced.

***The University's interests.*** Reges minimizes the significant disruption his actions caused. Students, staff, and student-employees like teaching assistants felt the effects. Far from merely complaining about being offended, students expressed significant concerns about whether they would be treated fairly in class, in violation of University policy and state and federal law. According to the formal complaint from the union representing student-employees, teaching assistants had their workplace disrupted and expressed concerns about working with Reges. *See* Dkt. 66 at 33–34. Allen School staff were "at a loss for how to best express their concern and frustration about this situation," and worried about the effect on prospective students. *Id.* at 26. The Allen School's recruiter for diversity and access expressed frustration that Reges had undermined her function within the School. *Id.* at 31. Reges's actions thus "impair[ed] … harmony among co-workers" and "interfere[d] with the regular operation of" the Allen School. *Rankin*, 483 U.S. at 388. Reges does not distinguish *Rankin*'s reasoning.

Reges again omits discussion of the formal complaint lodged by the student-employee

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -
Case No. 2:22-cv-00964-JHC

2

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

union. Yet Reges included his intentionally offensive[1] land acknowledgment on a syllabus where both his students and teaching assistants were forced to read it, and it is well established that, "[i]n the context of a supervisory relationship, advocacy of discriminatory ideas can connote an implicit threat of discriminatory treatment, and *could* therefore amount to intentional discrimination." *Rodriquez*, 605 F.3d at 710. As a result, Defendants had little choice but to investigate whether his conduct constituted discrimination and risked putting the University in breach of its collective-bargaining agreement.

Reges manufactures a controversy about the admissibility of evidence that a student took a leave of absence from the Allen School. *See* Dkt. 75 at 8–9. But that argument conflicts with the language of Rule 56, which allows objections to evidence supporting summary judgment only when the material "cannot be presented in a form that would be admissible …." Fed. R. Civ. P. 56(c)(2); *see also Parris v. Jacobs Eng'g Grp., Inc.*, No. C19-0128-JCC, 2021 WL 1734300, at *2 (W.D. Wash. May 3, 2021) (explaining that evidence considered on summary judgment "need only be presented in an admissible form *at trial*—not at summary judgment"); *Superwood Co. Ltd. v. Slam Brands, Inc.*, No. C12-1109JLR, 2013 WL 4401830, at *7 (W.D. Wash. Aug. 15, 2013) (similar).

In any event, the dispute is immaterial, since what matters are the decision-makers' good-faith beliefs and because the University need not "allow events to unfold to the extent that the disruption of the [classroom or the school] … [wa]s manifest before taking action." *Connick*, 461 U.S. at 152. In disputing this, Reges selectively quotes *Liverman v. City of Petersburg*, 844 F.3d 400 (4th Cir. 2016). In fact, *Liverman* confirms that *Pickering* balancing involves weighing all the facts. There, "speculative ills" were not enough to justify "sweeping restrictions" in a police social media policy of "astonishing breadth." *Id.* at 408–09. But when, as emphasized below, the restriction is minor, a lesser showing of disruption can necessarily be enough to outweigh the burden.

---

[1] Reges argues that his land acknowledgment was not intentionally offensive, suggesting that it was merely intended as parody. It is undisputed that Reges knew that his statement would cause offense, and that it did, in fact, offend many in the campus community. This led to a significant disruption. Whether causing offense was his specific intent is irrelevant.

***Reges's interests.*** Reges's interests in being permitted to include his land acknowledgment on the University's syllabus for a single quarter were minimal, given that he was expressly invited and permitted to express his views in myriad other venues.

