THE HONORABLE JOHN H. CHUN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# SEATTLE DIVISION

STUART REGES,

     *Plaintiff*,

    v.

ANA MARI CAUCE, et al.,

     *Defendants*.

CASE NO. 2:22–cv–00964–JHC

NOTE ON MOTION CALENDAR:
January 29, 2024

ORAL ARGUMENT REQUESTED

## REPLY IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
DC Bar No. 90001269
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
gabe.walters@thefire.org
josh.bleisch@thefire.org
jay.diaz@thefire.org

CARL J. MARQUARDT
WA Bar No. 23257
LAW OFFICE OF CARL J. MARQUARDT
PLLC
1126 34th Avenue, Suite 311
Seattle, WA 98122
Tel: (206) 388-4498
carl@cjmlawoffice.com

*Admitted *Pro Hac Vice*
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................. iii

INTRODUCTION........................................................................................... 1

ARGUMENT.................................................................................................. 2

    I.     Reges's Syllabus Statement Is Constitutionally Protected. ................... 2

         A.    Reges's syllabus statement is protected academic speech, governed neither by *Garcetti*'s framework for other public employees nor the government-speech doctrine.......................... 3

         B.    Reges's interest in speaking outweighs UW's interest in orderly operations. ........................................................... 5

    II.    Defendants Retaliated Against Reges for His Academic Speech by Censoring His Syllabus, Creating Two Shadow Courses, and Investigating Him—Actions That Are Reasonably Likely to Chill Speech........................................................................................... 8

         A.    Defendants took adverse actions against Reges. ....................... 8

         B.    Defendants cannot dispute that Reges's speech motivated their adverse actions................................................... 10

    III.   Defendants' Syllabus Restrictions Discriminate Based on Viewpoint Because Reges May Either Parrot UW's Land Acknowledgment on His Syllabus or Say Nothing at All. ................... 12

    IV.   An Injunction Is Necessary to Limit Executive Order 31's Overbreadth and Vagueness. ................................................... 16

CONCLUSION ............................................................................................. 17

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page ii

Foundation for Individual Rights and Expression
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Abcarian v. McDonald,*
  617 F.3d 931 (7th Cir. 2010) .................................................................. 5

*Adams v. Trustees of the University of North Carolina-Wilmington,*
  640 F.3d 550 (4th Cir. 2011) .................................................................. 4

*Am. Freedom Def. Initiative v. King Cty.,*
  904 F.3d 1126 (9th Cir. 2018) .............................................................. 13

*Anthoine v. N. Cent. Cntys. Consortium,*
  605 F.3d 740 (9th Cir. 2010) .................................................................. 8

*Berry v. Dep't of Soc. Servs.,*
  447 F.3d 642 (9th Cir. 2006) ................................................................ 12

*Coszalter v. City of Salem,*
  320 F.3d 968 (9th Cir. 2003) ............................................................. 8, 9

*Demers v. Austin,*
  746 F.3d 402 (9th Cir. 2014) ................................................................. 3

*Forsyth Cty. v. Nationalist Movement,*
  505 U.S. 123 (1992) ............................................................................ 10

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) .......................................................................... 3, 5

*Keyishian v. Bd. of Regents,*
  385 U.S. 589 (1967) .......................................................................... 1, 6

*Levin v. Harleston,*
  966 F.2d 85 (2d Cir. 1992) ............................................................... 9, 10

*Matal v. Tam,*
  582 U.S. 218 (2017) ........................................................................ 10, 13

*Meriwether v. Hartop,*
  992 F.3d 492 (6th Cir. 2021) ........................................................... 3, 4, 6

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page iii

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y,*
    275 F.3d 838 (9th Cir. 2003) ..................................................................... 9

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.,*
    641 F. Supp. 3d 1218 (N.D. Fla. 2022) .................................................... 6

*Pickering v. Board of Education,*
    391 U.S. 563 (1968) .................................................................................. 2

*Shurtleff v. City of Boston,*
    142 S. Ct. 1583 (2022) .............................................................................. 5

*Texas v. Johnson,*
    491 U.S. 397 (1989) ................................................................................. 16

