# *Reges v. Cauce, et al.*

# Exhibit D
# to Declaration of
# Gabriel Walters

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

---

STUART REGES,                        )   No.
                Plaintiff,   )   2:22-cv-00964-JHC
   vs.                               )
ANA MARI CAUCE, et al.,              )
                Defendants.  )

---

Videotaped

Deposition Upon Oral Examination Of

NANCY ALLBRITTON

---

June 20, 2023

401 Union Street, Suite 3300, Seattle, Washington

Magna Legal Services

(866) 624-6221

www.MagnaLS.com


REPORTED BY:  PEGGY FRITSCHY HAMILTON, RPR, CSR, CLR, 29906/No. 2704



```
                                                           Page 3
 1   APPEARANCES (Cont'd)
 2   And:                    AARON P. BRECHER
 3                           Orrick
 4                           401 Union Street  Suite 3300
 5                           Seattle, Washington  98101
 6                           (206) 839-4332
 7                           Abrecher@orrick.com
 8   Also Present:    Tania Grant (videographer)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



| | EXHIBITS | |
|---|---|---|
| NO. | DESCRIPTION | MARKED |
| 30 | December 8, 2021 email to Ed Lazowska and others from Stuart Reges | 38 |
| 31 | Email chain, top email January 4, 2022 to Aileen Trilles and others from Magdalena Balazinska | 50 |
| 32 | January 5, 2022 email to Magdalena Balazinska, and others, from Aileen Trilles | 77 |
| 33 | Email chain, top email January 4, 2022 to Aileen Trilles and others from Magdalena Balazinska | 81 |
| 34 | Email chain, top email to Magdalena Balazinska and others, from Nancy Allbritton | 82 |
| 35 | Email chain, top email March 25, 2022 to Heather Hoeksema, and others, from Lucia Ersfeld | 154 |
| 36 | June 7, 2022 email to engr-chairs and others, from Nancy Allbritton | 180 |
| 37 | July 11, 2022 email to Louisa Mackenzie, and others, from Nancy Allbritton | 183 |



```
                                                              Page 5
 1    E X H I B I T S CONT'D
 2   NO.      DESCRIPTION                                    MARKED
 3   38       Letter from Kayla Marie Shuster                  190
 4   39       March 2, 2022 letter to Teaching                 192
 5            Professor Stuart Reges from Magdalena
 6            Balazinska
 7   40       March 9, 2022 letter to Teaching                 193
 8            Professor Stuart Reges from Magdalena
 9            Balazinska
10   41       Email chain, top email to Rickey L.              193
11            Hall, and others, from Magdalena
12            Balazinska
13   42       Email chain, top email March 28,                 198
14            2022 to Nancy Allbritton, and others,
15            from Heather Hoeksema
16
17     E X A M I N A T I O N
18   BY                            PAGES
19   ATTORNEY WALTERS       7 - 202
20
21
22   *****   (*  Denotes phonetic spelling.)
23
24
25
```



Page 91

