# *Reges v. Cauce, et al.*

# Exhibit to Declaration of Gabriel Walters

```
                                                              Page 1

 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
 2                      AT SEATTLE
     _____
 3
     STUART REGES,                    )
 4                                    )
                 Plaintiff,           )
 5                                    )
     vs.                              ) No. 2:22-cv-00964-JHC
 6                                    )
     ANA MARI CAUCE, et al.,          )
 7                                    )
                 Defendants.          )
 8   _____
 9
            VIDEOCONFERENCE 30(B)(6) ZOOM DEPOSITION
10
                   UPON ORAL EXAMINATION OF
11
                   UNIVERSITY OF WASHINGTON
12
                   PROFESSOR CHADWICK ALLEN
13
     _____
14
15
16                      1:01 P.M.
17              TUESDAY, NOVEMBER 7, 2023
18     (ALL PARTICIPANTS AT THEIR RESPECTIVE LOCATIONS)
19           WITNESS LOCATION:  SEATTLE, WASHINGTON
20
21
22
23   Reported by:  Tami Lynn Vondran, CRR, RMR, CCR/CSR
24   WA CCR #2157; OR CSR #20-0477; CA CSR #14435
25   Job Number 6301546
```

```
 1                  A P P E A R A N C E S
 2              (ALL PARTIES APPEARING REMOTELY)
 3
 4     FOR THE PLAINTIFF:
 5              GABRIEL WALTERS
 6              ADAM TRAGONE
 7              JAY DIAZ
 8              Foundation for Individual Rights and Expression
 9              700 Pennsylvania Avenue Southeast, Suite 340
10              Washington, DC 20003
11              215.717.3473
12              gabe.walters@thefire.org
13              adam.tragone@thefire.org
14              jay.diaz@thefire.org
15
16     FOR THE DEFENDANTS:
17              AARON BRECHER
18              Orrick Herrington & Sutcliffe
19              401 Union Street, Suite 3300
20              Seattle, Washington 98101
21              206.839.4332
22              abrecher@orrick.com
23
24     ALSO PRESENT:
25              MATT RIESDORPH, Concierge
```

```
                                                          Page 3
 1                        I N D E X
 2    EXAMINATION BY:                              PAGE:LINE
 3         Mr. Walters ................................4:19
 4         Mr. Brecher ...............................80:18
 5         Mr. Walters ...............................90: 4
 6
 7
 8
 9    EXHIBITS FOR IDENTIFICATION                      MARKED
10    Exhibit 60  Plaintiff's Amended Rule 30(b)(6) ...12:21
11                Notice of Deposition to the
12                Corporate Representative of the
13                University of Washington
14    Exhibit 61  UW Office of Tribal Relations, ......58:18
15                UW_Reges_0011482-483
16    Exhibit 62  Presidential Blog entitled .........64: 1
17                Recognizing Indigenous Peoples' Day
18
19
20    PREVIOUSLY MARKED EXHIBITS                     PAGE:LINE
21    Exhibit 3   Printout of UW web page entitled ....25:16
22                About OMA&D
23    Exhibit 48  UW College of Engineering land ......56: 1
24                acknowledgments:  Online training
25                for staff and faculty
```

Page 24

1   backgrounds.  And so wanting to be as welcoming as
2   possible, not wanting to have a controversial statement
3   that would in any way divide the community.
4       Q.   Are land acknowledgment statements
5   controversial?
6       A.   Well, they can be.
7       Q.   Is the University aware of controversy
8   surrounding land acknowledgment statements?
9       A.   Do you mean in general, or do you mean their
10  particular statement?
11      Q.   Let's start with in general.
12      A.   Well, it's hard to know what the University
13  knows, but those of us who work in the field of American
14  Indian studies are aware that there can be controversies
15  over land acknowledgments.
16      Q.   And how are land acknowledgment statements
17  controversial?
18      A.   Well, sometimes the controversy is over which
19  tribal nations get acknowledged and from which
20  historical periods.  I don't know how familiar you are
21  with U.S. history and the broad history of U.S. -- you
22  know, of colonialism and conquest, but indigenous people
23  have been forced to move sometimes, you know, through
24  the military.  There are other ways that people have
25  been relocated, forced to move.  People have changed

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 25

1    their habitation because of the forces of settler
2    expansion, colonial governments.  And so it's not always
3    as simple as the land was always occupied by the exact
4    same group of people since time immemorial.
5        Q.   Let's look at the University's land
6    acknowledgment statement.
7             How is that controversial?
8        A.   Well, it's potentially controversial because
9    the Duwamish are not named explicitly.  And some people
10   think the Duwamish should be named explicitly, and other
11   people think that what we have is appropriate because
12   the language is all tribes and bands within the
13   Muckleshoot, Tulalip and Suquamish nations -- I don't
14   know how much of that history you want me to describe.
15            MR. WALTERS:  I would like to show Exhibit 3.
16            (Previously marked Exhibit Number 3.)
17       Q.   (BY MR. WALTERS)  Is this a printout -- oh,
18   pardon me.
19            Can you see Exhibit 3 on your screen,
20   Professor Allen?
21       A.   I can, but it's rather small.
22            Ah.  That's better.
23       Q.   And if you would go to the file share -- the
24   Exhibit Share site, I think it should be -- yes, it
25   should be in the marked exhibits folder, if you need to

Page 72

1   is spoken by UW leadership during events to acknowledge
2   that our campus sits on occupied land"; correct?
3       A.   Yes.
4       Q.   Earlier you testified that the history is a
5   political one.  Is the land acknowledgment statement in
6   acknowledging that history a political statement?
7            MR. BRECHER:  Objection.  Legal conclusion.
8            You can answer.
9       A.   Well, I would say it's a political statement
10  in the sense that almost all discourse is political
11  because it's caught up in power.  You know, I think a
12  lot of us would say that to not have a land
13  acknowledgment in 2023 would be making a political
14  statement.  I don't know that you could say that there's
15  a place outside of politics when it comes to these
16  issues because of the long, complicated history of
17  American Indian sovereignty and U.S. federal
18  sovereignty, state sovereignty.  These are -- I know I'm
19  not telling you anything you don't know.  These are
20  complicated, messy histories that are difficult to
21  reduce to a single statement.
22      Q.   (BY MR. WALTERS)  And what you've just
23  described, this is a matter of great public import, is
24  it not?
25           MR. BRECHER:  Objection.  Foundation.