In both Defendants' motion and their opposition to Reges's cross-motion for summary judgment, Defendants rebutted Reges's overblown claims of censorship. *See* Dkt. 64 at 4–6, Dkt. 77 at 2. Rather than meet those arguments head-on, Reges confuses the issue by arguing that Defendants' actions still constitute adverse employment actions for purposes of his retaliation claims. *See* Dkt. 75 at 20–21. Whether adverse employment actions or not, under *Pickering*, their severity—or lack thereof—is relevant to the time, place, manner, and context of the dispute. Reges cannot contest that, without repercussion, he includes his land acknowledgment in his University email signature block, tacks it next to the door to his faculty office, has given numerous interviews to the media about his statement, discussed it in class, has included it on later syllabi, and publicized it in numerous other ways. Dkt. 65 ("McKenna Decl."), Ex. 1 at 60:25–61:15, 64:2–7, 105:7–25; 111:3–114:22, 161:1–18.

The picture of strictly enforced conformity and censorship Reges conjures does not square with the facts. Reges extracts stirring quotations about the role of expression on university campus but does not engage with the facts of the authorities he cites—in which the restrictions on academic freedom or campus speech all involved severe sanctions or choked off key avenues of expression. *See* Dkt. 75 at 24.

**B.    Reges did not speak as a citizen.**

Summary judgment on the retaliation claims is also appropriate because Reges was not speaking as a citizen in placing his land acknowledgment on the University course syllabus for his introductory class. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Reges's authorities carving out an exception to the *Garcetti* rule for speech related to scholarship or teaching do not apply. Nor does it matter that some key cases in this area arise from the high school setting.

Here, the University course syllabus not only contains statutorily required content, *see* RCW 28B.137.010, it is—in the words of one student—"one of the first things new students see when coming into a class." Dkt. 66 at 21. Its administrative function means that it can easily be interpreted as the University's official position. The University has an interest in preventing its own message—that Native students are welcome—from being diluted or undermined by Reges.

Reges's cases do not help him. *See* Dkt. 75 at 16–18. *Demers v. Austin*, for instance, cautioned that "[i]t may in some cases be difficult to distinguish between what qualifies as speech 'related to scholarship or teaching' within the meaning of *Garcetti*." 746 F.3d 402, 415 (9th Cir. 2014). In other words, not *all* academic speech is speech "related to scholarship or teaching" under *Garcetti*. *Id*.

Similarly, *Meriwether v. Hartop*, 992 F.3d 492, 506–07 (6th Cir. 2021), is no help to Reges. It held that a university unconstitutionally silences a professor's viewpoint by forbidding *any* expression on a particular topic, including in a syllabus. *Meriwether*, 992 F.3d at 506. *Meriwether* centered on a professor's moral and religious disagreement with the school's policy on preferred pronouns. *Id.* at 498. After being directed to "eliminate all sex-based references from his expression" or refer to students only by their preferred pronouns, the professor asked to express his views in another manner by "plac[ing] a disclaimer in his syllabus" explaining his "personal and religious beliefs about gender identity." *Id.* at 499–500. The university rejected this request. *Id.* The court concluded that the university violated the professor's rights because it forbade him from describing his views on gender identity, whether in the classroom, in the syllabus, or elsewhere. *Id.* at 506. It does not stand for the proposition, as Reges suggests, that any restrictions on offensive speech on a University syllabus violate the First Amendment; rather, it establishes that universities must offer reasonable alternative outlets for expression when they regulate expression in certain settings. Here, there is no dispute that Reges was given such alternative accommodations.

Likewise, in *Adams v. Trustees of the University of North Carolina-Wilmington*, 640 F.3d 550, 563 (4th Cir. 2011), the Fourth Circuit explained that, at times, "a public university faculty member's assigned duties include a specific role in declaring or administering university