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page iv

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

# INTRODUCTION

Turning academic freedom on its head, Defendants argue that the University of Washington may punish Professor Reges for, in his role as a teacher, communicating his view on land acknowledgments to his students through his syllabus. They essentially claim that viewpoints that some find offensive have no place in the classroom, and that punishing Reges for offensive in-class speech is permitted because he may share his viewpoint on land acknowledgments elsewhere. The Supreme Court and many circuit courts, including the Ninth Circuit, have long held the opposite because the university classroom is "peculiarly the marketplace of ideas," where the nation's future leaders must be "trained through the wide exposure to that robust exchange of ideas." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). Under binding precedent, Defendants cannot shrug off their censorship, retaliatory investigation, ongoing threat of future punishment, and other adverse employment actions when motivated by a public employee's protected speech.

Defendants claim they acted only in response to disruption—complaints from students and staff about the content and viewpoint of Reges's syllabus-based land acknowledgment. But the dispositive link in that chain of causation is listeners' reactions. The state may not restrict protected speech because others find it offensive, and that is all Defendants' "disruption" amounts to. Defendants have nevertheless given Professor Reges a Hobson's choice, in perpetuity: Include his land acknowledgment parody in syllabi at risk of UW concluding it intentionally violates its vague and overbroad anti-discrimination policy, or parrot UW's statement or

saying nothing at all. The First Amendment does not permit public universities to demand teachers' adherence to an ideological script in the classroom—regardless of whether the alternative viewpoints offend or result in complaints.

The Court should grant summary judgment for Reges on his retaliation, viewpoint discrimination, overbreadth, and vagueness claims. (Dkt. # 60.)

## ARGUMENT

The First Amendment protects Reges's land acknowledgement parody as academic speech. Because the undisputed facts show Defendants took adverse actions against Reges substantially motivated by his protected speech, Reges is entitled to summary judgment on his retaliation claims against Defendants in their official and individual capacities (Second and Third Causes of Action). Reges is also entitled to summary judgment on his First Cause of Action alleging viewpoint discrimination because it is undisputed that after labeling his land acknowledgment "offensive," Defendants required Reges to either endorse their own viewpoint or say nothing at all. Finally, UW's Executive Order 31 is unconstitutionally overbroad and vague, entitling Reges to summary judgment on his Fourth and Fifth Causes of Action.

## I.    Reges's Syllabus Statement Is Constitutionally Protected.

The First Amendment protects public university faculty's speech related to scholarship or teaching—even though they are government employees. (Pl.'s Br. 19–20; Pl.'s Opp'n 11–12.) Balancing interests under *Pickering v. Board of Education*, 391 U.S. 563 (1968), Reges's land acknowledgment is constitutionally protected.

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 2

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1
2

**A.      Reges's syllabus statement is protected academic speech, governed neither by *Garcetti*'s framework for other public employees nor the government-speech doctrine.**

3      Defendants are half right about Reges's land acknowledgment parody: He was

4   not speaking as a private citizen. But neither was he speaking as one of the 20 million

5   non-academic government employees whose expression is governed by the *Garcetti*

6   framework. As the Supreme Court recognized in *Garcetti v. Ceballos*, "expression

7   related to academic scholarship or classroom instruction implicates additional

8   constitutional interests." 547 U.S. 410, 425 (2006). In this Circuit, as a public

9   university professor, Reges's statement on his syllabus is speech "related to

10   scholarship or teaching" governed by the *Pickering* balancing test.[1] *Demers v. Austin*,

11   746 F.3d 402, 412 (9th Cir. 2014) (holding *Garcetti* framework does not apply to the

12   classroom speech of public university faculty). (*See also* Pl.'s Br. 20 (explaining why

13   Reges's syllabus statement relates to teaching at least as much as professor's

14   pamphlet urging university restructuring in *Demers*).)

15      Reges's syllabus-based speech is protected because the free exchange of ideas—

16   especially controversial ideas—between a professor and their students is at the core

17   of academic freedom. In fact, Defendants implicitly concede Reges's statement is

18   "related to scholarship or teaching" when they explain *Meriwether v. Hartop*, 992 F.3d

19   492, 506–07 (6th Cir. 2021). (Defs.' Opp'n at 10.) There, the Sixth Circuit held

20   banning a professor from expressing disagreement with using students' preferred

21

22      [1] Defendants concede Reges's land acknowledgment parody commented on a matter of public concern. (Pl.'s Br. 21.)