```
1    Q.   We haven't established yet in your prior
2  testimony what happened in between February 23rd, 2022
3  and the date of this document, so I might have to ask
4  you some background questions about that just to --
5  well, we'll see how this goes.  I might have to refer
6  back to other exhibits --
7    A.   Okay.
8    Q.   -- depending on objections I might receive
9  from your counsel.
10            This letter refers to a special
11 investigating committee, or SIC, under the faculty
12 code.  Do you know what that refers to?
13   A.   Yes.
14   Q.   Did you form a special investigating
15 committee under section 25-71 of the faculty code to
16 investigate allegations against Stuart Reges?
17   A.   Yes, I did.
18   Q.   Do you recall the nature of those
19 allegations?
20   A.   The nature of the allegations that -- was
21 that there was a disruption in the classroom learning
22 environment.
23   Q.   Based on what?
24   A.   Based on complaints from students, staff, and
25 faculty.
```



Page 92

1     Q.   And what did those -- strike that.
2          Did those complaints follow from Stuart's
3  statement in his course syllabus that we reviewed
4  earlier in this deposition?
5     A.   Yes.
6     Q.   The third paragraph of this letter says that,
7  "The SIC's investigation established the following
8  facts and provisional conclusions, based on multiple
9  interviews with directly affected parties, including
10 staff and students, and on review of contemporaneous
11 documents and of your public statements about this
12 matter"; do you see that?
13    A.   I do.
14    Q.   And by "your public statements," you are
15 referencing Stuart himself; correct?
16    A.   Yes, that is correct.
17    Q.   Do you know how many interviews the special
18 investigating committee conducted?
19    A.   I do not know how many interviews they
20 conducted.
21    Q.   Did they give it -- did they give you any
22 record of those interviews?
23    A.   I received an oral report out, but I received
24 no written record.
25    Q.   You didn't receive any work product on paper



Page 109

1         ATTORNEY HOSP:  Objection to the form.
2     Q.   You may answer, if you understand the
3  question.
4     A.   The disruption to the class, the student
5  complaints were evidence of a disruption to the class.
6  The actual disruption is the quality and the learning
7  environment and the ability to retain the material, or
8  the likelihood that they would be able to do that.
9         ATTORNEY HOSP:  I think we've been going
10 for about an hour and 45 minutes at this point.  Do
11 you want to find a spot at some point in the near
12 future?  I just think if we are going to go through
13 this entire letter, it's going to be another hour.
14        ATTORNEY WALTERS:  It may be, yeah, and it
15 is noon, so why don't we break for lunch.
16        THE VIDEOGRAPHER:  We are going off the
17 record.  The time is 11:59 a.m.
18           (Recess.)
19        THE VIDEOGRAPHER:  We're now back on the
20 record.  The time is 12:22 p.m.
21    Q.   Dr. Allbritton, earlier you testified that
22 students evidenced the disruption to the learning
23 environments.  Did anything else, besides student
24 complaints or staff complaints, provide evidence of
25 disruption to the learning environment?



Page 110

1    A.   Another example was there were some faculty
2  complaints.  A group of faculty and staff Native
3  Americans also complained.
4    Q.   So there are faculty complaints and staff
5  complaints and student complaints; correct?
6    A.   Yes.
7    Q.   Apart from that universe of complaints, was
8  there anything else that evidenced disruption to the
9  learning environment?
10         ATTORNEY HOSP:  Objection to the form.
11         You can answer.
12   A.   At the current time, I'm not recalling
13  something else.
14   Q.   Did any other evidence of complaint of --
15  strike that.
16         Did any evidence of disruption to the
17  learning environment, other than complaints, go into
18  your June 13th, 2023 letter to Stuart?
19         ATTORNEY HOSP:  Objection to the form.
20         You may answer.
21   A.   I'm not recalling any at the current time,
22  but I could review the letter and --
23   Q.   Please take a moment.
24   A.   That seems to be it.
25   Q.   I'll ask the question again, just to make



```
                                                    Page 111
 1   sure we're on the same page.  Was there evidence of
 2   disruption to the learning environment in the
 3   classroom that came into your June 13th letter, other
 4   than complaints?
 5              ATTORNEY HOSP:  Objection to the form.
 6              You can answer.
 7       A.   Complaints from faculty, students, and staff,
 8   correct.
 9       Q.   Other than complaints from faculty, students,
10   and staff, there was no other evidence of disruption
11   to the learning environment referenced in your
12   June 13th letter; correct?
13              ATTORNEY HOSP:  Objection to form.
14       A.   Correct, I'm not remembering additional ones.
15       Q.   Let me see if I can ask it a way that doesn't
16   earn an objection.  I don't want to say "earned."  I
17   don't mean to say it's deserved, but we'll ask it a
18   different way.
19              What evidence of disruption is referenced
20   in your June 13th, 2023 letter to Stuart?
21              ATTORNEY HOSP:  Objection to the form.
22       Q.   You may answer.
23       A.   Complaints by faculty, staff, and students.
24       Q.   And there was nothing else?
25              ATTORNEY HOSP:  Objection to the form.
```



Page 112

```
 1      A.   I don't recall other, other objections.
 2      Q.   And you've had an opportunity to review this
 3 exhibit, and in fact, there is nothing other than
 4 faculty, student, and staff complaints evidencing
 5 disruption to the learning environment referenced in
 6 this letter; correct?
 7           ATTORNEY HOSP:  Objection to the form.
 8      A.   I believe that is correct.
 9      Q.   Thank you.  Turning to page 3 of this
10 exhibit, I'd like to ask you some questions about the
11 fifth bullet point, so I'll draw your attention to
12 that part of the document.  And there are one, two,
13 three, four subbullet points.  So can you see where I
14 am; correct?
15      A.   Yes, I do.
16      Q.   This is discussing directions that Director
17 Balazinska -- excuse me.  This is discussing actions
18 that Director Balazinska took in response to Stuart's
19 inclusion of his land acknowledgment statement on his
20 syllabus and his refusal to remove that statement;
21 correct?
22      A.   Yes, it is.
23      Q.   And it says in the first subbullet that
24 Director Balazinska instructed the IT department to
25 take down the online version of the syllabus and
```