1    policy, as opposed to scholarship or teaching. In that circumstance, *Garcetti* may apply to the
2    specific instances of the faculty member's speech carrying out those duties." When speech is
3    "undertaken at the direction of [the university]," it falls within *Garcetti*'s scope. *Id.* at 563–564.
4         Reges's syllabus statements are not the type of "scholarship" or "teaching" that the
5    Supreme Court envisioned protecting as "academic freedom." *See Garcetti*, 547 U.S. at 425.
6    Reges can point to no evidence showing that his one-sentence statement at the bottom of his
7    course syllabi is "related to scholarship or teaching" under *Garcetti*. Far from the independently
8    published pamphlet in *Demers* or the external publications in *Adams*, Reges's speech was in an
9    official University document required to be distributed. Indeed, it is precisely the type of
10   university-directed policy administration that *Adams* recognized would *not* constitute
11   "scholarship or teaching" under *Garcetti*. *Adams*, 640 F.3d at 563–34.
12        Reges's reliance on *Shurtleff v. City of Bos.*, 596 U.S. 243, 252–53 (2022), is also
13   misplaced. *Shurtleff* addressed whether the city of Boston intended to "communicate
14   governmental messages" through a flagpole outside Boston City Hall, "or instead opened the
15   flagpole for citizens to express their own views." *Id*. at 248. The contested speech was thus
16   outside the government-employee context applicable here. The Court need not wade into
17   *Shurtleff*'s "holistic inquiry" to determine whether Reges's speech is government speech. *Id.*
18   at 252. The Supreme Court has held that "when public employees make statements pursuant to
19   their official duties, the employees are not speaking as citizens for First Amendment purposes,
20   and the Constitution does not insulate their communications from employer discipline."
21   *Garcetti*, 547 U.S. at 421. That is the entire premise of the parties' dispute surrounding whether
22   the syllabus constitutes speech "related to teaching or scholarship" and how to weigh the parties'
23   competing interests under *Pickering*.
24        Finally, Reges's attempt to distinguish *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954
25   (9th Cir. 2011), and *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000), because
26   they arise in a high school setting, is unavailing. The well-recognized distinction between high
27   school and college speech rights refers to *student* speech, not faculty speech. Reges's authorities
28   (Dkt. 75 at 19; Dkt. 52 at 28–29) involve student speech. Such a distinction makes sense in that

1   context, where students at the high school and university levels have differing degrees of

2   independence and oversight. That distinction is not equally applicable to *faculty* in each setting.

3   Moreover, Defendants rely on these cases only as examples of when a government employee fails

4   to speak as a private citizen. In each case, that answer depended on the time, place, manner, and

5   context of the speech. That same analysis applies here.

        **C.     Reges's viewpoint-discrimination claim fails.**

7   Reges's viewpoint-discrimination claim cannot go forward for two reasons. First, the

8   analysis above under *Pickering* and *Garcetti* applies to this claim as well, and mandates summary

9   judgment for Defendants. Second, the undisputed facts make plain that the University did not in

10  fact act based on their disagreement with Reges's point of view, but rather based on the

11  disruption he caused.

12  Reges first misapprehends Defendants' legal argument. No matter how Reges styles his

13  claim, under *Pickering* his First Amendment rights as a government employee must outweigh the

14  University's interests. *Pickering* "applies regardless of the reason an employee believes his or her

15  speech is constitutionally protected." *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 650 (9th

16  Cir. 2006); *see also Cochran v. City of Atlanta*, 289 F. Supp. 3d 1276, 1293–94 (N.D. Ga. 2017)

17  (granting summary judgment).

18  Reges's efforts to distinguish *Berry* fail. Reges highlights that retaliation and viewpoint

19  discrimination are separate causes of action with separate elements, something that Defendants

20  nowhere dispute. *See* Dkt. 75 at 25–26. The issue is not whether Reges is free to bring multiple

21  claims but whether each of those claims must satisfy the *Pickering* balancing standard. Reges

22  points to *Tucker v. State of California Department of Education*—cited in *Berry*—as proof that

23  his viewpoint-discrimination claim can go forward. Dkt. 75 at 27 (citing 97 F.3d 1204 (9th

24  Cir. 1996)). To be sure, *Tucker* considered both a retaliation claim and an overbreadth claim. 97

25  F.3d at 1216–17. But overbreadth claims in the public employment setting also involve a

26  *Pickering* balancing test "that closely tracks the test used for First Amendment retaliation

27  claims." *Hernandez v. City of Phoenix*, 43 F.4th 966, 980 (9th Cir. 2022) (citation omitted). Thus,

28  Reges has failed to identify any authority holding that *Pickering* balancing does not apply to his

1  viewpoint-discrimination claim. The claim therefore fails for the same reasons his retaliation
2  claims fail.