23   REPLY IN SUPPORT OF                    Foundation for Individual Rights and Expression
     PLAINTIFF'S MOTION FOR                510 Walnut Street, Suite 900
     SUMMARY JUDGMENT                      Philadelphia, PA 19106
24   Case No. 2:22-cv-00964-JHC           Tel: (215) 717-3473
     Page 3

gender pronouns, "even in his syllabus," violated the First Amendment. 992 F.3d at 506. Because "the classroom is peculiarly the marketplace of ideas," *id*. at 505 (cleaned up), "public universities do not have a license to act as classroom thought police" lest the "next generation of leaders" become "closed-circuit recipients of only that which the State chooses to communicate." *Id*. at 507 (cleaned up).

Defendants misread *Meriwether* as that university "truly silenc[ing]" the professor "in the classroom, in the syllabus, [and] elsewhere." (Defs.' Opp'n 10.) First, *Meriwether* involves classroom-based professor-to-student speech—university policy mandated the use of students' preferred pronouns and Meriwether wanted to express his disagreement, at a minimum, in his syllabus. 992 F.3d at 500. Meriwether's speech was in-class only, not "elsewhere." Second, defendants' prohibition of syllabus-based speech was "anathema to the principles underlying the First Amendment," in part because banning speech that "could have catalyzed a robust and insightful in-class discussion" affects "students' interest in hearing . . . contrarian views." *Id*. at 506, 510. The university's attempt to control Meriwether's syllabus was the bottom line for the Sixth Circuit's holding. Reges has done only *Meriwether*'s minimum: explain his views to his students through his syllabus. This teaching-related professor-to-student speech is protected from Defendants' control.

Defendants also misapply out-of-circuit cases involving faculty performing administrative duties. (Defs.' Opp'n 10–11.) Unlike the hypothetical in *Adams v. Trustees of the University of North Carolina-Wilmington*, 640 F.3d 550, 563–64 (4th Cir. 2011), Reges was not "declaring or administering university policy." And unlike

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 4

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Abcarian v. McDonald*, 617 F.3d 931 (7th Cir. 2010), Reges was speaking as a teacher, not an administrator. (Pl.'s Opp'n 17–18.) Defendants' citation to K–12 cases, (Defs.' Opp'n 11–12), overlooks the differences of the university setting. (Pl.'s Opp'n 18–19 (describing reasons K–12 teachers come within *Garcetti*, not *Pickering*).)

Defendants' government-speech defense, (Defs.' Opp'n 11–12), similarly fails. The government-speech doctrine cannot apply to Reges's syllabi because the state does not "maintain direct control over the messages conveyed." (Pl.'s Opp'n 19–20 (citing *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1590 (2022) (cleaned up)).) Defendants do not review or approve faculty syllabi, (Pl.'s Opp'n 20), and UW's syllabus guidelines are purely optional, apart from a religious accommodations statement mandated by state law. (*Id.* at 14.) Dean Allbritton concedes that "many faculty have great flexibility" in crafting their syllabi. (Pl.'s Opp'n 20.) A syllabus is the purview of the faculty member who authors it—not university speech. (Pl.'s Br. 19–20; Pl.'s Opp'n 13–14.)

### B. Reges's interest in speaking outweighs UW's interest in orderly operations.

Because Reges's speech is related to teaching, the Court must balance his interest in speaking against UW's interest in providing efficient services under *Pickering*. Reges's bedrock interest in speaking on matters of public concern in his classroom outweighs UW's interest in orderly operations or a "sedate academic environment." (Pl.'s Br. 20–22; Pl.'s Opp'n 22–24.)

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1    Defendants argue that Reges's speech interest is "de minimis" because he "has

2    every chance to speak about land acknowledgments" outside the classroom. (Defs.'

3    Opp'n 13.) This turns academic freedom on its head. The classroom is where academic

4    freedom is at its zenith—where the university "cannot force professors to avoid

5    controversial viewpoints altogether in deference to a state-mandated orthodoxy."