3  Second, Reges completely fails to grapple with Defendants' second argument on viewpoint discrimination. The facts do not suggest in any way that Defendants acted because they disagreed with Reges's viewpoint. When Reges first announced his intention to include his statement on the University syllabus for his introductory course, the University took no action. So too when he included his statement in his email signature block and outside his faculty office, and when he announced his desire to discuss his views in a forum with other faculty. *See* Dkt. 64 at 17–18. The University acted only in response to a significant disruption to the learning environment that it could not ignore. Indeed, when Reges put his statement back on course syllabi in later quarters and no disruption ensued, the University did not remove the statement—making clear that its objection was not to the statement's viewpoint, but to the disruption it caused when he introduced it on a Winter 2022 syllabus. *Id.* at 17. Thus, the only explanation matching the evidence is that the University acted based solely on the disruption to the learning environment that Reges caused—not his viewpoint.

Summary judgment is thus appropriate for his viewpoint-discrimination claim.

### D. Reges's facial challenges cannot survive.

Reges's overbreadth and vagueness challenges to Executive Order 31 fail as well, and Defendants have a right to summary judgment on both.

***Overbreadth.*** Reges ignores the Court's obligation to construe Executive Order 31 in accordance with established legal principles—the "first step in overbreadth analysis." *United States v. Williams*, 553 U.S. 285, 293 (2008). His opposition fails to address the fact that the Order ties its terms to "the meaning given to them by applicable federal or state laws and regulations." Dkt. 62-32 ("Exec. Order 31") § 4. He is likewise silent on the University's commitment to interpret the order "in the context of academic freedom in the University environment." *Id.* § 5(A). In fact, his entire interpretation of a policy spanning dozens of paragraphs turns on a single sentence. *See* Dkt. 75 at 27–29.

As Defendants explained in their motion, before administering the "strong medicine" of

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 8
Case No. 2:22-cv-00964-JHC

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

invalidating a law or policy as overbroad—what the Supreme Court calls a "last resort," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)—courts must first "construe the challenged statute," *Williams*, 553 U.S. at 293. Doing so shows that the Order aims at conduct closely akin to unlawful discrimination, harassment, and retaliation. It does not sweep in a "substantial number" of unconstitutional applications relative to its constitutional applications. *United States v. Stevens*, 559 U.S. 460, 473 (2010).

In asserting otherwise, Reges tries twice over to mischaracterize the inquiry. First, he suggests that applying the Order to Reges's supposedly protected conduct proves the merits of his overbreadth claim. But even if Reges's rights were violated, that single instance would not show substantially more invalid applications of the Order than valid ones. Second, Reges contends outright that the Order should be "judged in relation to" its applications "to the in-classroom speech of UW professors." Dkt. 75 at 29. He cites no authority for this proposition, and it conflicts with *Stevens*'s formulation of the test. It also conflicts with the Order itself, which on its face applies to the entire University community, aiming to cut off unlawful discrimination, retaliation, harassment, and conduct that closely resembles it. *See* Exec. Order 31 § 1.

Put simply, only by plucking some language out of context and ignoring the rest can Reges urge the Order's application to all manner of protected speech. But applying the principles of statutory construction explained in Defendants' motion (Dkt. 64 at 19) confirms the opposite. The Order's bar on "unacceptable or inappropriate" conduct aims to "facilitate [the] goal" of "promoting an environment that is free of discrimination, harassment, and retaliation." Exec. Order 31 § 1. The Order contains a list of definitions tracking federal employment law. *See id.* § 4. And it commits the University to interpret the Order "in the context of academic freedom in the University environment." *Id.* § 5(A); *see Arce v. Douglas*, 793 F.3d 968, 985 (9th Cir. 2015) (rejecting overbreadth challenge in part because policy provided it would not be construed to prohibit instruction on historical oppression and explaining it would be "inappropriate" to read the challenged statute broadly when it was "readily susceptible" to narrowing construction).