6    *Meriwether*, 992 F.3d at 507. Further, teaching students *in the classroom* on matters

7    of public concern is fundamental to our nation's future, which "depends upon leaders

8    trained through wide exposure to [the] robust exchange of ideas." *Keyishian*, 385 U.S.

9    at 603. It is undisputed that Reges communicated with students in the classroom "to

10   generate a discussion or … make people think about are these land acknowledgments

11   a good idea." (Reges Dep. Tr., Walters Ex. A, 184:15–19.)

12   If UW could control classroom discourse, the consequences would be "positively

13   dystopian." *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 641 F. Supp. 3d

14   1218, 1230 (N.D. Fla. 2022). The state's power to prohibit Reges's speech in the name

15   of inclusion is the mirror image of its power to prohibit inclusive teaching. *See id.* at

16   1260, 1291 (enjoining Florida's Stop WOKE Act prohibiting "promoting" banned

17   ideas). Taking Defendants' argument to its logical end, "[a] university president could

18   require a pacifist to declare that war is just, a civil rights icon to condemn the

19   Freedom Riders, a believer to deny the existence of God, or a Soviet émigré to address

20   his students as 'comrades.' That cannot be." *Meriwether*, 992 F.3d at 506. Reges's

21   interest in speaking to his students is paramount.

22

23   REPLY IN SUPPORT OF
     PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT

24   Case No. 2:22-cv-00964-JHC
     Page 6

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1    Defendants cannot support an interest in orderly operations. (Defs.' Opp'n 13.)

2    For example, Allen School administrator, Chloe Mandeville, said she was "'at a loss

3    for how to best" respond to students' complaints, but that is part of an administrator's

4    job. (*See* Balazinska Dep. Tr., Walters Decl. Ex. B, 31:7–16.) The same is true for

5    Allen School recruiter, Kayla Shuster's, complaint that Reges's syllabus statement

6    could, hypothetically, make recruiting Native students more difficult, (Defs.' Opp'n

7    at 13–14.) Performing one's jobs responsibilities is no disruption to the university's

8    normal functioning, and these "speculative ills" cannot generate a government

9    interest under *Pickering*. (*See* Pl.'s Opp'n 23–24.) Defendants claim that Reges's

10   teaching assistants "experienced the disruption," is similarly baseless because

11   Defendants created the shadow course sections that caused that disruption. (*See* Pl.'s

12   Opp'n 9–10, 23.)

13   Defendants further claim that Reges's statement caused "a disruption for his

14   students and the University community generally." (Defs.' Opp'n 14.) Their evidence

15   is only the allegedly expressed feelings and written complaints of individual

16   students—only one of whom was in Reges's class. (*Id.*) For example, based on

17   multiple-level hearsay, Defendants claim a Native student "felt 'despised' and

18   ultimately took a leave of absence." The student was never enrolled in Reges's classes,

19   Defendants offer no admissible evidence regarding the alleged leave of absence,

20   (Defs.' Opp'n 14; *see also* Pl.'s Opp'n 8–9 (citing testimony regarding Allbritton's lack

21   of personal knowledge)), and record evidence shows multiple reasons for the leave of

22   absence—including feeling "used" by Defendant Balazinska, a lack of tutoring at

23   REPLY IN SUPPORT OF
     PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT
     Case No. 2:22-cv-00964-JHC
24   Page 7

convenient times, and a sense that testing was more important than actual learning. (Schnapper Dep. Tr., Walters Decl. Ex. C, 120:23–126:15.) Reges never taught, tutored, or even met this student. (*Id.*) For disruption to the UW community generally, Defendants offer only a Reddit thread, calling it "viral" because it had approximately 80 comments and 240 "upvotes." (Defs.' Opp'n 14; Dkt. # 65 92:4–13, 101:1–7.) But the existence of a social media post with comments proves only an online conversation, not disruption to UW's operations.

In short, Defendants present no evidence that Reges's speech "interfere[d] with the regular operation of" the university or was likely to do so. Their unevidenced interest in orderly operations cannot outweigh Reges's academic freedom.