At bottom, Reges offers no support for the apparent premise of his claim: that public universities lack authority to regulate, investigate, or punish *any* conduct that is not independently

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -
Case No. 2:22-cv-00964-JHC

9

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

unlawful. And the Ninth Circuit has held otherwise. *See Hernandez*, 43 F.4th at 980 (overbreadth challenges "in the public employment context" turn on a "modified *Pickering* balancing analysis that closely tracks the test used for First Amendment retaliation claims"). The Court should grant summary judgment on this claim.

**Vagueness.** Reges's vagueness challenge under the Fifth Amendment fares no better. As Defendants explained, the law has never required "perfect clarity and precise guidance … even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (citation omitted). In trying to inject uncertainty in the Order's provisions, Reges misconstrues the facts surrounding the investigation of his own case.

The Order clarifies the words to which Reges objects by tethering them to the specific context of harassment, discrimination, and retaliation, and by requiring the University to interpret the Order in the context of its commitment to academic freedom and by reference to federal employment law. *See Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005) ("[O]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity."). This narrowing construction offers enough specificity to put a member of the University community of reasonable intelligence on notice of the conduct the Order prohibits. *See, e.g.*, *Arce*, 793 F.3d at 988 (statute prohibiting coursework promoting resentment toward a race or class of people not void for vagueness "[f]or many of the same reasons" it was not overbroad).

Reges does not distinguish these authorities. Instead, he claims that Dean Allbritton threatened to "enforce the Order against Reges and preemptively conclude he intends to violate Executive Order 31" to suggest that the Order invites arbitrary enforcement. Dkt. 75 at 31. But Dean Allbritton stated only that—if future conduct related to Reges's land acknowledgment caused a disruption—the University would "proceed with next steps in accordance with the Faculty Code." Dkt. 67 at 19. Reges cites nothing to suggest that investigating disruption in a process with layers of review available before punishments may issue is arbitrary.

The Court should grant summary judgment to Defendants on vagueness.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -
Case No. 2:22-cv-00964-JHC

10

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

### III. CONCLUSION

For these reasons and those discussed in Defendants' motion, the Court should grant summary judgment and dismiss Reges's claims with prejudice.[2]

DATED: January 29, 2024.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  s/Robert M. McKenna
Robert M. McKenna (WSBA# 18327)
Aaron Brecher (WSBA# 47212)
401 Union Street, Suite 3300
Seattle, WA  98101
Telephone (206) 839-4300
Fax (206) 839-4301
rmckenna@orrick.com
abrecher@orrick.com

R. David Hosp (*Pro Hac Vice Admission*)
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone (617) 880-1802
Fax (617) 880-1801
dhosp@orrick.com

*Attorneys for Defendants Ana Mari Cauce, Magdalena Balazinska, Dan Grossman, and Nancy Allbritton*

Counsel certifies that this memorandum contains 3,881 words, in compliance with the Local Civil Rules.

---

[2] Granting Defendants' motion will dispose of all issues in this case—unlike Reges's cross-motion, which would leave open the determination of damages for trial and, if fact issues preclude summary judgment, the related question of whether Defendants have a right to qualified immunity. Because Defendants' Rule 12(b)(6) motion remains pending, Defendants have not answered and thus not yet asserted the defense of qualified immunity. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991) ("Qualified immunity is a defense that must be pleaded by a defendant official."); *see also Thomas v. Cannon*, 289 F. Supp. 3d 1182, 1213–14 (W.D. Wash. 2018) (explaining that qualified immunity defense can be raised for the first time in a motion under Rule 50(a)).