## II. Defendants Retaliated Against Reges for His Academic Speech by Censoring His Syllabus, Creating Two Shadow Courses, and Investigating Him—Actions That Are Reasonably Likely to Chill Speech.

Defendants cannot dispute they took actions reasonably likely to chill employee speech, in violation of Reges's right to academic freedom.

### A. Defendants took adverse actions against Reges.

While Defendants downplay the severity of their adverse acts, retaliation "need not be severe" to violate a public employee's First Amendment rights. *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003)). The relevant inquiry is objective: Whether the government's actions "were 'reasonably likely to deter [employees] from engaging in [First Amendment] protected activity.'" *Coszalter*, 320 F.3d at 976

1   (quoting *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 847 (9th Cir.

2   2002)). Defendants' adverse actions meet that standard.

3       Defendants do not distinguish *Coszalter*, where defendants investigated and

4   reassigned plaintiffs for publicly disclosing health and safety hazards. *Id.* at 970–71.

5   The Ninth Circuit held that unwarranted disciplinary investigations and threats of

6   discipline, individually, are adverse actions sufficient for First Amendment

7   retaliation claims. *Id.* at 974–77. Defendants' investigation and ongoing threat of

8   discipline are no different.

9       Defendants bristle at Reges's argument that UW censored him, only to

10  acknowledge that they "remov[ed] his land acknowledgment from the course

11  syllabus" and replaced it with a scrubbed version. (Defs.' Opp'n 2.) While Defendants

12  have not again removed Reges's parody from his syllabus, "throughout the life of this

13  case," (*id.* at 16), they threaten Reges with further punitive action if he maintains his

14  parody in his syllabi and "disruption" results—a severe punishment for any professor

15  because, as Defendants have demonstrated, "disruption" is synonymous with student,

16  faculty, or staff complaints. (Allbritton Dep. Tr., Walters Decl. Ex. D, at 91:14–92:5;

17  109:21–112:8; *see also* Dkt. # 62-42 at 6–7 (threatening further adverse action).)

18      Defendants argue they created "shadow" sections of Reges's courses without

19  the "intent and consequence of stigmatizing" Reges. (Defs.' Opp'n 15 (quoting *Levin*

20  *v. Harleston*, 966 F.2d 85, 88 (2d Cir. 1992)).) But Defendants created the shadow

21  sections because they found Reges's parody offensive: Director Balazinska

22  contemporaneously called Reges's statement "offensive" in an email to students and

23  REPLY IN SUPPORT OF
    PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT
24  Case No. 2:22-cv-00964-JHC
    Page 9

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

she and Defendant Grossman approved an Allen School tweet that they were "horrified" by it. (Pl.'s Br. 8–9.) Defendants did not create the shadow sections "to further a legitimate educational interest," *Levin*, 966 F.2d at 88, and therefore were reasonably likely to chill professors' future speech. The same is true for the many other adverse actions Defendants took. (Pl.'s Opp'n 20–21.)

### B. Defendants cannot dispute that Reges's speech motivated their adverse actions.

What Defendants characterize as disruption, motivating their adverse employment actions, is nothing more than listeners' reactions to Reges's speech. (Pl.'s Br. 13; Pl.'s Opp'n 8, 22–24; *see also* Dkt. # 66, ¶ 6; *id.* Ex. 4, at 14–27 (alleged student complaints); Allbritton Dep. Tr., Walters Decl. Ex. D, 91:14–92:5, 109:21–112:8 (student, faculty, and staff complaints only evidence of disruption).) But "[l]isteners' reaction to speech is not a content-neutral basis for regulation" and cannot provide a permissible reason to restrict speech. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134 (1992). When the government, like UW, targets speech because of listeners' reactions, that is "simply government hostility and intervention in a different guise. The speech is targeted, after all, based on the government's disapproval of the speaker's choice of message." *Matal v. Tam*, 582 U.S. 218, 250 (2017) (Kennedy, J., concurring in part and concurring in judgment).

It is undisputed that each complaint was sent to note that Reges's land acknowledgment statement caused offense—demonstrating that his words were the substantial motivation for Defendants' retaliation. The Mandeville email, for

instance, (Defs.' Opp'n 13), shows nothing more than a staffer wondering how best to respond to student complaints about Reges's syllabus-based viewpoint on land acknowledgment. (Dkt. # 66, at 26 ("[W]e have started hearing from students about it … Stuart's words have a very real negative impact on our entire community including staff.").) Staffer Kayla Shuster similarly complained that Reges's speech had an "emotional impact on students" who "were deeply hurt." (Dkt. # 66, at 30.)

Defendants also offer two anonymous student complaints, (Dkt. # 66, at 15, 17), another complaint signed by six students who called Reges's parody "offensive" and "bigoted," (*id.* at 17–18), multiple-level hearsay from an alleged Native student who "felt 'despised'" (Dkt. # 67 at 2), and a public Reddit post mildly critiquing Reges's land acknowledgment with approximately 80 comments. (Dkt. # 65 at 41.) Defendants' exhibits make clear that student and staff complaints present only their authors' or others' reactions to Reges's *words*. There can be no dispute that his speech was the substantial motivation for Defendants' adverse employment actions against him.

Defendants' claim about a "formal" student-union complaint does not change the analysis. For the first time, Defendants argue that the "formal" complaint from student-employee union representatives—an email to Balazinska from students expressing their offense at Reges's words—left them with "little option" but to investigate Reges. (Defs.' Opp'n 5; Dkt. # 66, at 33–34.) But had Defendants or the complainants believed there was a legitimate union grievance, they would have followed the process required by their contract. *See UAW Academic Student*

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 11

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

*Employees (ASEs) Contract*, Univ. of Wash., § 4 https://hr.uw.edu/labor/academic-and-student-unions/uaw-ase/ase-contract (last visited Jan. 30, 2024) (describing grievance procedure with strict time limits and arbitration requirement). There is no evidence that they did. Instead, Defendants followed the Faculty Code § 25-71 process, demonstrating their retaliatory aim to censor and punish Reges, not to resolve an employee-management dispute.

### III. Defendants' Syllabus Restrictions Discriminate Based on Viewpoint Because Reges May Either Parrot UW's Land Acknowledgment on His Syllabus or Say Nothing at All.

Reges is entitled to summary judgment on his viewpoint discrimination claim because Defendants censored his land acknowledgment parody and threaten him with discipline if he continues to include it on his syllabus. Reges addresses Defendants' argument that viewpoint discrimination is not a viable claim independent of Reges's retaliation claim in his opposition briefing. (Pl.'s Opp'n 25–27.) Defendants argue that "Reges mostly relies on cases in which the government was not acting as employer," (Defs.' Opp'n 17), as if that changes the fundamental principle of First Amendment law that state actors may not discriminate against viewpoints. Defendants' argument means only that the Court must consider UW's interest as employer, even on his viewpoint discrimination claim—not that he has no distinct claim. *See Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 650 (9th Cir. 2006). As Reges briefed, UW has no interest in discriminating against the viewpoints of its faculty. (Pl.'s Br. 15–18.)

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1    As UW testified, not only is UW's land acknowledgment "political," but not

2  having one in 2023 also "would be making a political statement." (Allen Dep. Tr.,

3  Walters Decl. Ex. E, at 72:4–21.) The undisputed evidence proves Defendants

4  discriminated against Reges because they and others find his alternative political

5  statement offensive and antithetical to their own. (*Id.*) Defendant Balazinska

6  repeatedly called Reges's parody "offensive," "toxic," "inappropriate," and

7  "dehumaniz[ing] and demean[ing]" to indigenous people. (Dkt. ## 62-11; 62-6, at

8  93:8–12, 98:18–99:17; 62-12; 62-19.) Defendants Grossman and Allbritton likewise

9  found Reges's parody offensive, "obnoxious," and "dehumanizing." (Dkt. ## 62-24, at

10  139:11–20; 62-35 at 53:12–22, 54–55.) UW's Rule 30(b)(6) designee testified that

11  Reges's parody was "dehumanizing." (Dkt. # 62, at 72:4–21.) But "[o]ffensive speech

12  is, itself, a viewpoint," and therefore suppressing speech on that basis is viewpoint

13  discrimination. (Pl.'s Br. 15–16 (quoting *Am. Freedom Def. Initiative v. King Cty.*, 904

14  F.3d 1126, 1131 (9th Cir. 2018), and citing *Matal*, 582 U.S. at 243–44 (plurality

15  opinion), 249 (Kennedy, J., concurring in part and concurring in judgment)).)

16    Defendants claim they responded not because of Reges's viewpoint but because

17  his parody allegedly caused a "disruption to the learning environment." (Defs.' Opp'n

18  17.) But that disruption was nothing but the complaints of a small fraction of

19  students, faculty, and staff—and all of them complained *because* they found Reges's

20  parody offensive. *Supra* Section I.B.

21    Defendants argue that they did not "force" Reges to parrot UW's land

22  acknowledgment because faculty are not required "to include one at all on course

23
24
REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 13

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1    syllabi." (Defs.' Opp'n 18.) Though UW does not explicitly *compel* Reges, Defendants

2    make clear that he must either endorse their language or use none. Expressing his

3    viewpoint, even in other settings, risks discipline if students complain—which Reges

4    cannot predict. (Pl.'s Opp'n at 14 n.5.) Indeed, Defendants officially began the Faculty

5    Code § 25-71 process after Reges emailed the "diversity-allies" listserv—which

6    students read and complained of. (Pl.'s Br. 11.)

7         Even as Defendants claim they do not "force" faculty to adopt a land

8    acknowledgment statement, Defendants admit that they ban all differing statements.

9    For example, "Director Balazinska also asked two other faculty members—whose

10   alternative land acknowledgments may have been insensitive to more conservative

11   students—to change the syllabi." (Defs.' Opp'n 18; *see also* Dkt. # 62-5 ("I will ask any

12   instructor who uses a land acknowledgment other than the UW land acknowledgment

13   to remove or replace it.").) If true, she discriminated against all professors' viewpoints

14   that differed from UW's own, supporting Reges's viewpoint discrimination argument.

15        That "[n]o faculty member has been disciplined for not using the Allen School's

16   recommended land acknowledgment," (Defs.' Opp'n 18), is also of no moment. It only

17   further proves that Defendants permit faculty to remain silent on the controversial

18   topic. Similarly, Defendants' argument that "[a]nother faculty member circulated an

19   article opposing such statements and faced no sanction," (*id.*), provides Defendants

20   no support because they offer no evidence that students saw it. Student complaints

21   prompted Balazinska's demand that Reges remove his parody. (Dkt. # 62-18, at

22

23   REPLY IN SUPPORT OF
     PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT
24   Case No. 2:22-cv-00964-JHC
     Page 14

UW_Reges_0001714 ("The statements you used are offensive and students have raised complaints.").)

Similarly, Defendants did not permit Reges to "discuss[] [his land acknowledgment] with students." (Defs.' Opp'n 18.) The undisputed evidence proves they objected to *any* in-class critique of UW's land acknowledgment. (Dkt. # 62-18, at UW_Reges_0001714 (Balazinska emailing Reges on Jan. 6, 2022: "It goes without saying that you have the right to have discussions about land acknowledgments, but we ask that you please take those discussions outside of your classroom.").) Defendants contend that Reges remains free to share his viewpoint on land acknowledgments in other settings. (Defs.' Opp'n 2.) They say he shared his land acknowledgment parody on the Allen School faculty listserv—but students did not receive that message. (*Id.* at 4.) They say he includes his parody in his email signature block—but not in messages to students. (*Id.* at 2.) They say he posted his parody outside his office—though they have no evidence any student saw it there. (*Id.*) They say he spoke to the press about his parody—but that was only after Defendants censored him. (*Id.*)

The undisputed facts demonstrate that Defendants censored, took other adverse actions, and continue to threaten punishment over Reges's land acknowledgment because the viewpoint it expresses is opposed to their own.

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 15

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## IV.     An Injunction Is Necessary to Limit Executive Order 31's Overbreadth and Vagueness.

Defendants argue Executive Order 31 is neither overbroad nor vague because it prohibits "only conduct closely akin to" or "like" "unprotected discrimination, harassment, and retaliation." (Defs.' Opp'n 18, 21.) Defendants ask the Court to ignore the Order's language prohibiting "any conduct that is deemed unacceptable or inappropriate, regardless of whether the conduct rises to the level of unlawful discrimination, harassment, or retaliation." (Dkt. # 76-11 at 2.) That disclaimer means UW does *not* read the Order to prohibit only conduct "closely akin to" or "like" discrimination, harassment, or retaliation. In fact, the Order's language includes  no boundary to what UW may deem "unacceptable or inappropriate" and the Court may not rewrite the Order to avoid its express, limitless terms.

Defendants argue UW must read its own policy "in the context of academic freedom in the University environment." (Defs.' Opp'n 20.) Although that is what the Order says, Defendants applied the Order to Reges's speech, demonstrating its overbreadth and vagueness. Defendants' attempt to recast Reges's written words as conduct fails.[2] As briefed, Reges is entitled to summary judgment on his overbreadth and vagueness claims. (Pl.'s Br. 28–33; Pl.'s Opp'n 27–32.)

---

[2] Defendants repeatedly label Reges's speech as "conduct." But distributing syllabi containing his parody is pure speech. Even expressive conduct outside the spoken or written word is protected under the First Amendment so long as "sufficiently imbued with elements of communication." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Reges's parody is direct communication, not merely imbued with elements of it.

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

## CONCLUSION

Based on the undisputed material facts and the applicable legal standards, the Court should grant Reges's motion for summary judgment and deny Defendants' motion for summary judgment.

DATED: January 29, 2024

Respectfully submitted,

*/s/Gabriel Walters*
GABRIEL WALTERS*
DC Bar No. 1019272
JOSHUA T. BLEISCH*
DC Bar No. 90001269
JAMES DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
josh.bleisch@thefire.org
gabe.walters@thefire.org
jay.diaz@thefire.org

CARL J. MARQUARDT
WA Bar No. 23257
LAW OFFICE OF CARL J. MARQUARDT
PLLC
1126 34th Avenue, Suite 311
Seattle, WA 98122
Tel: (206) 388-4498
carl@cjmlawoffice.com

*Admitted *Pro Hac Vice*
*Attorneys for Plaintiff*

## CERTIFICATE OF WORD COUNT

I certify that this memorandum contains 4,005 words, in compliance with the Local Civil Rules.

*/s/ Gabriel Walters*
Gabriel Walters

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00964-JHC
Page 17

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473

1

## CERTIFICATE OF SERVICE

2      Plaintiff's counsel confirms that a true and correct copy of the foregoing was

3   served via the Court's electronic filing system on this day, January 29, 2024. Notice

4   of this filing will be sent by operation of the Court's electronic filing system to all

5   parties indicated below and parties may access this filing through the Court's

6   electronic filing system.

7   ROBERT M. MCKENNA                        R. DAVID HOSP
    AARON P. BRECHER                         222 Berkeley Street, Suite 2000
8   401 Union Street, Suite 3300             Boston, MA 02116
    Seattle, WA 98101                        Tel: (617) 880-1802
9   Tel: (206) 839-4300                      Fax: (617) 880-1801
    Fax: (206) 839-4301                      dhosp@orrick.com
10  rmckenna@orrick.com
    abrecher@orrick.com
11
    *Counsel for Defendants*
12

13  /s/ Gabriel Walters                      CARL J. MARQUARDT
    GABRIEL WALTERS*                         WA Bar No. 23257
14  DC Bar No. 1019272                       LAW OFFICE OF CARL J. MARQUARDT
    JOSHUA T. BLEISCH*                       PLLC
14  DC Bar No. 90001269                      1126 34th Avenue, Suite 311
15  JAMES DIAZ*                              Seattle, WA 98122
    VT Bar No. 5014                          Tel: (206) 388-4498
16  FOUNDATION FOR INDIVIDUAL RIGHTS         carl@cjmlawoffice.com
        AND EXPRESSION
17  510 Walnut Street, Suite 900
    Philadelphia, PA 19106
18  Tel: (215) 717-3473
    josh.bleisch@thefire.org
19  gabe.walters@thefire.org
    jay.diaz@thefire.org
20
    *Admitted *Pro Hac Vice*
21
    *Counsel for Plaintiff Stuart Reges*
22

23

24